## Case No. 21-cv-01239-JMA

In the
United States District Court
for the Eastern District of New York

2 RIVER TERRACE APARTMENT 12J LLC

v.

HOWARD M. EHRENBERG IN HIS CAPACITY AS
LIQUIDATING TRUSTEE OF ORION HEALTHCORP., INC. et. al.

On Appeal from the United States Bankruptcy Court
for the Eastern District of New York, Adv. No. 20-08051 (AST)

## Opening Brief of Appellant

Maryam N. Hadden, Esq.
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, New York   10007
Maryam.hadden@parlatorelawgroup.com
(646)846-6382


*Attorney for Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the disclosure requirements of Bankruptcy Rule 8012, counsel for Appellant 2 River Terrace Apartment 12J, LLC certifies that:

1.  2 River Terrace Apartment 12J, LLC is a non-government corporate party;

2.  2 River Terrace Apartment 12J, LLC has no parent corporation; and

3.  No publicly held corporation owns 10% or more of 2 River Terrace Apartment 12J, LLC's stock.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** .................................................... ii

**TABLE OF CONTENTS** ..................................................................................... iii

**TABLE OF AUTHORITIES** ............................................................................. iv

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION** ................................................................................................... 1

**STATEMENT OF THE ISSUES** ........................................................................ 2

**STATEMENT OF THE CASE** ........................................................................... 3

   PROCEDURAL BACKGROUND ........................................................................ 3

   FACTUAL BACKGROUND ................................................................................. 5

   APPELLATE JURISDICTION .......................................................................... 19

**SUMMARY OF THE ARGUMENT** ................................................................ 20

**ARGUMENT** ....................................................................................................... 21

   **Issue One: Did the Lower Court Err in Relying Upon a Presumption in the Summary Judgment Context When the Issue Was Actually Disputed** ......... 21

   **Issue Two: Did the Lower Court Abuse Its Discretion in Striking Appellant's Supporting Materials** ................................................................. 35

**CONCLUSION** .................................................................................................... 41

**Certificate of Compliance with Federal Rule of Bankruptcy Procedure 8015(a)** ................................................................................................................... 42

**Certificate of Service** ........................................................................................ 43

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ..................................................................................................22

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009).......................................39

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................36, 40

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...........................................................................................22, 23

*Borchert & Laspina, P.C. v. Harripersad (In re Harripersad*) (E.D. N.Y. 2019)..19

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) ....................................19

*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30 (2nd Cir. 2019).....................40

*Dufort v. City of N.Y.*, 874 F.3d 338 (2nd Cir. 2017).............................................35

*Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673 (2d Cir. 2016) ...............................................................................................................35

*Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994) ..................................................................................................22

*HBE Leasing Corp v. Frank,* 61 F.3d 1054, 1058-59 (2d Cir. 1995)......................27

*In re Chateaugay Corp.*, 838 F. 2d 59, 61 (2d Cir. 1988).......................................19

*In re Flutie New York,* 310 B.R. 31, 54 (Bankr. S.D.N.Y. 2004)...........................31

*J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593 (D. Md. 2015) ..................................................................................................36

*Jones v. Hoffberger Moving Servs.*, 92 F. Supp. 3d 405 (D. Md. 2015)................36

*Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012)..............................39

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......36

*Matsushita Elec. Industr. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S. Ct. 1348, 80 L. Ed.2d 538 (1986).....................................................................22

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahr. Islamic Bank (In re Arcapita Bank B.S.C.(c))* (Bankr. S.D.N.Y. 2021) .............37

*Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995)................................37

*Sharp Int'l Corp. v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 46, 2005 U.S. App. LEXIS 5241, *1, 44 Bankr. Ct. Dec. 146. ....................27

*Shelly v. Doe,* 173 Misc. 2d 200, 210, 660 N.Y.S.2d 937,944, (1997)..................26

*Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997) .......................35

**Statutes**

§ 273-a .................................................................................................23, 24

§ 276 ............................................................................................................18

11 U.S.C. § 544 ..........................................................................................23

11 U.S.C. § 544(b) ...............................................................................18, 23

11 U.S.C. § 548 ..........................................................................................18

275 ..................................................................................................18, 26, 27

28 USC §158 ...............................................................................................19

Debt & Cred L § 273 .................................................................................27

N.Y. Debt & Cred Law § 271 ...................................................................30

N.Y. Debt and Cred Law § 273-a .........................................18, 23, 24, 25

Section 273-a .......................................................................................18, 23

Section 274 .....................................................................................18, 25, 27

Section 276 ..................................................................................................18

Sections 273 – 276 .....................................................................................18

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................22

Fed. R. Civ. Pro. 56 .............................................................................35, 36

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b)(1) because this is an adversary proceeding commenced in a Chapter 11 case.  Appellant opposed final order jurisdiction in the Bankruptcy Court, noting that Appellant had not filed a proof of claim or otherwise consented to the jurisdiction of the Bankruptcy Court and that resolution of the adversary proceeding claims depended entirely on the application of New York State law.  This objection was overruled.

The complaint was filed in the Bankruptcy Court on March 14, 2020; the underlying Chapter 11 petitions had been filed on March 16, 2018, with the exception of a single Debtor whose later filing was consolidated. The Bankruptcy Court granted summary judgment to Appellee on March 1, 2021. Docket No. 64.[1] Appellant filed a timely notice of appeal under Federal Rule of Bankruptcy Procedure 8002 on March 8, 2021. Docket No. 69. This Court has jurisdiction under 28 U.S.C. § 158 because this is an appeal of a final judgment entered by a bankruptcy court.

---

[1] Docket references herein refer to the Docket in the Adversary Proceeding below.

## STATEMENT OF THE ISSUES

1.      The Bankruptcy Court chose to rely entirely on a presumption of insolvency in spite of actual disputes between the parties on the issue of solvency based on disputed material facts.  In so doing, the Bankruptcy Court ignored both materially disputed factual allegations and the appropriate burden of proof to be applied in a summary judgment proceeding. Without the improper finding of insolvency, summary judgment could not be granted.

**Standard of Review:**  The standard of review for a District Court reviewing a Bankruptcy Court's grant of Summary Judgment is for the appellate court to review the decision *de novo*.  *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017).

2.      The Bankruptcy Court abused its discretion in choosing to strike all of Appellant's supporting documents, rather than giving Appellant an opportunity to cure any defects.  This district recognizes that, particularly in the summary judgment context, a court has wide latitude in overlooking technical defects in a Rule 56 submission.  Here, where Appellant offered to cure the defects and proposed available methods to do so, and where there were substantial disagreements between the parties on more than one material issue, the Court abused its discretion in striking all of the offered exhibits.

**Standard of Review:**   When reviewing decisions of a bankruptcy court, district courts apply a *de novo* standard of review of a bankruptcy court's conclusions of law and review a bankruptcy court's findings of fact under a clearly erroneous standard. Fed. R. Bankr. P. 8013. A court abuses its discretion where it ignores a material factor deserving significant weight, relied upon an improper factor, or made a serious mistake in weighing proper factors. *Bridge to Life, Inc. v. Lucadamo (In re Bridge to Life, Inc.)*, 2006 U.S. Dist. LEXIS 29652 (E.D.N.Y. 2006).

## STATEMENT OF THE CASE

This is an appeal from a grant of Summary Judgment in an adversary proceeding before the U.S. Bankruptcy Court of the Eastern District of New York.

## PROCEDURAL BACKGROUND

1.     Orion Healthcorp and its associated subsidiary debtors filed voluntary bankruptcy petitions pursuant to Chapter 11 on March 16, 2018, and the matters were consolidated for administration purposes on March 22, 2018, almost two years to the day before the filing of the underlying adversary proceeding.[2]   Appellee

---

[2] The Debtor(s) in the underlying bankruptcy matters consist of multiple entities originally managed by Paul Parmar and other individuals and forced into bankruptcy following their purchase in a Go Private transaction orchestrated by Chinh Chu.  The lead Debtor is Orion Healthcorp, Inc; associated entities include Constellation Healthcare Technologies, Inc; NEMS Acquisition, LLC; Northeast Medical Solutions, LLC; NEMS West Virginia, LLC; Physicians Practice Plus Holdings, LLC; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.;

Howard M. Ehrenberg, acting in his capacity as Liquidating Trustee of Orion Healthcorp, Inc. et al., commenced the underlying adversary proceeding by filing a complaint against 2 River Terrace Apartment 12J, LLC (hereinafter, "2 River") and three other parties on March 14, 2020 [Docket No. 1].

2.      On November 10, 2020, the Court conducted a hearing on Appellee's then outstanding Motion for Default Judgment.  The Court indicated during that hearing that in its view, the issues surrounding Appellee's allegations surrounding 2 River might lend themselves to a summary judgment proceeding, as it appeared that several facts might be uncontested.  A motion schedule was set accordingly and Appellee filed the underlying Motion on December 1, 2020. *See*, Docket No. 42. Pursuant to the Court's Order, oral argument was scheduled to take place on January 21, 2021.

---

Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC; Northstar FHA, LLC; Northstar First Health, LLC; Vachette Business Services, Ltd.; Phoenix Health, LLC; MDRX Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; and New York Network Management, LLC.  In the interest of simplicity, the multiple entities will be referred to throughout this Memorandum as the "Debtor" or "Orion", unless identifying a specific entity is required for clarity. Although Debtor New York Network Management, LLC, filed its petition slightly later, its case has been consolidated with the other Debtor entities. The consolidated cases have proceeded under No. 8:18-71748(AST).

3.     After written briefing on Appellee's Motion for Summary Judgment but prior to oral argument, Trustee filed a Motion to Strike and Evidentiary Objections to Exhibits Filed in Support of Defendant's Opposition to Motion for Summary Judgment. Oral argument took place on January 21, 2021.  Both the Summary Judgment and Trustee's Motion to Strike were argued at this time and the Court adjourned the proceedings for decision.  Subsequently, the Court entered the Judgment Granting Plaintiff's Motion For Summary Judgment In Part As Against Defendant 2 River Terrace Apartment 12J, LLC.  *See* Docket No. 64.  Appellant subsequently filed its timely Notice of Appeal.  *See* Docket No. 69.

## FACTUAL BACKGROUND

4.     Appellant 2 River is a Limited Liability Company formed in the State of New York on December 23, 2015 and managed by Paul Parmar (hereinafter, "Mr. Parmar").  *See* Docket No. 55, no. 2.

5.     On June 10, 2013, while still a privately owned company, the Debtor entered into a consulting arrangement with First United Health, LLC ("FUH") through which the Debtor received the services of Mr. Parmar as the consultant in

exchange for an annual salary of $650,000 and bonus of 25% of 4x EBITDA[3] less

any funding amounts paid to sellers as part of an acquisition.  *See* Docket No. 50,

Exh. 1.

6.     In late 2014, the Debtor went public on the London AIM, a public

marketplace platform for small to mid-size companies.  As part of the going public

process, the compensation agreement for Mr. Parmar was referenced in the public

offering in Part VII.  *See* Docket No. 50, Exh. 3.  Although entities managed or

owned by Mr. Parmar constituted the majority shareholders in the public company,

the ratification involved multiple shareholders as well as the agreement of the

lenders Resource America and HIG.  In 2014, FUH elected to receive its bonus in

shares rather than in cash and therefore withdrew no funds from the Debtor.  *See*

Docket No. 50, Exh. 4.

---

[3] As an example of the level of business being transacted by the Debtor during this period, from January to March of 2014 EBITDA equaled $3.6m, a number that went up significantly during the same calendar period the following year.  *See* Docket No. 50, Exh. 2.  EBITDA stands for Earnings Before Interest Taxes Depreciation and Amortization.  While Appellee made much in the record below of a typographical error in the original Consulting Agreement omitting the letter "D" from the abbreviation, removing Depreciation from the earnings calculation would only have resulted in a higher compensation amount being owed to Mr. Parmar, which he has never attempted to enforce or collect. FUH was managed solely by Mr. Parmar.  *See* Docket No. 50, Exh. 1.

7.     At the end of June 2015, the bonus due to FUH for Mr. Parmar's consulting services exceeded $9 million, based on then-current EBITDA numbers. *See* Docket No. 50, Exh. 5.

8.     As of December 2015, the consulting contract between FUH and the Debtor had been continuously in effect since June of 2013 and the annual salary and full bonus was due for the consulting services of Mr. Parmar during the 2015 year. *See* Docket No. 50, Exh. 1.

9.     The Debtor maintained multiple bank accounts, including a checking account at Manufacturer's Trust Bank, account #-68132 ("M&T Bank Account"). *See* Docket No. 55, no. 3 and G.

10.    On December 23, 2015, the Debtor transferred $545,000 from the M&T Bank Account by wire to the account of Lustrin Tetelman, LLP, attorneys for the Sellers of Apartment 12J.  The transfer was made on Mr. Parmar's behalf as part of the funds owed him under the FUH contract.  While the parties were in agreement below that this transfer took place on the described date, the basis for the transfer was disputed.  *See* Docket No. 55.

11.     At the time of the Apartment 12J purchase, the law firm of Robinson Brog represented the Debtor and maintained an escrow account already holding funds on the Debtor's behalf.  Robinson Brog also represented FUH and Mr. Parmar, and prepared the paperwork forming 2 River.  As a result, at the time of the purchase the Robinson Brog escrow account held commingled funds on Mr. Parmar's individual behalf as well as funds on behalf of entities that he managed.  Again, these facts were partially agreed upon and partially disputed by the parties below.  *See* Docket No. 55, no. I.

12.     In January of 2016, the Debtor closed on the acquisition of another new entity, Vachette Business Services, Ltd..  As with every other acquisition, the purchase of Vachette required approval not only from the Debtor's Board but also from the lenders who held the warrants.  The acquisition of Vachette required an outlay of more than $2 million.  Further earn out payments were made to Vachette later in 2016 and in 2017.

13.     On February 19, 2016, the Debtor transferred $5,058,408.81 from the M&T Bank Account to the IOLA account maintained by Robinson Brog.  This sum

constituted the closing costs required for the purchase of Apartment 12J as well as a majority of the bonus owed to FUH for Mr. Parmar's services as CEO of the Debtor. Robinson Brog's IOLA account held other funds on behalf of the various entities it represented.  The closing took place on that same date with funds from Robinson Brog's IOLA account.  Again, while some of these facts were agreed to below, others were in dispute.  *See* Docket No. 55.  Following this transaction, the Debtors recorded the remaining amounts due to FUH in their corporate books in the form of a loan.

14.  Appellant 2 River purchased Apartment 12J from Clodagh Bowyer Greene and Elliott Greene, both of whom were named by Appellee in the adversary Complaint but were not named as parties to the underlying Motion. *See* Docket Nos. 1, 42, 55.

15.  Apartment 12J is a residential condominium unit.  Mr. Parmar, the manager of 2 River, sometimes stayed in the apartment and sometimes had guests in the apartment, including Elena Sartison.  The apartment was also used for business or social functions by other executives of the Debtors between 2016 and 2017.

Sartison was the only guest named by Appellee in the adversary Complaint; she was not named as a party to the underlying Motion. *See* Docket Nos. 1, 42 and 55.

16.     Throughout the year 2016 and for a substantial portion of 2017, Mr. Parmar continued in his role as CEO of Constellation.  As part of this role, Mr. Parmar carried a corporate credit card issued in his name. *See* Docket No. 55.

17.     Throughout the year 2016, the Debtor engaged in negotiations with Chinh Chu and his company CC Capital leading up to a Go Private transaction[4] that took the Debtor off the London AIM in January of 2017.  The Go Private process required a significant financial outlay by the Debtor of both cash and personnel resources, both throughout the due diligence process and at the closing itself.  Mr. Parmar was treated as a buyer, as he was purchasing 49% of the resulting entity; therefore, he was excluded from Board Meetings discussing the transaction and was not a member of the Debtor's Special Committee appointed to conduct the transaction process. *See* Docket No. 50, Exh. 10.

---

[4] This transaction spawned complex cases that are still pending in New Jersey District Court, as well as putting the Debtors into the hands of the team that filed the underlying Chapter 11 petitions a little more than one year after closing.

18.     In 2016, prior to the closing of the Go Private transaction, the Debtor acquired Allegiance Consulting Associates, LLC and Allegiance Billing & Consulting, LLC for a combined purchase price of $4,776,000. *See* Docket No. 50, Exh. 6. These acquisitions required the same outside approvals as that of Vachette.

19.     Also in 2016, the Debtor paid all of the expenses towards acquiring New York Network Management, LLC, (NYNM) including due diligence, for a total of approximately $2 million dollars.  The acquisition itself was delayed until after the Go Private transaction early in 2017, at Chinh Chu's express request.

20.     In addition to the due diligence and consultant outlay for NYNM, during the year of 2016 the Debtor investigated two other potential acquisitions, including paying consulting fees, traveling to meet with shareholders, and due diligence costs.  Although neither company was acquired in the end, the Debtor had ample resources available to go through the process of considering and eventually rejecting them.

21.     On July 11, 2016, the Debtor completely wiped out its outstanding loans, paying off $18.3 million in loans owed to Resource America and HIG and

leaving the Debtor free of significant debt.[5]  This loan payment followed a $10

million dollar prepayment the previous year; in total the Debtor paid off all principal

debt, including all fees relating to debt services, pre-payment penalties and

purchased 2.4% options back from the debt providers. *See* Docket No. 50, Exh. 7.

22.    Throughout the months immediately following the purchase of

Apartment 12J, the Debtor maintained a healthy cash flow through its primary

operating account, as a sampling of bank statements makes clear.   Redacted

statements showing opening and closing balances were proffered during the

proceedings below, and Appellant offered to obtain bank certifications.  *See* Docket

No. 50, Exh. 8; January 21, 2021 hearing record.

23.    As part of the Go Private transaction, a new consulting agreement was

prepared maintaining Mr. Parmar as the CEO.   Indeed, as the Debtor at that point

had never missed a debt service payment, never missed tax or earn out payments,

and had always paid vendor checks and payroll benefits, there was no reason not to

---

[5] As Appellee emphasized, there was one small judgment in existence – for $194,185 – and another identified debt for $18,543.27.   In light of the sums discussed throughout all of the related proceedings and expended by the Debtor in 2016 and 2017 it strains credulity to argue that these two debts pushed the Debtor over the edge into insolvency, or that the payment of the consulting bonus owed to FUH did so.

maintain Mr. Parmar in his position.   This was especially so as Mr. Parmar had

retained a substantial level of ownership in the business and would therefore be

financially motivated to ensure that the Debtor remained financially healthy.  *See*

Docket No. 50, Exh. 9.

24.     On January 30, 2017, the Go Private transaction closed, with the Debtor

contributing $5 million in cash towards the closing costs – again at Chinh Chu's

request, and a further sign that the Debtor continued to be solvent a year after having

made the transfer at issue in the underlying adversary proceeding. *See* Docket No.

50, Exh. 10.

25.     Appellee filed the underlying Motion for Summary Judgment to resolve

the portion of the pending adversary proceeding that applied to Defendant 2 River.[6]

Appellee sought to void the purchase of Apartment 12 J, located at 2 River Terrace,

New York, New York, as a fraudulent transfer and intended to claim the real estate

as property of the Debtor.  In so doing, Appellee relied upon a series of suppositions;

that the transfer was intentionally fraudulent, or that there was no fair consideration

---

[6] No other party in the underlying adversary proceeding has been named in a summary judgment
motion, although arguably no other party has disputed as many of the facts as Appellant.

for the transfer, or that the transfer either caused the Debtor to become insolvent or was made at a time that the Debtor was already insolvent.  Appellee cited to thirty-five facts which he described as uncontroverted.  In several of these instances, however, the facts were actually contested by 2 River, or Appellee's interpretation of them was contested by 2 River.  The existence of not one but multiple factual disputes between the parties highlights the fact that Appellee's summary judgment should have been denied and the parties should be allowed to have the factual disputes determined at trial.

26.    Appellant 2 River is a corporate entity formed to hold the ownership of a single piece of real estate – 2 River Terrace, Apartment 12J.  Apartment 12J is a condominium unit purchased by 2 River on February 19, 2016.[7]  Appellee's interest in this purchase stems entirely from the fact that 2 River is managed by Mr. Parmar, the former CEO of Constellation Healthcare and current manager of FUH.  Although

---

[7] Apartment 12J has been the subject of other court proceedings as well.  The condominium Residential Board of Managers brought a proceeding in New York State Supreme Court centered around the apartment, and the apartment was for a period of time one of the defendants in an *in rem* proceeding in New Jersey District Court, although the Government later dropped Apartment 12J from that action while it was still pending.  The *in rem* proceeding was dismissed by the Court on April 30, 2021.  Finally, Apartment 12J was listed by the Department of Justice as a potential asset for forfeiture in a criminal proceeding, from which it was dropped on May 12, 2021.

Mr. Parmar is not named as a Defendant in the adversary proceeding underlying the Motion, the Complaint and the Motion are both replete with references to and allegations about Mr. Parmar and his actions.   Appellee throughout the Motion attempted to paint Mr. Parmar as an individual in serious financial difficulties, selecting instances over a period of several years before the actual facts in controversy in his effort to do so.  Yet this argument ignored Mr. Parmar's earnings from the Debtor as well as any other investments or businesses that he may have been engaged in at the time.  It further ignored the clear evidence that both Mr. Parmar and, indeed, the Debtor entities were not merely financially solvent but actually successful income earners before the Go Private transaction that led to the filing of Chapter 11 bankruptcy proceedings more than two years after the purchase of Apartment 12J had taken place.  As solvency at the time of the transaction in issue is the most relevant question, this is a noticeable oversight that should not have been excused below.

27.     At the time of the purchase of Apartment 12J, Mr. Parmar was not only the CEO of Constellation but was also employed by the Debtor as a consultant

through a consulting agreement with First United Health, LLC ("FUH").  The consulting agreement between Debtor and FUH had been in existence since June 10, 2013 and entitled Mr. Parmar to an annual salary of $650,000.00 plus an annual bonus which was calculated as a percentage of EBITDA.[8]  The annual salary amount could be raised by the Debtor's managerial board but not lowered.  *See* Docket No. 50, Exh. 1.

28.    During the same time period and throughout 2016 following the transaction, the Debtor showed multiple earmarks of solvency.  For example, on July 11, 2016 the Debtor paid off the entirety of its outstanding loans to Resource America and HIG – totaling approximately $18.3 million dollars in addition to the $10 million previously paid – and erasing outstanding debt as part of its preparation for the Go Private transaction.  Similarly, the Debtor paid earnouts and taxes in 2016. During that same year, the Debtor paid all of the due diligence and acquisition expenses for the acquisition of NYNM, an entity that was acquired in 2017 after the

---

[8] As noted previously, the annual bonus was to be calculated as 25% of 4x EBITDA less the amount of any funding obtained that was paid to sellers as the purchase price of an acquisition in that calendar year.  The original consulting contract was for a five year period. If the bonus was instead calculated as a percentage of EBITA, the owed amounts would have increased, not decreased.

completion of the Go Private transaction solely at the request of Chinh Chu, who expressly asked the Debtor to hold off on the acquisition to prevent a pre-transaction increase in value that would have caused a commensurate increase in price. Moreover, the Debtor completed the acquisition of Allegiance Consulting Associates and Allegiance Billing & Consulting in September of 2016. Finally, the Debtor contributed $5 million in cash to its own purchase during the closing of the Go Private transaction (again at Chinh Chu's request) on January 30, 2017. *See* Docket No. 50. All of these payouts and transactions took place *after* the purchase of Apartment 12J and all fly in the face of any argument that the Debtor was either insolvent at the time of the purchase or was rendered insolvent as a result of the purchase. Insolvent companies quite simply do not pay off millions of dollars of debt or make new acquisitions. To argue the contrary defies all reason and logic, as does relying upon a presumption of insolvency in the face of factual evidence to the contrary.

29.    Appellee's arguments in favor of summary judgment all relied upon the application of New York State law, as any application to void the transaction under

11 U.S.C. § 548 would have been unquestionably time-barred.  Instead, Appellee

sought to use 11 U.S.C. § 544(b) and by reference, Sections 273 – 276 of the New

York State Debtor and Creditor Law.[9]  There are, of course, multiple restrictions

built into these statutory sections.  For example, § 273-a applied only when raised

by the same creditor who was engaged in litigation prior to the transfer.[10]   § 276

required *actual intent* to hinder, delay or defraud present or future creditors.  § 274

required that the transaction leave the conveyor with "unreasonably small capital."

And §§ 273 and 275 required *both* a lack of fair consideration and insolvency of the

conveyor.  Each of these restrictions of course impacted Appellee's Motion and

should have been considered by the Bankruptcy Court in the course of deciding the

Summary Judgment motion below.

---

[9] These sections have since all been repealed and/or substantially amended, but as the law prior to April 4, 2020 applies here, the previous statutory language shall be referenced herein rather than the current language of the sections still in existence.

[10] Appellee identifies two "predicate creditors" for the pursuit of his claim, whose claims totaled $212,728.27, as the parties into whose shoes he purportedly stepped for the purposes of this section.

## APPELLATE JURISDICTION

30.   Appellant asserts that this Court has jurisdiction to hear and decide the instant appeal of a final order granting summary judgment and transferring ownership of the real estate in question.

> Before considering the issues on appeal, a court must first confirm that it has jurisdiction to do so. See, *In re Chateaugay Corp.*, 838 F. 2d 59, 61 (2d Cir. 1988).
> …
> An order is 'final' for appeal purposes when a decision has been entered that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)."
> *Borchert & Laspina, P.C. v. Harripersad (In re Harripersad)* (E.D. N.Y. 2019)

31.   The Judgement on appeal is a final order.  Appellant has been excluded from the remaining scheduling orders and upcoming trial preparation in the underlying adversary proceeding.  Moreover, Appellee has taken actual possession of the real property in question – Apartment 12J – pursuant to the Judgment on appeal and has even gone so far as to enter into a contract of sale for the premises in spite of the pendency of this appellate action.   *See* Docket No. 949, 8:18-71748(AST).  Jurisdiction in this Court is appropriate pursuant to 28 USC §158,

which provides jurisdiction to the District Courts to hear appeals from final judgments, orders and decrees of bankruptcy judges in the same judicial district.

32.  The District Court for the Eastern District of New York is the designated Court of Appeal for the Bankruptcy Court for the Eastern District of New York.  Wherefore, jurisdiction in this Court is appropriate.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court's judgment is based on two reversible errors.

First, the Bankruptcy Court, having weighed the evidence against Appellant rather than in its favor as it should have done in the summary judgment context, found that the transfer in question had been made without fair consideration. The Court then went on to rely on the resulting presumption of insolvency in applying New York Debtor and Creditor Law to void the transaction.  Reliance upon the presumption of insolvency was error where the question of solvency was disputed by the parties and there was evidence to support the solvency of the Debtor at the time of the transaction.  As a result of this improper finding, the Court found in favor of Appellee and entered the summary judgment order appealed from herewith.  *See* Issue One below.

Second, the Bankruptcy Court abused its discretion in striking all of the exhibits relied upon by Appellant in order to reach its conclusions regarding the key issues of consideration and insolvency. Appellant had supplied numerous exhibits in support of its allegations, which Appellee moved to strike. Appellant offered orally to cure the defects and to provide exhibits in full compliance with Rule 56(e) and invited the Court to consider the alternative options available to it under that subsection in considering those exhibits. Rather than allowing Appellant to cure the defects, the Court struck all of the exhibits and ruled that there were, as a result, no material facts in dispute. As a result of this abuse of discretion, the Court found in favor of Appellee. *See* Issue Two below.

## ARGUMENT
### Issue One: Did the Lower Court Err in Relying Upon a Presumption in the Summary Judgment Context When the Issue Was Actually Disputed

33.  The first issue on appeal is whether the Bankruptcy Court erred in relying upon a New York State presumption of insolvency in order to grant Appellee's summary judgment motion in spite of the fact that the issue of actual solvency was disputed by the parties.

34.  The standard of review from a Summary Judgment proceeding is for the appellate court to review the decision *de novo*. "A district court's grant of

summary judgment is reviewed *de novo*." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994). This same standard of review applies when a District Court is reviewing the summary judgment decision of a Bankruptcy Court. *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017).

35.  Summary Judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

36.  Genuine issues of fact are not created by mere conclusory allegations. Summary Judgment is proper only when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party. *Matsushita Elec. Industr. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

"A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*   When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*  On the record below, it was clear that there were multiple areas of dispute between the parties on material issues.  Thus, the Court's grant of summary judgment in favor of the movant below was improper.

37.   Appellee's argument in the underlying Motion for Summary Judgement relied upon several sections of the New York Debtor & Creditor Law (hereinafter, "NYDCL"), as potentially available to Appellee through 11 U.S.C. § 544.[11]  First, Appellee relied upon NYDCL § 273-a. Prior to its repeal in 2019, NYDCL § 273-a read as follows "Every conveyance made *without fair consideration* when the person

---

[11] The lower court's decision references NYDCL §§ 273-275 without singling one section out; thus, each of these sections will be addressed herein.

making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent *as to the plaintiff in that action* without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." (emphasis supplied). Thus, there are two significant limitations on the *per se* reach of § 273-a; the claim stands only as to the plaintiff in the docketed action or judgment and only where there is no fair consideration. Here, Trustee must put himself in the shoes of the two identified creditors with "judgments" totaling $212,728.27[12] who were claimed to be in existence at the time of the transfer from the Debtor to the Robinson Brog escrow account. No other creditor can raise a claim under NYDCL § 273-a, as only the plaintiff in a docketed action satisfied the statute as it then existed; indeed, it is highly questionable whether both of these creditors could satisfy the statutory requirements, or only one.

---

[12] One of these judgments, totaling $194,185 was against Orion, a subsidiary of CHT, and not the holder of the M&T Bank Account; the other is an $18,543.27 claim from Wells Fargo Financial Leasing, Inc. which was filed in the Chapter 11 proceeding as claim no. 3-1 but does not appear to have been a docketed judgment or any form of judicial proceeding, although it was dated in 2015.

38.   Additionally, the amounts asserted by Appellee trying to establish a *de facto* showing of insolvency under NYDCL § 273-a are fractional compared to the flow of funds involved in Mr. Parmar's business dealings with and employment for Debtors in the underlying bankruptcies.  When Debtors commonly made purchases and acquisitions for multi-millions of dollars, the assertion that a judgment for $18,543.27 would render the Debtors insolvent is perplexing, at best.   Even adding in the larger of the two judgments, which was against a non-party to any of the underlying actions, the judgment amount was *de minimis* compared to many of the business deals completed between the date of that judgment and the filing of the underlying bankruptcy, as well as between the purchase of the apartment and the filing of the Chapter 11 petition.

39.   In addition to reliance upon NYDCL § 273-a, Appellee and the lower court relied upon §§ 273-275.  Section 273 required both a lack of fair consideration and a conveyance made by someone who "is or will be thereby rendered insolvent" and applied to current creditors or parties "who become creditors during the continuance of such business or transaction."   Section 274 required a lack of fair

consideration and "unreasonably small capital" remaining after the conveyance. And Section 275 required a lack of fair consideration in addition to a conveyor who "intends or believes that he will incur debts beyond his ability to pay." Under Section 275 "the intent which must be proved is the intent to incur debts beyond the ability to repay as the debts mature, and not an actual intent to defraud." *Shelly v. Doe,* 173 Misc. 2d 200, 210, 660 N.Y.S.2d 937,944, (1997). The burden of proof under Section 275 is on the claimant seeking to void the conveyance. *Id.* All three statutory sections required a combination of lack of fair consideration *and* insolvency, although each phrased the requirement slightly differently.

40.  Appellee's argument below, which was accepted by the Court, depended upon the following analysis of these three statutory sections:  The Debtor fraudulently transferred funds directly to Appellant 2 River despite not owing a debt to 2 River, and those specific funds were then used to purchase the condominium in question.  This analysis, however, ignored substantial factors which, when viewed in the light most favorable to 2 River, raise genuine issues of material fact. Significantly, a conveyance by a debtor is only deemed constructively fraudulent if

it is made without "fair consideration" *and* one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, NYDCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, NYDCL § 274; or (iii) the transferor subjectively believes that it will incur debt beyond its ability to pay, NYDCL § 275. *Sharp Int'l Corp. v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 46 (2d Cir. 2005).

41.   Fair consideration is analyzed "as follows: (1) the recipient of the debtor's property must either (a) convey property in exchange, or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be in 'good faith'." *HBE Leasing Corp v. Frank,* 61 F.3d 1054, 1058-59 (2d Cir. 1995). First, the transfer was not made directly from the Debtor to 2 River but, rather, was made from the Debtor to the IOLA account of Robinson Brog.  Robinson Brog at that time represented not only the Debtor but also FUH and Mr. Parmar as well as 2 River, and thus the transfer of funds to the IOLA account is subject to multiple factual interpretations as to the

intended recipient of the funds rather than the sole interpretation argued by Appellee.

Second, the Debtor *did* in fact owe an antecedent debt to Mr. Parmar, a non-party to this case and to the underlying bankruptcy proceedings, due to the consulting agreement with FUH; indeed, according to the consulting agreement, the Debtor owed a substantial bonus to Mr. Parmar, significantly higher than the transfer amount in question.[13] Both Robinson Brog and Mr. Parmar wore multiple "hats" during this period as each represented multiple entities. Appellee and, indeed, the lower Court, selected one interpretation without considering that it is not the only – or even the most reasonable – interpretation of the transfer from the Debtor to the IOLA account and from the IOLA account to the sellers of the apartment at issue. Because there were multiple interpretations and the parties were in dispute over which interpretation applied, it is entirely inaccurate to claim that there was no

---

[13] Moreover, while Appellee argued below that the lack of an antecedent debt specifically between Appellant 2 River and the Debtors was sufficient proof of a lack of fair consideration, it has long been recognized that benefit to a debtor can come indirectly through a third person and still establish the fair consideration prong of a NYDCL analysis. *See Klein v. Tabatchnik*, 610 F.2d 1043 (2d Cir. 1979). The existence of the debt between Debtors and FUH can be seen not only in the consulting agreement, but also in the remaining balance due to FUH and acknowledged in the Debtors' books as a loan following the February, 2016 transfer.

material dispute regarding the existence of fair consideration, a necessary predicate for the application of each of the cited NYDCL sections.

42. Viewed in the light of a Motion for Summary Judgment and the concomitant need to draw all justifiable inferences in Appellant 2 River's favor, Appellee failed to establish the lack of an antecedent debt. Appellee argued that payment to a corporate director, officer or shareholder may not constitute a good faith transfer in claiming that lack of fair consideration had been established, but failed to address the second prong of each statute's analysis. The requirement of *insolvency* is not affected by the identity of either the transferor or the transferee. The Court below made this same error by relying upon a presumption of insolvency despite of the fact that solvency was disputed by the parties before it. Appellee's characterization of the transfer – which was less than the bonus due and owing under the consulting contract before the transfer took place – as a "diversion of corporate funds" should not have reached the level of certainty required for a Rule 56 motion simply because it was said emphatically, even if the Bankruptcy Judge sympathized with that characterization. Rather, as there was a genuine issue of material fact

underlying the initial question of fair consideration – that is, whether or not the amount transferred from the Debtor's M&T Bank Account into the Robinson Brog IOLA account constituted the payment of a legitimate antecedent debt made to Mr. Parmar in the ordinary course of business – summary judgment should have been denied and the case permitted to move forward to discovery.

43.   Perhaps most significantly for all of the statutes relied upon by Appellee, the only "proof" of insolvency at the time of the transaction was Appellee's repetition that the Debtor was insolvent, based on amended tax returns prepared and filed as part of the Chapter 11 Bankruptcy process which showed negative income for the years 2015, 2016 and 2017.  The conclusions reached by these tax returns were among the facts below disputed by Appellant.  According to N.Y. Debt & Cred Law § 271, "a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  And of course, insolvency at the time of the transaction is the relevant question; it cannot be presumed from subsequent insolvency.  *See O'Toole v. Karnani (In re Trinsum*

*Grp.)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011).  Yet in the instant matter, these

tax returns, which had been prepared in 2018 to support a bankruptcy petition in

2018, were belied by the Debtor's actual recorded activity and indicia of solvency at

and around the time of the transaction in 2016.[14]

44.   As noted above, the Debtor undertook multiple actions in 2016 and into

2017 that argued against any potential finding of insolvency.  "Where a transfer

occurs without consideration, the defendant is presumed to have been insolvent at

the time of the transfer and may only rebut the presumption by proving its continued

solvency after the date of transfer."  *In re Flutie New York,* 310 B.R. 31, 54 (Bankr.

S.D.N.Y. 2004).  There was ample evidence of solvency at and after the date of the

transfer offered below.   The Debtor acquired two new entities – Allegiance

Consulting Associates and Allegiance Billing & Consulting – with an acquisition

cost just under $5 million.  *See* Exhibit 6 to Docket 50.   These acquisitions joined

Vachette Business Services, which had been acquired in January just before the

---

[14] In this regard, it is important to note that the Debtor acquired one of its largest entities – New York Network Management, LLC, the last entity to file for Chapter 11 treatment – more than a year after the purchase of Apartment 12J.  This acquisition provided further evidence of actual solvency at and after the 2016 transfer of funds.

subject transaction.   Moreover, the Debtor paid the costs for due diligence etc. leading up to the acquisition of New York Network Management LLC – an acquisition that would have been completed in 2016 but for Chinh Chu's request to delay the purchase until after the Go Private transaction closed in January of 2017. Additionally, the Debtor paid due diligence, travel and consulting costs to look at and eventually pass on two other companies.   Most significantly, the Debtor paid off $18.3 million in outstanding loans on July 11, 2016, having paid $10 million towards those same loans the year before, as well as buying back shares, paying earnouts and paying taxes after the filing of tax returns that did not reflect the losses cited by Plaintiff in his amended returns.

45.   Finally, even after having laid out funds for all of these purposes, the Debtor still had $5 million in cash available to pay at the closing of the Go Private transaction in January of 2017.   *See* Docket 50, Exh, 10.   In short, *none* of the recorded activity of the Debtor following the subject transaction was consistent with the Debtor being insolvent at the time of the transfer or being rendered insolvent as a result of the transfer.   Certainly there was no evidence that the Debtor would or

could have anticipated insolvency as a result of the transfer at the time that it was made, as the language of NYDCL § 275 contemplated.[15]  The only way to truly determine the insolvency, or more accurately the solvency, of the Debtor would have been to do a thorough accounting of the business *at the time of the transfer*.  As this would likely involve a battle of the experts in a case involving complex economic allegations on both sides, it is particularly unsuited to a summary judgment finding.

46.   The Court below, however, chose to ignore both the factual disputes and the multiple indica of actual solvency in order to rely upon a statutory presumption of insolvency and thus find in favor of Appellee.  Where lack of fair consideration is adequately plead, courts have, of course, recognized a presumption of insolvency[16] which can then be rebutted by showing continued solvency after the transaction took place.  *See R.T.C. Mortg. Trust 1995-S/N-1 v. Sopher*, 171 F. Supp. 2d 192, 199 (S.D.N.Y. 2001); *In re Vivaro Corp.*, 524 B.R. 536 (Bankr. S.D.N.Y.

---

[15] Section 275 required proof of the debtor's *subjective* belief or intent, at the time of the transfer, that it was incurring debts beyond its ability to pay. *In re Best Prods. Co.*, 168 B.R. 35, 52 n. 28 (Bankr. S.D.N.Y. 1994) (NYDCL § 275 requires proof of the transferor's subjective belief that it will incur debts beyond its ability to pay) *aff'd* 68 F.3d 26 (2d Cir. 1995).  No such proof was established below.

[16] This presumption does not apply to claims asserted under NYDCL § 274, which instead requires "unreasonably small capital" as a direct result of the transfer.  *See* NYDCL § 274; *In re Vivaro Corp.*, 524 B.R. at 552.

2015); *Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013).  It is well established that the party defending the transfer "need only come forward with *some* evidence of solvency to rebut the presumption, as the burden of persuasion and the risk of non-persuasion remain with the party challenging the conveyance."  *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest.)*, 337 B.R. 495, 506 (Bankr. S.D.N.Y. 2006) (emphasis supplied).  *See also In re Manshul*, 2000 U.S. Dist. LEXIS 12576 (Bankr. S.D.N.Y. 2000); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 938 (S.D.N.Y. 1995).  Appellant clearly met this minimal burden in the proceedings below, particularly in light of the fact that this issue was before the Court on a motion for summary judgment.

47.   Wherefore, Appellant asserts that the Court in the adversary proceeding erred in relying upon the presumption of insolvency in the face of a dispute over actual solvency and that summary judgment should have been denied.

## Issue Two: Did the Lower Court Abuse Its Discretion in Striking Appellant's Supporting Materials

48.   The second issue in the instant appeal is whether the Bankruptcy Court abused its discretion by striking Appellant's supporting materials rather than allowing Appellant a further opportunity to properly support Appellant's assertions of fact when Appellant offered to do so pursuant to Fed. R. Civ. Pro. 56(e).

49.   Summary judgment can be a useful tool in the litigation realm as it can allow the Court to determine issues, or entire matters, without the need to proceed to trials when there are no genuine issues of material facts.  However, the Court must review the issues at hand in the light most favorable to the party defending the summary judgment. "On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 [2d Cir. 1997]); *Dufort v. City of N.Y.*, 874 F.3d 338 (2nd Cir. 2017).

50. It has long been held that:

> When considering a Rule 56 motion, the court must view the facts, and reasonable inferences drawn from the facts, in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact." *Jones v. Hoffberger Moving Servs.*, 92 F. Supp. 3d 405, 409 (D. Md. 2015). A "dispute as to a material fact 'is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). *J&K Deli v. United States* (D. Md. 2021)

In light of the heavy burden on the movant, and the corresponding inferences to be drawn on behalf of the non-movant, Rule 56(e) specifically provides a variety of possible solutions for a court faced with facts or assertions that it feels are not properly supported.  Indeed, the plain language and intent of the Rule establish means of introducing evidence where possible and appropriate.  A court may give a party an opportunity to properly support or address the fact or may consider the fact undisputed for the purposes of the motion. The "catch-all" provision of § 56(e)(4) grants the court the power to issue "any other appropriate order." This flexibility is particularly valuable when, as was the case here, the summary judgment motion is being decided before discovery had commenced and on what the lower court had made clear was intended to be an expedited time schedule.  Indeed, it has been held that the purpose of

for summary judgment from degenerating into mere elaboration of conclusory pleadings." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 97 (2d Cir. 1970). *See also Rochester v. Cty. of Nassau*, 2019 U.S. Dist. LEXIS 31419 (E.D.N.Y. 2019).

51.   Further, this Circuit has determined that not only must the Court view facts in the light most favorable to the party defending against the summary judgment but has expanded on this premise to state that "'[t]he party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law.'" *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). *See also Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahr. Islamic Bank (In re Arcapita Bank B.S.C.(c))* (Bankr. S.D.N.Y. 2021). Moreover, "a district court has broad discretion to determine whether to overlook a party's failure to comply with" Local Rule 56.1" *Offor v. Mercy Med. Ctr.*, 2021 U.S. Dist. LEXIS 90013 at *22 (E.D.N.Y. 2021) (*quoting Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 432 [S.D.N.Y. 2014]).

52.   Appellant contends that genuine issues of fact were established in the underlying Adversary action.  The Court initially directed the parties to file a "joint" statement of undisputed facts on or before December 28, 2020.  *See* Docket No. 38. Appellee, however, filed a Statement of Uncontroverted Facts, *see* Docket No. 43,

on December 1, 2020, without the stipulated agreement of Appellant.  In light of the

statement filed by Appellee, Appellant filed a separate statement of facts on

December 30, 2020, with numbered Exhibits 1-9 attached.[17]  *See* Docket No. 51.

The parties then discussed facts which were and were not in dispute, and Appellee

filed a second statement more accurately reflecting the areas of dispute and areas of

agreement on January 6, 2021.  *See* Docket No. 55.  Appellee followed that filing

with a Motion to Strike Exhibits, raising for the first time a series of objections to

the form of each of the Exhibits submitted by Appellant. *See* Docket No. 56.  These

filings, which clearly reflected that there were areas of dispute between the parties,

particularly surrounding any factual allegations that could form the basis of a finding

of solvency or insolvency, should not be sufficient to allow success on the merits of

a summary judgment motion.  Further, during the hearing on January 21, 2021,

Appellant offered to supplement the evidentiary record to support the assertions and

argument of facts material to the determination of the underlying litigation, citing to

the alternatives contemplated by F.R.C.P. § 56(e) and offering to cure defects raised

---

[17] The parties agreed to, and the Court approved, an extension of the time to respond to December 30 from December 28.

by the Trustee to the form of the previously submitted Exhibits.[18]  "[S]ubmissions by party opposing summary judgment need not themselves be in form admissible at trial, but party 'must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.'" *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).   In the instant case, Appellant contends that there are genuine issues of material facts and that any defect in the submission could be corrected at trial.  Indeed, "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).   Moreover, as exhibits had indeed been offered to support

---

[18] In this regard, it is important to note that while an affidavit from Mr. Parmar, who as Appellant's Manager and as the Debtors' former CEO and consultant was a central figure in the adversary proceeding despite being a non-party, might ordinarily have been the simplest and most expedient manner in which to cure any defects, Mr. Parmar had been placed in an unpalatable "catch-22" situation by the ongoing bankruptcy litigation, as he was and still is engaged in aggressively defending a criminal indictment pending against him in New Jersey District Court.  As a result, any affidavit from him, if offered, risked running afoul of his Fifth Amendment rights.  Several of the Exhibits, however, had alternative modes of curing any defect – for example, submitting certified copies of the bank statements – which Appellant offered to undertake at the Court's request.  The transcript of this hearing has been designated by Appellant to become part of the record on appeal, but not yet received.

Appellant's claims below, and as Appellant had offered to further support those allegations by curing defects in the form of the exhibits, it is clear that permitting Appellant to submit supporting materials would not have run afoul of the duel of conclusory pleadings cautioned against by *Applegate* and its progeny. On the contrary, in its rush to judgment the lower court committed the very harm that Rule 56(e) is intended to guard against.

53. Appellant further asserts that the Court erred in determining that the disputed facts in question were not material to the outcome of the underlying case. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30 (2nd Cir. 2019). Appellee's suppositions in seeking summary judgment are but one possible scenario. Without the requisite fact finding and testimony, including discovery and the retention of expert witnesses, summary judgment was inappropriate at that juncture.

## CONCLUSION

54.   Appellant believes it has demonstrated the presumption of insolvency used by the lower Court in determining the summary judgement can be and has been rebutted by the fact of actual solvency and that fair consideration can be established.

55.   Appellant further believes it has demonstrated that the lower Court abused its discretion in striking all supporting materials, inclusion of which would have demonstrated the genuine issues of materials facts necessary to defeat the summary judgment motion.

56.   WHEREFORE, Appellant, 2 River Terrance Apartment 12J, LLC, prays this Court reverse and remand the summary judgment finding for further proceedings in the underlying Adversary Proceeding, together with such other and further relief as this Court deems appropriate.

Dated:  May 21, 2021                    By:      _s/Maryam N. Hadden_
                                                 Maryam N. Hadden, Esq.
                                                 Parlatore Law Group, LLP
                                                 One World Trade Center, Suite 8500
                                                 New York, New York   10007
                                                 Maryam.hadden@parlatorelawgroup.com
                                                 (646)846-6382

                                                 *Attorney for Appellant*

## Certificate of Compliance with Federal Rule of Bankruptcy Procedure 8015(a)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a) because:

This brief contains 9,020 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(a)(7).

2.      This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Executed on May 21, 2021.

*/s/Maryam N. Hadden*
Maryam N. Hadden, Esq.

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Opening Brief of Appellant via the CM/ECF system for the Eastern District of New York, thus sending the document to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: May 21, 2021

*/s/Maryam N. Hadden*
Maryam N. Hadden, Esq.