CASE NO. 21-01239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**In re: Orion Healthcorp, Inc.**

Debtor.

2 RIVER TERRACE APARTMENT 12J, LLC

APPELLANT

v.

HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING
TRUSTEE OF ORION HEALTHCORP, INC.

APPELLEE

On Appeal from the United States Bankruptcy Court, Eastern District of New York
Adv. Proc. No. 20-08051(AST)

## APPELLEE'S APPENDIX

PACHULSKI STANG ZIEHL & JONES LLP
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212)     561-7700
Facsimile:     (212) 561-7777

Counsel for the Appellee/Plaintiff
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc., et al.
*Appendix to Appellee's Answering Brief*

## <u>TABLE OF CONTENTS</u>

| Appx. | Description | Page #s |
|---|---|---|
| 1 | Transcript of hearing on *Motion for Summary Judgment* before the Bankruptcy Court, January 21, 2021 | 1580-1659 |
| 2 | Transcript of Notice of Ruling on *Motion for Summary Judgment Ruling Hearing* before the Bankruptcy Court, February 9, 2021 | 1660-1693 |
| 3 | Joint Statement Of Plaintiff And Defendant Of Uncontroverted Facts With Reference To Plaintiff's Motion For Summary Judgment Or In The Alternative Summary Adjudication | 1694-1712 |

Respectfully submitted,

Dated:  June 21, 2021          PACHULSKI STANG ZIEHL & JONES LLP

      */s/Jeffrey P. Nolan*
PACHULSKI STANG ZIEHL & JONES LLP
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212)     561-7700
Facsimile:     (212) 561-7777

Counsel for the Appellee/Plaintiff
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc., et al.

```
1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 18-71748

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    ORION HEALTHCORP, INC.,

7              Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 20-08042-ast

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE

12   OF ORION HEALTHCORP, INC.,

13                  Plaintiff,

14          v.

15   HOWARD M. SCHOOR,

16                  Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18   Adv. Case No. 20-08038-ast

19   - - - - - - - - - - - - - - - - - - - - - - - - - - x

20   EHRENBERG,

21                  Plaintiff,

22          v.

23   EVICORE,

24                  Defendant.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

Page 2

```
 1   Adv. Case No. 20-08049-ast

 2   - - - - - - - - - - - - - - - - - - - - - - - - - - x

 3   EHRENBERG,

 4                   Plaintiff,

 5            v.

 6   WALIA, et al.,

 7                   Defendant.

 8   - - - - - - - - - - - - - - - - - - - - - - - - - - x

 9   Adv. Case No. 20-08051-ast

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   EHRENBERG,

12                   Plaintiff,

13            v.

14   SARTISON, et al.,

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 20-08052-ast

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   EHRENBERG,

20                   Plaintiff,

21            v.

22   ABRUZZI INVESTMENTS, et al.,

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25
```

1          United States Bankruptcy Court

2          290 Federal Plaza

3          Central Islip, New York 11722

4

5          January 21, 2021

6          10:01 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON ALAN S. TRUST

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:   UNKNOWN

1    HEARING re 42 Motion for Summary Judgment Filed by Plaintiff

2    Howard M. Ehrenberg

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    PACHULSKI STANG ZIEHL & JONES LLP

4        Attorneys for the Trustee, Howard M. Ehrenberg

5        780 Third Avenue, 34th Floor

6        New York, NY 10017

7

8    BY:  JEFFREY NOLAN (TELEPHONICALLY)

9        ILAN SCHARF (TELEPHONICALLY)

10

11   PARLATORE LAW GROUP LLP

12       Attorneys for 2 River Terrace

13       One World Trade Center, Suite 8500

14       New York, New York 10007

15

16   BY:  MARYANN HADDEN (TELEPHONICALLY)

17

18   GIORDANO HALLERAN & CIESLA

19       Attorneys for Howard Schoor

20       125 Half Mile Road, PO Box 190

21       Middletown, NJ 07748

22

23   BY:  DONALD CAMPBELL (TELEPHONICALLY)

24

25

```
 1    ROSENBERG & PITTINSKY, LLP

 2         Attorneys for Board of Managers of Riverhouse Condo

 3         232 Madison Avenue, Suite 906

 4         New York, New York 10016

 5

 6    BY:  LAWRENCE PITTINSKY (TELEPHONICALLY)

 7

 8    ROSEN & ASSOCIATES P.C.

 9         Attorneys for Arvind Walia

10         747 Third Avenue

11         New York, NY 10017-2803

12

13    BY:  SANFORD ROSEN (TELEPHONICALLY)

14         PARIS GYPARAKIS (TELEPHONICALLY)

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2              CLERK:  Good morning.  I am Yvette Mills,
 3    Courtroom Deputy for Chief Judge Alan S. Trust presiding.
 4    These hearings are being recorded.  Please speak clearly.
 5              I just want everyone starting with the Debtors'
 6    attorney to just give your appearance and who you represent.
 7              MR. NOLAN:  Good morning.  Jeff Nolan from
 8    Pachulski Stang & Ziehl, along with Ilan Scharf,
 9    representing the Trustee, Howard Ehrenberg.
10              CLERK:  Donald Campbell?
11              MR. CAMPBELL:  Yes.  Donald Campbell on behalf of
12    Howard Schoor, S-C-H-O-O-R.
13              CLERK:  Could I have Joseph Orbach?
14              MR. ORBACH:  Joseph Orbach.  I'm just on a listen
15    only.  I represent Howard Ehrenberg, but not in any of the
16    adversaries proceeding today.
17              CLERK:  No problem.  Lauren Pittinsky.  Maryann
18    Hadden.
19              MS. HADDEN:  Maryann Hadden from Parlatore Law
20    Group, LLP, on behalf of 2 River Terrace.
21              MR. PITTINSKY:  Lawrence Pittinsky, Rosenberg &
22    Pittinsky, on behalf of the Board of Managers of River House
23    Condominium.
24              CLERK:  Sanford Rosen.
25              MR. ROSEN:  Good morning.  Sanford Rosen, Rosen &
```

Page 8

1    Associates PC, on behalf of Arvind Walia.

2            CLERK:  And can I have the person whose phone

3    number is 917-809-0346?

4            MR. GYPARAKIS:  Good morning.  Paris Gyparakis,

5    Rosen & Associates, counsel to Arvind Walia.

6            CLERK:  What was your name?

7            MR. GYPARAKIS:  Paris Gyparakis, G-Y-P-A-R-A-K-I-

8    S.

9            CLERK:  What was the first name?

10           MR. GYPARAKIS:  Paris, like the city, P-A-R-I-S.

11           CLERK:  And the last name?

12           MR. GYPARAKIS:  G-Y-P-A-R-A-K-I-S.

13           CLERK:  Okay, thank you.  I believe we have all

14   the parties, Judge.  Case No -- well, it's adversary

15   starting with 20-8042, Ehrenberg v. Howard Schoor.

16           MR. CAMPBELL:  Schoor.

17           THE COURT:  Take appearances, please.

18           MR. NOLAN:  Yes, Good morning, Your Honor.  Jeff

19   Nolan appearing on behalf of the Plaintiff, Howard Ehrenberg

20   in his capacity as a liquidating trustee.

21           MR. CAMPBELL:  Good morning, Your Honor.  Don

22   Campbell from the Law Firm of Giordano Halleran & Ciesla on

23   behalf of Defendant, Howard Schoor.

24           THE COURT:  All right.  As Ms. Mills did, I'm just

25   going to ask if everyone else will mute their line.  If

Page 9

1    you're not involved in this hearing, please mute your line.

2         All right, Mr. Nolan.

3         MR. NOLAN:  Yes, Your Honor.  As the Court may

4    recall, this is an adversary.  It's about $160,000 at issue,

5    it's a fraudulent conveyance case under the Bankruptcy Code,

6    as well as under the New York Debt and Creditor Law.

7         We have a case management and discovery plan in

8    place; fact discovery was to be closed as of yesterday, and

9    expert designations are at the end of the month, and we have

10   gone forward with the depositions of the plaintiff.

11        As you may recall, the plaintiff also requested

12   that the Court allow the plaintiff to file a summary

13   judgment motion.  We submitted a letter to the Court

14   approximately a month ago, and the Court directed that

15   counsel meet and confer and submit a joint statement of

16   uncontroverted facts, which the parties have done and have

17   submitted a joint statement of uncontroverted facts and it

18   should be before the Court.

19        I'll allow -- I know -- I got an email this

20   morning saying that the defendant wanted to address some

21   additional time.  I'll leave that to my colleague and

22   opposing counsel for the defendant.

23        THE COURT:  Let me ask, Mr. Nolan, before you toss

24   the baton so to speak.  The letter that was submitted and

25   requested a pre-motion conference references New York DCL

1    276.  Is it the plaintiffs' contemplation that if you move

2    forward with summary judgment, it would solely be on an

3    actual intent of fraudulent transfer claim?

4            MR. NOLAN:  No, Your Honor.  We would also be

5    under 273 of the New York Debtor and Creditor Law, so it

6    would be a fraudulent, intentionally fraudulent transfer as

7    well as a constructively fraudulent transfer, as well as the

8    Bankruptcy Code within the 548.

9            THE COURT:  All right.  And so, I know you said

10   your designations under the scheduling agreement for experts

11   are later this week or later this -- well, later this week,

12   next week.  Is it the intention of the plaintiff to submit

13   an expert opinion on solvency or insolvency on the relevant

14   dates of the transfers as part of the summary judgment

15   motion?

16           MR. NOLAN:  Well, I was hoping that the Court

17   could -- okay, the immediate answer is, Your Honor, we would

18   be filing a motion for summary judgment.  I think at this

19   point, since we're so close to the expert designation date,

20   that it would make sense to allow the expert report to be

21   exchanged and to allow just one, you know, bite at the apple

22   on summary judgment, which would incorporate all the

23   theories of liability under the Complaint.

24           THE COURT:  All right.  All right, thank you.  Mr.

25   Campbell.

1          MR. CAMPBELL:  Yes, Your Honor, good morning.

2    Donald Campbell.

3          Mr. Nolan is correct.  We have issued a subpoena

4    to Merrill Lynch Bank of America.  We received a phone call

5    yesterday from Bank of America requesting additional time to

6    respond to provide documents.  We just sent a letter to Mr.

7    Nolan this morning asking if he would consent to a two-week

8    extension of discovery solely to provide Bank of America

9    additional time to provide those documents.

10         Those documents are a request for the transfers of

11   the funds that were loaned by Mr. Schoor and directed to a

12   Merrill Lynch account, and it's our hope that we're looking

13   for information with regards to the connection, if any,

14   between the debtor entities and this Merrill Lynch account,

15   so we'd ask for that short request.

16         And Mr. Nolan hasn't had an opportunity to consent

17   or not, but we'd ask for that short extension, Your Honor.

18         THE COURT:  All right.  In terms of the

19   designations of experts which are coming up, is it the

20   defendants' intention to retain an expert on solvency?

21         MR. CAMPBELL:  Yes, Your Honor.  We have not seen

22   the plaintiffs' expert report yet, but obviously, we'd look

23   to evaluate that and retain an expert to review and analyze

24   the trustee's report on insolvency at the time of the

25   transfers.

1          THE COURT:  All right, thank you.  Mr. Nolan, let

2     me go back to you then.  If I'm going to have competing

3     expert opinions on solvency at the relevant dates of the

4     transfers, wouldn't it be less expensive and potentially no

5     more time consuming to simply try the case rather than go

6     through a potentially expensive summary judgment process?

7          I've looked at the stipulated facts.  It appears

8     to the Court that the parties have obviously attempted to

9     limit the issues that would need to be tried at the time of

10    trial.  But unless there's an agreement on solvency or

11    insolvency of the transferor entity on the date of the

12    transfers, don't I end up trying the case on solvency

13    anyway?

14         MR. NOLAN:  Well, Your Honor, the -- if it's an

15    intentionally fraudulent transfer, solvency is not an area

16    of inquiry.  And what I think the facts that we stipulated

17    to show is that there is a promissory note between Mr.

18    Schoor, who was the neighbor of Mr. Parmar, and it says it's

19    a personal loan.

20         And in discovery, we asked for any documents

21    surrounding the loan, and everything that the plaintiff

22    received back, including the testimony of the defendant, is

23    that this was a personal loan made not for business purposes

24    and which Mr. Schoor continually over a period of five years

25    asked Mr. Parmar to honor his word as a friend, as a loan

```
 1      that was made in friendship.
 2              And I think based on the fact that there's no
 3      documents tying the loan that was given, and the fact that
 4      it's undisputed that the money that was paid back was paid
 5      back with the debtors' funds, that defendant can't simply
 6      just rely on oral testimony from Mr. Schoor that says, well,
 7      he told me that somewhere along the line, he was going to
 8      use this for his business.
 9              I think the case law in New York demands that
10      there be at least some documentation, (a) showing that it's
11      a valid antecedent debt and that it's an antecedent debt of
12      the debtor.
13              And then the most compelling of all, Your Honor,
14      on the fraudulent -- on intentional fraudulent conveyance
15      is, as the Court knows, under both the New York Debt
16      Creditor Law and the Bankruptcy Code, it's the intent of the
17      transferor that's at issue, which is Mr. Parmar.
18              And the plaintiff has undisputed evidence that
19      after this personal loan was given between Mr. Parmar and
20      Mr. Schoor and after the debtor paid back the debt with the
21      debtors' monies, Mr. Parmar and Mr. Chivukula, the CFO, went
22      back and created a fake consulting agreement, a consulting
23      agreement that I gave to Mr. Schoor at his deposition, and
24      he said "I didn't sign it, I've never been a consultant to
25      the debtor, I've never given any consulting services to any
```

Page 14

1    of Mr. Parmar's companies".  And that's just per se evidence

2    of a fraudulent conveyance.

3            It was coded in the debtors' books and records as

4    professional fees, and Mr. Chivukula in an email to Mr.

5    Parmar even says, "Hey, we have to come up with some reason

6    for why we paid this loan back."

7            THE COURT:  Mr. Nolan, you're now circling back to

8    my initial question to you, which was the trustee's

9    intending to move forward for summary judgment just on the

10   DCL 276 actual intent claim or more, because I understand

11   the narrow strike argument that you're making on the motion

12   that's not in front of me yet, it's actual intent 276 when

13   we're done here.

14           MR. NOLAN:  Sure.

15           THE COURT:  And if they're asking to do is move

16   for summary judgment on that one claim, I understand that;

17   that's narrow -- you might win, you might not.  But to

18   broaden it out to include reasonably equivalent or lack of

19   reasonably equivalent value under constructive fraud claims;

20   that's a beast of a different nature.

21           So now I'm back to the first question I asked you,

22   which is, does the trustee want to file a summary judgment

23   motion while it's full summary judgment, it's only on the

24   276 issue.

25           MR. NOLAN:  Your Honor, thank you for the

1    clarification.  I think that's correct.  I think then we

2    could limit the single issue in front of the Court to be the

3    New York Debt and Creditor Law 276 cause of action.

4             THE COURT:  All right.  Mr. Campbell, you said

5    that you're waiting on some documents from Merrill Bank of

6    America, and I'll just treat those as documents that you

7    would want for response to a summary judgment -- to respond

8    to a summary judgment motion on the 276 actual intent claim.

9             Is there any other discovery that's owed or

10   outstanding that might relate to the actual intent claim?

11            MR. CAMPBELL:  At this time, Your Honor, I don't

12   believe so.  Of course, I haven't seen the Merrill Lynch

13   documents and it's possible that that could lead to

14   additional requests, but I think it's unlikely; however, I

15   don't -- I would be speculating if I know.

16            But based on Bank of America's voicemail message

17   they left me, it sounds like it may be voluminous, but I

18   just don't know, so I hope that's a sufficient answer, Your

19   Honor.

20            THE COURT:  Okay, fair enough.  So then let's

21   proceed on this basis.  Relevant to this adversary

22   proceeding and some of the others that we're going to talk

23   about this morning, the Court is satisfied a trial date in

24   early June for some of these adversary proceedings or

25   potentially others that are not in front of me today.

```
 1              It would seem that given the good work that you
 2    all have done on the stipulated facts, there's probably not
 3    much more that would be necessary for the plaintiffs'
 4    summary judgment motion and then obviously any response from
 5    the defendant.  I don't know at this point that I need a
 6    reply because in a reply, I'm not going to consider any
 7    evidence that wasn't submitted either through the
 8    stipulation or the ultimate motion.
 9              So I can set a schedule for you all that tracks
10    you toward a June 7 trial week setting, but also potentially
11    gets to resolution of the 276 issue before you all spend the
12    big money on expert witness.  Now, you may be all ready to
13    do that, you may want to revisit your timeline, but I would
14    recommend that you all discuss whether or not you really
15    want to now spend the money on the timeline you're on for
16    experts if we're going to take a rifle shot on the 276.
17              Bu the Court has set aside -- Miss Mills, what is
18    the date in March that we're now using for Orion?
19              CLERK:  I believe it's March --
20              THE COURT:  Is it March 16th?
21              CLERK:  Yes.
22              THE COURT:  March 16th?
23              CLERK:  Yeah, March 16th at 10:00.
24              THE COURT:  All right.  So what we can do is this
25    is since you all are obviously working cooperatively
```

1    together, is for you all to come up with a submission

2    schedule that would have the summary judgment argued on

3    March 16th at 10:00 a.m.

4            My admonition to you all is I'm happy for you all

5    to agree to dates and deadlines that work for you

6    respectively, but I want to make sure that everything the

7    Court's being asked to look at is last submitted by March

8    9th, so that we have a week ahead of time.

9            So that should give the plaintiff time to go ahead

10   and get the summary judgment record ready, let the defendant

11   file the response in advance of March 9th.  And again, I

12   don't know that I'm going to need a reply brief on these

13   issues, but if one of you believes it's critical to have it,

14   then just make sure that it's filed by no later than March

15   9th.

16           And again, recognizing that if summary judgment

17   were denied, you would be tilting toward a June 7 trial,

18   just recalibrate how you want to handle the expert deadlines

19   in the event -- this is capital I, capital F -- if the case

20   is resolved at summary judgment.  Fair enough?

21           MR. NOLAN:  Understood, Your Honor.

22           MR. CAMPBELL:  Yes, Your Honor.

23           THE COURT:  So then what I'll have you do is just

24   go ahead after -- go ahead and confer offline, and then just

25   submit a letter outlining the dates by which plaintiff shall

1    file, defendant shall respond.  I'll also order that once

2    it's submitted, but you know the outside date I'm looking at

3    is March 9th with an argument March 16th at 10:00 a.m.

4            For today's purposes, I'm going to adjourn the

5    pretrial conference over to the March 16 at 10:00 a.m.; that

6    gets it on that calendar.  When the plaintiff files their

7    summary judgment motions, just want to make sure that you

8    then give notice of hearing for it for March 16th at 10:00

9    a.m.

10           As far as the additional time to get the documents

11   from Merrill and Bank of America, I'll take Mr. Nolan not

12   saying not to that as assent to that extension, so that will

13   be fine, Mr. Campbell.

14           MR. CAMPBELL:  Thank you, Your Honor.

15           THE COURT:  All right.  And also, to the extent

16   that you all modify the scheduling order that was previously

17   submitted to account for our discussion this morning about

18   summary judgment and expert witnesses, just reflect that in

19   the same letter to the Court to be so ordered.

20           We'll then issue the trial scheduling order that

21   will include these dates and deadlines in it so that you're

22   on trial track for June 7th in the event that summary

23   judgment were denied as a result of the March 16 hearing.

24           All right.  Anything else we need to discuss then

25   this morning on 20-08042, other than the Court saying

1   obviously feel free to settle between now and then and take

2   it out of my hands?

3           MR. CAMPBELL:  For defendant, nothing further,

4   Your Honor.

5           MR. NOLAN:  One question from the plaintiff.  Your

6   Honor, how is it in New York?  Are you doing trials via Zoom

7   or is everything shut down?

8           THE COURT:  So as of right now, the March 16 will

9   definitely be via WebEx, and we'll issue an order setting

10  that WebEx protocol.  June 7, I don't know yet whether we'll

11  be live or Memorex, I guess is the old line, but whether

12  we'll be live or via WebEx or some combination; details to

13  follow on that.  But at the current time, I have been and

14  will continue to try cases via WebEx even while we're

15  operating under our emergency code of procedures.

16          MR. NOLAN:  Okay.  Thank you, Your Honor.

17          THE COURT:  All right, very well.  Thank you,

18  both.

19          MR. CAMPBELL:  All right, thank you.  Have a great

20  day.

21          CLERK:  Case Number 20-8049.

22          MR. NOLAN:  Jeff Nolan appearing on behalf of the

23  Plaintiff, Howard Ehrenberg.

24          MR. ROSEN:  Good morning, Your Honor.  Sanford

25  Rosen, Rosen and Associates, PC.  And I'm appearing on

 1    behalf of the Defendant.

 2                THE COURT:  All right.  Very well.

 3                MR. NOLAN:  Your Honor?

 4                THE COURT:  Mr. Nolan, on status, please go ahead.

 5                MR. NOLAN:  Yeah.  Your Honor, so we had submitted

 6    at the prior pretrial conference, Counsel and I had at least

 7    uploaded a case management and discovery plan.  It has not

 8    been executed by the Court.  In the interim, since the last

 9    scheduling conference, Counsel for the Defendants and I have

10    met and conferred and we went through some of the issues in

11    the case.

12                This is a $6-million fraudulent conveyance action.

13    And there's an issue with some of the transfers.  And

14    Defendants had indicated they had received some of the

15    transfers, and they had not received others.  The Trustee

16    has subsequently gone back and looked at some of the

17    underlying transfers that are at issue.  And I believe, Your

18    Honor, what we are going to do is either amend the complaint

19    to add more detail for the Defendant as to some of the

20    multi-million dollar transfers or, you know, provide that

21    information with specificity.

22                And once we do that, I think the parties at least

23    are working amicably enough that we can submit a case

24    management and discovery plan to the Court that'll track

25    this in a similar fashion to some of the other adversaries.

```
 1              THE COURT:  All right.  Mr. Rosen?

 2              MR. ROSEN:  No, that's accurate, Your Honor.

 3              THE COURT:  All right.  In terms of the dates and

 4    deadlines, I know that you all had from a prior conference

 5    talked about discovery ending yesterday and experts by early

 6    April.  Are you talking about other dates, different dates,

 7    at this point?

 8              MR. NOLAN:  Yes, Your Honor.

 9              THE COURT:  Okay.

10              MR. NOLAN:  We would submit a discovery plan that

11    would probably have, you know, a two-week lag to go ahead.

12    I mean we've done Rule 26 disclosures, but we've probably

13    then set forth a fact discovery period which would be, you

14    know, 90 to 120 days and then have the dates for experts

15    similar to all the other case management and discovery plans

16    that you've seen from our firm.

17              THE COURT:  All right.  So under current

18    contemplation, I'm just trying to think when would be the

19    most productive time to have you all back in.  If you're

20    talking about discovery -- fact discovery cutting off late

21    April, perhaps May, and then experts to follow on, it may

22    make more sense to simply bring you in for your next

23    pretrial conference in May when we're setting up pretrial

24    conferences for Orion.  I don't know that it's going to be

25    productive to have you all back in before then.  Do you have
```

1    a sense of that, Mr. Nolan?

2            MR. NOLAN:  Yes, Your Honor.  I think we'll have

3    the pleadings at issue in the next 30 days.  So we could

4    either -- a couple of different scenarios.  We could either

5    be back in front of the Court on March 16th, and the Court

6    could enter a case management and discovery plan based on

7    what the Court felt was appropriate where the parties were.

8    Or I think we could simply stipulate to the case management

9    and discovery plan and submit it to the Court for review and

10   approval without, you know, having to clog the courtroom and

11   see us again.

12           THE COURT:  All right.  The second sounds like it

13   may be more cost effective and efficient.  Mr. Rosen, do you

14   have a view on that?

15           MR. ROSEN:  I agree with you, Your Honor.

16           THE COURT:  All right.  So then let's do this,

17   we'll set -- let you do it by amended complaint or a

18   supplemental complaint.  You all are working cooperatively

19   together.  I'll leave it to you all to work that out.  What

20   we'll do is we'll adjourn today's pretrial conference to May

21   18th at 2 o'clock.  May 18th at 2 o'clock, anticipating that

22   well before then the Court will have entered a trial

23   scheduling order that would include the dates that the

24   parties have worked out for close of discovery and other

25   issues which you may stipulate to.

Page 23

```
 1          Obviously, if something comes up where you need us
 2    before May, you know where we are.  But in terms of a
 3    pretrial conference on keeping the case tracking toward a
 4    trial, I think May 18th will work fine.  And then once we
 5    get the amended proposed scheduling order in, then we'll
 6    issue that order and then we'll find you all a trial date
 7    consistent with the deadlines -- the dates and deadlines
 8    that you all are currently discussing.
 9          But for today's purposes, Mr. Nolan, will you
10    docket notice of adjournment of the pretrial conference to
11    May 18 at 2 o'clock?  And then we'll look for the submission
12    of the amended proposed scheduling order.
13               MR. NOLAN:  Thank you, Your Honor.
14               MR. ROSEN:  Thank you, Your Honor.
15               CLERK:  Case Number 20-8052.
16               MR. NOLAN:  Jeff Nolan appearing on behalf of the
17    Plaintiff, Howard Ehrenberg in his capacity as Liquidating
18    Trustee.
19               THE COURT:  Do we have Defendant's counsel?
20               MR. NOLAN:  I did not hear him sign on.  It's
21    Anthony Giuliani.
22               THE COURT:  Ms. Mills, do we have him on?
23               CLERK:  Let me see if someone just came on.  I
24    don't have him on, Judge.
25               THE COURT:  Okay.  All right.
```

1           CLERK:  I don't know --

2           THE COURT:  Mr. Nolan?

3           MR. NOLAN:  Yes, Your Honor.  So, Your Honor, we

4    have a case management and discovery plan in place in this

5    adversary.  Fact discovery is to be completed no later than

6    March 15th.  There's been no depositions yet, but there has

7    been written discovery exchanged.  And we're just moving

8    along in that capacity.  There's been a number of subpoenas

9    issued.  So, you know, nothing eventful to report to the

10   Court.

11          THE COURT:  All right.  And we do have a proposed

12   discovery control plan.  I don't see that the June 7 date

13   that the Court had discussed earlier would likely work for

14   the trial on this one since expert discovery would not be

15   completed until the end of May.  I don't think that gives

16   you all enough time.

17          MR. NOLAN:  Yeah.  In this one, Your Honor -- I'm

18   sorry, I didn't fill you in on the big picture.  This is a

19   fraudulent conveyance cause of action for about $250,000.

20   It's a little more complicated than some of the other

21   matters.  So I would agree with the Court there could be

22   issues, since I've issued approximately six subpoenas to

23   different entities, that could raise an issue, a factual

24   issue trying to get everything in the door before the close

25   of fact discovery.

1          So Plaintiff certainly is -- it's acceptable to

2     the Plaintiff to have this on a little later of a trajectory

3     than the Schoor matter.

4          THE COURT:  All right.  Would it make sense,

5     again, in terms of cost and efficiency, to bring this one

6     back in on May 18th?  It'll be pretty close to the end of --

7     at least the contemplated end of expert discovery, we'll

8     issue you a scheduling order that includes a trial date that

9     incorporates the dates and deadlines that you all have

10    agreed to.  That trial date will not be June or earlier.

11         I don't know that there's a reason to bring you

12    all back in before the May 18.

13         MR. NOLAN:  Yes, Your Honor.  I think that's

14    acceptable.  I mean depending upon what is, you know,

15    determined through fact discovery, this might be a similar

16    case as Schoor that might have an intentional fraudulent

17    theory.  And I mean we could all visit that in May 18th

18    after fact discovery is cut.

19         THE COURT:  All right.  Fair enough.  All right.

20    So then for today's purposes, Mr. Nolan, if you'll docket

21    notice of adjournment to May 18 at 2 o'clock, let Mr.

22    Giuliani know we missed him.  And in the event that there's

23    a need for a pre-hearing, a pre-motion conference if the

24    Plaintiff does tilt towards summary judgment on this one,

25    unless there's a reason or need to have that sooner, then

```
 1    you could also use the May 18 at 2 o'clock for that unless

 2    there's a need to have it sooner.

 3              MR. NOLAN:  Thank you, Your Honor.

 4              CLERK:  Case Number 20-8051.

 5              MR. NOLAN:  Jeff Nolan appearing on behalf of the

 6    Plaintiff, Howard Ehrenberg.

 7              MS. HADDEN:  And Maryann Hadden appearing on

 8    behalf of Defendant 2 River Terrace Apartment 12-J, LLC.

 9              MR. PITTINSKY:  Larry Pittinsky, Rosenberg &

10    Pittinsky, appearing on Riverhouse -- Board of Managers of

11    Riverhouse Condominium.

12              THE COURT:  All right.  The Court had notified the

13    parties we were going to use this morning as argument on

14    summary judgment.  Let me ask before we launch into that,

15    has there been any change on the status on the ground with

16    respect to the sale of the unit or, in the bigger picture,

17    settlement issues?

18              MR. PITTINSKY:  Your Honor, Mr. Pittinsky speaking

19    on the sale.  I don't know if you want that to go first.

20    The sale's scheduled for the 29th of this month and

21    dependent upon what Your Honor does vis-à-vis the

22    Plaintiff's motion, whether the sale will proceed or not on

23    that date.  But it was adjourned.  If Your Honor remembers

24    from the last court appearance, I made a representation to

25    speak to the Board and to work cooperatively with all
```

Page 27

1    parties.  And we did adjourn the sale.  The new date is

2    January 29th.

3              MS. HADDEN:  And, also, Your Honor, on that, same

4    issue as to the sale.  I was asked by my client --

5              THE COURT:  Please state your name again, please.

6              MS. HADDEN:  Oh, I apologize, Your Honor.

7              THE COURT:  Just state your name again.  That's

8    okay.

9              MS. HADDEN:  Maryann Hadden.  I was asked by my

10   client to file a proceeding in state court to attempt to

11   stop the sale, obviously not knowing how things will resolve

12   in front of Your Honor today in regards to the summary

13   judgment motion.  So an order to show cause and a complaint

14   were both filed in state court yesterday.  I do not have an

15   index number yet, which is the only reason why I have not

16   yet served them on Mr. Pittinsky.

17             But, Mr. Pittinsky, I will -- I'll actually email

18   you a copy before I get the index number just so that you

19   have the paperwork in advance.

20             MR. PITTINSKY:  I appreciate that courtesy, but --

21   and I'm not going to debate this before Judge Turner.  But

22   under the rules, if you're seeking a stay, you are required

23   to serve me with those papers prior to filing under the

24   local court rules.  So you have not done that.

25             MS. HADDEN:  I have not even received an index

Page 28

```
 1    number, so I will -- we'll obviously not debate this at this
 2    point, but I'll speak with you on -- if it's acceptable to
 3    you, I'll give you a call once we're off the record here and
 4    we can have a conversation later.
 5              MR. PITTINSKY:  That's fine.
 6              MS. HADDEN:  Okay, thank you.
 7              THE COURT:   Let me, and I appreciate --
 8              MS. HADDEN:  Thank you.
 9              THE COURT:  -- I appreciate you all taking that
10    dispute over there -- well, that narrow issue over there.
11    But in terms of a bigger-picture issue, obviously, if there
12    have been settlement discussions, I don't want to know who
13    asked for what and who offered what, that's not my province.
14    But have the parties discussed a protocol to monetize --
15    that's the big-dollar word they use in the Southern District
16    of New York and other courts -- monetizing the unit,
17    basically selling the unit off, paying off the -- kind of
18    the liens that are putting the time trigger on their sale
19    and then simply duking it out over who gets the rest?
20              MR. NOLAN:  Jeff Nolan --
21              THE COURT:  I assume, Mr. Nolan, that the
22    Trustee's long-term plan if he prevails on litigation is
23    he's going to sell the unit, convert it to cash, and figure
24    out what to do with the money.  So I'm wondering if you all
25    have already had that discussion now to see if you can do
```

Page 29

1    that now while the litigation sorts itself out.

2              MR. NOLAN:  Well, Your Honor, I can state to the

3    Court that I did have conversations with the Defendant to

4    try to step around some of the difficulties with the lien

5    that's against the unit and get it in a position that it

6    could certainly go in that direction.  That is accurate,

7    Your Honor, that the Trustee's perspective is that this is

8    an asset of the estate that should be monetized.

9              The Trustee certainly can hold title under the

10   trust agreement.  But the Trustee, as the Court would know,

11   is not in the business of operating condominium units,

12   residential condominium units.  And -- but we just have been

13   unable to unearth this condominium unit and was hoping that

14   the summary judgment motion might present a path to do that.

15             I think the Plaintiff is certainly in agreement

16   with what the Court is stating that -- I don't know if

17   Mr. -- if the Defendant believes that the real property is

18   unique in such a way that they would share that it's a money

19   dispute as opposed to something, you know, deeper.

20             THE COURT:  Ms. Hadden?

21             MS. HADDEN:  There's certainly at least some

22   personal property involved in the apartment that the manager

23   of my client has not had access to.  So in that sense, I

24   can, you know, certainly represent that he at least would

25   consider it to be an individual item of real property as

1        opposed to a monetizable asset.

2              And Mr. Nolan's absolutely correct.  We did, you

3        know, engage in some initial discussions about it.  I can't

4        say that we're at the point or even close to the point where

5        I would describe it as being something where we're in

6        agreement on it, not to say that that agreement isn't

7        possible in the future but we're certainly not there yet.

8              THE COURT:  All right.

9              MR. PITTINSKY:  So, Your Honor, from the

10       Condominium's point of view, if the unit gets sold by the

11       entity that's technically on the deed, we would have our

12       rights.  But I don't see the Board waiting for that event to

13       occur just in a vacuum, number one.

14             Number two, any claim by Ms. Hadden that there's

15       been access denied or not permitted, it's just factually

16       false.  We would never make a claim.  Actually, let me

17       revisit that.  If there's personal property in the apartment

18       and our judgment is not satisfied by virtue of the sale,

19       then we might seek a restraint against anything that's in

20       the apartment if it's owned by the LLC.  But that's getting

21       ahead of myself in terms of the collection on the judgment.

22             THE COURT:  From what's been told to the Court

23       thus far, if this unit were sold in an arms-length open

24       transaction and it didn't bring enough to pay off the

25       condominium lien, we'd be having a much less pleasant

Page 31

1    conversation than what we're having right now, so --

2                MS. HADDEN:  I think that's accurate, Your Honor.

3                MR. NOLAN:  Your Honor, Jeff Nolan for the

4    Plaintiff.  I think it would be a fair assumption for the

5    Court that if the Plaintiff did prevail and the conveyance

6    was set aside, that the Trustee would move to immediately,

7    in a regular sale that could maximize the value, liquidate

8    the property.  And that would not necessarily mean that, you

9    know, that the money realized couldn't be somehow, you know,

10   utilized to, A, satisfy the Condominium Association and, B,

11   before the Court's jurisdiction to do as it, you know,

12   ultimately determines should be done.

13               I mean it would be an estate asset, and it would

14   be subject to the bankruptcy court's oversight and approval

15   just like any other bankruptcy court case.

16               THE COURT:  All right.  Well, I would encourage

17   the parties to pick -- I will generously say pick up those

18   conversations where they left off.  I'm sure, as you all

19   know, that there are procedures specifically under Section

20   363(f) of the Bankruptcy Code to have the sale of interest

21   in which the estate -- property in which the estate claims

22   an interest sold free and clear of lien, claims,

23   encumbrances, have those liens attach to the proceeds, pay

24   the condominium assessment and liens off, and then fight

25   over who gets the -- what would appear at this point appear

1    to be several million dollars of proceeds.

2              That's not before me today.  But, again, I would

3    encourage the parties to pick those discussions up where

4    they may have left off.

5              So let me turn then to, Mr. Nolan, if you want to

6    then proceed on the summary judgment motion.

7              MR. NOLAN:  Yes, Your Honor.  Thank you.

8              Your Honor, we submitted a joint statement of

9    fact, uncontroverted facts, with the cooperation of Counsel

10   for the Defendant.  And, you know, we're here on a Trustee's

11   motion for summary judgment, because in the Trustee's

12   opinion, this is a textbook case of a fraudulent conveyance.

13   The underlying facts are not in dispute.  There's no dispute

14   that the transfer took place, that 5.6 million was taken out

15   of the Debtor's bank accounts by the Debtor's CEO who

16   controlled and operated a debtor entity in the healthcare

17   sector, and he took the money out not to buy something

18   related to the business of the Debtor but to buy a

19   residential condo in Manhattan.

20             There's no dispute before the Court that the title

21   to the real property was parked in an LLC which the CEO

22   incorporated only days before and which he owns, controls,

23   and says he solely manages.  There's also no dispute before

24   this Court that the CEO instructed his identity be concealed

25   with respect it purchasing and occupying the condominium

1    unit.  There's no dispute that he thereafter moved into the

2    unit solely for his own personal benefit, and he's been

3    using the condominium unit solely under his own control and

4    personal benefit, allowed others to use it for their

5    personal benefit including his family members, his

6    girlfriend, et cetera.

7             I think one thing that should give this Court some

8    confidence that the CEO manipulated and controlled this

9    debtor entity however he wanted to use it is that after he

10   moved into the property, he used the Debtor's credit cards

11   to pay for the upkeep for at least a year and a quarter that

12   he occupied the unit.  It's not a disputed fact in the

13   separate statement that about $67,000 was incurred on the

14   Debtor's credit cards to pay for the taxes, the common costs

15   associated with it.

16            There was nothing put forward in the opposition to

17   justify why an executive with the Debtor could do such --

18   take such actions.  That should give the Court another piece

19   of evidence to indicate that the Debtor was manipulated by

20   the CEO.

21            The motion sets forth, Your Honor, admissible

22   evidence that the diversion of funds was, in fact, simply a

23   cash-and-grab.  The opposition does not dispute that the

24   transaction occurred.  They simply try to justify it here in

25   2020 and the year 2021 that, hey, there's some documents

1    that could be their contention would support the basis for a

2    debt and the diversion of $5.6 million.

3            But the facts before the Court, Your Honor, it's

4    not disputed that there's no book entries that, A,

5    memorialize an antecedent debt and, B, there's no book

6    entries -- nothing in the Debtor's books and records that

7    evidence that the transfer of this real -- of the money and

8    the transfer of the real property satisfied an antecedent

9    debt.

10           So what the Court's left with is the estate which

11   is depleted of $5.6 million and with no similar exchanging

12   value given to the Debtor.  And that's the textbook

13   definition of a fraudulent conveyance, has the estate been

14   depleted without exchanging property of similar value to the

15   Debtor to the prejudice of the Debtor's unsecured creditors.

16           Our papers, the Mellon Bank case, which says

17   that's kind of the big picture that the Court looks at when

18   they look at a fraudulent conveyance.  And if anything, Your

19   Honor, the Plaintiff's contention is the opposition should

20   give the Court some confidence that what the evidence the

21   Plaintiff said occurred is in fact true.  We submitted --

22           THE COURT:  That's more -- Mr. Nolan, hang on,

23   that's more on the actual intent side because I think you're

24   now -- it sounds like you were now going into the

25   constructive fraudulent transfer side.  And let me ask you

1    on the constructive fraudulent transfer side, we do have a

2    fairly extensive affidavit from Mr. Jones, but he's not

3    presented as a solvency expert.

4            He's done a forensic analysis and is providing

5    some contemporaneous and prior -- some contemporaneous, some

6    subsequent documents.  But he does not -- possibly because

7    he wasn't retained to do this, he's not actually expressed

8    an opinion on solvency or insolvency on or before or after

9    the dates of the transfers of the payments for the condo.

10           MR. NOLAN:  That's correct, Your Honor.  We did

11   not submit a -- and we have not submitted a solvency report.

12   The motion on the constructive fraud side of the analysis is

13   basically that, number one, if the Debtor evidences to the

14   Court or the Plaintiff evidences to the Court that there was

15   no consideration for the transaction, then insolvency -- the

16   Debtor's presumed to be insolvent, as well as if the --

17   under 273(a), there's another theory that we set forth to

18   the Court which that under 273(a), the analysis is good

19   faith and fair consideration.

20           And if the Plaintiff shows to the Court it's a

21   self-interested transaction, that's a transaction where the

22   defendant is on both sides of the equation and which we have

23   shown here, it's undisputed.  I mean the opposition, Your

24   Honor, essentially tries to justify the transaction by

25   saying Mr. Parmar, the CEO of the transferor, is simply

Page 36

1    paying himself what he was entitled to as the transferee.

2            Under New York Creditor Law 273-A, that's a self-

3    interested transaction and it cannot -- it can never be made

4    in good faith.  That's a bad-faith transaction in that the

5    CEO is favoring himself over creditors of the estate.  And

6    the transaction fails under 273-A regardless of the issue of

7    solvency, irregardless.

8            THE COURT:  Well, what if Mr. Parmar were actually

9    owed $6 million at the time of the condo purchase and paid

10   himself $6 million directly?  Is that still on its face a

11   fraudulent transfer?

12           MR. NOLAN:  Yes, it is.  Because the way -- first

13   off, there's nothing in the books and records to indicate --

14   I mean there's no W-2, there's no -- there's nothing in the

15   books and records that memorializes that this is a

16   compensation, that there was compensation paid to an

17   executive.  I mean that would be in the Debtor's books and

18   records as a liability.  It would be in the Debtor's books

19   and records as an expense that could be set off against

20   income.

21           I mean there would be any number of different

22   places in the Debtor's books and records if Mr. Parmar had

23   actually take that money as income that that would appear.

24   But there's nothing in the books and records to say that.

25   So --

1          THE COURT:  No, I understand that.  But it sounded

2     as if you were arguing even if -- capital I, capital F --

3     even if Mr. Parmar was owed $6 million, buying the condo as

4     his form of compensation is on its face a fraudulent

5     transfer, whether actual or constructive, because there's an

6     absence of good faith.

7          MR. NOLAN:  Yes.  It's -- Your Honor, we would say

8     that that's an accurate statement of the law that an insider

9     payment is not in good faith regardless of whether it's paid

10    on account of an antecedent debt -- and I would instruct the

11    Court in my reply papers, I cited to the American Media v.

12    Bainbridge decision.  And American Media, the president was

13    -- of the debtor was a gentleman by the name of Ruderman.

14    He paid himself to repay loans which he said that were

15    valid.  And, in fact, in that case, you know, he submitted

16    evidence that there was a debt that was owed to him and he

17    took the money out to pay himself back.

18          And the court in that case said that the

19    requirement of good faith is not fulfilled through

20    preferential transfers of corporate funds to debtors -- to

21    directors, officers, or shareholders of a corporation.  And

22    so -- and I cited a number of other cases in New York that

23    also stand for that proposition that that type of a

24    transaction violates 273-A on its face.

25          There's some other -- there's another case, Your

Page 38

1    Honor, is the American -- let me just grab this.  It was the

2    Atlantic Shipping Corp v. Chemical Bank decision, Your

3    Honor, 818 F.2d 240 (2d Cir.1987).  And that case sets forth

4    that New York -- it's well settled in New York that the

5    general rule or the exception to the general rule that

6    repayment of an antecedent debt does not constitute fair

7    consideration when the recipient of the payment is a

8    corporate insider, i.e., an officer, director, or major

9    shareholder of the transferor corporation.

10          And that is admitted by the Defendant in the

11   opposition, Your Honor, at paragraph 32.  In one paragraph,

12   Mr. Parmar and the Defendant admit that this is a self-

13   interested transaction solely to benefit one person who is

14   the executive officer and director and majority shareholder

15   of both the transferor and the transferee.

16          So the motion, at least, Your Honor, from our

17   perspective under constructive fraud sets forth two paths

18   that would allow the Court to find that this is a

19   constructively fraudulent transfer even without addressing

20   the issue of solvency.

21          In fact, we thought, Your Honor, in submitting the

22   motion that even though we didn't have a  solvency opinion

23   that we could rely on the tax records and the Debtor's books

24   and records, Your Honor.  And I cited to a couple of cases

25   at page 22 of my motion that sets forth if a debtor has a

1   negative income for each year and is consecutively throwing

2   up negative losses like the Debtor was doing in this

3   case -- negative 12 million in 2015, negative 40 million for

4   net income in 2016, negative 20 million in 2017 -- and their

5   negative retained earnings were $133 million by the time

6   they filed the petition in bankruptcy, that that is evidence

7   of insolvency.  Negative net operating losses are evidence

8   of insolvency under the Bankruptcy Code under the In re FHI

9   decision.

10          And it at least pushed the burden over to the

11  Defendants, Your Honor, to come forth with some credible

12  admissible evidence that what the Trustee was setting forth

13  that the Debtor was just racking up losses every year was

14  not the case.  And nothing was put forth for an argument

15  that was submitted by any admissible evidence, Your Honor,

16  to give the Court some type of hesitation that the Debtor

17  was actually solvent or had some ability to pay its debts.

18          In fact, the opposition admits a separate

19  statement of fact, Your Honor, that there was a judgment

20  issued against the Defendant -- or the Debtor in 2015 for

21  about $200,000 and that debt was never paid by the Debtor.

22  It was a judgment out of the Southern District of Texas, and

23  it is outstanding as of today.

24          And there's a third path for finding a valid

25  constructive fraud against the -- under New York Debtor

1   Creditor Law, there's a third path for this Court to find or

2   grant the summary judgment if the Court finds that either at

3   the time or before the transfer there was a docketed

4   judgment against the Debtor and it was unsatisfied, then it

5   a per-se constructively fraudulent transfer.

6           THE COURT:  Mr. Nolan, jumping from that because

7   that does segue whether you intended to or not to another

8   question the Court has which is it's really -- I view it as

9   a remedies question, and I think both sides touch on it on

10  the papers, which is for whom the recovery may be set aside.

11          There seems to be an issue raised at least by the

12  Defendant that, well, even if you're right, even if the

13  Plaintiff is right on its recoveries theories, the

14  conveyance can only be set aside to satisfy the 200,000 or

15  so dollars of creditors that existed at the time of the

16  purchase.  Will you address that?

17          MR. NOLAN:  Yes, Your Honor.  I took the

18  Plaintiff's -- the Defendant's argument to mean that the

19  Trustee -- only that the party that docketed the judgment

20  would be entitled to make a claim of constructive fraud

21  under 273-A, that you actually had to be the creditor that

22  was chasing the debtor and was unpaid.

23          And I set forth in our reply, Your Honor, a number

24  of cases that specifically held that you don't need to be

25  the -- it seems to be it would be a standing issue is that

Page 41

1   you don't need to be the creditor that actually docketed the

2   judgment to say that a transfer that occurred after your

3   judgment was docketed should be set aside.

4          And the reason I would submit to the Court that

5   our interpretation is more reasonable is, number one is the

6   opposition didn't set forth any case law to guide the Court

7   that the Court should read that statute so narrowly that

8   it's restricted to the judgment creditor.  And number two

9   is, Your Honor, our reply set forth three cases, one of

10  them's in the Eastern District Bankruptcy Court New York

11  that set forth that a trustee could -- if the docketed

12  judgment exists at the time of the transfer, the trustee can

13  step into the shoes and can enforce that theory of liability

14  against the transferee and for good reason, Your Honor.

15         Those cases talk about the fact that it's the

16  purpose of 273-A is to stigmatize transfers that allow money

17  to go out of the estate when a valid judgment debtor --

18  judgment creditor exists.  It's just -- it's not something

19  under New York law that ever has been encouraged, and those

20  particular cases -- one of them which I believe is the

21  Akerman case, are all instances which the Trustee steps into

22  the shoes.  And that's nothing inconsistent with cases that

23  are in front of the Court.

24         Trustees just by virtue of the fact of a petition

25  being filed in bankruptcy are always forced to step into the

1   shoes of a creditor to use state fraudulent conveyance law.

2   I mean, the predicant --

3          THE COURT:  My question is not so much the 544(a)

4   imbued or hypothetical creditor status of the trustee.  My

5   question is really -- and the reason I posed it is more of a

6   remedies question which is, if the allegation is the

7   transfer was fraudulent as to creditors who existed at the

8   time of the transfer, is the trustee's recovery limited to

9   the amount necessary to satisfy those creditors as opposed

10  to a transfer which is fraudulent as to existing and future

11  creditors and whether or not and to what extent there's

12  evidence in this record of who those future creditors may

13  be.

14          Again, I'll try to pose the question differently.

15  Set insolvency issues aside, if the debtor that made the

16  payments at the time the debtor made the payments owed

17  $250,000 to other creditors and chose not to make those

18  payments, those creditors should be satisfied from the

19  recovery of the asset transferred.  So who is it here for

20  whom the trustee seeks recovery if it's more than just the

21  two creditors who existed or had claims or judgments at the

22  time of the condo purchase?

23          MR. NOLAN:  I am trying to identify.  I identify

24  for the Court two cases that came out of New York that

25  talked about a trustee stepping in and setting aside a

Page 43

```
 1    transfer to satisfy a judgment creditor that existed on the
 2    -- had docketed a judgment.  I don't believe either one of
 3    those cases, Your Honor, made a distinction about limiting
 4    or quantifying the amount of damages based on the judgment.
 5    I think the bigger picture on those cases, Your Honor, and I
 6    think it's borne out by the cases -- the case comments in
 7    the case law is that the court stigmatizes the transfer
 8    where legitimate creditors not only were owed money but
 9    docketed a judgment and insiders went ahead and transferred
10    money around those creditors and those -- as long as the
11    trustee can prove that those creditors were never paid, that
12    the rationale is to set off the transfer.
13              I guess the Court could be in a situation at some
14    point if the Court agree with my interpretation that you
15    could have a transfer that's more deminimus -- I mean, a
16    transfer that's larger and you could have a deminimus
17    judgment and there could be, you know, an equity issue
18    about, well, geez, if it's only $1,000 judgment and the
19    transfer is so much larger, you know, what happens to the
20    difference if you set it aside.
21              I mean, in this case, Your Honor, general
22    unsecured creditors are not anywhere in the money right now.
23    In fact, the Court knows that secured creditors are owed
24    money in this bankruptcy estate.  If the transfer is set
25    aside in this particular case for 5.6 million then there's
```

Page 44

```
 1      not going to be -- there's no issue of the creditors

 2      receiving anything significant until the secured creditors

 3      are paid.  But the amount of money that comes in from the

 4      trustee first goes to secured creditors and then unsecured

 5      creditors.

 6              So I don't think we would be forcing the Court

 7      into some twisted fact pattern that, you know, a simple

 8      $200,000 judgment that was recorded in 2015 is

 9      disproportionate to the $5.6 million transfer that's before

10      the Court.

11              THE COURT:  Right.  Well, that -- but again, if

12      I'm understanding the plaintiff's papers correctly, you all

13      are arguing that the transfer was fraudulent as to existing

14      and future creditors.  Is that right?

15              MR. NOLAN:  Correct, Your Honor.  The way the law

16      is set is it's not only if -- it leaves the -- if the

17      transfer, you know, violates the (indiscernible) that it's

18      to an indicter.  It's not made for fair consideration.  But

19      if the debtor's insolvent, it's fraudulent as to not only

20      existing creditors but future creditors.

21              THE COURT:  All right.  I do want to -- I have

22      some questions for Ms. Hadden so I'll come back to you, Mr.

23      Nolan, for rebuttal, but I do want to give Ms. Hadden a

24      chance to argue.

25              MS. HADDEN:  Certainly, Your Honor.  Maryann
```

Page 45

1   Hadden.  Your Honor, do you want to address your questions

2   first or do you want me to sort of free flow first and then

3   you can catch up to me as I got?  How would you prefer?

4           THE COURT:  It may be easier for me to start with

5   a question I have -- well, maybe a couple questions I have

6   and then I'll let you get to the flow of the argument that

7   you wanted to present it.

8           The first being, I don't have -- I don't seem to

9   have any summary judgment -- admissible summary judgment --

10  evidence from the defendant.

11          MS. HADDEN:  Part of that, Your Honor, was my time

12  frame issues.  I had some issues getting in touch with my

13  client and getting documents into the format that they

14  should have been in for the Court.  Rule 56(e) obviously

15  does provide the Court with a range of possible options in

16  that scenario, obviously including the opportunity to give

17  me an opportunity to make some of those documents -- and by

18  make, I don't mean create -- but, you know, for example, the

19  bank statements that I submitted.  I submitted them as

20  redacted as to the payees and payors because it was a public

21  document.  Obviously, I can submit the full unredacted

22  document to the Court with copy to counsel in a non-public,

23  non-ECF forum.  I believe I have a certification from Chase

24  as to those records because they were obtained as part of

25  discovery in another matter.  I may not so I need an

1   opportunity to get a discovery from Chase as to that.

2        As to the consulting agreement between FUH and

3   CHT, that being another obviously substantial exhibit from

4   the defendant's perspective, that's something where a

5   certification would presumably have to come from Mr. Parmar

6   as the manager of FUH.  And obviously --

7        THE COURT:  Those are the documents more to which

8   the Court's question goes because I don't see in the summary

9   judgment record an affidavit from Mr. Parmar saying that on

10  or about the dates of the transfers at issue I was owed 6

11  million, 5 million, 9 million, $12 million by the transfer

12  or entity and the debts that were owed to me were satisfied

13  in part, in full, through the purchase of the 2 River

14  Terrace condominium unit.

15       MS. HADDEN:  That's correct, Your Honor.

16       THE COURT:  I don't see anything along those

17  lines.

18       MS. HADDEN:  I understand.  Part of that was

19  essentially an excess of caution on my part in that Mr.

20  Parmar obviously was a defendant in a indicted criminal case

21  so my effort is always to avoid any scenario in which I am

22  requesting affidavit from him for anything that could be

23  connected to that criminal matter.  And so I incorrectly

24  relied on the burden being on the movant in a Rule 56 motion

25  in that it is up to the movant to establish that the

Page 47

```
 1    evidence is such that a reasonable jury could not return a
 2    verdict for the opponent.  But obviously I (indiscernible)
 3    Parmar.
 4           THE COURT:  No, I'm not posing it as an error in
 5    strategy of substance.  I'm just -- in looking over the
 6    summary judgment record that I have -- obviously, the Court
 7    should only consider evidence which is in the form which
 8    would be admissible at the time of trial and we do have a
 9    series of objections from the trustee to the summary
10    judgment evidence that's been submitted whether due to lack
11    of affidavit or attestation from Mr. Parmar or from anyone
12    else who may have knowledge of the relevant fact.
13           And so for 56(e) purposes, if your response as
14    well under Rule 56(e), I need more time to gather the
15    documents -- if that's one -- if it's in the response, and,
16    two, if it's a question of, I need an affidavit -- the
17    defendant would like to submit an affidavit from Mr. Parmar
18    to attest to the facts that are asserted in the response,
19    however, due to other circumstances, he's unavailable to
20    submit an affidavit at this time, for some time, for
21    whatever period of time -- I'm not going to consider as
22    evidence evidence which is not in admissible form as Rule 56
23    requires.
24           MS. HADDEN:  I understand that, Your Honor.  And,
25    yes, it's -- so I sort of have a two-part response.  As to
```

1    items such as the bank statements, I would be able to

2    provide certified copies for the Court.  It just may require

3    a, you know, brief amount of time in order to do that.

4    However, as to an affidavit from Mr. Parmar because of the

5    extenuating circumstances os the criminal case, I'm in a

6    situation where he would be willing to provide an affidavit.

7    I would have the ability to obtain an affidavit but it puts

8    him in a very awkward position in terms of his criminal case

9    and his Fifth Amendments rights.  I'm very hesitant to do

10   that.

11            THE COURT:  So then -- and I don't know.  We can

12   talk more specifically about the bank records if that's

13   something that the trustee is maintaining its objection to,

14   but in terms of the allegations that on or about such-and-

15   such a date, I, Mr. Parmar, was owed 4 million, 8 million,

16   12 million, whatever the number is, there's just no evidence

17   in the record to support that.  And the second prong of that

18   going back to something Mr. Nolan -- the trustee -- argued

19   in papers and this morning, even if that is the case or was

20   the case, there's nothing in the record indicating -- in

21   admissible or inadmissible form -- that Mr. Parmar or anyone

22   else took on the tax burden of actually receiving $6 million

23   or so in compensation back in December of 2015 and February

24   of 2016.  So is 2 River asserting that in fact Mr. Parmar or

25   his entities received $5.5 million of compensation in 2015

1    and 2016 through the purchase of the condominium?

2            MS. HADDEN:  Yes.  And I cannot answer the

3    question as to whether or not 2 River filed tax returns

4    reflecting that because I don't know the answer honestly.  I

5    should have looked at that --

6            THE COURT:  Well, the argument --

7            MS. HADDEN:  -- but I don't have (indiscernible)

8            THE COURT:  Yes.  The argument in the papers is

9    not that 2 Rivers received five-and-a-half-plus million

10   dollars of compensation.  The argument in the papers is is

11   that Mr. Parmar or First United Health or one of his other

12   entities received $5.5 million of compensation through the

13   purchase of the condominium and if that's the case,

14   presumably there exists tax filing documents -- 1099, W2s,

15   whatever they may be -- which would actually exhibit that

16   the entities who are claiming that that was their

17   compensation actually then took on the tax and associated

18   burdens of claiming that compensation for state and federal

19   tax reporting purposes.

20           MS. HADDEN:  Yes, Your Honor.  That is correct.

21   And that, again, would be --

22           THE COURT:  I don't see, for example --

23           MS. HADDEN:  -- in the category of an item -- I

24   apologize.

25           THE COURT:  No.  But I don't see, even in

1     inadmissible form, you know, here's the 1099 that was issued

2     from the transfer or entity or the other form of tax

3     documents showing that in fact it expensed it out or applied

4     it to the compensation owed.

5              MS. HADDEN:  That's correct.  And that was

6     entirely an oversight on my part.  It honestly didn't even

7     occur to me until Your Honor started speaking a moment ago

8     that that would have been another way of showing the way in

9     which the compensation was received and the fact that it was

10    acknowledged by Mr. Parmar and by his constellation of

11    entities -- using the word constellation advisedly.

12             THE COURT:  No pun intended.  But I --

13             MS. HADDEN:  Yes.  No pun intended.

14             THE COURT:  I may have misunderstood.  I thought

15    the defendant was arguing that, not only was Mr. Parmar or

16    were he and the entities associated at the time, actually

17    owed this money but for antecedent debt purposes, the

18    transfer -- the purchase of the condominium was actually

19    made to satisfy that antecedent debt because, like a

20    Broadway musical with no music, I guess it's academically,

21    theoretically interesting to argue the existence of

22    antecedent debt, but if the antecedent debt is not actually

23    satisfied by the transfer, what's the purpose of arguing

24    antecedent debt.

25             MS. HADDEN:  No.  Your Honor, did understand my

1    papers correctly.  And frankly, I should have attached tax

2    returns as documents to them.  It simply didn't occur to me

3    as being another document which I could have obtained in

4    order to support it.  That should have occurred to me and

5    simply didn't.  But the -- your understanding of my argument

6    was entirely accurate.

7            THE COURT:  That is both existed and satisfied --

8    that that's the argument.

9            MS. HADDEN:  Correct, yes

10           THE COURT:  All right.  And so if I were to

11   conclude from the record before me that I in fact have no

12   admissible evidence of either the existence of an antecedent

13   debt at the time of December 2015 or February of 2016 and I

14   have no evidence -- no admissible evidence -- of the

15   satisfaction of such a debt, how does the defendant fend off

16   summary judgment?

17           MS. HADDEN:  So summary judgment is sought by the

18   trustee under several different arguments.  Obviously,

19   there's the claim -- I believe Mr. Nolan phrased it as a

20   textbook case of fraudulent conveyance -- that there was a

21   fraudulent intent involved in this transfer.  And I do not

22   believe that the evidence before this Court, looking solely

23   at the admissible evidence, is such that a clear case of

24   fraudulent intent is made out.

25           I want to go back for just a moment to the

Page 52

1    question that Your Honor had asked about 273(a) and I

2    believe, if I caught the question correctly, it was whether,

3    you know --- the plaintiff's argument was that a CEO could

4    never pay himself or obtain compensation for himself under

5    273(a) without it being a per se fraudulent transfer.  And

6    again, if I understood that correctly, Mr. Nolan was

7    agreeing that was, you know, the logical extension of the

8    plaintiff's argument.  Taking that down -- further down the

9    logical extension path, I don't believe that that complies

10   with the statute.

11           273(a) is very specific in that it applies -- and

12   this may very well be one of the reasons why the statute was

13   repealed by the legislature -- but it applies in a very

14   specific scenario where a conveyance has been made while

15   there is a pending judgment or action and it is fraudulent

16   just as to the plaintiff in that action -- that's the plain

17   language of the statute -- fraudulent as to plaintiff in

18   that action -- without regard to the actual intent of the

19   defendant, if, after final judgment, the defendant fails to

20   satisfy the judgment.  So it's a very specific factual

21   scenario where there's a pending judgment or pending action

22   solely as to that particular plaintiff and in that

23   particular scenario, the regard of the -- there's no regard

24   given to the actual intent of the defendant.

25           However, extending the concept of 273(a) to say

1    that a CEO or other insider or corporate officer can never

2    by paid for a debt without it being a fraudulent transfer

3    extends that statute to the point where it become

4    unreasonable.  Obviously, CEOs can be paid.  Corporate

5    officers can be paid.  The real question is whether or not

6    the business or the company is made insolvent by that

7    transfer or unable to pay the debt in, you know, looking

8    specifically at 273(a), that's outstanding in the action or

9    the judgment.

10           In this particular case, we're talking about a

11   debt that -- or a judgment that was approximately $200,000,

12   looking at the two -- the combination of the two judgments

13   put together, and a $5 million conveyance.  The $5 million

14   conveyance, if you look at the bank records of the debtor,

15   did not render the debtor insolvent at that time, did not --

16   it's essentially as if -- sort of analogizing it to more

17   normal person scenarios -- if you owe a $20 co-pay to your

18   doctor and you haven't paid for that $20 co-pay -- it's

19   still outstanding -- and then you go out and buy a house.

20   The fact that you've bought a house is not what is rendering

21   you unable to pay your $20 co-pay to your doctor.  You just

22   haven't in your head put those two categories in the same --

23   haven't put those two facts in the same category.  You're

24   still able to pay the doctor, you just haven't gotten around

25   to doing it.  It's the --

Page 54

1            THE COURT:  Well, but I think that that --
2            MS. HADDEN:  -- defendant's argument that that's -
3    -
4            THE COURT:  Right.  But I think in that good
5    hypothetical, if I go out and buy a house, I'm putting the
6    house in my name so I've traded one asset for another asset.
7    The (indiscernible) here I think from the trustee's
8    standpoint is that CHT took $5.5 million and put an asset in
9    the name of another entity.
10            MS. HADDEN:  It did.
11            THE COURT:  So my doctor or my, you know, medical
12   provider can't look to me for that $20 anymore because if I
13   bought that house it's not in my name.
14            MS. HADDEN:  That's a fair point.  The defendant's
15   argument is that essentially because Parmar was the manager
16   of 2 Rivers Terrace and the sole human representative of 2
17   River Terrace that they're essentially equivalent.  And he
18   was in a similar scenario with First United Health which was
19   the entity that had the consulting agreement with CHT.
20   Unfortunately --
21            THE COURT:  Be careful how far that argument --
22   that argument may go further than you want to --
23            MS. HADDEN:  Exactly.
24            THE COURT:  -- but, okay.  Yeah.
25            MS. HADDEN:  It may very well take me for me

1    further than I need to go.

2              THE COURT:  Yeah.

3              MS. HADDEN:  I did also want to touch briefly on -

4    - and I'm, you know, sort of derailing myself for a moment

5    here -- but on the question of the tax returns as evidence

6    of solvency or insolvency.  And I believe the trustee has

7    fairly heavily relied on them as evidence of the debtor's

8    insolvency in this form that they were filed by FTI once FTI

9    came in as a consultant in eventually dealing with the

10   debtor's estate.

11             My contention as to tax returns which I may or may

12   not have managed to argue clearly enough in the motion is

13   that a tax return, again, is something that is a somewhat

14   malleable creature while still being fully admissible under

15   the income regulations and under the tax code.  Again,

16   taking sort of a real-world example, if you purchase a

17   laptop for your business, you could deduct that entire

18   expense in one tax year which reduces the income of the

19   business by a larger amount or you could amortize that

20   expense over, I think, either two or three years -- and

21   again, I'm not an accountant so don't do your taxes by what

22   I'm saying -- but if you split that item up over a two- to

23   three-year period, again, complying with the tax laws while

24   doing so, if raises the income for each of those years.

25             So you can have the same exact set of financial

1    facts leading to two very different tax returns depending on

2    how you handle amortizable expenses.  And the fact that the

3    debtors filed amended tax returns showing a loss as opposed

4    to the tax returns that were originally filed that not only

5    did not show a loss but wound up with the debtor owing taxes

6    and paying those taxes, gives two very different pictures of

7    solvency and I think that goes back to the Court's question

8    as to the fact that there was no actual opinion on solvency

9    presented.

10           So I think that the central issue before the Court

11   really is solvency and the question of solvency -- whether

12   or not in a summary judgment scenario specifically we're in

13   a situation where the evidence is such that a reasonable

14   jury could not return a verdict for the defendant.  And I

15   don't think we are in that scenario.  I think we're in a

16   scenario where there are significant questions as to

17   solvency in particular.  There are questions as to whether

18   or not there was or was not fair consideration.  There's

19   questions as to whether there was or was not an antecedent

20   debt.  There are questions as whether there was or was not

21   fraudulent intent.

22           Obviously, my answers to those questions are very

23   different from the plaintiff's answers to those questions.

24   But I think that we are in as scenario where really in order

25   to have an actual factual determination, you would need a

1    solvency opinion.  You would need expert opinions.  You

2    would need full discovery.  You'd need someone with records

3    access on both sides so that both sides could argue that

4    issue for the Court.  I don't think we're in that scenario.

5    And although we are in agreement on some of the most basic

6    facts, I don't think that the agreement on those most basic

7    facts is sufficient to bring the Court to the level where

8    you would be able to make a determination on a summary

9    judgment motion.

10            THE COURT:  All right.  Thank you, Ms. Hadden.

11   Mr. Nolan, anything you want to add?

12            MR. NOLAN:  Yes, Your Honor, just briefly.

13   Typically, when a fraudulent conveyance case comes before a

14   court, most of the time I'm arguing with my colleague over

15   whether or not what was given as consideration was

16   reasonably equivalent value.  You know, there's opinions

17   going back and forth whether or not what was exchanged for

18   what was in the ballpark of the conveyance.  Those can get

19   really fact intensive but that's not the fact pattern that's

20   in front of this Court.

21            I mean, the undisputed facts are that there's a

22   transfer in front of the Court for no consideration.  None.

23   And we've submitted to the Court the case law in New York

24   that says transactions that are performed without any signs

25   of tangible consideration are presumptively fraudulent.  I

Page 58

1    cited to the Mendelsohn versus Jacobowitz decision, 394 B.R.

2    646.  And it talks about interfamily transfers without any

3    signs of tangible consideration as being presumably

4    fraudulent, and that's what's in front of the Court right

5    now.

6            I didn't force Mr. Parmar or the defendant to make

7    the argument in the opposition that they made, that this was

8    a self-interested transaction that benefited Mr. Parmar.  I

9    just simply, in the reply brief, drew attention to the fact

10   that even if you accept Mr. Parmar or defendant's argument,

11   Your Honor, that somehow there was fair consideration

12   because there was an antecedent debt and what was

13   transferred satisfied that antecedent debt, that that

14   argument doesn't even make sense because what they've

15   submitted to the Court is, a) not admissible evidence, but

16   one of the documents says that FUH which is a separate

17   third-party corporation agreed to take stock, not to take

18   cash.  They would have at best an equity interest and they'd

19   be line behind everybody else.

20           And then the argument that there's an antecedent

21   debt in the opposition, Your Honor -- it's based on a

22   formula, a formula that the defendant doesn't even give all

23   the different variables to the Court to allow the Court to

24   decide if there is -- even is an antecedent debt owed on the

25   issue of fair consideration.

1    I certainly appreciate some the arguments from the
2    bench just now about, well, what happens if Mr. Parmar
3    submitted an affidavit saying, you know, he was owed 6
4    million or 9 million and took the property in consideration
5    for that transfer.  But I would submit to the Court that
6    we've submitted to the Court that the Ackerman versus
7    Ventimigilia case out of the Eastern District of New York.
8    It's at 362 B.R. 71.  And in the Ackerman case, Your Honor,
9    the Court says that there has to be credible admissible
10   evidence to determine that there was, a) an amount owed
11   under a loan, and b) it has to be credible evidence as to
12   the amount of that debt and that submission of an affidavit
13   or oral testimony alone can't replace a finding of a
14   legitimate antecedent debt owed.
15        And I would think that that could give some
16   guidance to the Court or at least some comfort that if the
17   Court is so inclined to find that there hasn't been
18   admissible evidence of an antecedent debt and that there
19   hasn't been admissible evidence that an antecedent debt was
20   satisfied, that it's proper at this stage.  And Your Honor,
21   we are in an -- unfortunately -- a difficult position with
22   this condominium given the confluence of factors here that
23   there is the sheriff's sale coming up and -- the opposition
24   didn't dispute that summary judgment motions, I guess, they
25   should be granted sparingly but they are proper where the

Page 60

1    facts and circumstances are ripe.

2            It saves everybody time and money.  We've got a

3    property right now where the initial judgment was 200,000.

4    Now it's $450,000 on behalf of the homeowner's association.

5    The trustee submits that there is clear evidence in front of

6    this Court that -- of both the intentional fraudulent

7    conveyance and the constructive fraudulent conveyance.  And

8    there's just not a reason to kick the can down the road any

9    further.  Thank you, Your Honor.

10           THE COURT:  All right.  Thank you.  All right.  I

11   -- Court appreciates the arguments from both sides and the

12   status update from counsel for the condominium association.

13   I am not prepared to rule today.  I want to give further

14   consideration to both the papers and what's been argued this

15   afternoon.  Having also a fairly full docket next week, I

16   cannot get to a ruling before your current sale date.  I

17   would recommend that the parties continue their discussions

18   about either a further adjournment of that sale date or the

19   protocol under where the property can be monetized while the

20   Court is considering the adversary proceeding in general and

21   the summary judgment motion in particular.  I will give you

22   all for your timing purposes -- Ms. Mills, can we use

23   February 9th at three o'clock at least as a tentative

24   ruling?

25           CLERK:  Hold one second, Judge.

1           THE COURT:  Any time.

2           CLERK:  Hold on one second.  We can use two -- can

3    we go to 2:30 because you already have pre-trials on that

4    day.

5           THE COURT:  All right.  So February 9th at 2:30.

6    Ms. Mills, if you'll docket notice of an adjournment.  This

7    is -- the intention of the Court would be to give you all a

8    ruling on this motion on February 9th at 2:30.  If for some

9    reason the Court's not in a position to rule at that time,

10   we'll notify you all in advance.  But that would a ruling

11   conference only.  That's not any further argument.  February

12   9th at 2:30.

13          MS. HADDEN:  Thank you.

14          MR. NOLAN:  (indiscernible)

15          THE COURT:  All right.  Very well --

16          MR. PITTINSKY:  Your Honor, speaking for the

17   condominium, I will consult with the board, advise them of

18   that control ruling date and then I will advise Mr. Nolan

19   and Ms. Hadden by email on what the outcome of that is.  It

20   may take me a day or two to -- both of them to get the board

21   together to get an answer on that.  And Ms. Hadden, I look

22   forward to speaking offline on the state court case that you

23   say you've commenced.  All right?

24          MS. HADDEN:  Yeah.  So I'll give you a call as

25   soon we get off here.

Page 62

1              THE COURT:  All right.  And again, this is

2    redundant to what I've already said, but if the parties are

3    amenable to a sale protocol, the Court would certainly be

4    open to establishing the procedure under which the unit is

5    monetized and the parties fight over who gets the money.

6              All right.  So then we'll be -- Ms. Mills, do we

7    have any other on the docket for this morning on the ten

8    o'clock call?

9              CLERK:  That's it, Judge.

10             THE COURT:  All right.  So then until February 9th

11   at 2:30 p.m.  Again, the Court appreciates the papers

12   submitted as well as the arguments of the parties this

13   morning.

14             MS. HADDEN:  Thank you, Your Honor.

15             MR. NOLAN:  (indiscernible), Your Honor.

16             MR. PITTINSKY:  Thank you.

17             THE COURT:  The Court will therefore be in recess

18   until one o'clock and we'll go off the record.  Good day,

19   all.

20             AUTOMATED VOICE:  We're sorry.  Your conference is

21   ending now.  Please hang up.

22             (Whereupon these proceedings were concluded at

23   11:35 AM)

24

25

Page 63

1              C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 1, 2021

| **&** |
|---|
| **&**   5:3,18 6:1,8 7:8 |
| 7:21,25 8:5,22 |
| 26:9 |

| **0** |
|---|
| **07748**   5:21 |

| **1** |
|---|
| **1**   63:25 |
| **1,000**   43:18 |
| **10007**   5:14 |
| **10016**   6:4 |
| **10017**   5:6 |
| **10017-2803**   6:11 |
| **1099**   49:14 50:1 |
| **10:01**   3:6 |
| **11501**   63:23 |
| **11722**   3:3 |
| **11:35**   62:23 |
| **12**   26:8 39:3 46:11 |
| 48:16 |
| **120**   21:14 |
| **125**   5:20 |
| **133**   39:5 |
| **15th**   24:6 |
| **16**   18:5,23 19:8 |
| **160,000**   9:4 |
| **16th**   16:20,22,23 |
| 17:3 18:3,8 22:5 |
| **18**   23:11 25:12,21 |
| 26:1 |
| **18-71748**   1:3 |
| **18th**   22:21,21 |
| 23:4 25:6,17 |
| **190**   5:20 |

| **2** |
|---|
| **2**   5:12 7:20 22:21 |
| 22:21 23:11 25:21 |
| 26:1,8 36:14 |
| 46:13 48:24 49:3 |
| 49:9 54:16,16 |
| **20**   39:4 53:17,18 |
| 53:21 54:12 |

**20-08038**   1:18
**20-08042**   1:9
18:25
**20-08049**   2:1
**20-08051**   2:9
**20-08052**   2:17
**20-8042**   8:15
**20-8049**   19:21
**20-8051**   26:4
**20-8052**   23:15
**200,000**   39:21
40:14 44:8 53:11
60:3
**2015**   39:3,20 44:8
48:23,25 51:13
**2016**   39:4 48:24
49:1 51:13
**2017**   39:4
**2020**   33:25
**2021**   3:5 33:25
63:25
**21**   3:5
**22**   38:25
**232**   6:3
**240**   38:3
**250,000**   24:19
42:17
**26**   21:12
**273**   10:5 35:17,18
36:2,6 37:24
40:21 41:16 52:1
52:5,11,25 53:8
**276**   10:1 14:10,12
14:24 15:3,8
16:11,16
**290**   3:2
**29th**   26:20 27:2
**2:30**   61:3,5,8,12
62:11
**2d**   38:3

| **3** |
|---|
| **30**   22:3 |
| **300**   63:22 |
| **32**   38:11 |
| **330**   63:21 |
| **34th**   5:5 |
| **362**   59:8 |
| **363**   31:20 |
| **394**   58:1 |

| **4** |
|---|
| **4**   48:15 |
| **40**   39:3 |
| **42**   4:1 |
| **450,000**   60:4 |

| **5** |
|---|
| **5**   46:11 53:13,13 |
| **5.5**   48:25 49:12 |
| 54:8 |
| **5.6**   32:14 34:2,11 |
| 43:25 44:9 |
| **544**   42:3 |
| **548**   10:8 |
| **56**   45:14 46:24 |
| 47:13,14,22 |

| **6** |
|---|
| **6**   20:12 36:9,10 |
| 37:3 46:10 48:22 |
| 59:3 |
| **646**   58:2 |
| **67,000**   33:13 |

| **7** |
|---|
| **7**   16:10 17:17 |
| 19:10 24:12 |
| **71**   59:8 |
| **747**   6:10 |
| **780**   5:5 |
| **7th**   18:22 |

| **8** |
|---|
| **8**   48:15 |
| **818**   38:3 |

**8500**   5:13

| **9** |
|---|
| **9**   46:11 59:4 |
| **90**   21:14 |
| **906**   6:3 |
| **917-809-0346**   8:3 |
| **9th**   17:8,11,15 |
| 18:3 60:23 61:5,8 |
| 61:12 62:10 |

| **a** |
|---|
| **a.m.**   17:3 18:3,5,9 |
| **ability**   39:17 48:7 |
| **able**   48:1 53:24 |
| 57:8 |
| **abruzzi**   2:22 |
| **absence**   37:6 |
| **absolutely**   30:2 |
| **academically** |
| 50:20 |
| **accept**   58:10 |
| **acceptable**   25:1 |
| 25:14 28:2 |
| **access**   29:23 |
| 30:15 57:3 |
| **account**   11:12,14 |
| 18:17 37:10 |
| **accountant**   55:21 |
| **accounts**   32:15 |
| **accurate**   21:2 |
| 29:6 31:2 37:8 |
| 51:6 63:4 |
| **ackerman**   59:6,8 |
| **acknowledged** |
| 50:10 |
| **action**   15:3 20:12 |
| 24:19 52:15,16,18 |
| 52:21 53:8 |
| **actions**   33:18 |
| **actual**   10:3 14:10 |
| 14:12 15:8,10 |
| 34:23 37:5 52:18 |
| 52:24 56:8,25 |

**[add - attest]** Page 2

add 20:19 57:11
additional 9:21
11:5,9 15:14
18:10
address 9:20
40:16 45:1
addressing 38:19
adjourn 18:4
22:20 27:1
adjourned 26:23
adjournment
23:10 25:21 60:18
61:6
admissible 33:21
39:12,15 45:9
47:8,22 48:21
51:12,14,23 55:14
58:15 59:9,18,19
admit 38:12
admits 39:18
admitted 38:10
admonition 17:4
adv 1:9,18 2:1,9
2:17
advance 17:11
27:19 61:10
adversaries 7:16
20:25
adversary 8:14
9:4 15:21,24 24:5
60:20
advise 61:17,18
advisedly 50:11
affidavit 35:2
46:9,22 47:11,16
47:17,20 48:4,6,7
59:3,12
afternoon 60:15
ago 9:14 50:7
agree 17:5 22:15
24:21 43:14
agreed 25:10
58:17

agreeing 52:7
agreement 10:10
12:10 13:22,23
29:10,15 30:6,6
46:2 54:19 57:5,6
ahead 17:8,9,24
17:24 20:4 21:11
30:21 43:9
akerman 41:21
al 2:6,14,22
alan 3:22 7:3
allegation 42:6
allegations 48:14
allow 9:12,19
10:20,21 38:18
41:16 58:23
allowed 33:4
amenable 62:3
amend 20:18
amended 22:17
23:5,12 56:3
amendments 48:9
america 11:4,5,8
15:6 18:11
america's 15:16
american 37:11
37:12 38:1
amicably 20:23
amortizable 56:2
amortize 55:19
amount 42:9 43:4
44:3 48:3 55:19
59:10,12
analogizing 53:16
analysis 35:4,12
35:18
analyze 11:23
answer 10:17
15:18 49:2,4
61:21
answers 56:22,23
antecedent 13:11
13:11 34:5,8

37:10 38:6 50:17
50:19,22,22,24
51:12 56:19 58:12
58:13,20,24 59:14
59:18,19
anthony 23:21
anticipating
22:21
anymore 54:12
anyway 12:13
apartment 26:8
29:22 30:17,20
apologize 27:6
49:24
appear 31:25,25
36:23
appearance 7:6
26:24
appearances 8:17
appearing 8:19
19:22,25 23:16
26:5,7,10
appears 12:7
apple 10:21
applied 50:3
applies 52:11,13
appreciate 27:20
28:7,9 59:1
appreciates 60:11
62:11
appropriate 22:7
approval 22:10
31:14
approximately
9:14 24:22 53:11
april 21:6,21
area 12:15
argue 44:24 50:21
55:12 57:3
argued 17:2 48:18
60:14
arguing 37:2
44:13 50:15,23

57:14
argument 14:11
18:3 26:13 39:14
40:18 45:6 49:6,8
49:10 51:5,8 52:3
52:8 54:2,15,21
54:22 58:7,10,14
58:20 61:11
arguments 51:18
59:1 60:11 62:12
arms 30:23
arvind 6:9 8:1,5
aside 16:17 31:6
40:10,14 41:3
42:15,25 43:20,25
asked 12:20,25
14:21 17:7 27:4,9
28:13 52:1
asking 11:7 14:15
assent 18:12
asserted 47:18
asserting 48:24
assessment 31:24
asset 29:8 30:1
31:13 42:19 54:6
54:6,8
associated 33:15
49:17 50:16
associates 6:8 8:1
8:5 19:25
association 31:10
60:4,12
assume 28:21
assumption 31:4
ast 1:9,18 2:1,9,17
atlantic 38:2
attach 31:23
attached 51:1
attempt 27:10
attempted 12:8
attention 58:9
attest 47:18

attestation 47:11
attorney 7:6
attorneys 5:4,12
  5:19 6:2,9
automated 62:20
avenue 5:5 6:3,10
avoid 46:21
awkward 48:8

**b**

b 3:21 31:10 34:5
  59:11
b.r. 58:1 59:8
back 12:2,22 13:4
  13:5,20,22 14:6,7
  14:21 20:16 21:19
  21:25 22:5 25:6
  25:12 37:17 44:22
  48:18,23 51:25
  56:7 57:17
bad 36:4
bainbridge 37:12
ballpark 57:18
bank 11:4,5,8
  15:5,16 18:11
  32:15 34:16 38:2
  45:19 48:1,12
  53:14
bankruptcy 1:1
  3:1,23 9:5 10:8
  13:16 31:14,15,20
  39:6,8 41:10,25
  43:24
based 13:2 15:16
  22:6 43:4 58:21
basic 57:5,6
basically 28:17
  35:13
basis 15:21 34:1
baton 9:24
beast 14:20
behalf 7:11,20,22
  8:1,19,23 19:22
  20:1 23:16 26:5,8

60:4
believe 8:13 15:12
  16:19 20:17 41:20
  43:2 45:23 51:19
  51:22 52:2,9 55:6
believes 17:13
  29:17
bench 59:2
benefit 33:2,4,5
  38:13
benefited 58:8
best 58:18
big 16:12 24:18
  28:15 34:17
bigger 26:16
  28:11 43:5
bite 10:21
board 6:2 7:22
  26:10,25 30:12
  61:17,20
book 34:4,5
books 14:3 34:6
  36:13,15,17,18,22
  36:24 38:23
borne 43:6
bought 53:20
  54:13
box 5:20
brief 17:12 48:3
  58:9
briefly 55:3 57:12
bring 21:22 25:5
  25:11 30:24 57:7
broaden 14:18
broadway 50:20
bu 16:17
burden 39:10
  46:24 48:22
burdens 49:18
business 12:23
  13:8 29:11 32:18
  53:6 55:17,19

buy 32:17,18
  53:19 54:5
buying 37:3

**c**

c 5:1 7:1,12 63:1,1
calendar 18:6
call 11:4 28:3
  61:24 62:8
campbell 5:23
  7:10,11,11 8:16
  8:21,22 10:25
  11:1,2,21 15:4,11
  17:22 18:13,14
  19:3,19
capacity 1:11 8:20
  23:17 24:8
capital 17:19,19
  37:2,2
cards 33:10,14
careful 54:21
case 1:3,9,18 2:1,9
  2:17 8:14 9:5,7
  12:5,12 13:9
  17:19 19:21 20:7
  20:11,23 21:15
  22:6,8 23:3,15
  24:4 25:16 26:4
  31:15 32:12 34:16
  37:15,18,25 38:3
  39:3,14 41:6,21
  43:6,7,21,25
  46:20 48:5,8,19
  48:20 49:13 51:20
  51:23 53:10 57:13
  57:23 59:7,8
  61:22
cases 19:14 37:22
  38:24 40:24 41:9
  41:15,20,22 42:24
  43:3,5,6
cash 28:23 33:23
  58:18

catch 45:3
categories 53:22
category 49:23
  53:23
caught 52:2
cause 15:3 24:19
  27:13
caution 46:19
center 5:13
central 3:3 56:10
ceo 32:15,21,24
  33:8,20 35:25
  36:5 52:3 53:1
ceos 53:4
certainly 25:1
  29:6,9,15,21,24
  30:7 44:25 59:1
  62:3
certification
  45:23 46:5
certified 48:2 63:3
cetera 33:6
cfo 13:21
chance 44:24
change 26:15
chase 45:23 46:1
chasing 40:22
chemical 38:2
chief 7:3
chivukula 13:21
  14:4
chose 42:17
cht 46:3 54:8,19
ciesla 5:18 8:22
cir.1987 38:3
circling 14:7
circumstances
  47:19 48:5 60:1
cited 37:11,22
  38:24 58:1
city 8:10
claim 10:3 14:10
  14:16 15:8,10

30:14,16 40:20
51:19
**claiming** 49:16,18
**claims** 14:19
31:21,22 42:21
**clarification** 15:1
**clear** 31:22 51:23
60:5
**clearly** 7:4 55:12
**clerk** 7:2,10,13,17
7:24 8:2,6,9,11,13
16:19,21,23 19:21
23:15,23 24:1
26:4 60:25 61:2
62:9
**client** 27:4,10
29:23 45:13
**clog** 22:10
**close** 10:19 22:24
24:24 25:6 30:4
**closed** 9:8
**code** 9:5 10:8
13:16 19:15 31:20
39:8 55:15
**coded** 14:3
**colleague** 9:21
57:14
**collection** 30:21
**combination**
19:12 53:12
**come** 14:5 17:1
39:11 44:22 46:5
**comes** 23:1 44:3
57:13
**comfort** 59:16
**coming** 11:19
59:23
**commenced** 61:23
**comments** 43:6
**common** 33:14
**companies** 14:1
**company** 53:6

**compelling** 13:13
**compensation**
36:16,16 37:4
48:23,25 49:10,12
49:17,18 50:4,9
52:4
**competing** 12:2
**complaint** 10:23
20:18 22:17,18
27:13
**completed** 24:5
24:15
**complicated**
24:20
**complies** 52:9
**complying** 55:23
**concealed** 32:24
**concept** 52:25
**conclude** 51:11
**concluded** 62:22
**condo** 6:2 32:19
35:9 36:9 37:3
42:22
**condominium**
7:23 26:11 29:11
29:12,13 30:25
31:10,24 32:25
33:3 46:14 49:1
49:13 50:18 59:22
60:12 61:17
**condominium's**
30:10
**confer** 9:15 17:24
**conference** 9:25
18:5 20:6,9 21:4
21:23 22:20 23:3
23:10 25:23 61:11
62:20
**conferences** 21:24
**conferred** 20:10
**confidence** 33:8
34:20

**confluence** 59:22
**connected** 46:23
**connection** 11:13
**consecutively**
39:1
**consent** 11:7,16
**consider** 16:6
29:25 47:7,21
**consideration**
35:15,19 38:7
44:18 56:18 57:15
57:22,25 58:3,11
58:25 59:4 60:14
**considering** 60:20
**consistent** 23:7
**constellation**
50:10,11
**constitute** 38:6
**constructive**
14:19 34:25 35:1
35:12 37:5 38:17
39:25 40:20 60:7
**constructively**
10:7 38:19 40:5
**consult** 61:17
**consultant** 13:24
55:9
**consulting** 13:22
13:22,25 46:2
54:19
**consuming** 12:5
**contemplated**
25:7
**contemplation**
10:1 21:18
**contemporaneous**
35:5,5
**contention** 34:1
34:19 55:11
**continually** 12:24
**continue** 19:14
60:17

**control** 24:12 33:3
61:18
**controlled** 32:16
33:8
**controls** 32:22
**conversation** 28:4
31:1
**conversations**
29:3 31:18
**convert** 28:23
**conveyance** 9:5
13:14 14:2 20:12
24:19 31:5 32:12
34:13,18 40:14
42:1 51:20 52:14
53:13,14 57:13,18
60:7,7
**cooperation** 32:9
**cooperatively**
16:25 22:18 26:25
**copies** 48:2
**copy** 27:18 45:22
**corp** 38:2
**corporate** 37:20
38:8 53:1,4
**corporation** 37:21
38:9 58:17
**correct** 11:3 15:1
30:2 35:10 44:15
46:15 49:20 50:5
51:9
**correctly** 44:12
51:1 52:2,6
**cost** 22:13 25:5
**costs** 33:14
**counsel** 8:5 9:15
9:22 20:6,9 23:19
32:9 45:22 60:12
**country** 63:21
**couple** 22:4 38:24
45:5
**course** 15:12

**court** 1:1 3:1 8:17
8:24 9:3,12,13,14
9:18,23 10:9,16
10:24 11:18 12:1
12:8 13:15 14:7
14:15 15:2,4,20
15:23 16:17,20,22
16:24 17:23 18:15
18:19,25 19:8,17
20:2,4,8,24 21:1,3
21:9,17 22:5,5,7,9
22:12,16,22 23:19
23:22,25 24:2,10
24:11,13,21 25:4
25:19 26:12,12,24
27:5,7,10,14,24
28:7,9,21 29:3,10
29:16,20 30:8,22
30:22 31:5,15,16
32:20,24 33:7,18
34:3,17,20,22
35:14,14,18,20
36:8 37:1,11,18
38:18 39:16 40:1
40:2,6,8 41:4,6,7
41:10,23 42:3,24
43:7,13,14,23
44:6,10,11,21
45:4,14,15,22
46:7,16 47:4,6
48:2,11 49:6,8,22
49:25 50:12,14
51:7,10,22 54:1,4
54:11,21,24 55:2
56:10 57:4,7,10
57:14,20,22,23
58:4,15,23,23
59:5,6,9,16,17
60:6,10,11,20
61:1,5,7,15,22
62:1,3,10,11,17
62:17

**court's** 17:7 31:11
31:14 34:10 46:8
56:7 61:9
**courtesy** 27:20
**courtroom** 7:3
22:10
**courts** 28:16
**create** 45:18
**created** 13:22
**creature** 55:14
**credible** 39:11
59:9,11
**credit** 33:10,14
**creditor** 9:6 10:5
13:16 15:3 36:2
40:1,21 41:1,8,18
42:1,4 43:1
**creditors** 34:15
36:5 40:15 42:7,9
42:11,12,17,18,21
43:8,10,11,22,23
44:1,2,4,5,14,20
44:20
**criminal** 46:20,23
48:5,8
**critical** 17:13
**current** 19:13
21:17 60:16
**currently** 23:8
**cut** 25:18
**cutting** 21:20

**d**

**d** 7:1
**damages** 43:4
**date** 10:19 12:11
15:23 16:18 18:2
23:6 24:12 25:8
25:10 26:23 27:1
48:15 60:16,18
61:18 63:25
**dates** 10:14 12:3
17:5,25 18:21
21:3,6,6,14 22:23

23:7 25:9 35:9
46:10
**day** 19:20 61:4,20
62:18
**days** 21:14 22:3
32:22
**dcl** 9:25 14:10
**deadlines** 17:5,18
18:21 21:4 23:7,7
25:9
**dealing** 55:9
**debate** 27:21 28:1
**debt** 9:6 13:11,11
13:15,20 15:3
34:2,5,9 37:10,16
38:6 39:21 50:17
50:19,22,22,24
51:13,15 53:2,7
53:11 56:20 58:12
58:13,21,24 59:12
59:14,18,19
**debtor** 1:7 10:5
11:14 13:12,20,25
32:16,18 33:9,17
33:19 34:12,15
35:13 37:13 38:25
39:2,13,16,20,21
39:25 40:4,22
41:17 42:15,16
53:14,15 56:5
**debtor's** 32:15,15
33:10,14 34:6,15
35:16 36:17,18,22
38:23 44:19 55:7
55:10
**debtors** 7:5 13:5
13:21 14:3 37:20
56:3
**debts** 39:17 46:12
**december** 48:23
51:13
**decide** 58:24

**decision** 37:12
38:2 39:9 58:1
**deduct** 55:17
**deed** 30:11
**deeper** 29:19
**defendant** 1:24
2:7,15,23 8:23
9:20,22 12:22
13:5 16:5 17:10
18:1 19:3 20:1,19
26:8 29:3,17
32:10 35:22 38:10
38:12 39:20 40:12
45:10 46:20 47:17
50:15 51:15 52:19
52:19,24 56:14
58:6,22
**defendant's** 23:19
40:18 46:4 54:2
54:14 58:10
**defendants** 1:16
11:20 20:9,14
39:11
**definitely** 19:9
**definition** 34:13
**demands** 13:9
**deminimus** 43:15
43:16
**denied** 17:17
18:23 30:15
**dependent** 26:21
**depending** 25:14
56:1
**depleted** 34:11,14
**deposition** 13:23
**depositions** 9:10
24:6
**deputy** 7:3
**derailing** 55:4
**describe** 30:5
**designation** 10:19
**designations** 9:9
10:10 11:19

**detail** 20:19
**details** 19:12
**determination** 56:25 57:8
**determine** 59:10
**determined** 25:15
**determines** 31:12
**difference** 43:20
**different** 14:20 21:6 22:4 24:23 36:21 51:18 56:1 56:6,23 58:23
**differently** 42:14
**difficult** 59:21
**difficulties** 29:4
**directed** 9:14 11:11
**direction** 29:6
**directly** 36:10
**director** 38:8,14
**directors** 37:21
**disclosures** 21:12
**discovery** 9:7,8 11:8 12:20 15:9 20:7,24 21:5,10 21:13,15,20,20 22:6,9,24 24:4,5,7 24:12,14,25 25:7 25:15,18 45:25 46:1 57:2
**discuss** 16:14 18:24
**discussed** 24:13 28:14
**discussing** 23:8
**discussion** 18:17 28:25
**discussions** 28:12 30:3 32:3 60:17
**disproportionate** 44:9
**dispute** 28:10 29:19 32:13,13,20

32:23 33:1,23 59:24
**disputed** 33:12 34:4
**distinction** 43:3
**district** 1:2 28:15 39:22 41:10 59:7
**diversion** 33:22 34:2
**docket** 23:10 25:20 60:15 61:6 62:7
**docketed** 40:3,19 41:1,3,11 43:2,9
**doctor** 53:18,21 53:24 54:11
**document** 45:21 45:22 51:3
**documentation** 13:10
**documents** 11:6,9 11:10 12:20 13:3 15:5,6,13 18:10 33:25 35:6 45:13 45:17 46:7 47:15 49:14 50:3 51:2 58:16
**doing** 19:6 39:2 53:25 55:24
**dollar** 20:20 28:15
**dollars** 32:1 40:15 49:10
**don** 8:21
**donald** 5:23 7:10 7:11 11:2
**door** 24:24
**drew** 58:9
**due** 47:10,19
**duking** 28:19

**e**

**e** 3:21,21 5:1,1 7:1 7:1 45:14 47:13 47:14 63:1

**earlier** 24:13 25:10
**early** 15:24 21:5
**earnings** 39:5
**easier** 45:4
**eastern** 1:2 41:10 59:7
**ecf** 45:23
**ecro** 3:25
**effective** 22:13
**efficiency** 25:5
**efficient** 22:13
**effort** 46:21
**ehrenberg** 1:11 1:20 2:3,11,19 4:2 5:4 7:9,15 8:15,19 19:23 23:17 26:6
**either** 16:7 20:18 22:4,4 40:2 43:2 51:12 55:20 60:18
**email** 9:19 14:4 27:17 61:19
**emergency** 19:15
**encourage** 31:16 32:3
**encouraged** 41:19
**encumbrances** 31:23
**enforce** 41:13
**engage** 30:3
**enter** 22:6
**entered** 22:22
**entire** 55:17
**entirely** 50:6 51:6
**entities** 11:14 24:23 48:25 49:12 49:16 50:11,16
**entitled** 36:1 40:20
**entity** 12:11 30:11 32:16 33:9 46:12 50:2 54:9,19

**entries** 34:4,6
**equation** 35:22
**equity** 43:17 58:18
**equivalent** 14:18 14:19 54:17 57:16
**error** 47:4
**essentially** 35:24 46:19 53:16 54:15 54:17
**establish** 46:25
**establishing** 62:4
**estate** 29:8 31:13 31:21,21 34:10,13 36:5 41:17 43:24 55:10
**et** 2:6,14,22 33:6
**evaluate** 11:23
**event** 17:19 18:22 25:22 30:12
**eventful** 24:9
**eventually** 55:9
**everybody** 58:19 60:2
**evicore** 1:23
**evidence** 13:18 14:1 16:7 33:19 33:22 34:7,20 37:16 39:6,7,12 39:15 42:12 45:10 47:1,7,10,22,22 48:16 51:12,14,14 51:22,23 55:5,7 56:13 58:15 59:10 59:11,18,19 60:5
**evidences** 35:13 35:14
**exact** 55:25
**exactly** 54:23
**example** 45:18 49:22 55:16
**exception** 38:5

excess 46:19
exchanged 10:21
  24:7 57:17
exchanging 34:11
  34:14
executed 20:8
executive 33:17
  36:17 38:14
exhibit 46:3 49:15
existed 40:15 42:7
  42:21 43:1 51:7
existence 50:21
  51:12
existing 42:10
  44:13,20
exists 41:12,18
  49:14
expense 36:19
  55:18,20
expensed 50:3
expenses 56:2
expensive 12:4,6
expert 9:9 10:13
  10:19,20 11:20,22
  11:23 12:3 16:12
  17:18 18:18 24:14
  25:7 35:3 57:1
experts 10:10
  11:19 16:16 21:5
  21:14,21
expressed 35:7
extending 52:25
extends 53:3
extension 11:8,17
  18:12 52:7,9
extensive 35:2
extent 18:15
  42:11
extenuating 48:5

**f**

f 3:21 17:19 31:20
  37:2 63:1

f.2d 38:3
face 36:10 37:4,24
fact 9:8 13:2,3
  21:13,20 24:5,25
  25:15,18 32:9
  33:12,22 34:21
  37:15 38:21 39:18
  39:19 41:15,24
  43:23 44:7 47:12
  48:24 50:3,9
  51:11 53:20 56:2
  56:8 57:19,19
  58:9
factors 59:22
facts 9:16,17 12:7
  12:16 16:2 32:9
  32:13 34:3 47:18
  53:23 56:1 57:6,7
  57:21 60:1
factual 24:23
  52:20 56:25
factually 30:15
fails 36:6 52:19
fair 15:20 17:20
  25:19 31:4 35:19
  38:6 44:18 54:14
  56:18 58:11,25
fairly 35:2 55:7
  60:15
faith 35:19 36:4,4
  37:6,9,19
fake 13:22
false 30:16
family 33:5
far 18:10 30:23
  54:21
fashion 20:25
favoring 36:5
february 48:23
  51:13 60:23 61:5
  61:8,11 62:10
federal 3:2 49:18

feel 19:1
fees 14:4
felt 22:7
fend 51:15
fhi 39:8
fifth 48:9
fight 31:24 62:5
figure 28:23
file 9:12 14:22
  17:11 18:1 27:10
filed 4:1 17:14
  27:14 39:6 41:25
  49:3 55:8 56:3,4
files 18:6
filing 10:18 27:23
  49:14
fill 24:18
final 52:19
financial 55:25
find 23:6 38:18
  40:1 59:17
finding 39:24
  59:13
finds 40:2
fine 18:13 23:4
  28:5
firm 8:22 21:16
first 8:9 14:21
  26:19 36:12 44:4
  45:2,2,8 49:11
  54:18
five 12:24 49:9
floor 5:5
flow 45:2,6
follow 19:13
  21:21
force 58:6
forced 41:25
forcing 44:6
foregoing 63:3
forensic 35:4
form 37:4 47:7,22
  48:21 50:1,2 55:8

format 45:13
formula 58:22,22
forth 21:13 33:21
  35:17 38:3,17,25
  39:11,12,14 40:23
  41:6,9,11 57:17
forum 45:23
forward 9:10 10:2
  14:9 33:16 61:22
frame 45:12
frankly 51:1
fraud 14:19 35:12
  38:17 39:25 40:20
fraudulent 9:5
  10:3,6,6,7 12:15
  13:14,14 14:2
  20:12 24:19 25:16
  32:12 34:13,18,25
  35:1 36:11 37:4
  38:19 40:5 42:1,7
  42:10 44:13,19
  51:20,21,24 52:5
  52:15,17 53:2
  56:21 57:13,25
  58:4 60:6,7
free 19:1 31:22
  45:2
friend 12:25
friendship 13:1
front 14:12 15:2
  15:25 22:5 27:12
  41:23 57:20,22
  58:4 60:5
fti 55:8,8
fuh 46:2,6 58:16
fulfilled 37:19
full 14:23 45:21
  46:13 57:2 60:15
fully 55:14
funds 11:11 13:5
  33:22 37:20
further 19:3 52:8
  54:22 55:1 60:9

60:13,18 61:11
**future**   30:7 42:10
   42:12 44:14,20

**g**

**g**   7:1 8:7,12
**gather**   47:14
**geez**   43:18
**general**   38:5,5
   43:21 60:20
**generously**   31:17
**gentleman**   37:13
**getting**   30:20
   45:12,13
**giordano**   5:18
   8:22
**girlfriend**   33:6
**giuliani**   23:21
   25:22
**give**   7:6 17:9 18:8
   28:3 33:7,18
   34:20 39:16 44:23
   45:16 58:22 59:15
   60:13,21 61:7,24
**given**   13:3,19,25
   16:1 34:12 52:24
   57:15 59:22
**gives**   24:15 56:6
**go**   12:2,5 17:9,24
   17:24 20:4 21:11
   26:19 29:6 41:17
   51:25 53:19 54:5
   54:22 55:1 61:3
   62:18
**goes**   44:4 46:8
   56:7
**going**   8:25 12:2
   13:7 15:22 16:6
   16:16 17:12 18:4
   20:18 21:24 26:13
   27:21 28:23 34:24
   44:1 47:21 48:18
   57:17

**good**   7:2,7,25 8:4
   8:18,21 11:1 16:1
   19:24 35:18 36:4
   37:6,9,19 41:14
   54:4 62:18
**gotten**   53:24
**grab**   33:23 38:1
**grant**   40:2
**granted**   59:25
**great**   19:19
**ground**   26:15
**group**   5:11 7:20
**guess**   19:11 43:13
   50:20 59:24
**guidance**   59:16
**guide**   41:6
**gyparakis**   6:14
   8:4,4,7,7,10,12

**h**

**h**   7:12
**hadden**   5:16 7:18
   7:19,19 26:7,7
   27:3,6,9,9,25 28:6
   28:8 29:20,21
   30:14 31:2 44:22
   44:23,25 45:1,11
   46:15,18 47:24
   49:2,7,20,23 50:5
   50:13,25 51:9,17
   54:2,10,14,23,25
   55:3 57:10 61:13
   61:19,21,24 62:14
**half**   5:20 49:9
**halleran**   5:18 8:22
**handle**   17:18 56:2
**hands**   19:2
**hang**   34:22 62:21
**happens**   43:19
   59:2
**happy**   17:4
**head**   53:22
**health**   49:11
   54:18

**healthcare**   32:16
**healthcorp**   1:6,12
**hear**   23:20
**hearing**   4:1 9:1
   18:8,23 25:23
**hearings**   7:4
**heavily**   55:7
**held**   40:24
**hesitant**   48:9
**hesitation**   39:16
**hey**   14:5 33:25
**hold**   29:9 60:25
   61:2
**homeowner's**
   60:4
**hon**   3:22
**honestly**   49:4 50:6
**honor**   8:18,21 9:3
   10:4,17 11:1,17
   11:21 12:14,25
   13:13 14:25 15:11
   15:19 17:21,22
   18:14 19:4,6,16
   19:24 20:3,5,18
   21:2,8 22:2,15
   23:13,14 24:3,3
   24:17 25:13 26:3
   26:18,21,23 27:3
   27:6,12 29:2,7
   30:9 31:2,3 32:7,8
   33:21 34:3,19
   35:10,24 37:7
   38:1,3,11,16,21
   38:24 39:11,15,19
   40:17,23 41:9,14
   43:3,5,21 44:15
   44:25 45:1,11
   46:15 47:24 49:20
   50:7,25 52:1
   57:12 58:11,21
   59:8,20 60:9
   61:16 62:14,15

**hope**   11:12 15:18
**hoping**   10:16
   29:13
**house**   7:22 53:19
   53:20 54:5,6,13
**howard**   1:11,15
   4:2 5:4,19 7:9,12
   7:15 8:15,19,23
   19:23 23:17 26:6
**human**   54:16
**hyde**   4:25 63:3,8
**hypothetical**   42:4
   54:5

**i**

**i.e.**   38:8
**identify**   42:23,23
**identity**   32:24
**ilan**   5:9 7:8
**imbued**   42:4
**immediate**   10:17
**immediately**   31:6
**inadmissible**
   48:21 50:1
**inclined**   59:17
**include**   14:18
   18:21 22:23
**includes**   25:8
**including**   12:22
   33:5 45:16
**income**   36:20,23
   39:1,4 55:15,18
   55:24
**inconsistent**   41:22
**incorporate**   10:22
**incorporated**
   32:22
**incorporates**   25:9
**incorrectly**   46:23
**incurred**   33:13
**index**   27:15,18,25
**indicate**   33:19
   36:13

**indicated** 20:14
**indicating** 48:20
**indicted** 46:20
**indicter** 44:18
**indiscernible**
   44:17 47:2 49:7
   54:7 61:14 62:15
**individual** 29:25
**information** 11:13
   20:21
**initial** 14:8 30:3
   60:3
**inquiry** 12:16
**insider** 37:8 38:8
   53:1
**insiders** 43:9
**insolvency** 10:13
   11:24 12:11 35:8
   35:15 39:7,8
   42:15 55:6,8
**insolvent** 35:16
   44:19 53:6,15
**instances** 41:21
**instruct** 37:10
**instructed** 32:24
**intended** 40:7
   50:12,13
**intending** 14:9
**intensive** 57:19
**intent** 10:3 13:16
   14:10,12 15:8,10
   34:23 51:21,24
   52:18,24 56:21
**intention** 10:12
   11:20 61:7
**intentional** 13:14
   25:16 60:6
**intentionally** 10:6
   12:15
**interest** 31:20,22
   58:18
**interested** 35:21
   36:3 38:13 58:8

**interesting** 50:21
**interfamily** 58:2
**interim** 20:8
**interpretation**
   41:5 43:14
**investments** 2:22
**involved** 9:1
   29:22 51:21
**irregardless** 36:7
**islip** 3:3
**issue** 9:4 13:17
   14:24 15:2 16:11
   18:20 19:9 20:13
   20:17 22:3 23:6
   24:23,24 25:8
   27:4 28:10,11
   36:6 38:20 40:11
   40:25 43:17 44:1
   46:10 56:10 57:4
   58:25
**issued** 11:3 24:9
   24:22 39:20 50:1
**issues** 12:9 17:13
   20:10 22:25 24:22
   26:17 42:15 45:12
   45:12
**it'll** 25:6
**item** 29:25 49:23
   55:22
**items** 48:1

**j**

**j** 26:8
**jacobowitz** 58:1
**january** 3:5 27:2
**jeff** 7:7 8:18 19:22
   23:16 26:5 28:20
   31:3
**jeffrey** 5:8
**joint** 9:15,17 32:8
**jones** 5:3 35:2
**joseph** 7:13,14
**judge** 3:23 7:3
   8:14 23:24 27:21

60:25 62:9
**judgment** 4:1
   9:13 10:2,14,18
   10:22 12:6 14:9
   14:16,22,23 15:7
   15:8 16:4 17:2,10
   17:16,20 18:7,18
   18:23 25:24 26:14
   27:13 29:14 30:18
   30:21 32:6,11
   39:19,22 40:2,4
   40:19 41:2,3,8,12
   41:17,18 43:1,2,4
   43:9,17,18 44:8
   45:9,9 46:9 47:6
   47:10 51:16,17
   52:15,19,20,21
   53:9,11 56:12
   57:9 59:24 60:3
   60:21
**judgments** 42:21
   53:12
**jumping** 40:6
**june** 15:24 16:10
   17:17 18:22 19:10
   24:12 25:10
**jurisdiction** 31:11
**jury** 47:1 56:14
**justify** 33:17,24
   35:24

**k**

**k** 8:7,12
**keeping** 23:3
**kick** 60:8
**kind** 28:17 34:17
**know** 9:19 10:9
   10:21 15:15,18
   16:5 17:12 18:2
   19:10 20:20 21:4
   21:11,14,24 22:10
   23:2 24:1,9 25:11
   25:14,22 26:19
   28:12 29:10,16,19

29:24 30:3 31:9,9
31:11,19 32:10
37:15 43:17,19
44:7,17 45:18
48:3,11 49:4 50:1
52:3,7 53:7 54:11
55:4 57:16 59:3
**knowing** 27:11
**knowledge** 47:12
**knows** 13:15
   43:23

**l**

**lack** 14:18 47:10
**lag** 21:11
**language** 52:17
**laptop** 55:17
**larger** 43:16,19
   55:19
**larry** 26:9
**late** 21:20
**launch** 26:14
**lauren** 7:17
**law** 5:11 7:19 8:22
   9:6 10:5 13:9,16
   15:3 36:2 37:8
   40:1 41:6,19 42:1
   43:7 44:15 57:23
**lawrence** 6:6 7:21
**laws** 55:23
**lead** 15:13
**leading** 56:1
**leave** 9:21 22:19
**leaves** 44:16
**ledanski** 4:25 63:3
   63:8
**left** 15:17 31:18
   32:4 34:10
**legal** 63:20
**legislature** 52:13
**legitimate** 43:8
   59:14
**length** 30:23

**letter** 9:13,24 11:6
  17:25 18:19
**level** 57:7
**liability** 10:23
  36:18 41:13
**lien** 29:4 30:25
  31:22
**liens** 28:18 31:23
  31:24
**limit** 12:9 15:2
**limited** 42:8
**limiting** 43:3
**line** 8:25 9:1 13:7
  19:11 58:19
**lines** 46:17
**liquidate** 31:7
**liquidating** 1:11
  8:20 23:17
**listen** 7:14
**litigation** 28:22
  29:1
**little** 24:20 25:2
**live** 19:11,12
**llc** 26:8 30:20
  32:21
**llp** 5:3,11 6:1 7:20
**loan** 12:19,21,23
  12:25 13:3,19
  14:6 59:11
**loaned** 11:11
**loans** 37:14
**local** 27:24
**logical** 52:7,9
**long** 28:22 43:10
**look** 11:22 17:7
  23:11 34:18 53:14
  54:12 61:21
**looked** 12:7 20:16
  49:5
**looking** 11:12
  18:2 47:5 51:22
  53:7,12

**looks** 34:17
**loss** 56:3,5
**losses** 39:2,7,13
**lynch** 11:4,12,14
  15:12

**m**

**m** 1:11,15 4:2 5:4
**madison** 6:3
**maintaining**
  48:13
**major** 38:8
**majority** 38:14
**making** 14:11
**malleable** 55:14
**managed** 55:12
**management** 9:7
  20:7,24 21:15
  22:6,8 24:4
**manager** 29:22
  46:6 54:15
**managers** 6:2
  7:22 26:10
**manages** 32:23
**manhattan** 32:19
**manipulated** 33:8
  33:19
**march** 16:18,19
  16:20,22,23 17:3
  17:7,11,14 18:3,3
  18:5,8,23 19:8
  22:5 24:6 63:25
**maryann** 5:16
  7:17,19 26:7 27:9
  44:25
**matter** 1:5 25:3
  45:25 46:23
**matters** 24:21
**maximize** 31:7
**mean** 21:12 25:14
  25:17 31:8,13
  35:23 36:14,17,21
  40:18 42:2 43:15
  43:21 45:18 57:21

**media** 37:11,12
**medical** 54:11
**meet** 9:15
**mellon** 34:16
**members** 33:5
**memorex** 19:11
**memorialize** 34:5
**memorializes**
  36:15
**mendelsohn** 58:1
**merrill** 11:4,12,14
  15:5,12 18:11
**message** 15:16
**met** 20:10
**middletown** 5:21
**mile** 5:20
**million** 20:12,20
  32:1,14 34:2,11
  36:9,10 37:3 39:3
  39:3,4,5 43:25
  44:9 46:11,11,11
  46:11 48:15,15,16
  48:22,25 49:9,12
  53:13,13 54:8
  59:4,4
**mills** 7:2 8:24
  16:17 23:22 60:22
  61:6 62:6
**mineola** 63:23
**missed** 25:22
**misunderstood**
  50:14
**modify** 18:16
**moment** 50:7
  51:25 55:4
**monetizable** 30:1
**monetize** 28:14
**monetized** 29:8
  60:19 62:5
**monetizing** 28:16
**money** 13:4 16:12
  16:15 28:24 29:18
  31:9 32:17 34:7

36:23 37:17 41:16
  43:8,10,22,24
  44:3 50:17 60:2
  62:5
**monies** 13:21
**month** 9:9,14
  26:20
**morning** 7:2,7,25
  8:4,18,21 9:20
  11:1,7 15:23
  18:17,25 19:24
  26:13 48:19 62:7
  62:13
**motion** 4:1 9:13
  9:25 10:15,18
  14:11,23 15:8
  16:4,8 25:23
  26:22 27:13 29:14
  32:6,11 33:21
  35:12 38:16,22,25
  46:24 55:12 57:9
  60:21 61:8
**motions** 18:7
  59:24
**movant** 46:24,25
**move** 10:1 14:9,15
  31:6
**moved** 33:1,10
**moving** 24:7
**multi** 20:20
**music** 50:20
**musical** 50:20
**mute** 8:25 9:1

**n**

**n** 5:1 7:1 63:1
**name** 8:6,9,11
  27:5,7 37:13 54:6
  54:9,13
**narrow** 14:11,17
  28:10
**narrowly** 41:7
**nature** 14:20

**necessarily** 31:8
**necessary** 16:3
   42:9
**need** 12:9 16:5
   17:12 18:24 23:1
   25:23,25 26:2
   40:24 41:1 45:25
   47:14,16 55:1
   56:25 57:1,2,2
**negative** 39:1,2,3
   39:3,4,5,7
**neighbor** 12:18
**net** 39:4,7
**never** 13:24,25
   30:16 36:3 39:21
   43:11 52:4 53:1
**new** 1:2 3:3 5:6,14
   5:14 6:4,4,11 9:6
   9:25 10:5 13:9,15
   15:3 19:6 27:1
   28:16 36:2 37:22
   38:4,4 39:25
   41:10,19 42:24
   57:23 59:7
**nj** 5:21
**nolan** 5:8 7:7,7
   8:18,19 9:2,3,23
   10:4,16 11:3,7,16
   12:1,14 14:7,14
   14:25 17:21 18:11
   19:5,16,22,22
   20:3,4,5 21:8,10
   22:1,2 23:9,13,16
   23:16,20 24:2,3
   24:17 25:13,20
   26:3,5,5 28:20,20
   28:21 29:2 31:3,3
   32:5,7 34:22
   35:10 36:12 37:7
   40:6,17 42:23
   44:15,23 48:18
   51:19 52:6 57:11
   57:12 61:14,18

62:15
**nolan's** 30:2
**non** 45:22,23
**normal** 53:17
**note** 12:17
**notice** 18:8 23:10
   25:21 61:6
**notified** 26:12
**notify** 61:10
**number** 8:3 19:21
   23:15 24:8 26:4
   27:15,18 28:1
   30:13,14 35:13
   36:21 37:22 40:23
   41:5,8 48:16
**ny** 5:6 6:11 63:23

**o**

**o** 3:21 7:1,12,12
   63:1
**o'clock** 22:21,21
   23:11 25:21 26:1
   60:23 62:8,18
**objection** 48:13
**objections** 47:9
**obtain** 48:7 52:4
**obtained** 45:24
   51:3
**obviously** 11:22
   12:8 16:4,25 19:1
   23:1 27:11 28:1
   28:11 45:14,16,21
   46:3,6,20 47:2,6
   51:18 53:4 56:22
**occupied** 33:12
**occupying** 32:25
**occur** 30:13 50:7
   51:2
**occurred** 33:24
   34:21 41:2 51:4
**offered** 28:13
**officer** 38:8,14
   53:1

**officers** 37:21
   53:5
**offline** 17:24
   61:22
**oh** 27:6
**okay** 8:13 10:17
   15:20 19:16 21:9
   23:25 27:8 28:6
   54:24
**old** 19:11 63:21
**once** 18:1 20:22
   23:4 28:3 55:8
**open** 30:23 62:4
**operated** 32:16
**operating** 19:15
   29:11 39:7
**opinion** 10:13
   32:12 35:8 38:22
   56:8 57:1
**opinions** 12:3
   57:1,16
**opponent** 47:2
**opportunity**
   11:16 45:16,17
   46:1
**opposed** 29:19
   30:1 42:9 56:3
**opposing** 9:22
**opposition** 33:16
   33:23 34:19 35:23
   38:11 39:18 41:6
   58:7,21 59:23
**options** 45:15
**oral** 13:6 59:13
**orbach** 7:13,14,14
**order** 18:1,16,20
   19:9 22:23 23:5,6
   23:12 25:8 27:13
   48:3 51:4 56:24
**ordered** 18:19
**originally** 56:4
**orion** 1:6,12 16:18
   21:24

**os** 48:5
**outcome** 61:19
**outlining** 17:25
**outside** 18:2
**outstanding** 15:10
   39:23 53:8,19
**oversight** 31:14
   50:6
**owe** 53:17
**owed** 15:9 36:9
   37:3,16 42:16
   43:8,23 46:10,12
   48:15 50:4,17
   58:24 59:3,10,14
**owing** 56:5
**owned** 30:20
**owns** 32:22

**p**

**p** 5:1,1 7:1 8:7,10
   8:12
**p.c.** 6:8
**p.m.** 62:11
**pachulski** 5:3 7:8
**page** 38:25
**paid** 13:4,4,20
   14:6 36:9,16 37:9
   37:14 39:21 43:11
   44:3 53:2,4,5,18
**papers** 27:23
   34:16 37:11 40:10
   44:12 48:19 49:8
   49:10 51:1 60:14
   62:11
**paperwork** 27:19
**paragraph** 38:11
   38:11
**paris** 6:14 8:4,7
   8:10
**parked** 32:21
**parlatore** 5:11
   7:19
**parmar** 12:18,25
   13:17,19,21 14:5

35:25 36:8,22
37:3 38:12 46:5,9
46:20 47:3,11,17
48:4,15,21,24
49:11 50:10,15
54:15 58:6,8,10
59:2
**parmar's**  14:1
**part**  10:14 45:11
45:24 46:13,18,19
47:25 50:6
**particular**  41:20
43:25 52:22,23
53:10 56:17 60:21
**parties**  8:14 9:16
12:8 20:22 22:7
22:24 26:13 27:1
28:14 31:17 32:3
60:17 62:2,5,12
**party**  40:19 58:17
**path**  29:14 39:24
40:1 52:9
**paths**  38:17
**pattern**  44:7
57:19
**pay**  30:24 31:23
33:11,14 37:17
39:17 52:4 53:7
53:17,18,21,21,24
**payees**  45:20
**paying**  28:17 36:1
56:6
**payment**  37:9
38:7
**payments**  35:9
42:16,16,18
**payors**  45:20
**pc**  8:1 19:25
**pending**  52:15,21
52:21
**performed**  57:24
**period**  12:24
21:13 47:21 55:23

**permitted**  30:15
**person**  8:2 38:13
53:17
**personal**  12:19,23
13:19 29:22 30:17
33:2,4,5
**perspective**  29:7
38:17 46:4
**petition**  39:6
41:24
**phone**  8:2 11:4
**phrased**  51:19
**pick**  31:17,17
32:3
**picture**  24:18
26:16 28:11 34:17
43:5
**pictures**  56:6
**piece**  33:18
**pittinsky**  6:1,6
7:17,21,21,22
26:9,9,10,18,18
27:16,17,20 28:5
30:9 61:16 62:16
**place**  9:8 24:4
32:14
**places**  36:22
**plain**  52:16
**plaintiff**  1:13,21
2:4,12,20 4:1 8:19
9:10,11,12 10:12
12:21 13:18 17:9
17:25 18:6 19:5
19:23 23:17 25:1
25:2,24 26:6
29:15 31:4,5
34:21 35:14,20
40:13 52:16,17,22
**plaintiff's**  26:22
34:19 40:18 44:12
52:3,8 56:23
**plaintiffs**  10:1
11:22 16:3

**plan**  9:7 20:7,24
21:10 22:6,9 24:4
24:12 28:22
**plans**  21:15
**plaza**  3:2
**pleadings**  22:3
**pleasant**  30:25
**please**  7:4 8:17
9:1 20:4 27:5,5
62:21
**plus**  49:9
**po**  5:20
**point**  10:19 16:5
21:7 28:2 30:4,4
30:10 31:25 43:14
53:3 54:14
**pose**  42:14
**posed**  42:5
**posing**  47:4
**position**  29:5 48:8
59:21 61:9
**possible**  15:13
30:7 45:15
**possibly**  35:6
**potentially**  12:4,6
15:25 16:10
**pre**  9:25 25:23,23
61:3
**predicant**  42:2
**prefer**  45:3
**preferential**  37:20
**prejudice**  34:15
**prepared**  60:13
**present**  29:14
45:7
**presented**  35:3
56:9
**president**  37:12
**presiding**  7:3
**presumably**  46:5
49:14 58:3
**presumed**  35:16

**presumptively**
57:25
**pretrial**  18:5 20:6
21:23,23 22:20
23:3,10
**pretty**  25:6
**prevail**  31:5
**prevails**  28:22
**previously**  18:16
**prior**  20:6 21:4
27:23 35:5
**probably**  16:2
21:11,12
**problem**  7:17
**procedure**  62:12
**procedures**  19:15
31:19
**proceed**  15:21
26:22 32:6
**proceeding**  7:16
15:22 27:10 60:20
**proceedings**
15:24 62:22 63:4
**proceeds**  31:23
32:1
**process**  12:6
**productive**  21:19
21:25
**professional**  14:4
**promissory**  12:17
**prong**  48:17
**proper**  59:20,25
**property**  29:17,22
29:25 30:17 31:8
31:21 32:21 33:10
34:8,14 59:4 60:3
60:19
**proposed**  23:5,12
24:11
**proposition**  37:23
**protocol**  19:10
28:14 60:19 62:3

prove  43:11
provide  11:6,8,9
  20:20 45:15 48:2
  48:6
provider  54:12
providing  35:4
province  28:13
public  45:20,22
pun  50:12,13
purchase  36:9
  40:16 42:22 46:13
  49:1,13 50:18
  55:16
purchasing  32:25
purpose  41:16
  50:23
purposes  12:23
  18:4 23:9 25:20
  47:13 49:19 50:17
  60:22
pushed  39:10
put  33:16 39:14
  53:13,22,23 54:8
puts  48:7
putting  28:18
  54:5

**q**

quantifying  43:4
quarter  33:11
question  14:8,21
  19:5 40:8,9 42:3,5
  42:6,14 45:5 46:8
  47:16 49:3 52:1,2
  53:5 55:5 56:7,11
questions  44:22
  45:1,5 56:16,17
  56:19,20,22,23

**r**

r  3:21 5:1 7:1,12
  8:7,10,12 63:1
racking  39:13
raise  24:23

raised  40:11
raises  55:24
range  45:15
rationale  43:12
read  41:7
ready  16:12 17:10
real  29:17,25
  32:21 34:7,8 53:5
  55:16
realized  31:9
really  16:14 40:8
  42:5 56:11,24
  57:19
reason  14:5 25:11
  25:25 27:15 41:4
  41:14 42:5 60:8
  61:9
reasonable  41:5
  47:1 56:13
reasonably  14:18
  14:19 57:16
reasons  52:12
rebuttal  44:23
recalibrate  17:18
recall  9:4,11
received  11:4
  12:22 20:14,15
  27:25 48:25 49:9
  49:12 50:9
receiving  44:2
  48:22
recess  62:17
recipient  38:7
recognizing  17:16
recommend  16:14
  60:17
record  17:10 28:3
  42:12 46:9 47:6
  48:17,20 51:11
  62:18 63:4
recorded  7:4 44:8
records  14:3 34:6
  36:13,15,18,19,22

36:24 38:23,24
  45:24 48:12 53:14
  57:2
recoveries  40:13
recovery  40:10
  42:8,19,20
redacted  45:20
reduces  55:18
redundant  62:2
references  9:25
reflect  18:18
reflecting  49:4
regard  52:18,23
  52:23
regardless  36:6
  37:9
regards  11:13
  27:12
regular  31:7
regulations  55:15
relate  15:10
related  32:18
relevant  10:13
  12:3 15:21 47:12
relied  46:24 55:7
rely  13:6 38:23
remedies  40:9
  42:6
remembers  26:23
render  53:15
rendering  53:20
repay  37:14
repayment  38:6
repealed  52:13
replace  59:13
reply  16:6,6 17:12
  37:11 40:23 41:9
  58:9
report  10:20
  11:22,24 24:9
  35:11
reporting  49:19

represent  7:6,15
  29:24
representation
  26:24
representative
  54:16
representing  7:9
request  11:10,15
requested  9:11,25
requesting  11:5
  46:22
requests  15:14
require  48:2
required  27:22
requirement
  37:19
requires  47:23
residential  29:12
  32:19
resolution  16:11
resolve  27:11
resolved  17:20
respect  26:16
  32:25
respectively  17:6
respond  11:6 15:7
  18:1
response  15:7
  16:4 17:11 47:13
  47:15,18,25
rest  28:19
restraint  30:19
restricted  41:8
result  18:23
retain  11:20,23
retained  35:7 39:5
return  47:1 55:13
  56:14
returns  49:3 51:2
  55:5,11 56:1,3,4
review  11:23 22:9
revisit  16:13
  30:17

**rifle** 16:16
**right** 8:24 9:2
  10:9,24,24 11:18
  12:1 15:4 16:24
  18:15,24 19:8,17
  19:19 20:2 21:1,3
  21:17 22:12,16
  23:25 24:11 25:4
  25:19,19 26:12
  30:8 31:1,16
  40:12,13 43:22
  44:11,14,21 51:10
  54:4 57:10 58:4
  60:3,10,10 61:5
  61:15,23 62:1,6
  62:10
**rights** 30:12 48:9
**ripe** 60:1
**river** 5:12 7:20,22
  26:8 46:13 48:24
  49:3 54:17
**riverhouse** 6:2
  26:10,11
**rivers** 49:9 54:16
**road** 5:20 60:8
  63:21
**rosen** 6:8,13 7:24
  7:25,25,25 8:5
  19:24,25,25 21:1
  21:2 22:13,15
  23:14
**rosenberg** 6:1
  7:21 26:9
**ruderman** 37:13
**rule** 21:12 38:5,5
  45:14 46:24 47:14
  47:22 60:13 61:9
**rules** 27:22,24
**ruling** 60:16,24
  61:8,10,18

**s**

**s** 3:22 5:1 7:1,3,12
  8:8,10,12
**sale** 26:16,19,22
  27:1,4,11 28:18
  30:18 31:7,20
  59:23 60:16,18
  62:3
**sale's** 26:20
**sanford** 6:13 7:24
  7:25 19:24
**sartison** 2:14
**satisfaction** 51:15
**satisfied** 15:23
  30:18 34:8 42:18
  46:12 50:23 51:7
  58:13 59:20
**satisfy** 31:10
  40:14 42:9 43:1
  50:19 52:20
**saves** 60:2
**saying** 9:20 18:12
  18:25 35:25 46:9
  55:22 59:3
**says** 12:18 13:6
  14:5 32:23 34:16
  57:24 58:16 59:9
**scenario** 45:16
  46:21 52:14,21,23
  54:18 56:12,15,16
  56:24 57:4
**scenarios** 22:4
  53:17
**scharf** 5:9 7:8
**schedule** 16:9
  17:2
**scheduled** 26:20
**scheduling** 10:10
  18:16,20 20:9
  22:23 23:5,12
  25:8
**schoor** 1:15 5:19
  7:12 8:15,16,23

  11:11 12:18,24
  13:6,20,23 25:3
  25:16
**se** 14:1 40:5 52:5
**second** 22:12
  48:17 60:25 61:2
**section** 31:19
**sector** 32:17
**secured** 43:23
  44:2,4
**see** 22:11 23:23
  24:12 28:25 30:12
  46:8,16 49:22,25
**seek** 30:19
**seeking** 27:22
**seeks** 42:20
**seen** 11:21 15:12
  21:16
**segue** 40:7
**self** 35:21 36:2
  38:12 58:8
**sell** 28:23
**selling** 28:17
**sense** 10:20 21:22
  22:1 25:4 29:23
  58:14
**sent** 11:6
**separate** 33:13
  39:18 58:16
**series** 47:9
**serve** 27:23
**served** 27:16
**services** 13:25
**set** 16:9,17 21:13
  22:17 31:6 35:17
  36:19 40:10,14,23
  41:3,6,9,11 42:15
  43:12,20,24 44:16
  55:25
**sets** 33:21 38:3,17
  38:25
**setting** 16:10 19:9
  21:23 39:12 42:25

**settle** 19:1
**settled** 38:4
**settlement** 26:17
  28:12
**share** 29:18
**shareholder** 38:9
  38:14
**shareholders**
  37:21
**sheriff's** 59:23
**shipping** 38:2
**shoes** 41:13,22
  42:1
**short** 11:15,17
**shot** 16:16
**show** 12:17 27:13
  56:5
**showing** 13:10
  50:3,8 56:3
**shown** 35:23
**shows** 35:20
**shut** 19:7
**side** 34:23,25 35:1
  35:12
**sides** 35:22 40:9
  57:3,3 60:11
**sign** 13:24 23:20
**significant** 44:2
  56:16
**signs** 57:24 58:3
**similar** 20:25
  21:15 25:15 34:11
  34:14 54:18
**simple** 44:7
**simply** 12:5 13:5
  21:22 22:8 28:19
  33:22,24 35:25
  51:2,5 58:9
**single** 15:2
**situation** 43:13
  48:6 56:13
**six** 24:22

sold 30:10,23 31:22
sole 54:16
solely 10:2 11:8 32:23 33:2,3 38:13 51:22 52:22
solutions 63:20
solvency 10:13 11:20 12:3,10,12 12:15 35:3,8,11 36:7 38:20,22 55:6 56:7,8,11,11 56:17 57:1
solvent 39:17
somewhat 55:13
sonya 4:25 63:3,8
soon 61:25
sooner 25:25 26:2
sorry 24:18 62:20
sort 45:2 47:25 53:16 55:4,16
sorts 29:1
sought 51:17
sounded 37:1
sounds 15:17 22:12 34:24
southern 28:15 39:22
sparingly 59:25
speak 7:4 9:24 26:25 28:2
speaking 26:18 50:7 61:16,22
specific 52:11,14 52:20
specifically 31:19 40:24 48:12 53:8 56:12
specificity 20:21
speculating 15:15
spend 16:11,15
split 55:22

stage 59:20
stand 37:23
standing 40:25
standpoint 54:8
stang 5:3 7:8
start 45:4
started 50:7
starting 7:5 8:15
state 27:5,7,10,14 29:2 42:1 49:18 61:22
statement 9:15,17 32:8 33:13 37:8 39:19
statements 45:19 48:1
states 1:1 3:1
stating 29:16
status 20:4 26:15 42:4 60:12
statute 41:7 52:10 52:12,17 53:3
stay 27:22
step 29:4 41:13,25
stepping 42:25
steps 41:21
stigmatize 41:16
stigmatizes 43:7
stipulate 22:8,25
stipulated 12:7,16 16:2
stipulation 16:8
stock 58:17
stop 27:11
strategy 47:5
strike 14:11
subject 31:14
submission 17:1 23:11 59:12
submit 9:15 10:12 17:25 20:23 21:10 22:9 35:11 41:4 45:21 47:17,20

59:5
submits 60:5
submitted 9:13,17 9:24 16:7 17:7 18:2,17 20:5 32:8 34:21 35:11 37:15 39:15 45:19,19 47:10 57:23 58:15 59:3,6 62:12
submitting 38:21
subpoena 11:3
subpoenas 24:8 24:22
subsequent 35:6
subsequently 20:16
substance 47:5
substantial 46:3
sufficient 15:18 57:7
suite 5:13 6:3 63:22
summary 4:1 9:12 10:2,14,18,22 12:6 14:9,16,22 14:23 15:7,8 16:4 17:2,10,16,20 18:7,18,22 25:24 26:14 27:12 29:14 32:6,11 40:2 45:9 45:9 46:8 47:6,9 51:16,17 56:12 57:8 59:24 60:21
supplemental 22:18
support 34:1 48:17 51:4
sure 14:14 17:6 17:14 18:7 31:18
surrounding 12:21

## t

t 63:1,1
take 8:17 16:16 18:11 19:1 33:18 36:23 54:25 58:17 58:17 61:20
taken 32:14
talk 15:22 41:15 48:12
talked 21:5 42:25
talking 21:6,20 53:10
talks 58:2
tangible 57:25 58:3
tax 38:23 48:22 49:3,14,17,19 50:2 51:1 55:5,11 55:13,15,18,23 56:1,3,4
taxes 33:14 55:21 56:5,6
technically 30:11
telephonically 5:8 5:9,16,23 6:6,13 6:14
ten 62:7
tentative 60:23
term 28:22
terms 11:18 21:3 23:2 25:5 28:11 30:21 48:8,14
terrace 5:12 7:20 26:8 46:14 54:16 54:17
testimony 12:22 13:6 59:13
texas 39:22
textbook 32:12 34:12 51:20
thank 8:13 10:24 12:1 14:25 18:14 19:16,17,19 23:13

23:14 26:3 28:6,8
32:7 57:10 60:9
60:10 61:13 62:14
62:16
**them's** 41:10
**theoretically**
50:21
**theories** 10:23
40:13
**theory** 25:17
35:17 41:13
**thing** 33:7
**things** 27:11
**think** 10:18 12:16
13:2,9 15:1,1,14
20:22 21:18 22:2
22:8 23:4 24:15
25:13 29:15 31:2
31:4 33:7 34:23
40:9 43:5,6 44:6
54:1,4,7 55:20
56:7,10,15,15,24
57:4,6 59:15
**third** 5:5 6:10
39:24 40:1 58:17
**thought** 38:21
50:14
**three** 41:9 55:20
55:23 60:23
**throwing** 39:1
**tilt** 25:24
**tilting** 17:17
**time** 9:21 11:5,9
11:24 12:5,9
15:11 17:8,9
18:10 19:13 21:19
24:16 28:18 36:9
39:5 40:3,15
41:12 42:8,16,22
45:11 47:8,14,20
47:20,21 48:3
50:16 51:13 53:15
57:14 60:2 61:1,9

**timeline** 16:13,15
**timing** 60:22
**title** 29:9 32:20
**today** 7:16 15:25
27:12 32:2 39:23
60:13
**today's** 18:4 22:20
23:9 25:20
**told** 13:7 30:22
**toss** 9:23
**touch** 40:9 45:12
55:3
**track** 18:22 20:24
**tracking** 23:3
**tracks** 16:9
**trade** 5:13
**traded** 54:6
**trajectory** 25:2
**transaction** 30:24
33:24 35:15,21,21
35:24 36:3,4,6
37:24 38:13 58:8
**transactions**
57:24
**transcribed** 4:25
**transcript** 63:4
**transfer** 10:3,6,7
12:15 32:14 34:7
34:8,25 35:1
36:11 37:5 38:19
40:3,5 41:2,12
42:7,8,10 43:1,7
43:12,15,16,19,24
44:9,13,17 46:11
50:2,18,23 51:21
52:5 53:2,7 57:22
59:5
**transferee** 36:1
38:15 41:14
**transferor** 12:11
13:17 35:25 38:9
38:15

**transferred** 42:19
43:9 58:13
**transfers** 10:14
11:10,25 12:4,12
20:13,15,17,20
35:9 37:20 41:16
46:10 58:2
**treat** 15:6
**trial** 12:10 15:23
16:10 17:17 18:20
18:22 22:22 23:4
23:6 24:14 25:8
25:10 47:8
**trials** 19:6 61:3
**tried** 12:9
**tries** 35:24
**trigger** 28:18
**true** 34:21 63:4
**trust** 3:22 7:3
29:10
**trustee** 1:11 5:4
7:9 8:20 14:22
20:15 23:18 29:9
29:10 31:6 39:12
40:19 41:11,12,21
42:4,20,25 43:11
44:4 47:9 48:13
48:18 51:18 55:6
60:5
**trustee's** 11:24
14:8 28:22 29:7
32:10,11 42:8
54:7
**trustees** 41:24
**try** 12:5 19:14
29:4 33:24 42:14
**trying** 12:12
21:18 24:24 42:23
**turn** 32:5
**turner** 27:21
**twisted** 44:7
**two** 11:7 21:11
30:14 38:17 41:8

42:21,24 47:16,25
53:12,12,22,23
55:20,22 56:1,6
61:2,20
**tying** 13:3
**type** 37:23 39:16
**typically** 57:13

**u**

**u.s.** 3:23
**ultimate** 16:8
**ultimately** 31:12
**unable** 29:13 53:7
53:21
**unavailable** 47:19
**uncontroverted**
9:16,17 32:9
**underlying** 20:17
32:13
**understand** 14:10
14:16 37:1 46:18
47:24 50:25
**understanding**
44:12 51:5
**understood** 17:21
52:6
**undisputed** 13:2
13:18 35:23 57:21
**unearth** 29:13
**unfortunately**
54:20 59:21
**unique** 29:18
**unit** 26:16 28:16
28:17,23 29:5,13
30:10,23 33:1,2,3
33:12 46:14 62:4
**united** 1:1 3:1
49:11 54:18
**units** 29:11,12
**unknown** 3:25
**unpaid** 40:22
**unreasonable**
53:4

[unredacted - à]                                                                          Page 17

**unredacted** 45:21
**unsatisfied** 40:4
**unsecured** 34:15
  43:22 44:4
**update** 60:12
**upkeep** 33:11
**uploaded** 20:7
**use** 13:8 26:1,13
  28:15 33:4,9 42:1
  60:22 61:2
**utilized** 31:10

**v**

**v** 1:14,22 2:5,13
  2:21 8:15 37:11
  38:2
**vacuum** 30:13
**valid** 13:11 37:15
  39:24 41:17
**value** 14:19 31:7
  34:12,14 57:16
**variables** 58:23
**ventimigilia** 59:7
**verdict** 47:2 56:14
**veritext** 63:20
**versus** 58:1 59:6
**view** 22:14 30:10
  40:8
**violates** 37:24
  44:17
**virtue** 30:18 41:24
**vis** 26:21,21
**visit** 25:17
**voice** 62:20
**voicemail** 15:16
**voluminous** 15:17

**w**

**w** 36:14
**w2s** 49:14
**waiting** 15:5
  30:12
**walia** 2:6 6:9 8:1,5
**want** 7:5 14:22
  15:7 16:13,15

17:6,18 18:7
26:19 28:12 32:5
44:21,23 45:1,2
51:25 54:22 55:3
57:11 60:13
**wanted** 9:20 33:9
  45:7
**way** 29:18 36:12
  44:15 50:8,8
**we've** 21:12,12
  57:23 59:6 60:2
**webex** 19:9,10,12
  19:14
**week** 10:11,11,12
  11:7 16:10 17:8
  21:11 60:15
**went** 13:21 20:10
  43:9
**willing** 48:6
**win** 14:17
**witness** 16:12
**witnesses** 18:18
**wondering** 28:24
**word** 12:25 28:15
  50:11
**work** 16:1 17:5
  22:19 23:4 24:13
  26:25
**worked** 22:24
**working** 16:25
  20:23 22:18
**world** 5:13 55:16
**wound** 56:5
**written** 24:7

**x**

**x** 1:4,8,10,17,19
  1:25 2:2,8,10,16
  2:18,24

**y**

**y** 8:7,12
**yeah** 16:23 20:5
  24:17 54:24 55:2
  61:24

**year** 33:11,25
  39:1,13 55:18,23
**years** 12:24 55:20
  55:24
**yesterday** 9:8
  11:5 21:5 27:14
**york** 1:2 3:3 5:6
  5:14,14 6:4,4,11
  9:6,25 10:5 13:9
  13:15 15:3 19:6
  28:16 36:2 37:22
  38:4,4 39:25
  41:10,19 42:24
  57:23 59:7
**yvette** 7:2

**z**

**ziehl** 5:3 7:8
**zoom** 19:6

**à**

**à** 26:21

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 18-71748-ast

4    Adv. Case No. 8-20-08051-ast

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    ORION HEALTHCORP INC.,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   EHRENBERG,

13                  Plaintiff,

14           v.

15   ELENA SARTISON et al.,

16                  Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

1              United States Bankruptcy Court

2              290 Federal Plaza

3              Central Islip, New York 11722

4

5              February 9, 2021

6              2:30 PM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1   HEARING re Liquidating Trustee's Motion to Extend the

2   Deadline to Object to Claims

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    PACHULSKI STANG ZIEHL & JONES LLP

4         Attorneys for the Plaintiff

5         780 Third Avenue, 34th Floor

6         New York, NY 10017

7

8    BY:   JEFFREY NOLAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            CLERK:  Start with 20-8051, Ehrenberg v. Elena

3    Sartison, et al.

4            THE COURT:  All right, let me just ask in terms of

5    the status of the adversary proceeding.  Has any forward

6    progress been made toward resolution?

7            MR. NOLAN:  Your Honor, Jeff Nolan appearing on

8    behalf of the plaintiff.  Your Honor, there has been no

9    further progress with the defendant, 2 River Terrace.  They

10   had made it clear back in early December that there was no

11   avenue to get this resolved, short of litigating it.  I have

12   continued to work with the board of residential managers to

13   try and work through some of the outstanding obligations and

14   basically hold the matter in abeyance while the Court had

15   the time to look at the underlying papers.

16           My understanding is the sheriff's sale was

17   adjourned from the date, which was in the end of January, to

18   a timeframe in the end of February.

19           THE COURT:  All right.  Any disagreement on the

20   status then of either the sheriff's sale or the resolution

21   efforts?  All right.

22           Well, then I'm going to move -- this is Judge

23   Trust.  I'm going to moving to the ruling conference portion

24   of this hearing then this afternoon in Adversary Proceeding

25   20-8051.  This will be the Court's ruling in narrative form

Page 6

1    as authorized under Federal Rules of Bankruptcy Procedures

2    7052.

3           This adversary proceeding presents a number of

4    core proceedings under Title 28, Section 157(b) and 1334.

5    This Court has jurisdiction to hear and determine this

6    adversary proceeding under the standing orders of reference

7    in effect in the Eastern District of New York.

8           In terms of procedural background, the plaintiff

9    brings this action in his capacity as the liquidating

10   trustee of the Orion Healthcorp, Inc. and related debtor

11   entities which had originally filed multiple bankruptcy

12   proceedings, administratively consolidated under Case No.

13   18-71748.  I'll talk more about that debtor group in a

14   couple of minutes.

15          This adversary proceeding speaks to recover, among

16   other things, to recover alleged fraudulent transfers under

17   the Federal Bankruptcy Code and the New York debtor and

18   creditor laws concerning the purchase of a multimillion-

19   dollar condominium unit.

20          The plaintiff trustee had moved for default

21   judgment against the defendant entity, 2 River Terrace 12J,

22   LLC.  At a hearing on that motion to default judgment, the

23   Court denied that motion given the appearance, albeit late,

24   by the defendant, but that the issues appeared to the Court

25   under Rule 1001 and otherwise to be better addressed on

1    summary judgment.

2            The Court, therefore, set a briefing and

3    submission schedule with respect to summary judgment, held

4    oral argument on January 21st of this year, and then

5    scheduled this ruling conference for today.

6            On the request of the plaintiff for summary

7    judgment, the following facts are either stipulated or there

8    is no genuine issue as to their truth for purposes of this

9    motion.  The sources of the facts that the Court is about to

10   recite are contained in the summary judgment record and are

11   drawn from the declaration of Timothy J. Dragelin at then

12   case docket no. 2, which is part of this summary judgment

13   record, the affidavits of Jeffrey Nolan and Daniel Jones,

14   along with the parties' joint Rule 56 statement of

15   undisputed facts -- those can be found at docket items 44,

16   45 and 55 -- as well as certain admissions made by this

17   defendant in this adversary proceeding.

18           And for benefit of the record, when I refer to

19   this defendant, I'm referring to 2 River Terrace as there

20   are multiple defendants in this adversary proceeding, but

21   this summary judgment is only directed as 2 River Terrace.

22           The plaintiff is noted as the liquidating trustee

23   under a liquidating trust agreement which was established

24   under a plan of reorganization confirmed by this Court for

25   multiple debtor entities.  Those debtor entities which are

1   the subject of the plan and, therefore, governed under

2   liquidating trust agreement were a consolidated series of

3   companies that were aggregated through a number of

4   acquisitions.

5           The business practice of those entities that did

6   operate were in the healthcare space primarily providing

7   back office revenue and practice management for various

8   physician groups.  One of those entities, known as

9   Constellation Healthcare Technologies, which I'll refer to

10  as CHT and is part of the debtor group, is the focus of this

11  adversary proceeding.  The debtor, CHT, maintained a

12  checking account at M&T Bank during the relevant time.

13          The defendant, 2 River Terrace entity, is an

14  active domestic limited liability company formed under New

15  York law on December 23rd of 2015.  On that same date, Paul

16  Parmar -- the gentleman referred to as Paul Parmar, who at

17  the time was the CEO of CHT, instructed the chief financial

18  officer of CHT, a gentleman called Sam Zaharis, to wire

19  transfer $545,000 from CHT's bank account at M&T to the

20  account of a law firm -- to the account of Lustrin Tetelman,

21  LLP, who were attorneys at that time acting in the capacity

22  on behalf of the owners of the condominium unit 12J located

23  at the complex known as 2 River Terrace in New York City.

24          At that time, the owners of that condominium unit,

25  which I'll refer to during this ruling as the condo or the

Page 9

1   condo unit, were Clodagh Bowyer Greene and Elliott Greene,

2   and I'll refer to those Greenes as the sellers.  The purpose

3   of the $545,000 wire transfer was as a down payment toward

4   the purchase of the condo, and I'll refer to that as

5   transfer one.

6           On or about February 19th of 2016, Mr. Parmar

7   instructed the CFO of CHT to make a second transfer; that

8   was in the amount of $5,058,408.81, again, from a CHT bank

9   account at M&T Bank; I'll refer to that as transfer two.

10  Transfer two was directed to the lawyers' trust account held

11  at the law firm of Robinson & Brog; that transfer went

12  directly into escrow.

13          Simultaneously, a closing occurred on the purchase

14  and sale of the condo, again, February 19, 2016.  On Mr.

15  Parmar's instructions, the funds comprising transfers one

16  and two, which I'll now collectively refer to as the

17  transfers, were used to pay the purchase price for the

18  condo.

19          The sellers, the Greenes, are also defendants in

20  this adversary proceeding, but this motion is not directed

21  at them.  But at the closing, they conveyed title to the

22  condo unit, not to CHT, but to the defendant newly created

23  entity, 2 River Terrace.  At all times relevant to this

24  litigation, 2 River Terrace has been managed by Mr. Parmar.

25  Given the undisputed facts, there is no doubt of a close

1   connection between CHT, Mr. Parmar, and 2 River Terrace.

2           Subsequent to closing, Mr. Parmar occupied the

3   unit with Elena Sartison, who is also a defendant.  The

4   papers refer to Ms. Sartison as her girlfriend; that status

5   for purposes of this ruling is not relevant.  The defendant,

6   though, has -- the defendant, 2 River Terrace, has alleged

7   that subsequent to placing title in the name of 2 River

8   Terrace, the condo was in fact used for the conduct of

9   business by one or more employees or officers of one or more

10  debtor entities, including CHT.  There is, however, no

11  summary judgment competent summary judgment evidence to that

12  alleged fact.

13          What is also undisputed is that prior to each of

14  the two transfers, at the time of each of the two transfers,

15  and at the time of the closing of the condo purchased, there

16  was no business relationship between 2 River Terrace and the

17  debtor, CHT, not before the closing, not on the date of

18  either transfer, and not thereafter.

19          In addition, prior to, at the time of each of the

20  transfers, at the time of the closing of the condo purchased

21  and for any relevant period of time after, CHT owed no money

22  to 2 River Terrace.  There was no business, there was no

23  debt owed to 2 River Terrace by CHT.  Thus, as measured at

24  the time of each of the transfers and at the time of the

25  closing of the condo purchase, defendant 2 River Terrace

Page 11

1    received property of debtor worth approximately $5.6

2    million; CHT received nothing in return.  Thus, there was no

3    consideration for the transfers.

4            Subsequent to the closing of the condo purchase, 2

5    River Terrace defaulted in paying certain taxes, utilities

6    and common charges starting in February of 2018.  That

7    failure constituted a breach of the covenants of the

8    condominium complex and resulted in the residential board of

9    managers filing suit and then obtaining a judgment against 2

10   River Terrace in the original amount of just over $200,000.

11   Interest has continued to accrue on that judgment, and the

12   board of managers has sought to execute upon it.  As of

13   October 2020, the outstanding debt -- the outstanding amount

14   owing under that judgment put it approximately $370,000.

15           Included within the records made a part of this

16   summary judgment record are two transactions from 2015.  One

17   was a transaction in which CHT acquired an entity in

18   September of 2015 called Phoenix Health, LLC, for $42

19   million; summary judgment record indicates that Phoenix was

20   a fictitious entity with no business assets or employees.

21   Almost simultaneous with the Phoenix acquisition, CHT

22   acquired another entity called North Star Acquisitions, LLC,

23   that time for $18 million; that entity, too, had no assets,

24   no business, no employees, and for all purposes, was a

25   fictitious entity.

1          Also included in the financial records made a part

2     of the summary judgment record are year-end tax returns of

3     2015 where the consolidating tax reporting group, referred

4     in this litigation to as the debtors; that consolidated

5     federal income tax reflected aggregate net operating losses

6     of over $11 million for the operating group and a cumulative

7     net income of over $95 million.  Summary judgment record,

8     however, does not include specific financial records solely

9     as to the CHT debtor at the time of either transfer or the

10    closing of the condo.

11          The first issue then with respect to summary

12    judgment concerns whether or not the plaintiff trustee has

13    met his burden to establish entitlement to summary judgment

14    as a matter of law on his claim under New York DCL Section

15    273, arguing that the transfers and the placing of title to

16    the condo in 2 River Terrace was a constructively fraudulent

17    transfer under New York law.

18          This Court has determined, based upon the

19    competent summary judgment, that the trustee is entitled to

20    judgment as a matter of law because the transfers, each of

21    them, and the closing of title to 2 River Terrace were made

22    without fair consideration when CHT either was or was

23    rendered insolvent by those transfers.  I'll talk in more

24    detail about those issues.

25          The trustee has also established as a matter of

Page 13

1    law entitlement to judgment under New York DCL Section 273-

2    a, because a judgment creditor existed prior to each of the

3    transfers and the closing of the title and the transfers

4    were made without fair consideration.

5              Turning to the first DCL 273.  As many courts,

6    including the Second Circuit at In re. Sharp International,

7    403 F.3d 43 at 53 (2d Cir. 2005) and Judge Strong of this

8    Court in In re. Allou Distributors, 446 B.R. 32, 61 to 63

9    (2011), as those courts and many others have held under DCL

10   Section 273, a conveyance made by a debtor is deemed

11   constructively fraudulent if it was made without fair

12   consideration and the transferer is insolvent or is rendered

13   insolvent by the transfer.

14             The undisputed evidence before the Court,

15   undisputed competent evidence is that CHT received no

16   consideration and, therefore, certainly no fair

17   consideration for paying of $5.5 million, transferring $5.5

18   million for the purchase of a condo to which title was taken

19   in the name of 2 River Terrace and did not become property

20   of CHT.

21             Since CHT did not receive ownership of the condo

22   or receive any other consideration for either transfer, the

23   question then is what did CHT receive in exchange for the

24   transfers.  As Section 272-a of the DCL provides, fair

25   consideration exists when a fair equivalent is received in

1    exchange for the property transferred and fair consideration

2    can include the satisfaction of an antecedent debt; that is

3    the prong argued by 2 River Terrace.  It asserts that Mr.

4    Parmar was owed millions of dollars by CHT at the time of

5    the transfers and the condo closing.  That assertion,

6    however, is an assertion; it's made without any evidentiary

7    support and thus, failed to raise a genuine issue of

8    material fact as to consideration.

9            The specific allegation made by 2 River Terrace is

10   that the debtor, CHT, had entered into one or more

11   consulting agreements with a Parmar-controlled entity called

12   First United Healthcare through which the debtor CHT

13   received the services and Mr. Parmar exchanged for a fixed

14   annual salary of $650,000 and a bonus based upon a multiple

15   of EBITDA.  They assert -- 2 River Terrace asserts that the

16   transfers were made, the condo purchase was made as a result

17   of funds still owed to Mr. Parmar for his services.

18           However, the plaintiff objected to each of the

19   documents provided by the defendant to support this

20   assertion, and there is no affidavit provided to support any

21   of those assertions.  But the plaintiff moved to strike all

22   the defendants' exhibits provided in support of this

23   assertion as to consideration for lack of foundation, lack

24   of authenticity and based upon hearsay; see docket item 56.

25           Those objections were discussed at the hearing and

1   all of those objections are granted.  In fact, 2 River

2   Terrace acknowledged at the oral argument that they did not

3   provide any affidavit or any other factual substantiation

4   from 2 River Terrace, from Mr. Parmar, or from anyone else

5   who could authenticate the documents that were provided

6   and/or testify to the truthfulness of the assertions of the

7   existence of an antecedent debt being owed to Mr. Parmar or

8   to CHT or to any other entity that had any relationship --

9   that then had any relationship to the transfers or the condo

10  purchase.

11          Almost as critical and, therefore, almost as fatal

12  is that there is no evidence in the summary judgment record

13  either that even if an antecedent debt existed, that that

14  debt was satisfied in whole or in part by either of the

15  transfers or the taking of title to the condo in the name of

16  2 River Terrace.

17          It's well-established law that when a party argues

18  facts to support an assertion that a genuine issue of

19  material fact remains and, therefore, summary judgment

20  should be denied, that party in opposing summary judgment

21  must provide competent evidence to establish the counter-

22  narrative.

23          As the Second Circuit long ago held in Dressler v.

24  MV Sandpiper, 331 F.2d 130 (1964) and as remains the case

25  today, these requirements of evidentiary support are

1    mandatory for, quote, "only in this way may the underlying

2    objective of the summary judgment procedure to discover

3    whether one side has no real support for its version of the

4    fact being satisfied."

5              Specifically, in terms of the rule mandate,

6    Federal Rules of Civil Procedure 56(c)(4) states that an

7    affidavit or declaration used to support or oppose a summary

8    judgment motion must be made on personal knowledge, set out

9    facts that would be admissible in evidence and show that the

10   affiant or declarant is competent to testify on the matter

11   stated, generically referred to as competent summary

12   judgment evidence.

13             Here, while the defendant, 2 River Terrace, offers

14   an alternate explanation for the transactions at issue,

15   which it claims raises a triable issue of fact, defendant

16   has simply failed to provide any competent summary judgment

17   evidence.  When the party offers facts to support its

18   contention it asserted that an issue of fact remains to

19   oppose summary judgment, they must comply with Rule 56(c).

20   Because there was no affidavit submitted by 2 River Terrace

21   authenticating or laying an evidentiary foundation for any

22   of the facts alleged or documents provided, then this Court

23   may and does under Rule 56(e)(2) treat plaintiffs

24   substantiated facts in support of summary judgment,

25   particularly concerning lack of consideration, as

1     undisputed.

2              Therefore, plaintiff has established as a matter

3     of law that CHT received no consideration for either of the

4     transfers or the closing of the title to the condo being

5     take -- at closing title to the condo being taken to 2 River

6     Terrace while using CHT's funds to do so.

7              While each of the transfers went through lawyers'

8     trust accounts, there is -- that raises no issue of fact,

9     nor concern of law.  There's no dispute that each of the

10    transfers were expressly made and earmarked for the purchase

11    of the condo.

12             The issue then is what evidence is before the

13    Court of CHT being or being rendered insolvent at the time

14    of each of the transfers and the closing of the condo

15    purchase.  As the Second Circuit held in 2005 in Sharp

16    International and as Judge Strong also held in Allou

17    Distributors, under New York DCL Section 273, there is a

18    long-recognized presumption of insolvency where the debtor

19    makes the conveyance without fair consideration.

20             The Court would also refer the parties to USA

21    United Fleet, 559 B.R. 41 at 60 (Bankr. E.D.N.Y. 2016), In

22    re. Ventimiglia (Bankr. E.D.N.Y. 2007) 362 B.R. 71 at 83,

23    and Feist v. Druckerman (2d Cir. 1934), 70 F.2d 333 at 334.

24    Case law both at the federal level and the state level under

25    New York DCL 273 makes clear that when the presumption of

Page 18

1    insolvency arises, as it does here, the burden then shifts

2    to the transferee to come forward with proof of the

3    transferor's insolvency.

4           Here again, 2 River Terrace has provided no

5    competent summary judgment evidence and specifically, no

6    competent summary judgment evidence that would be adequate

7    to rebut this presumption of insolvency.  Therefore, the

8    trustee has established as a matter of law that CHT was

9    insolvent or was rendered insolvent by each of the transfers

10   on the date of each of the transfers and at the date of the

11   closing of the condo purchase; therefore, summary judgment

12   is proper in favor of the plaintiff trustee as a matter of

13   law on the DCL 273 constructive fraudulent transfer claim.

14          With respect to DCL 273-a, as many courts,

15   including Lyman Commerce Solutions v. Lung, 2015 U.S.

16   District Lexis 51447 (S.D.N.Y. 2015) has held, any

17   conveyance made without fair consideration when the person

18   making it is a defendant in an action for money damages or a

19   judgment in such action has been docketed against him, is

20   fraudulent as to the plaintiff in that action without regard

21   to the actual intent of the defendant if, after the final

22   judgment has been entered, the defendant fails to satisfy

23   that judgment.

24          The stipulated facts in the summary judgment

25   record reflects that on December 16 of 2015, a final

Case 2:21-cv-01239-JMA  Document 9  Filed 06/21/21  Page 101 of 135 PageID #: 1861

Page 19


1    judgment was issued against all of the Orion Healthcorp.,

2    Inc. debtors, including CHT in the United States District

3    Court for the Southern District of Texas in an amount in

4    excess of $200,000.  That litigation existed prior to and

5    resulted in a final judgment being entered prior to the

6    closing of the condo purchase, and that litigation was

7    pending prior to the date of each of the transfers.

8            A proof of claim for that judgment was filed in

9    the main bankruptcy case of CHT and it remains unsatisfied.

10   Facts particular to this judgment are stipulated in the

11   joint statement of undisputed fact at docket item 15; on the

12   facing page, first page of that stipulation is found the

13   definition of the debtors from the Chapter 11 cases, which

14   starts with Orion Healthcorp., Inc. and then Constellation

15   Healthcare Technologies, Inc., and a number of other debtor

16   entities were included in the definition of debtors.

17           At stipulated fact No. 35, the parties agreed as

18   follows: On December 16, 2015, the Southern District of

19   Texas issued a judgment in the amount of $194,185 against

20   the debtors in favor of former employees, Jack McBride and

21   Alan Nottingham for unpaid deferred compensation.  The

22   judgment was filed as a proof of claim in Case No. 8-18-

23   71748 and assigned claim no. 10,001.  The filed proof of

24   claim remains unsatisfied, so this is an additional basis

25   upon which is the matter of law the trustee has established

Veritext Legal Solutions                                      1678
212-267-6868            www.veritext.com            516-608-2400

1    his entitlement to summary judgment to satisfy each of the

2    transfers and the closing of title to the condo in the name

3    of 2 River Terrace because each of the transfers and the

4    closing of title of the condo were constructively fraudulent

5    under DCL 273 and DCL 273-a and avoidable as to present and

6    future creditors.

7            Each of the transfers and the taking of title to

8    the condo in the name of 2 River Terrace are avoided, the

9    plaintiff is entitled to have all legal and equitable title

10   to the condo transferred to him by 2 River Terrace under

11   Bankruptcy Code Section 544 and 550, along with, as

12   requested, all associated keys and access cards.

13           I'm going to turn briefly to the trustee's claim

14   under New York DCL Section 276, which provides for a

15   conveyance which is made with actual intent to hinder, delay

16   or defraud, to be satisfied both as to present and future

17   creditors as discussed in MarketXT Holdings, 376 B.R. 390

18   and Allou Distributors.

19           Many courts which have looked at an actual fraud

20   claim under DCL 276 do so by analyzing certain badges of

21   fraud to establish fraudulent intent, which include: (1)

22   gross inadequacy of consideration; (2) a close relationship

23   between transferor and transferee; (3) the transferor's

24   insolvency at or as a result of the conveyance; (4) a

25   questionable transfer not in the ordinary course of

Page 21

1    business; (5) secrecy in the transfer; and (6) retention of

2    control of the property by the transferor after the

3    conveyance.

4            Uncontroverted here is that one of the sellers of

5    the condo was Elliott Greene.  His brother, Mitchell Greene,

6    is a lawyer at Robinson & Brog or was at the relevant time,

7    and that at all relevant times, that law firm represented

8    CHT and a number of Mr. Parmar's entities.  More

9    specifically, Mitchell Greene represented CHT in the sale

10   transaction of this condo, and Robinson & Brog law firm

11   provided substantial legal services to CHT and various

12   Parmar-related entities, including the debtors, whose

13   definition the Court had just referred to.

14           It's clear that Mr. Parmar retained convention

15   benefit and use of the condo post-closing and as noted, CHT

16   received no consideration for the transfers or the closing

17   of title.  Thus, badges (1), (2) and (4) are satisfied on

18   the summary judgment record.  However, for purposes of

19   summary judgment, the trustee has not met his burden of

20   proof as to badges (3), (5) and (6), retention of control of

21   the condo was not by the transferor or CHT, but was, in fact

22   and is argued by the trustee, Mr. Parmar.  The plaintiff has

23   not established secrecy in this transaction as a matter of

24   law.

25           With respect to insolvency, while the case law is

1    clear that it is presumed in a constructive fraudulent

2    transaction, parties have not provided briefing and the

3    Court is not prepared to conclude that insolvency should be

4    presumed in an actual fraud transaction and, in fact, an

5    actual fraud transaction can be found in the absence of

6    insolvency.

7            But here, there's no independent evidence of

8    insolvency as to CHT in and of itself at the time of each of

9    the transfers.  Thus, while insolvency has been demonstrated

10   for purposes of constructive fraud based upon the

11   presumption, the Court is not prepared to find insolvency

12   has been established for purposes of actual fraud.

13           With respect to intent to hinder, delay or defraud

14   creditors, this Court has limited evidence from which to

15   draw an inference as to Mr. Parmar's intent at the time he

16   authorized or directed each of the transfers to be made and

17   for title to be closed into 2 River Terrace, that the Court

18   is determined not to grant summary judgment on this record

19   on the actual intent claim.

20           The Court has also not today reached the

21   plaintiff's other request for relief as against 2 River

22   Terrace for a monetary judgment in the amount of a judgment

23   lien held by the board or the request for attorneys' fees.

24           The Court is, therefore, granting partial summary

25   judgment, avoiding the transfers, each of the transfers and

Page 23

1    the closing of title into 2 River Terrace as constructively

2    fraudulent.  Plaintiff is entitled to have all legal and

3    equitable title to the condo transferred to him by 2 River

4    Terrace under Bankruptcy Code Sections 544 and 550, along

5    with all associated keys and access cards.

6              As you know and I'll direct that your office

7    prepare a form of partial judgment, please submit that to --

8    circulate it each of the defendants prior to submission to

9    the Court.  I'd like to get that judgment in as quickly as

10   possible, so we'll say -- today is Tuesday, Monday is a non-

11   business day, so by Wednesday of next week, that would be

12   February 17th.  I'd like to have the judgment submitted by

13   the Court, so you should get that out by the end of the day

14   tomorrow, if at all possible, so that the parties have at

15   least two full business days to review it before submission

16   to the Court.

17             MR. NOLAN:  Yes, Your Honor.

18             THE COURT:  All right.  With respect to proceeding

19   to next steps, I'm going to hold an adjourned -- a further

20   adjourned pretrial conference on March 9th at 2:00 p.m.  At

21   that point, we can discuss the further charting of this

22   litigation for a trial on the remaining issues.

23             So, Mr. Nolan, if your office will docket notice

24   of adjournment and serve that on all defendants, March 9th

25   at 2:00 p.m.

Page 24

1              MR. NOLAN:  Yes, Your Honor.  Thank you.

2              THE COURT:  All right.  That will then conclude

3     the ruling conference and the pretrial conference in 20-

4     8051.  The Court will be in recess and we'll go off the

5     record.  Thank you.

6              MR. NOLAN:  Thank you, Your Honor.

7              (Whereupon these proceedings were concluded)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                          Page       Line

5

6    Motion to Extend Time Granted          22         24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  February 16, 2021

| & | | |
|---|---|---|
| **&** 4:3 9:11 21:6 21:10 | | |

**1**

**1** 20:21 21:17
**10,001** 19:23
**1001** 6:25
**10017** 4:6
**11** 12:6 19:13
**11501** 26:23
**11722** 2:3
**12j** 6:21 8:22
**130** 15:24
**1334** 6:4
**15** 19:11
**157** 6:4
**16** 18:25 19:18 26:25
**17th** 23:12
**18** 11:23
**18-71748** 1:3 6:13
**19** 9:14
**1934** 17:23
**194,185** 19:19
**1964** 15:24
**19th** 9:6

**2**

**2** 5:9 6:21 7:12,19
7:21 8:13,23 9:23
9:24 10:1,6,7,16
10:22,23,25 11:4
11:9 12:16,21
13:19 14:3,9,15
15:1,4,16 16:13
16:20,23 17:5
18:4 20:3,8,10,22
21:17 22:17,21
23:1,3
**20** 24:3
**20-8051** 5:2,25
**200,000** 11:10
19:4

**2005** 13:7 17:15
**2007** 17:22
**2011** 13:9
**2015** 8:15 11:16
11:18 12:3 18:15
18:16,25 19:18
**2016** 9:6,14 17:21
**2018** 11:6
**2020** 11:13
**2021** 2:5 26:25
**21st** 7:4
**22** 25:6
**23rd** 8:15
**24** 25:6
**272** 13:24
**273** 12:15 13:1,5
13:10 17:17,25
18:13,14 20:5,5
**276** 20:14,20
**28** 6:4
**290** 2:2
**2:00** 23:20,25
**2:30** 2:6
**2d** 13:7 17:23

**3**

**3** 20:23 21:20
**300** 26:22
**32** 13:8
**330** 26:21
**331** 15:24
**333** 17:23
**334** 17:23
**34th** 4:5
**35** 19:17
**362** 17:22
**370,000** 11:14
**376** 20:17
**390** 20:17

**4**

**4** 16:6 20:24 21:17
**403** 13:7
**41** 17:21

**42** 11:18
**43** 13:7
**44** 7:15
**446** 13:8
**45** 7:16

**5**

**5** 21:1,20
**5,058,408.81** 9:8
**5.5** 13:17,17
**5.6** 11:1
**51447** 18:16
**53** 13:7
**544** 20:11 23:4
**545,000** 8:19 9:3
**55** 7:16
**550** 20:11 23:4
**559** 17:21
**56** 7:14 14:24 16:6
16:19,23

**6**

**6** 21:1,20
**60** 17:21
**61** 13:8
**63** 13:8
**650,000** 14:14

**7**

**70** 17:23
**7052** 6:2
**71** 17:22
**71748** 19:23
**780** 4:5

**8**

**8-18** 19:22
**8-20-08051** 1:4
**8051** 24:4
**83** 17:22

**9**

**9** 2:5
**95** 12:7
**9th** 23:20,24

**a**

**abeyance** 5:14
**absence** 22:5
**access** 20:12 23:5
**account** 8:12,19
8:20,20 9:9,10
**accounts** 17:8
**accrue** 11:11
**accurate** 26:4
**acknowledged**
15:2
**acquired** 11:17,22
**acquisition** 11:21
**acquisitions** 8:4
11:22
**acting** 8:21
**action** 6:9 18:18
18:19,20
**active** 8:14
**actual** 18:21
20:15,19 22:4,5
22:12,19
**addition** 10:19
**additional** 19:24
**addressed** 6:25
**adequate** 18:6
**adjourned** 5:17
23:19,20
**adjournment**
23:24
**administratively**
6:12
**admissible** 16:9
**admissions** 7:16
**adv** 1:4
**adversary** 5:5,24
6:3,6,15 7:17,20
8:11 9:20
**affiant** 16:10
**affidavit** 14:20
15:3 16:7,20
**affidavits** 7:13

**afternoon** 5:24
**aggregate** 12:5
**aggregated** 8:3
**ago** 15:23
**agreed** 19:17
**agreement** 7:23
8:2
**agreements** 14:11
**al** 1:15 5:3
**alan** 2:22 19:21
**albeit** 6:23
**allegation** 14:9
**alleged** 6:16 10:6
10:12 16:22
**allou** 13:8 17:16
20:18
**alternate** 16:14
**amount** 9:8 11:10
11:13 19:3,19
22:22
**analyzing** 20:20
**annual** 14:14
**antecedent** 14:2
15:7,13
**appearance** 6:23
**appeared** 6:24
**appearing** 5:7
**approximately**
11:1,14
**argued** 14:3 21:22
**argues** 15:17
**arguing** 12:15
**argument** 7:4
15:2
**arises** 18:1
**assert** 14:15
**asserted** 16:18
**assertion** 14:5,6
14:20,23 15:18
**assertions** 14:21
15:6
**asserts** 14:3,15

**assets** 11:20,23
**assigned** 19:23
**associated** 20:12
23:5
**ast** 1:3,4
**attorneys** 4:4 8:21
22:23
**authenticate** 15:5
**authenticating**
16:21
**authenticity**
14:24
**authorized** 6:1
22:16
**avenue** 4:5 5:11
**avoidable** 20:5
**avoided** 20:8
**avoiding** 22:25

**b**

**b** 2:21 6:4
**b.r.** 13:8 17:21,22
20:17
**back** 5:10 8:7
**background** 6:8
**badges** 20:20
21:17,20
**bank** 8:12,19 9:8
9:9
**bankr** 17:21,22
**bankruptcy** 1:1
2:1,23 6:1,11,17
19:9 20:11 23:4
**based** 12:18 14:14
14:24 22:10
**basically** 5:14
**basis** 19:24
**behalf** 5:8 8:22
**benefit** 7:18 21:15
**better** 6:25
**board** 5:12 11:8
11:12 22:23
**bonus** 14:14

**bowyer** 9:1
**breach** 11:7
**briefing** 7:2 22:2
**briefly** 20:13
**brings** 6:9
**brog** 9:11 21:6,10
**brother** 21:5
**burden** 12:13
18:1 21:19
**business** 8:5 10:9
10:16,22 11:20,24
21:1 23:11,15

**c**

**c** 4:1 5:1 16:6,19
26:1,1
**called** 8:18 11:18
11:22 14:11
**capacity** 6:9 8:21
**cards** 20:12 23:5
**case** 1:3,4 6:12
7:12 15:24 17:24
19:9,22 21:25
**cases** 19:13
**central** 2:3
**ceo** 8:17
**certain** 7:16 11:5
20:20
**certainly** 13:16
**certified** 26:3
**cfo** 9:7
**chapter** 19:13
**charges** 11:6
**charting** 23:21
**checking** 8:12
**chief** 8:17
**cht** 8:10,11,17,18
9:7,8,22 10:1,10
10:17,21,23 11:2
11:17,21 12:9,22
13:15,20,21,23
14:4,10,12 15:8
17:3,13 18:8 19:2
19:9 21:8,9,11,15

21:21 22:8
**cht's** 8:19 17:6
**cir** 13:7 17:23
**circuit** 13:6 15:23
17:15
**circulate** 23:8
**city** 8:23
**civil** 16:6
**claim** 12:14 18:13
19:8,22,23,24
20:13,20 22:19
**claims** 3:2 16:15
**clear** 5:10 17:25
21:14 22:1
**clerk** 5:2
**clodagh** 9:1
**close** 9:25 20:22
**closed** 22:17
**closing** 9:13,21
10:2,15,17,20,25
11:4 12:10,21
13:3 14:5 17:4,5
17:14 18:11 19:6
20:2,4 21:15,16
23:1
**code** 6:17 20:11
23:4
**collectively** 9:16
**come** 18:2
**commerce** 18:15
**common** 11:6
**companies** 8:3
**company** 8:14
**compensation**
19:21
**competent** 10:11
12:19 13:15 15:21
16:10,11,16 18:5
18:6
**complex** 8:23 11:8
**comply** 16:19
**comprising** 9:15

**concern** 17:9
**concerning** 6:18
  16:25
**concerns** 12:12
**conclude** 22:3
  24:2
**concluded** 24:7
**condo** 8:25 9:1,4
  9:14,18,22 10:8
  10:15,20,25 11:4
  12:10,16 13:18,21
  14:5,16 15:9,15
  17:4,5,11,14
  18:11 19:6 20:2,4
  20:8,10 21:5,10
  21:15,21 23:3
**condominium**
  6:19 8:22,24 11:8
**conduct** 10:8
**conference** 5:23
  7:5 23:20 24:3,3
**confirmed** 7:24
**connection** 10:1
**consideration**
  11:3 12:22 13:4
  13:12,16,17,22,25
  14:1,8,23 16:25
  17:3,19 18:17
  20:22 21:16
**consolidated** 6:12
  8:2 12:4
**consolidating**
  12:3
**constellation** 8:9
  19:14
**constituted** 11:7
**constructive**
  18:13 22:1,10
**constructively**
  12:16 13:11 20:4
  23:1
**consulting** 14:11

**contained** 7:10
**contention** 16:18
**continued** 5:12
  11:11
**control** 21:2,20
**controlled** 14:11
**convention** 21:14
**conveyance** 13:10
  17:19 18:17 20:15
  20:24 21:3
**conveyed** 9:21
**core** 6:4
**counter** 15:21
**country** 26:21
**couple** 6:14
**course** 20:25
**court** 1:1 2:1 5:4
  5:14,19 6:5,23,24
  7:2,9,24 12:18
  13:8,14 16:22
  17:13,20 19:3
  21:13 22:3,11,14
  22:17,20,24 23:9
  23:13,16,18 24:2
  24:4
**court's** 5:25
**courts** 13:5,9
  18:14 20:19
**covenants** 11:7
**created** 9:22
**creditor** 6:18 13:2
**creditors** 20:6,17
  22:14
**critical** 15:11
**cumulative** 12:6

## d

**d** 5:1 25:1
**damages** 18:18
**daniel** 7:13
**date** 5:17 8:15
  10:17 18:10,10
  19:7 26:25

**day** 23:11,13
**days** 23:15
**dcl** 12:14 13:1,5,9
  13:24 17:17,25
  18:13,14 20:5,5
  20:14,20
**deadline** 3:2
**debt** 10:23 11:13
  14:2 15:7,13,14
**debtor** 1:10 6:10
  6:13,17 7:25,25
  8:10,11 10:10,17
  11:1 12:9 13:10
  14:10,12 17:18
  19:15
**debtors** 12:4 19:2
  19:13,16,20 21:12
**december** 5:10
  8:15 18:25 19:18
**declarant** 16:10
**declaration** 7:11
  16:7
**deemed** 13:10
**default** 6:20,22
**defaulted** 11:5
**defendant** 5:9
  6:21,24 7:17,19
  8:13 9:22 10:3,5,6
  10:25 14:19 16:13
  16:15 18:18,21,22
**defendants** 1:16
  7:20 9:19 14:22
  23:8,24
**deferred** 19:21
**definition** 19:13
  19:16 21:13
**defraud** 20:16
  22:13
**delay** 20:15 22:13
**demonstrated**
  22:9
**denied** 6:23 15:20

**detail** 12:24
**determine** 6:5
**determined** 12:18
  22:18
**direct** 23:6
**directed** 7:21 9:10
  9:20 22:16
**directly** 9:12
**disagreement**
  5:19
**discover** 16:2
**discuss** 23:21
**discussed** 14:25
  20:17
**dispute** 17:9
**distributors** 13:8
  17:17 20:18
**district** 1:2 6:7
  18:16 19:2,3,18
**docket** 7:12,15
  14:24 19:11 23:23
**docketed** 18:19
**documents** 14:19
  15:5 16:22
**dollar** 6:19
**dollars** 14:4
**domestic** 8:14
**doubt** 9:25
**dragelin** 7:11
**draw** 22:15
**drawn** 7:11
**dressler** 15:23
**druckerman**
  17:23

## e

**e** 2:21,21 4:1,1 5:1
  5:1 16:23 25:1
  26:1
**e.d.n.y.** 17:21,22
**early** 5:10
**earmarked** 17:10
**eastern** 1:2 6:7

**ebitda** 14:15
**ecro** 2:25
**effect** 6:7
**efforts** 5:21
**ehrenberg** 1:12
  5:2
**either** 5:20 7:7
  10:18 12:9,22
  13:22 15:13,14
  17:3
**elena** 1:15 5:2
  10:3
**elliott** 9:1 21:5
**employees** 10:9
  11:20,24 19:20
**entered** 14:10
  18:22 19:5
**entities** 6:11 7:25
  7:25 8:5,8 10:10
  19:16 21:8,12
**entitled** 12:19
  20:9 23:2
**entitlement** 12:13
  13:1 20:1
**entity** 6:21 8:13
  9:23 11:17,20,22
  11:23,25 14:11
  15:8
**equitable** 20:9
  23:3
**equivalent** 13:25
**escrow** 9:12
**establish** 12:13
  15:21 20:21
**established** 7:23
  12:25 15:17 17:2
  18:8 19:25 21:23
  22:12
**et** 1:15 5:3
**evidence** 10:11
  13:14,15 15:12,21
  16:9,12,17 17:12
  18:5,6 22:7,14

**evidentiary** 14:6
  15:25 16:21
**excess** 19:4
**exchange** 13:23
  14:1
**exchanged** 14:13
**execute** 11:12
**exhibits** 14:22
**existed** 13:2 15:13
  19:4
**existence** 15:7
**exists** 13:25
**explanation** 16:14
**expressly** 17:10
**extend** 3:1 25:6

**f**

**f** 2:21 26:1
**f.2d** 15:24 17:23
**f.3d** 13:7
**facing** 19:12
**fact** 10:8,12 14:8
  15:1,19 16:4,15
  16:18 17:8 19:11
  19:17 21:21 22:4
**facts** 7:7,9,15 9:25
  15:18 16:9,17,22
  16:24 18:24 19:10
**factual** 15:3
**failed** 14:7 16:16
**fails** 18:22
**failure** 11:7
**fair** 12:22 13:4,11
  13:16,24,25 14:1
  17:19 18:17
**fatal** 15:11
**favor** 18:12 19:20
**february** 2:5 5:18
  9:6,14 11:6 23:12
  26:25
**federal** 2:2 6:1,17
  12:5 16:6 17:24
**fees** 22:23

**feist** 17:23
**fictitious** 11:20,25
**filed** 6:11 19:8,22
  19:23
**filing** 11:9
**final** 18:21,25
  19:5
**financial** 8:17
  12:1,8
**find** 22:11
**firm** 8:20 9:11
  21:7,10
**first** 12:11 13:5
  14:12 19:12
**fixed** 14:13
**fleet** 17:21
**floor** 4:5
**focus** 8:10
**following** 7:7
**follows** 19:18
**foregoing** 26:3
**form** 5:25 23:7
**formed** 8:14
**former** 19:20
**forward** 5:5 18:2
**found** 7:15 19:12
  22:5
**foundation** 14:23
  16:21
**fraud** 20:19,21
  22:4,5,10,12
**fraudulent** 6:16
  12:16 13:11 18:13
  18:20 20:4,21
  22:1 23:2
**full** 23:15
**funds** 9:15 14:17
  17:6
**further** 5:9 23:19
  23:21
**future** 20:6,16

**g**

**g** 5:1
**generically** 16:11
**gentleman** 8:16
  8:18
**genuine** 7:8 14:7
  15:18
**girlfriend** 10:4
**given** 6:23 9:25
**go** 24:4
**going** 5:22,23
  20:13 23:19
**governed** 8:1
**grant** 22:18
**granted** 15:1 25:6
**granting** 22:24
**greene** 9:1,1 21:5
  21:5,9
**greenes** 9:2,19
**gross** 20:22
**group** 6:13 8:10
  12:3,6
**groups** 8:8

**h**

**health** 11:18
**healthcare** 8:6,9
  14:12 19:15
**healthcorp** 1:8
  6:10 19:1,14
**hear** 6:5
**hearing** 3:1 5:24
  6:22 14:25
**hearsay** 14:24
**held** 7:3 9:10 13:9
  15:23 17:15,16
  18:16 22:23
**hinder** 20:15
  22:13
**hold** 5:14 23:19
**holdings** 20:17
**hon** 2:22
**honor** 5:7,8 23:17
  24:1,6

**hyde** 3:25 26:3,8

**i**

**inadequacy** 20:22
**include** 12:8 14:2
  20:21
**included** 11:15
  12:1 19:16
**including** 10:10
  13:6 18:15 19:2
  21:12
**income** 12:5,7
**independent** 22:7
**indicates** 11:19
**inference** 22:15
**insolvency** 17:18
  18:1,3,7 20:24
  21:25 22:3,6,8,9
  22:11
**insolvent** 12:23
  13:12,13 17:13
  18:9,9
**instructed** 8:17
  9:7
**instructions** 9:15
**intent** 18:21 20:15
  20:21 22:13,15,19
**interest** 11:11
**international** 13:6
  17:16
**islip** 2:3
**issue** 7:8 12:11
  14:7 15:18 16:14
  16:15,18 17:8,12
**issued** 19:1,19
**issues** 6:24 12:24
  23:22
**item** 14:24 19:11
**items** 7:15

**j**

**j** 7:11
**jack** 19:20
**january** 5:17 7:4

**jeff** 5:7
**jeffrey** 4:8 7:13
**joint** 7:14 19:11
**jones** 4:3 7:13
**judge** 2:23 5:22
  13:7 17:16
**judgment** 6:21,22
  7:1,3,7,10,12,21
  10:11,11 11:9,11
  11:14,16,19 12:2
  12:7,12,13,19,20
  13:1,2 15:12,19
  15:20 16:2,8,12
  16:16,19,24 18:5
  18:6,11,19,22,23
  18:24 19:1,5,8,10
  19:19,22 20:1
  21:18,19 22:18,22
  22:22,25 23:7,9
  23:12
**jurisdiction** 6:5

**k**

**keys** 20:12 23:5
**know** 23:6
**knowledge** 16:8
**known** 8:8,23

**l**

**lack** 14:23,23
  16:25
**late** 6:23
**law** 8:15,20 9:11
  12:14,17,20 13:1
  15:17 17:3,9,24
  18:8,13 19:25
  21:7,10,24,25
**laws** 6:18
**lawyer** 21:6
**lawyers** 9:10 17:7
**laying** 16:21
**ledanski** 3:25 26:3
  26:8
**legal** 20:9 21:11
  23:2 26:20

**level** 17:24,24
**lexis** 18:16
**liability** 8:14
**lien** 22:23
**limited** 8:14 22:14
**line** 25:4
**liquidating** 3:1
  6:9 7:22,23 8:2
**litigating** 5:11
**litigation** 9:24
  12:4 19:4,6 23:22
**llc** 6:22 11:18,22
**llp** 4:3 8:21
**located** 8:22
**long** 15:23 17:18
**look** 5:15
**looked** 20:19
**losses** 12:5
**lung** 18:15
**lustrin** 8:20
**lyman** 18:15

**m**

**m&t** 8:12,19 9:9
**main** 19:9
**maintained** 8:11
**making** 18:18
**managed** 9:24
**management** 8:7
**managers** 5:12
  11:9,12
**mandate** 16:5
**mandatory** 16:1
**march** 23:20,24
**marketxt** 20:17
**material** 14:8
  15:19
**matter** 1:6 5:14
  12:14,20,25 16:10
  17:2 18:8,12
  19:25 21:23
**mcbride** 19:20
**measured** 10:23

**met** 12:13 21:19
**million** 11:2,19,23
  12:6,7 13:17,18
**millions** 14:4
**mineola** 26:23
**minutes** 6:14
**mitchell** 21:5,9
**monday** 23:10
**monetary** 22:22
**money** 10:21
  18:18
**motion** 3:1 6:22
  6:23 7:9 9:20 16:8
  25:6
**move** 5:22
**moved** 6:20 14:21
**moving** 5:23
**multimillion** 6:18
**multiple** 6:11 7:20
  7:25 14:14
**mv** 15:24

**n**

**n** 4:1 5:1 25:1
  26:1
**name** 10:7 13:19
  15:15 20:2,8
**narrative** 5:25
  15:22
**net** 12:5,7
**new** 1:2 2:3 4:6
  6:7,17 8:14,23
  12:14,17 13:1
  17:17,25 20:14
**newly** 9:22
**nolan** 4:8 5:7,7
  7:13 23:17,23
  24:1,6
**non** 23:10
**north** 11:22
**noted** 7:22 21:15
**notice** 23:23
**nottingham** 19:21

**number** 6:3 8:3
19:15 21:8
**ny** 4:6 26:23

**o**

**o** 2:21 5:1 26:1
**object** 3:2
**objected** 14:18
**objections** 14:25
15:1
**objective** 16:2
**obligations** 5:13
**obtaining** 11:9
**occupied** 10:2
**occurred** 9:13
**october** 11:13
**offers** 16:13,17
**office** 8:7 23:6,23
**officer** 8:18
**officers** 10:9
**old** 26:21
**operate** 8:6
**operating** 12:5,6
**oppose** 16:7,19
**opposing** 15:20
**oral** 7:4 15:2
**orders** 6:6
**ordinary** 20:25
**original** 11:10
**originally** 6:11
**orion** 1:8 6:10
19:1,14
**outstanding** 5:13
11:13,13
**owed** 10:21,23
14:4,17 15:7
**owing** 11:14
**owners** 8:22,24
**ownership** 13:21

**p**

**p** 4:1,1 5:1
**p.m.** 23:20,25
**pachulski** 4:3

**page** 19:12,12
25:4
**papers** 5:15 10:4
**parmar** 8:16,16
9:6,24 10:1,2 14:4
14:11,13,17 15:4
15:7 21:12,14,22
**parmar's** 9:15
21:8 22:15
**part** 7:12 8:10
11:15 12:1 15:14
**partial** 22:24 23:7
**particular** 19:10
**particularly**
16:25
**parties** 7:14 17:20
19:17 22:2 23:14
**party** 15:17,20
16:17
**paul** 8:15,16
**pay** 9:17
**paying** 11:5 13:17
**payment** 9:3
**pending** 19:7
**period** 10:21
**person** 18:17
**personal** 16:8
**phoenix** 11:18,19
11:21
**physician** 8:8
**placing** 10:7
12:15
**plaintiff** 1:13 4:4
5:8 6:8,20 7:6,22
12:12 14:18,21
17:2 18:12,20
20:9 21:22 23:2
**plaintiff's** 22:21
**plaintiffs** 16:23
**plan** 7:24 8:1
**plaza** 2:2
**please** 23:7

**pm** 2:6
**point** 23:21
**portion** 5:23
**possible** 23:10,14
**post** 21:15
**practice** 8:5,7
**prepare** 23:7
**prepared** 22:3,11
**present** 20:5,16
**presents** 6:3
**presumed** 22:1,4
**presumption**
17:18,25 18:7
22:11
**pretrial** 23:20
24:3
**price** 9:17
**primarily** 8:6
**prior** 10:13,19
13:2 19:4,5,7 23:8
**procedural** 6:8
**procedure** 16:2,6
**procedures** 6:1
**proceeding** 5:5,24
6:3,6,15 7:17,20
8:11 9:20 23:18
**proceedings** 6:4
6:12 24:7 26:4
**progress** 5:6,9
**prong** 14:3
**proof** 18:2 19:8
19:22,23 21:20
**proper** 18:12
**property** 11:1
13:19 14:1 21:2
**provide** 15:3,21
16:16
**provided** 14:19,20
14:22 15:5 16:22
18:4 21:11 22:2
**provides** 13:24
20:14

**providing** 8:6
**purchase** 6:18 9:4
9:13,17 10:25
11:4 13:18 14:16
15:10 17:10,15
18:11 19:6
**purchased** 10:15
10:20
**purpose** 9:2
**purposes** 7:8 10:5
11:24 21:18 22:10
22:12
**put** 11:14

**q**

**question** 13:23
**questionable**
20:25
**quickly** 23:9
**quote** 16:1

**r**

**r** 2:21 4:1 5:1 26:1
**raise** 14:7
**raises** 16:15 17:8
**reached** 22:20
**real** 16:3
**rebut** 18:7
**receive** 13:21,22
13:23
**received** 11:1,2
13:15,25 14:13
17:3 21:16
**recess** 24:4
**recite** 7:10
**recognized** 17:18
**record** 7:10,13,18
11:16,19 12:2,7
15:12 18:25 21:18
22:18 24:5 26:4
**records** 11:15
12:1,8
**recover** 6:15,16
**refer** 7:18 8:9:25
9:2,4,9,16 10:4

17:20
**reference**  6:6
**referred**  8:16 12:3
  16:11 21:13
**referring**  7:19
**reflected**  12:5
**reflects**  18:25
**regard**  18:20
**related**  6:10 21:12
**relationship**
  10:16 15:8,9
  20:22
**relevant**  8:12 9:23
  10:5,21 21:6,7
**relief**  22:21
**remaining**  23:22
**remains**  15:19,24
  16:18 19:9,24
**rendered**  12:23
  13:12 17:13 18:9
**reorganization**
  7:24
**reporting**  12:3
**represented**  21:7
  21:9
**request**  7:6 22:21
  22:23
**requested**  20:12
**requirements**
  15:25
**residential**  5:12
  11:8
**resolution**  5:6,20
**resolved**  5:11
**respect**  7:3 12:11
  18:14 21:25 22:13
  23:18
**result**  14:16 20:24
**resulted**  11:8 19:5
**retained**  21:14
**retention**  21:1,20
**return**  11:2

**returns**  12:2
**revenue**  8:7
**review**  23:15
**right**  5:4,19,21
  23:18 24:2
**river**  5:9 6:21
  7:19,21 8:13,23
  9:23,24 10:1,6,7
  10:16,22,23,25
  11:5,10 12:16,21
  13:19 14:3,9,15
  15:1,4,16 16:13
  16:20 17:5 18:4
  20:3,8,10 22:17
  22:21 23:1,3
**road**  26:21
**robinson**  9:11
  21:6,10
**rule**  6:25 7:14
  16:5,19,23
**rules**  6:1 16:6
**ruling**  5:23,25 7:5
  8:25 10:5 24:3
**rulings**  25:3

**s**

**s**  2:22 4:1 5:1
**s.d.n.y.**  18:16
**salary**  14:14
**sale**  5:16,20 9:14
  21:9
**sam**  8:18
**sandpiper**  15:24
**sartison**  1:15 5:3
  10:3,4
**satisfaction**  14:2
**satisfied**  15:14
  16:4 20:16 21:17
**satisfy**  18:22 20:1
**schedule**  7:3
**scheduled**  7:5
**second**  9:7 13:6
  15:23 17:15

**secrecy**  21:1,23
**section**  6:4 12:14
  13:1,10,24 17:17
  20:11,14
**sections**  23:4
**see**  14:24
**sellers**  9:2,19 21:4
**september**  11:18
**series**  8:2
**serve**  23:24
**services**  14:13,17
  21:11
**set**  7:2 16:8
**sharp**  13:6 17:15
**sheriff's**  5:16,20
**shifts**  18:1
**short**  5:11
**show**  16:9
**side**  16:3
**simply**  16:16
**simultaneous**
  11:21
**simultaneously**
  9:13
**solely**  12:8
**solutions**  18:15
  26:20
**sonya**  3:25 26:3,8
**sought**  11:12
**sources**  7:9
**southern**  19:3,18
**space**  8:6
**speaks**  6:15
**specific**  12:8 14:9
**specifically**  16:5
  18:5 21:9
**standing**  6:6
**stang**  4:3
**star**  11:22
**start**  5:2
**starting**  11:6
**starts**  19:14

**state**  17:24
**stated**  16:11
**statement**  7:14
  19:11
**states**  1:1 2:1 16:6
  19:2
**status**  5:5,20 10:4
**steps**  23:19
**stipulated**  7:7
  18:24 19:10,17
**stipulation**  19:12
**strike**  14:21
**strong**  13:7 17:16
**subject**  8:1
**submission**  7:3
  23:8,15
**submit**  23:7
**submitted**  16:20
  23:12
**subsequent**  10:2,7
  11:4
**substantial**  21:11
**substantiated**
  16:24
**substantiation**
  15:3
**suit**  11:9
**suite**  26:22
**summary**  7:1,3,6
  7:10,12,21 10:11
  10:11 11:16,19
  12:2,7,11,13,19
  15:12,19,20 16:2
  16:7,11,16,19,24
  18:5,6,11,24 20:1
  21:18,19 22:18,24
**support**  14:7,19
  14:20,22 15:18,25
  16:3,7,17,24

**t**

**t**  26:1,1
**take**  17:5

**taken** 13:18 17:5
**talk** 6:13 12:23
**tax** 12:2,3,5
**taxes** 11:5
**technologies** 8:9
19:15
**terms** 5:4 6:8 16:5
**terrace** 5:9 6:21
7:19,21 8:13,23
9:23,24 10:1,6,8
10:16,22,23,25
11:5,10 12:16,21
13:19 14:3,9,15
15:2,4,16 16:13
16:20 17:6 18:4
20:3,8,10 22:17
22:22 23:1,4
**testify** 15:6 16:10
**tetelman** 8:20
**texas** 19:3,19
**thank** 24:1,5,6
**things** 6:16
**third** 4:5
**time** 5:15 8:12,17
8:21,24 10:14,15
10:19,20,21,24,24
11:23 12:9 14:4
17:13 21:6 22:8
22:15 25:6
**timeframe** 5:18
**times** 9:23 21:7
**timothy** 7:11
**title** 6:4 9:21 10:7
12:15,21 13:3,18
15:15 17:4,5 20:2
20:4,7,9 21:17
22:17 23:1,3
**today** 7:5 15:25
22:20 23:10
**tomorrow** 23:14
**transaction** 11:17
21:10,23 22:2,4,5

**transactions**
11:16 16:14
**transcribed** 3:25
**transcript** 26:4
**transfer** 8:19 9:3
9:5,7,9,10,11
10:18 12:9,17
13:13,22 18:13
20:25 21:1
**transferee** 18:2
20:23
**transferer** 13:12
**transferor** 20:23
21:2,21
**transferor's** 18:3
20:23
**transferred** 14:1
20:10 23:3
**transferring**
13:17
**transfers** 6:16
9:15,17 10:14,14
10:20,24 11:3
12:15,20,23 13:3
13:3,24 14:5,16
15:9,15 17:4,7,10
17:14 18:9,10
19:7 20:2,3,7
21:16 22:9,16,25
22:25
**treat** 16:23
**triable** 16:15
**trial** 23:22
**true** 26:4
**trust** 2:22 5:23
7:23 8:2 9:10 17:8
**trustee** 6:10,20
7:22 12:12,19,25
18:8,12 19:25
21:19,22
**trustee's** 20:13
**trustee's** 3:1

**truth** 7:8
**truthfulness** 15:6
**try** 5:13
**tuesday** 23:10
**turn** 20:13
**turning** 13:5
**two** 9:9,10,16
10:14,14 11:16
23:15

**u**

**u.s.** 2:23 18:15
**uncontroverted**
21:4
**underlying** 5:15
16:1
**understanding**
5:16
**undisputed** 7:15
9:25 10:13 13:14
13:15 17:1 19:11
**unit** 6:19 8:22,24
9:1,22 10:3
**united** 1:1 2:1
14:12 17:21 19:2
**unknown** 2:25
**unpaid** 19:21
**unsatisfied** 19:9
19:24
**usa** 17:20
**use** 21:15
**utilities** 11:5

**v**

**v** 1:14 5:2 15:23
17:23 18:15
**various** 8:7 21:11
**ventimiglia** 17:22
**veritext** 26:20
**version** 16:3

**w**

**way** 16:1
**wednesday** 23:11

**week** 23:11
**went** 9:11 17:7
**wire** 8:18 9:3
**work** 5:12,13
**worth** 11:1

**x**

**x** 1:5,11,17 25:1

**y**

**year** 7:4 12:2
**york** 1:2 2:3 4:6
6:7,17 8:15,23
12:14,17 13:1
17:17,25 20:14

**z**

**zaharis** 8:18
**ziehl** 4:3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------

In re:                                          :    Chapter 11
                                                :
ORION HEALTHCORP, INC[1].                        :    Case No. 18-71748 (AST)
                                                :
                                    Debtors.    :    (Jointly Administered)
------------------------------------            :
                                                :
HOWARD M. EHRENBERG IN HIS CAPACITY             :
AS LIQUIDATING TRUSTEE OF ORION                 :    Adv. Pro. No. 20-08051 (AST)
HEALTHCORP, INC., ET AL.,                        :
                                                :
                            Plaintiff,          :
                                                :
v.                                              :
                                                :
ELENA SARTISON; 2 RIVER TERRACE                 :
APARTMENT 12J, LLC; CLODAGH BOWYER              :
GREENE A/K/A CLODAGH BOWYER;                    :
ELLIOTT GREENE,                                 :
                                                :
                            Defendants.         :
------------------------------------            :


## JOINT STATEMENT OF PLAINTIFF AND DEFENDANT OF UNCONTROVERTED FACTS WITH REFERENCE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

Comes now Plaintiff, Howard M. Ehrenberg In His Capacity As Liquidating Trustee Of

Orion Healthcorp, Inc., Et Al., and Defendant 2 River Terrace Apartment 12J, LLC, with respect

to the Plaintiff's Motion For Summary Judgment, Or In The Alternative Summary Adjudication,

and submit a Joint Statement of Facts:

I.    **Purchase of the Condominium Unit**

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 1. | The Debtors were a consolidated enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices.<br><br>(See Declaration of Timothy J. Dragelin, ¶11, Dkt No. 2, Case no. 8-18-71748-ast) | Not Disputed. |
| 2. | Defendant is an active Domestic Limited Liability Company formed under the laws of the State of New York on December 23, 2015.<br><br>Affidavit of Jeffrey Nolan, ¶2;  See NYS Department of State, Division of Corporations certificate, attached as Exhibit B | Not Disputed. |
| 3. | The Debtor's Constellation Healthcare Technologies maintained a checking account at Manufacturer's Trust Bank, Account #-68132<br><br>See Affidavit of Daniel Jones, ¶4; See M&T Bank Statements, attached to Affidavit of Daniel Jones as Exhibit A & B. | Not Disputed. |

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 4. | On December 23, 2015, Paul Parmar, the chief executive officer ("CEO") of the Debtor CHT ("Parmar"), instructed Sam Zaharis, the chief financial officer ("CFO") of Debtor to transfer $545,000 by wire from the Debtor's M&T Bank account, to the account of Lustrin Tetelman, LLP., attorneys for Clodagh Bowyer Greene and Elliott Greene (the "Sellers")<br><br>See Affidavit of Daniel Jones, ¶ 4 referencing Emails dated December 23, 2015 attached to the Affidavit of Daniel Jones, as Exhibit 4. | Not Disputed. |
| 5. | The Seller, Elliott Greene, is the brother of Mitchell Greene, Esq, a partner with Robinson Brog.  Mitchell Greene along with his son Adam Greene, also an attorney at Robinson Brog, represented Parmar in acquiring the Condominium Unit.<br><br>See Affidavit of Jeffrey Nolan, ¶5; See emails attached as Exhibit 4, to the Affidavit of Daniel Jones. | Not Disputed. |
| 6. | On December 29, 2015, Parmar's instructed his identity not be revealed by instructing that "Salil and Kiran Sharma" be reflected as the purchasers of the Condominium Unit (as evidenced in the email exchange dated between Parmar, Adam Greene, and Zaharis).<br><br>See Affidavit of Jeffrey Nolan, ¶7; See Exhibit 4, attached to the Affidavit of Daniel Jones. | Disputed that Parmar was attempting to hide his identity; further Defendant objects to the fact as having no relevance to any material issue as Salil and Kiran Sharma were not named as purchasers and are not listed on the title or deed. |

| | **Plaintiff's Statement of Fact** | **Defendant's Response in Reply** |
|---|---|---|
| 7. | Parmar and Sam Zaharis ("Zaharis") orchestrated the purchase of the Condominium Unit with funds of the Debtor out of the Debtor's bank account maintained at M&T Bank. After the deposit for $545,000 was wired, the remaining balance of the purchase price and closing costs in the amount of $5,058,408.81 were wired out of the Debtor's M&T Bank account on February 19, 2016.<br><br>See Affidavit of Daniel Jones, ¶5; See Exhibits 1, 2, and 5, attached to the Affidavit of Daniel Jones; See Affidavit of Jeffrey Nolan, ¶6 | Not Disputed that the funds were wired from the Debtor's M&T bank account at Parmar's direction; objection to the term "orchestrated." |
| 8. | The monies were wired into the Debtor's IOLA account at Robinson Brog and on the same day a cashier's check cut to the Sellers, Elliott Greene and Clodagh Bowyer.<br><br>See Affidavit of Jeffrey Nolan, ¶6; See Exhibit D, to the Affidavit of Jeffrey Nolan. | Not Disputed that the two transfers took place as described; Defendant contends that the escrow account held other (non-CHT) Parmar funds on that same date so that it cannot be said that the funds for the cashier's check originated from the M&T bank wire. |
| 9. | Upon purchasing the Condominium Unit in 2016, Parmar occupied the unit with his girlfriend, Defendant Elaine Sartison. , which memorialize Parmar's discussions with Douglas Elliman Property Management Company and his admission he was occupying the Condominium Unit.<br><br>See Affidavit of Jeffrey Nolan, ¶8; See Exhibit E, emails dated April 12, 2018, attached to the Affidavit of Jeffrey Nolan. | Not Disputed; Defendant however adds that on a routine basis business was also conducted at the Condominium by employees and officers of the Debtor and of CC Capital. |

| | **Plaintiff's Statement of Fact** | **Defendant's Response in Reply** |
|---|---|---|
| 10. | Parmar asserts he is the manager of Defendant, 2 River Terrace Apartment 12J, LLC.<br><br>See Objection to Motion for Entry of Default Judgment [Dkt No. 31]; pg. 4. | Not Disputed. |

## II.    Defendant Conducted No Business With The Debtor, Was Owed No Debt By the Debtor, Yet Received Property of the Debtor worth 5.6 MM

| | **Plaintiff's Statement of Fact** | **Defendant's Response in Reply** |
|---|---|---|
| 11. | According to the books and records of the Debtor, Defendant performed no service and had no business dealings with the Debtor.<br><br>See Affidavit of Daniel Jones, ¶6 | Disputed in that after the Condominium purchase, the Apartment was used for business meetings and business social functions with outside executives and also CHT / Orion Executives on a regular basis. |
| 12. | Parmar was the Chief Executive Officer of the Debtor, Constellation Healthcare Technologies, Inc.<br><br>See Objection to Motion for Entry of Default Judgment [Dkt No. 31]; pg. 4 | Not Disputed. |
| 13. | The Debtor's books and records evidence no preexisting debt owed to the Defendant<br><br>See Affidavit of Daniel Jones, ¶6 | Not Disputed as to Defendant 2 River; Defendant references the employment agreement and Consulting Agreement with respect to pending payments and existing debt owed to Defendant's manager Parmar. |
| 14. | The Debtor's records evidence no antecedent debt satisfied as a result of the | Not Disputed as to Defendant 2 River; Defendant references the employment |

| Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|
| diversion of $5,603,408.81 in funds from the Debtor's M&T Bank Accounts.<br><br>See Affidavit of Daniel Jones, ¶6. | agreement and Consulting Agreement with respect to pending payments and existing debt owed to Defendant's manager Parmar. |

### III.    The Debtor Was Utilized To Pay For The Upkeep Of The Condominium Unit Until The Debtor's Credit Cards Were Taken Away From Parmar

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 15. | Douglas Elliman Property Management collected payments for common expenses associated with the Condominium Unit.<br><br>See Affidavit of Jeffrey Nolan, ¶10; See, Exhibit G, payment slip to Douglas Elliman Property Management, attached to the Affidavit of Jeffrey Nolan. | Not Disputed. |
| 16. | Parmar used his position as CEO to pay not less than $68,247.19 for upkeep of the Condominium Unit with the Debtor's credit cards<br><br>See Affidavit of Daniel Jones, ¶7; See Exhibit 3 Ledger of Debtor's credit cards payment history for the American Express Corporate card). | Disputed; Defendant contends the amounts were accounted for/to Parmar in calculating his compensation. |
| 17. | Parmar's access to credit cards of the Debtor were unilaterally terminated in late 2017.<br><br>See Affidavit of Daniel Jones, ¶7. | Not Disputed. |

IV.    **Defendant Failed To Pay For Ongoing Taxes, Utilities and Common Area Costs Since February 2018 Resulting in A Judgment in Favor of The Residential Board in Excess of $200,000**

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 18. | Defendant was in default under the covenants with the Residential Board by not paying for taxes, utilities and common charges from February 2018, forward.<br><br>See Affidavit of Jeffrey Nolan, ¶9; See Exhibit F, Judgment of the State of New York; See Exhibit H, Statement of outstanding charges from Douglas Elliman Property Management attached to the Affidavit of Jeffrey Nolan, | Disputed; Defendant was in default from May 2018 onwards but Defendant contends the Residential Board unreasonably barred Defendant and Parmar from the use and enjoyment of the Condominium.  Defendant disputes default in the period between February and May 2018. |
| 19. | On September 20, 2019, the Supreme Court of the State of New York entered judgment in the sum of $200,208.04, in favor of the Residential Board of Managers ("RBM") as against Defendant and the real property for failure to pay the associated fees and costs for electricity, taxes, and assessments incurred by living in the Condominium Unit.<br><br>See Affidavit of Jeffrey Nolan, ¶9; See Exhibit F, Judgment of the State of New York attached to the Affidavit of Jeffrey Nolan | Not Disputed; but Defendant contends the Residential Board unreasonably barred Defendant and Parmar from the use and enjoyment of the Condominium. |
| 20. | As of October 1, 2020, the RBM is owed not less than $369,469.96, as Defendant or another has not paid the associated fees and costs for any month since February 1, 2018.<br><br>See Affidavit of Jeffrey Nolan, ¶11; See Exhibit H, Statement of outstanding charges from Douglas Elliman Property | Disputed; Defendant admits the amount of the judgment but contends the loss of utility of the space far outweighs the value being claimed. |

| Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|
| Management, attached to the Affidavit of Jeffrey Nolan. | |

### V. Parmar's Diversion of the Debtor's Funds To Cover His Outstanding Personal Loans

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 21. | In July, 2009, Parmar borrowed $600,000 from his neighbor Howard Schoor and by 2010, Parmar was in default on the loan.<br><br>See Affidavit of Jeffrey Nolan, ¶¶13-14; See Exhibits J and K attached to the Affidavit of Jeffrey Nolan; See Request For Judicial Notice, Exhibit 2, Complaint, Exhibit A; Dkt. No. 1; Howard M. Ehrenberg v. Howard M. Schoor; Adv. Proc. No. 20-08042 | Not admitted or denied; but Defendant objects to the fact as having no relevance to a material issue. |
| 22. | In January 2017, Parmar directed Zaharis to pay his personal debt to Schoor with monies from the Debtor despite the fact the Debtor had no monies to make payroll.<br><br>See Affidavit of Jeffrey Nolan, ¶15; See Exhibit L, attached to the Affidavit of Jeffrey Nolan; See Request For Judicial Notice, Exhibit 2, Complaint, Exhibit A; Dkt. No. 1; Howard M. Ehrenberg v. Howard M. Schoor; Adv. Proc. No. 20-08042 | Not admitted or denied; but Defendant objects to the fact as having no relevance to a material issue. |
| 23. | On May 20, 2017, Parmar and Zaharis conspired to and did create a fake vendor agreement, invoices and falsified receivables in order to make it appear that | Disputed; but Defendant objects to the fact as having no relevance to a material issue and cannot admit or deny and as such denies. |

1701

| Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|
| Schoor rendered services to the Debtor. See Affidavit of Jeffrey Nolan, ¶16; See Exhibit M attached to the Affidavit of Jeffrey Nolan; See Request For Judicial Notice, Exhibit 2, Complaint, Exhibit A; Dkt. No. 1; Howard M. Ehrenberg v. Howard M. Schoor; Adv. Proc. No. 20-08042 | |
| 24. As of February 2010, Parmar personally borrowed $1,000,000 from Mark Feuer ("Feuer"). Parmar was owed not less than $400,000 as of 2016. See Affidavit of Jeffrey Nolan, ¶13; See Exhibit J attached to the Affidavit of Jeffrey Nolan; See Request For Judicial Notice, Exhibit 3, Complaint, Exhibit A; Dkt. No. 1; Howard M. Ehrenberg v. Moshe Feuer and Miriam Feuer; Adv. Proc. No. 20-08039 | Not admitted or denied; but Defendant objects to the fact as having no relevance to a material issue. |
| 25. On February 7, 2017, at Parmar's direction, $900,000 of the Debtor's funds were wired to Feuer from the Debtor's IOLA account at Robinson Brog approximately ½ of which paid back Parmar's personal loan. (See Request For Judicial Notice, Exhibit 3, Complaint, Exhibit A; Dkt. No. 1; Howard M. Ehrenberg v. Moshe Feuer and Miriam Feuer; Adv. Proc. No. 20-08039). See Affidavit of Jeffrey Nolan, ¶13; See Request For Judicial Notice, Exhibit 3, Complaint, Exhibit A; Dkt. No. 1; Howard M. Ehrenberg v. Moshe Feuer and Miriam Feuer; Adv. Proc. No. 20-08039 | Not admitted or denied; but Defendant objects to the fact as having no relevance to a material issue. |

**VI.**     **The Debtors Recorded Consecutive Losses Each Year From 2015 To The Petition Date And Had Negative Cumulative Earnings of -$133,398,156, As of December 31, 2017**

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 26. | FTI Consulting, Inc. ("FTI") was appointed in September 2017 to conduct a forensic examination of the Debtors' business following questions raised as to CHT's financial condition.<br><br>See Declaration of Timothy J. Dragelin ¶75, See Request for Judicial Notice; Exhibit 1, Declaration, Dkt. No. 2; In re Orion Healthcorp, Inc. | Not Disputed. |
| 27. | Timothy J. Dragelin served as the Debtors' CEO and CRO shortly after the resignation of executives Parmar, and termination of Sam Zaharis, and Ravi Chivukula on September 29, 2017, and through the filing of the Petition, restructuring and sale of the Debtors' assets.<br><br>See Declaration of Timothy J. Dragelin ¶¶77-82; See Request for Judicial Notice; Exhibit 1, Declaration, Dkt. No. 2; In re Orion Healthcorp, Inc. | Not Disputed. |
| 28. | On September, 16, 2015, the Debtor CHT acquired *Phoenix Health, LLC* for 14.0 million, and acquired its business. However, Phoenix had no business, assets or employees and was a fictitious entity.<br><br>See Declaration of Timothy J. Dragelin, pgs. 10-11; 30-32, ¶¶ 23, 90, 94, 95; See Request for Judicial Notice; Exhibit 1, Declaration, Dkt. No. 2; In re Orion Healthcorp, Inc. | Disputed; but Defendant objects to the fact as having no relevance to a material issue and cannot admit or deny and as such denies. |

| | Plaintiff's Statement of Fact | Defendant's Response in Reply |
|---|---|---|
| 29. | On September, 18, 2015, the Debtor CHT acquired *Northstar Acquisition, LLC* for 18.0 million, and acquired its business. However, Phoenix had no business, assets or employees and was a fictitious entity. | Disputed; but Defendant objects to the fact as having no relevance to a material issue and cannot admit or deny and as such denies. |
| | See Declaration of Timothy J. Dragelin, pgs. 10-11; 30-31, ¶¶ 23, 90, 92 and 93; See Request for Judicial Notice; Exhibit 1, Declaration, Dkt. No. 2; In re Orion Healthcorp, Inc. | |
| 30. | The Debtor's filed an Amended US Corporation Income Tax Return for tax year ending **2015**, restating revenue to evidence a net operating loss of -$11,392,467 for the year.  The Debtors' retained cumulative earnings, or Cumulative Income, was -94,135,177 as of December 31, 2015. | Not Disputed; but Defendant objects to the fact and the significance to any material issue, as the same set of financial facts can look different through different treatment of amortizable expenses. |
| | See Affidavit of Daniel Jones, ¶11; See Form 1120, 2015 Amended Tax Return, line 30; attached to Affidavit of Daniel Jones; See Form 1120, 2015 Amended Tax Return, Schedule L, line 25; attached as Exhibit 7 to Affidavit of Daniel Jones. | |
| 31. | The Debtor's filed a US Corporation Income Tax Return for tax year ending 2016, evidencing a net operating loss for 2016 of -39,007,282.  For **2016**, the Debtors' retained cumulative income (loss) was -112,905,441 | Not Disputed; but Defendant objects to the fact and the significance to any material issue, as the same set of financial facts can look different through different treatment of amortizable expenses. |
| | See Affidavit of Daniel Jones, ¶12; See Form 1120, 2016 US Corporation Income Tax Return, line 30; attached to Affidavit of Daniel Jones); See Form 1120, 2016 Federal Income Tax Return, Schedule L, line 25, attached as Exhibit 8 to Affidavit of Daniel Jones. | |

| | **Plaintiff's Statement of Fact** | **Defendant's Response in Reply** |
|---|---|---|
| 32. | On February 10, 2016, CHT acquired MDRX Medical Billing, LLC ("MDRX") for 28MM.<br><br>See Declaration of Timothy Dragelin, page 11; ¶ 26; See Request for Judicial Notice; Exhibit 1, Declaration, Dkt. No. 2; In re Orion Healthcorp, Inc. | Disputed; but Defendant objects to the fact as having no relevance to a material issue and cannot admit or deny and as such denies. |
| 33. | MDRX had no assets, employees, conducted no business and was a sham transaction with fake revenue<br><br>See Declaration of Timothy Dragelin, page 11, 30; ¶¶ 26, 90, 98); See Request for Judicial Notice; Exhibit 1, Declaration, Dkt. No. 2; In re Orion Healthcorp, Inc. | Disputed; but Defendant objects to the fact as having no relevance to a material issue and cannot admit or deny and as such denies. |
| 34. | The Debtor's filed its US Corporation Income Tax Return for tax year ending **2017**, stating a net income (loss) for 2017 of -$20,492,714. As of 2017, the Debtor carried a Cumulative Income (loss) of -$133,398,156<br><br>See Affidavit of Daniel Jones, ¶13; US Corporation Income Tax Return for 2017, Form 1120, Schedule M-3, line 4; See Form 1120, 2017 Tax Return, Schedule L, pg. 141, line 25; attached to Affidavit of Daniel Jones as Exhibit 9) | Not Disputed; but Defendant objects to the fact and the significance to any material issue, as the same set of financial facts can look different through different treatment of amortizable expenses. |
| 35. | On December 16, 2015, the Southern District Court of Texas issued a Judgment in the amount of $194,185, against the Debtors in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  The Judgment was | Not Disputed. |

| | |
|---|---|
| filed as a proof of claim in Case 8-18-71748, and assigned claim no. 10001. The filed claim remains unsatisfied.<br><br>See Affidavit of Jeffrey Nolan, ¶4, See Exhibit C. referencing the filed claim attached to Affidavit of Jeffrey Nolan | |

## Defendants Separate Statement of Facts

| | Defendant Statement of Fact | Plaintiff's Response in Reply |
|---|---|---|
| A | Defendant is an active Domestic Limited Liability Company formed under the laws of the State of New York on December 23, 2015.<br><br>Division of Corporations certificate, Plaintiff's Exhibit B | Not Disputed. |
| B. | Parmar was owed $650,000 annual salary plus bonuses calculated from EBITDA each year commencing in June 2013 and continuing up to and after the subject purchase in 2016.<br><br>First United Health, LLC consulting agreement, attached as Defendant's Exhibit 1 | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel. The attached consulting agreement states FUH, not Parmar, will receive salary and potentially a bonus on a formula consisting of "EBITA" not EBITDA, **less** the amount of all funding obtained. (Section 2.1) No supporting documents were introduced into evidence to calculate what, if any, amount was due by non-debtor Constellation Health, LLC to FUH such that Plaintiff cannot agree any amount "was owed" to FUH and no documents were introduced into evidence to determine if "Parmar was owed" any amount by FUH.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |

| Defendant Statement of Fact | Plaintiff's Response in Reply |
|---|---|
| C. EBITDA totaled in the millions in both 2014 and 2015, with annual increases.<br><br>Excerpt from CHT Board Meeting Notes, attached as Defendant's Exhibit 2 | Disputed; there is no foundation for Exhibit 2, a single page document, and the document references EBITDA, not EBITA.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| D. CHT went public on the London AIM in 2014; part of the process included ratification and publication of Parmar's compensation under the consulting agreement.<br><br>Admission to the AIM public document, attached as Defendant's Exhibit 3 | Disputed; there is no foundation for Exhibit 3 and Exhibit 3 contradicts Exhibit 1 in material respects; the consulting agreement allegedly referenced in Exhibit 3 references a consulting agreement with FUH that limits any bonus to "up to $175,000, payable at the discretion of the board". (See Exhibit 3, Section 6.1)<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| E. In 2014, Parmar elected to receive his bonus in shares and was not paid in cash; the bonus was not disputed by the board and was ratified.<br><br>Consent of the Board; attached as Defendant's Exhibit 4 | Disputed; there is no foundation for Exhibit 4. Exhibit 4 states FUH, not Parmar, elected to receive B-2 Units rather than cash.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| F. As of June 2015, the bonus due to Parmar under the consulting contract with FUH was in excess of 9 million dollars.<br><br>Warrant dilution calculations dated June 26, 2015; attached as Defendant's Exhibit 5 | Disputed; The fact is without foundation, evidentiary support, and is the argument of counsel. No evidence has been introduced that (a) a bonus in any amount was due to FUH, (b) Parmar was entitled to or paid by FUH, or (c) the Debtor accrued a liability.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |

| | Defendant Statement of Fact | Plaintiff's Response in Reply |
|---|---|---|
| G. | The Debtor maintained multiple bank accounts, including a checking account at Manufacturer's Trust Bank, account #-68132.<br><br>This fact is acknowledged by Plaintiff's Statement of Facts 3 | Not Disputed. |
| H. | On December 23, 2015, the Debtor transferred $545,000 from the M&T Bank Account by wire to the account of Lustrin Tetelman, LLP, attorneys for the Sellers of Apartment 12J. The transfer was made on Parmar's behalf as part of the funds owed him under the FUH contract.<br><br>The fact of this transfer is acknowledged in Plaintiff's Statement of Facts 4 | Not Disputed as to the first sentence. As to the second sentence, Plaintiff objects as the statement is the argument of counsel without evidentiary support. Plaintiff admits the Transfer in question was made for the benefit Parmar, but no documentary evidence or sworn testimony supports any rationale for the funds or Condominium Unit being taken pursuant to any contract for compensation. |
| I | At the time of the purchase of Apartment 12J, the law firm of Robinson Brog represented the Debtor and maintained an escrow account already holding funds on the Debtor's behalf. Robinson Brog also represented FUH and Parmar, and prepared the LLC paperwork forming Defendant 2 River.<br><br>See Plaintiff's Statement of Facts 8, Exhibit D to the Nolan Affidavit, and Plaintiff's Exhibit B | Plaintiff does Not Dispute that the law firm of Robinson Brog represented the Debtor or that Robinson Brog prepared the LLC paperwork forming Defendant 2 River. No evidentiary foundation exists for the remainder of the statement. |

| | Defendant Statement of Fact | Plaintiff's Response in Reply |
|---|---|---|
| J | On February 19, 2016, the Debtor transferred $5,058,408.81 from the M&T Bank Account to the IOLA account maintained by Robinson Brog. This sum constituted the closing costs required for the purchase of Apartment 12J as well as a majority of the bonus owed to FUH for Parmar's services as CEO of the Debtor. Robinson Brog's IOLA account held other funds on behalf of the various entities it represented. The closing took place on that same date with funds from Robinson Brog's IOLA account.<br><br>See Defendant's Exhibit 1, Plaintiff's Statement of Facts 7 and 8. | Not Disputed as to the first sentence. With respect to the second sentence, Plaintiff agrees that the $5,058,408.81 constituted the closing costs required for the purchase of Apartment 12J and was deposited on the same day it was removed from the M&T bank account into the escrow account. The statement of Defendant that the monies were validly diverted by Parmar as a bonus owed to FUH, or Robinson Brog's IOLA account held other funds for other entities lacks foundation, evidentiary support, and is the argument of counsel.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| K | Defendant 2 River purchased Apartment 12J from Clodagh Bowyer Greene and Elliott Greene.<br><br>See Plaintiff's Statement of Facts 5 | Not Disputed. |
| L | Throughout the year 2016 and for a substantial portion of 2017, Parmar continued in his role as CEO of Constellation. As part of this role, Parmar carried a corporate credit card issued in his name.<br><br>Plaintiff's Exhibit 3, payment history for American Express Corporate Card issued in Parmar's name; Defendant's Exhibits 1 and 9 | Not Disputed. |

| | Defendant Statement of Fact | Plaintiff's Response in Reply |
|---|---|---|
| M | Throughout the year 2016, the Debtor engaged in negotiations with Chinh Chu and CC Capital leading up to a transaction that took the Debtor off the London AIM in January of 2017. The Go Private process required a significant financial outlay by the Debtor of both cash and personnel resources.<br><br>Defendant's Exhibit 10, excerpt from funds flow do | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel.<br><br><br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| N | In 2016, the Debtor acquired Allegiance Consulting Associates, LLC and Allegiance Billing & Consulting, LLC for a combined purchase price of $4,776,000.<br><br>Defendant's Exhibit 6, Closing statement for ABC/ACA acquisition | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| O | In June of 2016, the Debtor paid in excess of $18 million to pay off principal debt, pay pre-payment fees, and buy back outstanding options.<br><br>Defendant's Exhibit 7, Loan Warrant Settlement | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| P | Throughout the months immediately following the purchase of Apartment 12J, the Debtor maintained a healthy cash flow through its primary operating account at JP Morgan Chase.<br><br>Defendant's Exhibit 8, redacted full statement for March 2016 and redacted summary pages through June 2016 | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel.<br><br>(See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |

| | Defendant Statement of Fact | Plaintiff's Response in Reply |
|---|---|---|
| Q | As part of the Go Private transaction, a new consulting agreement was prepared maintaining Parmar as the CEO.  Defendant's Exhibit 9, Consulting agreement between CHT Holdco and Parmar | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel.  (See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |
| R | At the closing of the Go Private transaction, the Debtor contributed $5 million in cash from available reserves.  Defendant's Exhibit 10, redacted excerpt from funds flow at closing | Disputed; The fact is without foundation, evidentiary support and is the argument of counsel.  (See Motion To Strike And Evidentiary Objections To Exhibits In Support Of Defendant's Opposition, filed concurrently) |

Dated:    January 6, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By: _____

Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

Counsel for the Plaintiff,
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc.,
*et al.*

Dated:    January 6, 2021                    PARLATORE LAW GROUP, LLP

                                  By:    _____
                                          Maryam N. Hadden, Esq.
                                          One World Trade Center, Suite 8500
                                          New York, New York 10007
                                          Telephone:    (646)846-6382

                                          Counsel for Defendant, 2 River Terrace, Apt.
                                          12J, LLC

1712