Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 18-71748

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    ORION HEALTHCORP, INC.,

7              Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 20-08042-ast

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE

12   OF ORION HEALTHCORP, INC.,

13                  Plaintiff,

14        v.

15   HOWARD M. SCHOOR,

16                  Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18   Adv. Case No. 20-08038-ast

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20   EHRENBERG,

21                  Plaintiff,

22        v.

23   EVICORE,

24                  Defendant.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 2

1    Adv. Case No. 20-08049-ast

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    EHRENBERG,

4                      Plaintiff,

5              v.

6    WALIA, et al.,

7                      Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 20-08051-ast

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   EHRENBERG,

12                     Plaintiff,

13             v.

14   SARTISON, et al.,

15                     Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 20-08052-ast

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   EHRENBERG,

20                     Plaintiff,

21             v.

22   ABRUZZI INVESTMENTS, et al.,

23                     Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

1          United States Bankruptcy Court

2          290 Federal Plaza

3          Central Islip, New York 11722

4

5          January 21, 2021

6          10:01 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1   HEARING re 42 Motion for Summary Judgment Filed by Plaintiff

2   Howard M. Ehrenberg

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 5

```
 1   A P P E A R A N C E S :

 2

 3   PACHULSKI STANG ZIEHL & JONES LLP

 4        Attorneys for the Trustee, Howard M. Ehrenberg

 5        780 Third Avenue, 34th Floor

 6        New York, NY 10017

 7

 8   BY:  JEFFREY NOLAN (TELEPHONICALLY)

 9        ILAN SCHARF (TELEPHONICALLY)

10

11   PARLATORE LAW GROUP LLP

12        Attorneys for 2 River Terrace

13        One World Trade Center, Suite 8500

14        New York, New York 10007

15

16   BY:  MARYANN HADDEN (TELEPHONICALLY)

17

18   GIORDANO HALLERAN & CIESLA

19        Attorneys for Howard Schoor

20        125 Half Mile Road, PO Box 190

21        Middletown, NJ 07748

22

23   BY:  DONALD CAMPBELL (TELEPHONICALLY)

24

25
```

Page 6

1    ROSENBERG & PITTINSKY, LLP

2         Attorneys for Board of Managers of Riverhouse Condo

3         232 Madison Avenue, Suite 906

4         New York, New York 10016

5

6    BY:  LAWRENCE PITTINSKY (TELEPHONICALLY)

7

8    ROSEN & ASSOCIATES P.C.

9         Attorneys for Arvind Walia

10        747 Third Avenue

11        New York, NY 10017-2803

12

13   BY:  SANFORD ROSEN (TELEPHONICALLY)

14        PARIS GYPARAKIS (TELEPHONICALLY)

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                P R O C E E D I N G S

2              CLERK:  Good morning.  I am Yvette Mills,

3    Courtroom Deputy for Chief Judge Alan S. Trust presiding.

4    These hearings are being recorded.  Please speak clearly.

5              I just want everyone starting with the Debtors'

6    attorney to just give your appearance and who you represent.

7              MR. NOLAN:  Good morning.  Jeff Nolan from

8    Pachulski Stang & Ziehl, along with Ilan Scharf,

9    representing the Trustee, Howard Ehrenberg.

10             CLERK:  Donald Campbell?

11             MR. CAMPBELL:  Yes.  Donald Campbell on behalf of

12   Howard Schoor, S-C-H-O-O-R.

13             CLERK:  Could I have Joseph Orbach?

14             MR. ORBACH:  Joseph Orbach.  I'm just on a listen

15   only.  I represent Howard Ehrenberg, but not in any of the

16   adversaries proceeding today.

17             CLERK:  No problem.  Lauren Pittinsky.  Maryann

18   Hadden.

19             MS. HADDEN:  Maryann Hadden from Parlatore Law

20   Group, LLP, on behalf of 2 River Terrace.

21             MR. PITTINSKY:  Lawrence Pittinsky, Rosenberg &

22   Pittinsky, on behalf of the Board of Managers of River House

23   Condominium.

24             CLERK:  Sanford Rosen.

25             MR. ROSEN:  Good morning.  Sanford Rosen, Rosen &

Page 8

 1    Associates PC, on behalf of Arvind Walia.

 2              CLERK:  And can I have the person whose phone

 3    number is 917-809-0346?

 4              MR. GYPARAKIS:  Good morning.  Paris Gyparakis,

 5    Rosen & Associates, counsel to Arvind Walia.

 6              CLERK:  What was your name?

 7              MR. GYPARAKIS:  Paris Gyparakis, G-Y-P-A-R-A-K-I-

 8    S.

 9              CLERK:  What was the first name?

10              MR. GYPARAKIS:  Paris, like the city, P-A-R-I-S.

11              CLERK:  And the last name?

12              MR. GYPARAKIS:  G-Y-P-A-R-A-K-I-S.

13              CLERK:  Okay, thank you.  I believe we have all

14    the parties, Judge.  Case No -- well, it's adversary

15    starting with 20-8042, Ehrenberg v. Howard Schoor.

16              MR. CAMPBELL:  Schoor.

17              THE COURT:  Take appearances, please.

18              MR. NOLAN:  Yes, Good morning, Your Honor.  Jeff

19    Nolan appearing on behalf of the Plaintiff, Howard Ehrenberg

20    in his capacity as a liquidating trustee.

21              MR. CAMPBELL:  Good morning, Your Honor.  Don

22    Campbell from the Law Firm of Giordano Halleran & Ciesla on

23    behalf of Defendant, Howard Schoor.

24              THE COURT:  All right.  As Ms. Mills did, I'm just

25    going to ask if everyone else will mute their line.  If

1   you're not involved in this hearing, please mute your line.

2          All right, Mr. Nolan.

3          MR. NOLAN:  Yes, Your Honor.  As the Court may

4   recall, this is an adversary.  It's about $160,000 at issue,

5   it's a fraudulent conveyance case under the Bankruptcy Code,

6   as well as under the New York Debt and Creditor Law.

7          We have a case management and discovery plan in

8   place; fact discovery was to be closed as of yesterday, and

9   expert designations are at the end of the month, and we have

10  gone forward with the depositions of the plaintiff.

11         As you may recall, the plaintiff also requested

12  that the Court allow the plaintiff to file a summary

13  judgment motion.  We submitted a letter to the Court

14  approximately a month ago, and the Court directed that

15  counsel meet and confer and submit a joint statement of

16  uncontroverted facts, which the parties have done and have

17  submitted a joint statement of uncontroverted facts and it

18  should be before the Court.

19         I'll allow -- I know -- I got an email this

20  morning saying that the defendant wanted to address some

21  additional time.  I'll leave that to my colleague and

22  opposing counsel for the defendant.

23         THE COURT:  Let me ask, Mr. Nolan, before you toss

24  the baton so to speak.  The letter that was submitted and

25  requested a pre-motion conference references New York DCL

1    276.  Is it the plaintiffs' contemplation that if you move

2    forward with summary judgment, it would solely be on an

3    actual intent of fraudulent transfer claim?

4           MR. NOLAN:  No, Your Honor.  We would also be

5    under 273 of the New York Debtor and Creditor Law, so it

6    would be a fraudulent, intentionally fraudulent transfer as

7    well as a constructively fraudulent transfer, as well as the

8    Bankruptcy Code within the 548.

9           THE COURT:  All right.  And so, I know you said

10   your designations under the scheduling agreement for experts

11   are later this week or later this -- well, later this week,

12   next week.  Is it the intention of the plaintiff to submit

13   an expert opinion on solvency or insolvency on the relevant

14   dates of the transfers as part of the summary judgment

15   motion?

16          MR. NOLAN:  Well, I was hoping that the Court

17   could -- okay, the immediate answer is, Your Honor, we would

18   be filing a motion for summary judgment.  I think at this

19   point, since we're so close to the expert designation date,

20   that it would make sense to allow the expert report to be

21   exchanged and to allow just one, you know, bite at the apple

22   on summary judgment, which would incorporate all the

23   theories of liability under the Complaint.

24          THE COURT:  All right.  All right, thank you.  Mr.

25   Campbell.

1          MR. CAMPBELL:  Yes, Your Honor, good morning.

2   Donald Campbell.

3          Mr. Nolan is correct.  We have issued a subpoena

4   to Merrill Lynch Bank of America.  We received a phone call

5   yesterday from Bank of America requesting additional time to

6   respond to provide documents.  We just sent a letter to Mr.

7   Nolan this morning asking if he would consent to a two-week

8   extension of discovery solely to provide Bank of America

9   additional time to provide those documents.

10         Those documents are a request for the transfers of

11  the funds that were loaned by Mr. Schoor and directed to a

12  Merrill Lynch account, and it's our hope that we're looking

13  for information with regards to the connection, if any,

14  between the debtor entities and this Merrill Lynch account,

15  so we'd ask for that short request.

16         And Mr. Nolan hasn't had an opportunity to consent

17  or not, but we'd ask for that short extension, Your Honor.

18         THE COURT:  All right.  In terms of the

19  designations of experts which are coming up, is it the

20  defendants' intention to retain an expert on solvency?

21         MR. CAMPBELL:  Yes, Your Honor.  We have not seen

22  the plaintiffs' expert report yet, but obviously, we'd look

23  to evaluate that and retain an expert to review and analyze

24  the trustee's report on insolvency at the time of the

25  transfers.

1           THE COURT:  All right, thank you.  Mr. Nolan, let

2      me go back to you then.  If I'm going to have competing

3      expert opinions on solvency at the relevant dates of the

4      transfers, wouldn't it be less expensive and potentially no

5      more time consuming to simply try the case rather than go

6      through a potentially expensive summary judgment process?

7           I've looked at the stipulated facts.  It appears

8      to the Court that the parties have obviously attempted to

9      limit the issues that would need to be tried at the time of

10     trial.  But unless there's an agreement on solvency or

11     insolvency of the transferor entity on the date of the

12     transfers, don't I end up trying the case on solvency

13     anyway?

14           MR. NOLAN:  Well, Your Honor, the -- if it's an

15     intentionally fraudulent transfer, solvency is not an area

16     of inquiry.  And what I think the facts that we stipulated

17     to show is that there is a promissory note between Mr.

18     Schoor, who was the neighbor of Mr. Parmar, and it says it's

19     a personal loan.

20           And in discovery, we asked for any documents

21     surrounding the loan, and everything that the plaintiff

22     received back, including the testimony of the defendant, is

23     that this was a personal loan made not for business purposes

24     and which Mr. Schoor continually over a period of five years

25     asked Mr. Parmar to honor his word as a friend, as a loan

1    that was made in friendship.

2            And I think based on the fact that there's no

3    documents tying the loan that was given, and the fact that

4    it's undisputed that the money that was paid back was paid

5    back with the debtors' funds, that defendant can't simply

6    just rely on oral testimony from Mr. Schoor that says, well,

7    he told me that somewhere along the line, he was going to

8    use this for his business.

9            I think the case law in New York demands that

10   there be at least some documentation, (a) showing that it's

11   a valid antecedent debt and that it's an antecedent debt of

12   the debtor.

13           And then the most compelling of all, Your Honor,

14   on the fraudulent -- on intentional fraudulent conveyance

15   is, as the Court knows, under both the New York Debt

16   Creditor Law and the Bankruptcy Code, it's the intent of the

17   transferor that's at issue, which is Mr. Parmar.

18           And the plaintiff has undisputed evidence that

19   after this personal loan was given between Mr. Parmar and

20   Mr. Schoor and after the debtor paid back the debt with the

21   debtors' monies, Mr. Parmar and Mr. Chivukula, the CFO, went

22   back and created a fake consulting agreement, a consulting

23   agreement that I gave to Mr. Schoor at his deposition, and

24   he said "I didn't sign it, I've never been a consultant to

25   the debtor, I've never given any consulting services to any

Page 14

 1    of Mr. Parmar's companies".  And that's just per se evidence

 2    of a fraudulent conveyance.

 3           It was coded in the debtors' books and records as

 4    professional fees, and Mr. Chivukula in an email to Mr.

 5    Parmar even says, "Hey, we have to come up with some reason

 6    for why we paid this loan back."

 7           THE COURT:  Mr. Nolan, you're now circling back to

 8    my initial question to you, which was the trustee's

 9    intending to move forward for summary judgment just on the

10    DCL 276 actual intent claim or more, because I understand

11    the narrow strike argument that you're making on the motion

12    that's not in front of me yet, it's actual intent 276 when

13    we're done here.

14           MR. NOLAN:  Sure.

15           THE COURT:  And if they're asking to do is move

16    for summary judgment on that one claim, I understand that;

17    that's narrow -- you might win, you might not.  But to

18    broaden it out to include reasonably equivalent or lack of

19    reasonably equivalent value under constructive fraud claims;

20    that's a beast of a different nature.

21           So now I'm back to the first question I asked you,

22    which is, does the trustee want to file a summary judgment

23    motion while it's full summary judgment, it's only on the

24    276 issue.

25           MR. NOLAN:  Your Honor, thank you for the

Page 15

```
 1    clarification.  I think that's correct.  I think then we
 2    could limit the single issue in front of the Court to be the
 3    New York Debt and Creditor Law 276 cause of action.
 4           THE COURT:  All right.  Mr. Campbell, you said
 5    that you're waiting on some documents from Merrill Bank of
 6    America, and I'll just treat those as documents that you
 7    would want for response to a summary judgment -- to respond
 8    to a summary judgment motion on the 276 actual intent claim.
 9           Is there any other discovery that's owed or
10    outstanding that might relate to the actual intent claim?
11           MR. CAMPBELL:  At this time, Your Honor, I don't
12    believe so.  Of course, I haven't seen the Merrill Lynch
13    documents and it's possible that that could lead to
14    additional requests, but I think it's unlikely; however, I
15    don't -- I would be speculating if I know.
16           But based on Bank of America's voicemail message
17    they left me, it sounds like it may be voluminous, but I
18    just don't know, so I hope that's a sufficient answer, Your
19    Honor.
20           THE COURT:  Okay, fair enough.  So then let's
21    proceed on this basis.  Relevant to this adversary
22    proceeding and some of the others that we're going to talk
23    about this morning, the Court is satisfied a trial date in
24    early June for some of these adversary proceedings or
25    potentially others that are not in front of me today.
```

Page 16

```
 1              It would seem that given the good work that you

 2     all have done on the stipulated facts, there's probably not

 3     much more that would be necessary for the plaintiffs'

 4     summary judgment motion and then obviously any response from

 5     the defendant.  I don't know at this point that I need a

 6     reply because in a reply, I'm not going to consider any

 7     evidence that wasn't submitted either through the

 8     stipulation or the ultimate motion.

 9              So I can set a schedule for you all that tracks

10     you toward a June 7 trial week setting, but also potentially

11     gets to resolution of the 276 issue before you all spend the

12     big money on expert witness.  Now, you may be all ready to

13     do that, you may want to revisit your timeline, but I would

14     recommend that you all discuss whether or not you really

15     want to now spend the money on the timeline you're on for

16     experts if we're going to take a rifle shot on the 276.

17              Bu the Court has set aside -- Miss Mills, what is

18     the date in March that we're now using for Orion?

19              CLERK:  I believe it's March --

20              THE COURT:  Is it March 16th?

21              CLERK:  Yes.

22              THE COURT:  March 16th?

23              CLERK:  Yeah, March 16th at 10:00.

24              THE COURT:  All right.  So what we can do is this

25     is since you all are obviously working cooperatively
```

1      together, is for you all to come up with a submission

2      schedule that would have the summary judgment argued on

3      March 16th at 10:00 a.m.

4              My admonition to you all is I'm happy for you all

5      to agree to dates and deadlines that work for you

6      respectively, but I want to make sure that everything the

7      Court's being asked to look at is last submitted by March

8      9th, so that we have a week ahead of time.

9              So that should give the plaintiff time to go ahead

10     and get the summary judgment record ready, let the defendant

11     file the response in advance of March 9th.  And again, I

12     don't know that I'm going to need a reply brief on these

13     issues, but if one of you believes it's critical to have it,

14     then just make sure that it's filed by no later than March

15     9th.

16             And again, recognizing that if summary judgment

17     were denied, you would be tilting toward a June 7 trial,

18     just recalibrate how you want to handle the expert deadlines

19     in the event -- this is capital I, capital F -- if the case

20     is resolved at summary judgment.  Fair enough?

21             MR. NOLAN:  Understood, Your Honor.

22             MR. CAMPBELL:  Yes, Your Honor.

23             THE COURT:  So then what I'll have you do is just

24     go ahead after -- go ahead and confer offline, and then just

25     submit a letter outlining the dates by which plaintiff shall

1    file, defendant shall respond.  I'll also order that once

2    it's submitted, but you know the outside date I'm looking at

3    is March 9th with an argument March 16th at 10:00 a.m.

4             For today's purposes, I'm going to adjourn the

5    pretrial conference over to the March 16 at 10:00 a.m.; that

6    gets it on that calendar.  When the plaintiff files their

7    summary judgment motions, just want to make sure that you

8    then give notice of hearing for it for March 16th at 10:00

9    a.m.

10            As far as the additional time to get the documents

11   from Merrill and Bank of America, I'll take Mr. Nolan not

12   saying not to that as assent to that extension, so that will

13   be fine, Mr. Campbell.

14            MR. CAMPBELL:  Thank you, Your Honor.

15            THE COURT:  All right.  And also, to the extent

16   that you all modify the scheduling order that was previously

17   submitted to account for our discussion this morning about

18   summary judgment and expert witnesses, just reflect that in

19   the same letter to the Court to be so ordered.

20            We'll then issue the trial scheduling order that

21   will include these dates and deadlines in it so that you're

22   on trial track for June 7th in the event that summary

23   judgment were denied as a result of the March 16 hearing.

24            All right.  Anything else we need to discuss then

25   this morning on 20-08042, other than the Court saying

Page 19

1    obviously feel free to settle between now and then and take

2    it out of my hands?

3              MR. CAMPBELL:  For defendant, nothing further,

4    Your Honor.

5              MR. NOLAN:  One question from the plaintiff.  Your

6    Honor, how is it in New York?  Are you doing trials via Zoom

7    or is everything shut down?

8              THE COURT:  So as of right now, the March 16 will

9    definitely be via WebEx, and we'll issue an order setting

10   that WebEx protocol.  June 7, I don't know yet whether we'll

11   be live or Memorex, I guess is the old line, but whether

12   we'll be live or via WebEx or some combination; details to

13   follow on that.  But at the current time, I have been and

14   will continue to try cases via WebEx even while we're

15   operating under our emergency code of procedures.

16             MR. NOLAN:  Okay.  Thank you, Your Honor.

17             THE COURT:  All right, very well.  Thank you,

18   both.

19             MR. CAMPBELL:  All right, thank you.  Have a great

20   day.

21             CLERK:  Case Number 20-8049.

22             MR. NOLAN:  Jeff Nolan appearing on behalf of the

23   Plaintiff, Howard Ehrenberg.

24             MR. ROSEN:  Good morning, Your Honor.  Sanford

25   Rosen, Rosen and Associates, PC.  And I'm appearing on

1    behalf of the Defendant.

2            THE COURT:  All right.  Very well.

3            MR. NOLAN:  Your Honor?

4            THE COURT:  Mr. Nolan, on status, please go ahead.

5            MR. NOLAN:  Yeah.  Your Honor, so we had submitted

6    at the prior pretrial conference, Counsel and I had at least

7    uploaded a case management and discovery plan.  It has not

8    been executed by the Court.  In the interim, since the last

9    scheduling conference, Counsel for the Defendants and I have

10   met and conferred and we went through some of the issues in

11   the case.

12           This is a $6-million fraudulent conveyance action.

13   And there's an issue with some of the transfers.  And

14   Defendants had indicated they had received some of the

15   transfers, and they had not received others.  The Trustee

16   has subsequently gone back and looked at some of the

17   underlying transfers that are at issue.  And I believe, Your

18   Honor, what we are going to do is either amend the complaint

19   to add more detail for the Defendant as to some of the

20   multi-million dollar transfers or, you know, provide that

21   information with specificity.

22           And once we do that, I think the parties at least

23   are working amicably enough that we can submit a case

24   management and discovery plan to the Court that'll track

25   this in a similar fashion to some of the other adversaries.

```
 1              THE COURT:  All right.  Mr. Rosen?

 2              MR. ROSEN:  No, that's accurate, Your Honor.

 3              THE COURT:  All right.  In terms of the dates and

 4    deadlines, I know that you all had from a prior conference

 5    talked about discovery ending yesterday and experts by early

 6    April.  Are you talking about other dates, different dates,

 7    at this point?

 8              MR. NOLAN:  Yes, Your Honor.

 9              THE COURT:  Okay.

10              MR. NOLAN:  We would submit a discovery plan that

11    would probably have, you know, a two-week lag to go ahead.

12    I mean we've done Rule 26 disclosures, but we've probably

13    then set forth a fact discovery period which would be, you

14    know, 90 to 120 days and then have the dates for experts

15    similar to all the other case management and discovery plans

16    that you've seen from our firm.

17              THE COURT:  All right.  So under current

18    contemplation, I'm just trying to think when would be the

19    most productive time to have you all back in.  If you're

20    talking about discovery -- fact discovery cutting off late

21    April, perhaps May, and then experts to follow on, it may

22    make more sense to simply bring you in for your next

23    pretrial conference in May when we're setting up pretrial

24    conferences for Orion.  I don't know that it's going to be

25    productive to have you all back in before then.  Do you have
```

```
 1   a sense of that, Mr. Nolan?

 2         MR. NOLAN:  Yes, Your Honor.  I think we'll have

 3   the pleadings at issue in the next 30 days.  So we could

 4   either -- a couple of different scenarios.  We could either

 5   be back in front of the Court on March 16th, and the Court

 6   could enter a case management and discovery plan based on

 7   what the Court felt was appropriate where the parties were.

 8   Or I think we could simply stipulate to the case management

 9   and discovery plan and submit it to the Court for review and

10   approval without, you know, having to clog the courtroom and

11   see us again.

12         THE COURT:  All right.  The second sounds like it

13   may be more cost effective and efficient.  Mr. Rosen, do you

14   have a view on that?

15         MR. ROSEN:  I agree with you, Your Honor.

16         THE COURT:  All right.  So then let's do this,

17   we'll set -- let you do it by amended complaint or a

18   supplemental complaint.  You all are working cooperatively

19   together.  I'll leave it to you all to work that out.  What

20   we'll do is we'll adjourn today's pretrial conference to May

21   18th at 2 o'clock.  May 18th at 2 o'clock, anticipating that

22   well before then the Court will have entered a trial

23   scheduling order that would include the dates that the

24   parties have worked out for close of discovery and other

25   issues which you may stipulate to.
```

```
 1              Obviously, if something comes up where you need us
 2    before May, you know where we are.  But in terms of a
 3    pretrial conference on keeping the case tracking toward a
 4    trial, I think May 18th will work fine.  And then once we
 5    get the amended proposed scheduling order in, then we'll
 6    issue that order and then we'll find you all a trial date
 7    consistent with the deadlines -- the dates and deadlines
 8    that you all are currently discussing.
 9              But for today's purposes, Mr. Nolan, will you
10    docket notice of adjournment of the pretrial conference to
11    May 18 at 2 o'clock?  And then we'll look for the submission
12    of the amended proposed scheduling order.
13              MR. NOLAN:  Thank you, Your Honor.
14              MR. ROSEN:  Thank you, Your Honor.
15              CLERK:  Case Number 20-8052.
16              MR. NOLAN:  Jeff Nolan appearing on behalf of the
17    Plaintiff, Howard Ehrenberg in his capacity as Liquidating
18    Trustee.
19              THE COURT:  Do we have Defendant's counsel?
20              MR. NOLAN:  I did not hear him sign on.  It's
21    Anthony Giuliani.
22              THE COURT:  Ms. Mills, do we have him on?
23              CLERK:  Let me see if someone just came on.  I
24    don't have him on, Judge.
25              THE COURT:  Okay.  All right.
```

1          CLERK:  I don't know --

2          THE COURT:  Mr. Nolan?

3          MR. NOLAN:  Yes, Your Honor.  So, Your Honor, we

4    have a case management and discovery plan in place in this

5    adversary.  Fact discovery is to be completed no later than

6    March 15th.  There's been no depositions yet, but there has

7    been written discovery exchanged.  And we're just moving

8    along in that capacity.  There's been a number of subpoenas

9    issued.  So, you know, nothing eventful to report to the

10   Court.

11         THE COURT:  All right.  And we do have a proposed

12   discovery control plan.  I don't see that the June 7 date

13   that the Court had discussed earlier would likely work for

14   the trial on this one since expert discovery would not be

15   completed until the end of May.  I don't think that gives

16   you all enough time.

17         MR. NOLAN:  Yeah.  In this one, Your Honor -- I'm

18   sorry, I didn't fill you in on the big picture.  This is a

19   fraudulent conveyance cause of action for about $250,000.

20   It's a little more complicated than some of the other

21   matters.  So I would agree with the Court there could be

22   issues, since I've issued approximately six subpoenas to

23   different entities, that could raise an issue, a factual

24   issue trying to get everything in the door before the close

25   of fact discovery.

Page 25

1             So Plaintiff certainly is -- it's acceptable to

2     the Plaintiff to have this on a little later of a trajectory

3     than the Schoor matter.

4             THE COURT:  All right.  Would it make sense,

5     again, in terms of cost and efficiency, to bring this one

6     back in on May 18th?  It'll be pretty close to the end of --

7     at least the contemplated end of expert discovery, we'll

8     issue you a scheduling order that includes a trial date that

9     incorporates the dates and deadlines that you all have

10    agreed to.  That trial date will not be June or earlier.

11            I don't know that there's a reason to bring you

12    all back in before the May 18.

13            MR. NOLAN:  Yes, Your Honor.  I think that's

14    acceptable.  I mean depending upon what is, you know,

15    determined through fact discovery, this might be a similar

16    case as Schoor that might have an intentional fraudulent

17    theory.  And I mean we could all visit that in May 18th

18    after fact discovery is cut.

19            THE COURT:  All right.  Fair enough.  All right.

20    So then for today's purposes, Mr. Nolan, if you'll docket

21    notice of adjournment to May 18 at 2 o'clock, let Mr.

22    Giuliani know we missed him.  And in the event that there's

23    a need for a pre-hearing, a pre-motion conference if the

24    Plaintiff does tilt towards summary judgment on this one,

25    unless there's a reason or need to have that sooner, then

```
 1    you could also use the May 18 at 2 o'clock for that unless

 2    there's a need to have it sooner.

 3              MR. NOLAN:  Thank you, Your Honor.

 4              CLERK:  Case Number 20-8051.

 5              MR. NOLAN:  Jeff Nolan appearing on behalf of the

 6    Plaintiff, Howard Ehrenberg.

 7              MS. HADDEN:  And Maryann Hadden appearing on

 8    behalf of Defendant 2 River Terrace Apartment 12-J, LLC.

 9              MR. PITTINSKY:  Larry Pittinsky, Rosenberg &

10    Pittinsky, appearing on Riverhouse -- Board of Managers of

11    Riverhouse Condominium.

12              THE COURT:  All right.  The Court had notified the

13    parties we were going to use this morning as argument on

14    summary judgment.  Let me ask before we launch into that,

15    has there been any change on the status on the ground with

16    respect to the sale of the unit or, in the bigger picture,

17    settlement issues?

18              MR. PITTINSKY:  Your Honor, Mr. Pittinsky speaking

19    on the sale.  I don't know if you want that to go first.

20    The sale's scheduled for the 29th of this month and

21    dependent upon what Your Honor does vis-à-vis the

22    Plaintiff's motion, whether the sale will proceed or not on

23    that date.  But it was adjourned.  If Your Honor remembers

24    from the last court appearance, I made a representation to

25    speak to the Board and to work cooperatively with all
```

1    parties.  And we did adjourn the sale.  The new date is

2    January 29th.

3           MS. HADDEN:  And, also, Your Honor, on that, same

4    issue as to the sale.  I was asked by my client --

5           THE COURT:  Please state your name again, please.

6           MS. HADDEN:  Oh, I apologize, Your Honor.

7           THE COURT:  Just state your name again.  That's

8    okay.

9           MS. HADDEN:  Maryann Hadden.  I was asked by my

10   client to file a proceeding in state court to attempt to

11   stop the sale, obviously not knowing how things will resolve

12   in front of Your Honor today in regards to the summary

13   judgment motion.  So an order to show cause and a complaint

14   were both filed in state court yesterday.  I do not have an

15   index number yet, which is the only reason why I have not

16   yet served them on Mr. Pittinsky.

17          But, Mr. Pittinsky, I will -- I'll actually email

18   you a copy before I get the index number just so that you

19   have the paperwork in advance.

20          MR. PITTINSKY:  I appreciate that courtesy, but --

21   and I'm not going to debate this before Judge Turner.  But

22   under the rules, if you're seeking a stay, you are required

23   to serve me with those papers prior to filing under the

24   local court rules.  So you have not done that.

25          MS. HADDEN:  I have not even received an index

Page 28

 1    number, so I will -- we'll obviously not debate this at this
 2    point, but I'll speak with you on -- if it's acceptable to
 3    you, I'll give you a call once we're off the record here and
 4    we can have a conversation later.
 5              MR. PITTINSKY:  That's fine.
 6              MS. HADDEN:  Okay, thank you.
 7              THE COURT:   Let me, and I appreciate --
 8              MS. HADDEN:  Thank you.
 9              THE COURT:  -- I appreciate you all taking that
10    dispute over there -- well, that narrow issue over there.
11    But in terms of a bigger-picture issue, obviously, if there
12    have been settlement discussions, I don't want to know who
13    asked for what and who offered what, that's not my province.
14    But have the parties discussed a protocol to monetize --
15    that's the big-dollar word they use in the Southern District
16    of New York and other courts -- monetizing the unit,
17    basically selling the unit off, paying off the -- kind of
18    the liens that are putting the time trigger on their sale
19    and then simply duking it out over who gets the rest?
20              MR. NOLAN:  Jeff Nolan --
21              THE COURT:  I assume, Mr. Nolan, that the
22    Trustee's long-term plan if he prevails on litigation is
23    he's going to sell the unit, convert it to cash, and figure
24    out what to do with the money.  So I'm wondering if you all
25    have already had that discussion now to see if you can do

Page 29

1    that now while the litigation sorts itself out.

2             MR. NOLAN:  Well, Your Honor, I can state to the

3    Court that I did have conversations with the Defendant to

4    try to step around some of the difficulties with the lien

5    that's against the unit and get it in a position that it

6    could certainly go in that direction.  That is accurate,

7    Your Honor, that the Trustee's perspective is that this is

8    an asset of the estate that should be monetized.

9             The Trustee certainly can hold title under the

10   trust agreement.  But the Trustee, as the Court would know,

11   is not in the business of operating condominium units,

12   residential condominium units.  And -- but we just have been

13   unable to unearth this condominium unit and was hoping that

14   the summary judgment motion might present a path to do that.

15            I think the Plaintiff is certainly in agreement

16   with what the Court is stating that -- I don't know if

17   Mr. -- if the Defendant believes that the real property is

18   unique in such a way that they would share that it's a money

19   dispute as opposed to something, you know, deeper.

20            THE COURT:  Ms. Hadden?

21            MS. HADDEN:  There's certainly at least some

22   personal property involved in the apartment that the manager

23   of my client has not had access to.  So in that sense, I

24   can, you know, certainly represent that he at least would

25   consider it to be an individual item of real property as

1    opposed to a monetizable asset.

2            And Mr. Nolan's absolutely correct.  We did, you

3    know, engage in some initial discussions about it.  I can't

4    say that we're at the point or even close to the point where

5    I would describe it as being something where we're in

6    agreement on it, not to say that that agreement isn't

7    possible in the future but we're certainly not there yet.

8            THE COURT:  All right.

9            MR. PITTINSKY:  So, Your Honor, from the

10   Condominium's point of view, if the unit gets sold by the

11   entity that's technically on the deed, we would have our

12   rights.  But I don't see the Board waiting for that event to

13   occur just in a vacuum, number one.

14           Number two, any claim by Ms. Hadden that there's

15   been access denied or not permitted, it's just factually

16   false.  We would never make a claim.  Actually, let me

17   revisit that.  If there's personal property in the apartment

18   and our judgment is not satisfied by virtue of the sale,

19   then we might seek a restraint against anything that's in

20   the apartment if it's owned by the LLC.  But that's getting

21   ahead of myself in terms of the collection on the judgment.

22           THE COURT:  From what's been told to the Court

23   thus far, if this unit were sold in an arms-length open

24   transaction and it didn't bring enough to pay off the

25   condominium lien, we'd be having a much less pleasant

1    conversation than what we're having right now, so --

2                MS. HADDEN:  I think that's accurate, Your Honor.

3                MR. NOLAN:  Your Honor, Jeff Nolan for the

4    Plaintiff.  I think it would be a fair assumption for the

5    Court that if the Plaintiff did prevail and the conveyance

6    was set aside, that the Trustee would move to immediately,

7    in a regular sale that could maximize the value, liquidate

8    the property.  And that would not necessarily mean that, you

9    know, that the money realized couldn't be somehow, you know,

10   utilized to, A, satisfy the Condominium Association and, B,

11   before the Court's jurisdiction to do as it, you know,

12   ultimately determines should be done.

13                I mean it would be an estate asset, and it would

14   be subject to the bankruptcy court's oversight and approval

15   just like any other bankruptcy court case.

16                THE COURT:  All right.  Well, I would encourage

17   the parties to pick -- I will generously say pick up those

18   conversations where they left off.  I'm sure, as you all

19   know, that there are procedures specifically under Section

20   363(f) of the Bankruptcy Code to have the sale of interest

21   in which the estate -- property in which the estate claims

22   an interest sold free and clear of lien, claims,

23   encumbrances, have those liens attach to the proceeds, pay

24   the condominium assessment and liens off, and then fight

25   over who gets the -- what would appear at this point appear

Page 32

1    to be several million dollars of proceeds.

2            That's not before me today.  But, again, I would

3    encourage the parties to pick those discussions up where

4    they may have left off.

5            So let me turn then to, Mr. Nolan, if you want to

6    then proceed on the summary judgment motion.

7            MR. NOLAN:  Yes, Your Honor.  Thank you.

8            Your Honor, we submitted a joint statement of

9    fact, uncontroverted facts, with the cooperation of Counsel

10   for the Defendant.  And, you know, we're here on a Trustee's

11   motion for summary judgment, because in the Trustee's

12   opinion, this is a textbook case of a fraudulent conveyance.

13   The underlying facts are not in dispute.  There's no dispute

14   that the transfer took place, that 5.6 million was taken out

15   of the Debtor's bank accounts by the Debtor's CEO who

16   controlled and operated a debtor entity in the healthcare

17   sector, and he took the money out not to buy something

18   related to the business of the Debtor but to buy a

19   residential condo in Manhattan.

20           There's no dispute before the Court that the title

21   to the real property was parked in an LLC which the CEO

22   incorporated only days before and which he owns, controls,

23   and says he solely manages.  There's also no dispute before

24   this Court that the CEO instructed his identity be concealed

25   with respect it purchasing and occupying the condominium

1    unit.  There's no dispute that he thereafter moved into the

2    unit solely for his own personal benefit, and he's been

3    using the condominium unit solely under his own control and

4    personal benefit, allowed others to use it for their

5    personal benefit including his family members, his

6    girlfriend, et cetera.

7            I think one thing that should give this Court some

8    confidence that the CEO manipulated and controlled this

9    debtor entity however he wanted to use it is that after he

10   moved into the property, he used the Debtor's credit cards

11   to pay for the upkeep for at least a year and a quarter that

12   he occupied the unit.  It's not a disputed fact in the

13   separate statement that about $67,000 was incurred on the

14   Debtor's credit cards to pay for the taxes, the common costs

15   associated with it.

16           There was nothing put forward in the opposition to

17   justify why an executive with the Debtor could do such --

18   take such actions.  That should give the Court another piece

19   of evidence to indicate that the Debtor was manipulated by

20   the CEO.

21           The motion sets forth, Your Honor, admissible

22   evidence that the diversion of funds was, in fact, simply a

23   cash-and-grab.  The opposition does not dispute that the

24   transaction occurred.  They simply try to justify it here in

25   2020 and the year 2021 that, hey, there's some documents

1    that could be their contention would support the basis for a

2    debt and the diversion of $5.6 million.

3           But the facts before the Court, Your Honor, it's

4    not disputed that there's no book entries that, A,

5    memorialize an antecedent debt and, B, there's no book

6    entries -- nothing in the Debtor's books and records that

7    evidence that the transfer of this real -- of the money and

8    the transfer of the real property satisfied an antecedent

9    debt.

10          So what the Court's left with is the estate which

11   is depleted of $5.6 million and with no similar exchanging

12   value given to the Debtor.  And that's the textbook

13   definition of a fraudulent conveyance, has the estate been

14   depleted without exchanging property of similar value to the

15   Debtor to the prejudice of the Debtor's unsecured creditors.

16          Our papers, the Mellon Bank case, which says

17   that's kind of the big picture that the Court looks at when

18   they look at a fraudulent conveyance.  And if anything, Your

19   Honor, the Plaintiff's contention is the opposition should

20   give the Court some confidence that what the evidence the

21   Plaintiff said occurred is in fact true.  We submitted --

22          THE COURT:  That's more -- Mr. Nolan, hang on,

23   that's more on the actual intent side because I think you're

24   now -- it sounds like you were now going into the

25   constructive fraudulent transfer side.  And let me ask you

1    on the constructive fraudulent transfer side, we do have a

2    fairly extensive affidavit from Mr. Jones, but he's not

3    presented as a solvency expert.

4         He's done a forensic analysis and is providing

5    some contemporaneous and prior -- some contemporaneous, some

6    subsequent documents.  But he does not -- possibly because

7    he wasn't retained to do this, he's not actually expressed

8    an opinion on solvency or insolvency on or before or after

9    the dates of the transfers of the payments for the condo.

10        MR. NOLAN:  That's correct, Your Honor.  We did

11   not submit a -- and we have not submitted a solvency report.

12   The motion on the constructive fraud side of the analysis is

13   basically that, number one, if the Debtor evidences to the

14   Court or the Plaintiff evidences to the Court that there was

15   no consideration for the transaction, then insolvency -- the

16   Debtor's presumed to be insolvent, as well as if the --

17   under 273(a), there's another theory that we set forth to

18   the Court which that under 273(a), the analysis is good

19   faith and fair consideration.

20        And if the Plaintiff shows to the Court it's a

21   self-interested transaction, that's a transaction where the

22   defendant is on both sides of the equation and which we have

23   shown here, it's undisputed.  I mean the opposition, Your

24   Honor, essentially tries to justify the transaction by

25   saying Mr. Parmar, the CEO of the transferor, is simply

Page 36

1     paying himself what he was entitled to as the transferee.

2            Under New York Creditor Law 273-A, that's a self-

3     interested transaction and it cannot -- it can never be made

4     in good faith.  That's a bad-faith transaction in that the

5     CEO is favoring himself over creditors of the estate.  And

6     the transaction fails under 273-A regardless of the issue of

7     solvency, irregardless.

8            THE COURT:  Well, what if Mr. Parmar were actually

9     owed $6 million at the time of the condo purchase and paid

10    himself $6 million directly?  Is that still on its face a

11    fraudulent transfer?

12           MR. NOLAN:  Yes, it is.  Because the way -- first

13    off, there's nothing in the books and records to indicate --

14    I mean there's no W-2, there's no -- there's nothing in the

15    books and records that memorializes that this is a

16    compensation, that there was compensation paid to an

17    executive.  I mean that would be in the Debtor's books and

18    records as a liability.  It would be in the Debtor's books

19    and records as an expense that could be set off against

20    income.

21           I mean there would be any number of different

22    places in the Debtor's books and records if Mr. Parmar had

23    actually take that money as income that that would appear.

24    But there's nothing in the books and records to say that.

25    So --

1          THE COURT:  No, I understand that.  But it sounded

2    as if you were arguing even if -- capital I, capital F --

3    even if Mr. Parmar was owed $6 million, buying the condo as

4    his form of compensation is on its face a fraudulent

5    transfer, whether actual or constructive, because there's an

6    absence of good faith.

7          MR. NOLAN:  Yes.  It's -- Your Honor, we would say

8    that that's an accurate statement of the law that an insider

9    payment is not in good faith regardless of whether it's paid

10   on account of an antecedent debt -- and I would instruct the

11   Court in my reply papers, I cited to the American Media v.

12   Bainbridge decision.  And American Media, the president was

13   -- of the debtor was a gentleman by the name of Ruderman.

14   He paid himself to repay loans which he said that were

15   valid.  And, in fact, in that case, you know, he submitted

16   evidence that there was a debt that was owed to him and he

17   took the money out to pay himself back.

18          And the court in that case said that the

19   requirement of good faith is not fulfilled through

20   preferential transfers of corporate funds to debtors -- to

21   directors, officers, or shareholders of a corporation.  And

22   so -- and I cited a number of other cases in New York that

23   also stand for that proposition that that type of a

24   transaction violates 273-A on its face.

25          There's some other -- there's another case, Your

1  Honor, is the American -- let me just grab this.  It was the

2  Atlantic Shipping Corp v. Chemical Bank decision, Your

3  Honor, 818 F.2d 240 (2d Cir.1987).  And that case sets forth

4  that New York -- it's well settled in New York that the

5  general rule or the exception to the general rule that

6  repayment of an antecedent debt does not constitute fair

7  consideration when the recipient of the payment is a

8  corporate insider, i.e., an officer, director, or major

9  shareholder of the transferor corporation.

10      And that is admitted by the Defendant in the

11  opposition, Your Honor, at paragraph 32.  In one paragraph,

12  Mr. Parmar and the Defendant admit that this is a self-

13  interested transaction solely to benefit one person who is

14  the executive officer and director and majority shareholder

15  of both the transferor and the transferee.

16      So the motion, at least, Your Honor, from our

17  perspective under constructive fraud sets forth two paths

18  that would allow the Court to find that this is a

19  constructively fraudulent transfer even without addressing

20  the issue of solvency.

21      In fact, we thought, Your Honor, in submitting the

22  motion that even though we didn't have a  solvency opinion

23  that we could rely on the tax records and the Debtor's books

24  and records, Your Honor.  And I cited to a couple of cases

25  at page 22 of my motion that sets forth if a debtor has a

1   negative income for each year and is consecutively throwing

2   up negative losses like the Debtor was doing in this

3   case -- negative 12 million in 2015, negative 40 million for

4   net income in 2016, negative 20 million in 2017 -- and their

5   negative retained earnings were $133 million by the time

6   they filed the petition in bankruptcy, that that is evidence

7   of insolvency.  Negative net operating losses are evidence

8   of insolvency under the Bankruptcy Code under the In re FHI

9   decision.

10          And it at least pushed the burden over to the

11  Defendants, Your Honor, to come forth with some credible

12  admissible evidence that what the Trustee was setting forth

13  that the Debtor was just racking up losses every year was

14  not the case.  And nothing was put forth for an argument

15  that was submitted by any admissible evidence, Your Honor,

16  to give the Court some type of hesitation that the Debtor

17  was actually solvent or had some ability to pay its debts.

18          In fact, the opposition admits a separate

19  statement of fact, Your Honor, that there was a judgment

20  issued against the Defendant -- or the Debtor in 2015 for

21  about $200,000 and that debt was never paid by the Debtor.

22  It was a judgment out of the Southern District of Texas, and

23  it is outstanding as of today.

24          And there's a third path for finding a valid

25  constructive fraud against the -- under New York Debtor

1   Creditor Law, there's a third path for this Court to find or

2   grant the summary judgment if the Court finds that either at

3   the time or before the transfer there was a docketed

4   judgment against the Debtor and it was unsatisfied, then it

5   a per-se constructively fraudulent transfer.

6           THE COURT:  Mr. Nolan, jumping from that because

7   that does segue whether you intended to or not to another

8   question the Court has which is it's really -- I view it as

9   a remedies question, and I think both sides touch on it on

10  the papers, which is for whom the recovery may be set aside.

11          There seems to be an issue raised at least by the

12  Defendant that, well, even if you're right, even if the

13  Plaintiff is right on its recoveries theories, the

14  conveyance can only be set aside to satisfy the 200,000 or

15  so dollars of creditors that existed at the time of the

16  purchase.  Will you address that?

17          MR. NOLAN:  Yes, Your Honor.  I took the

18  Plaintiff's -- the Defendant's argument to mean that the

19  Trustee -- only that the party that docketed the judgment

20  would be entitled to make a claim of constructive fraud

21  under 273-A, that you actually had to be the creditor that

22  was chasing the debtor and was unpaid.

23          And I set forth in our reply, Your Honor, a number

24  of cases that specifically held that you don't need to be

25  the -- it seems to be it would be a standing issue is that

Page 41

1    you don't need to be the creditor that actually docketed the

2    judgment to say that a transfer that occurred after your

3    judgment was docketed should be set aside.

4           And the reason I would submit to the Court that

5    our interpretation is more reasonable is, number one is the

6    opposition didn't set forth any case law to guide the Court

7    that the Court should read that statute so narrowly that

8    it's restricted to the judgment creditor.  And number two

9    is, Your Honor, our reply set forth three cases, one of

10   them's in the Eastern District Bankruptcy Court New York

11   that set forth that a trustee could -- if the docketed

12   judgment exists at the time of the transfer, the trustee can

13   step into the shoes and can enforce that theory of liability

14   against the transferee and for good reason, Your Honor.

15          Those cases talk about the fact that it's the

16   purpose of 273-A is to stigmatize transfers that allow money

17   to go out of the estate when a valid judgment debtor --

18   judgment creditor exists.  It's just -- it's not something

19   under New York law that ever has been encouraged, and those

20   particular cases -- one of them which I believe is the

21   Akerman case, are all instances which the Trustee steps into

22   the shoes.  And that's nothing inconsistent with cases that

23   are in front of the Court.

24          Trustees just by virtue of the fact of a petition

25   being filed in bankruptcy are always forced to step into the

Page 42

```
 1    shoes of a creditor to use state fraudulent conveyance law.

 2    I mean, the predicant --

 3              THE COURT:  My question is not so much the 544(a)

 4    imbued or hypothetical creditor status of the trustee.  My

 5    question is really -- and the reason I posed it is more of a

 6    remedies question which is, if the allegation is the

 7    transfer was fraudulent as to creditors who existed at the

 8    time of the transfer, is the trustee's recovery limited to

 9    the amount necessary to satisfy those creditors as opposed

10    to a transfer which is fraudulent as to existing and future

11    creditors and whether or not and to what extent there's

12    evidence in this record of who those future creditors may

13    be.

14              Again, I'll try to pose the question differently.

15    Set insolvency issues aside, if the debtor that made the

16    payments at the time the debtor made the payments owed

17    $250,000 to other creditors and chose not to make those

18    payments, those creditors should be satisfied from the

19    recovery of the asset transferred.  So who is it here for

20    whom the trustee seeks recovery if it's more than just the

21    two creditors who existed or had claims or judgments at the

22    time of the condo purchase?

23              MR. NOLAN:  I am trying to identify.  I identify

24    for the Court two cases that came out of New York that

25    talked about a trustee stepping in and setting aside a
```

1    transfer to satisfy a judgment creditor that existed on the

2    -- had docketed a judgment.  I don't believe either one of

3    those cases, Your Honor, made a distinction about limiting

4    or quantifying the amount of damages based on the judgment.

5    I think the bigger picture on those cases, Your Honor, and I

6    think it's borne out by the cases -- the case comments in

7    the case law is that the court stigmatizes the transfer

8    where legitimate creditors not only were owed money but

9    docketed a judgment and insiders went ahead and transferred

10   money around those creditors and those -- as long as the

11   trustee can prove that those creditors were never paid, that

12   the rationale is to set off the transfer.

13           I guess the Court could be in a situation at some

14   point if the Court agree with my interpretation that you

15   could have a transfer that's more deminimus -- I mean, a

16   transfer that's larger and you could have a deminimus

17   judgment and there could be, you know, an equity issue

18   about, well, geez, if it's only $1,000 judgment and the

19   transfer is so much larger, you know, what happens to the

20   difference if you set it aside.

21           I mean, in this case, Your Honor, general

22   unsecured creditors are not anywhere in the money right now.

23   In fact, the Court knows that secured creditors are owed

24   money in this bankruptcy estate.  If the transfer is set

25   aside in this particular case for 5.6 million then there's

1    not going to be -- there's no issue of the creditors

2    receiving anything significant until the secured creditors

3    are paid.  But the amount of money that comes in from the

4    trustee first goes to secured creditors and then unsecured

5    creditors.

6            So I don't think we would be forcing the Court

7    into some twisted fact pattern that, you know, a simple

8    $200,000 judgment that was recorded in 2015 is

9    disproportionate to the $5.6 million transfer that's before

10   the Court.

11           THE COURT:  Right.  Well, that -- but again, if

12   I'm understanding the plaintiff's papers correctly, you all

13   are arguing that the transfer was fraudulent as to existing

14   and future creditors.  Is that right?

15           MR. NOLAN:  Correct, Your Honor.  The way the law

16   is set is it's not only if -- it leaves the -- if the

17   transfer, you know, violates the (indiscernible) that it's

18   to an indicter.  It's not made for fair consideration.  But

19   if the debtor's insolvent, it's fraudulent as to not only

20   existing creditors but future creditors.

21           THE COURT:  All right.  I do want to -- I have

22   some questions for Ms. Hadden so I'll come back to you, Mr.

23   Nolan, for rebuttal, but I do want to give Ms. Hadden a

24   chance to argue.

25           MS. HADDEN:  Certainly, Your Honor.  Maryann

1    Hadden.  Your Honor, do you want to address your questions

2    first or do you want me to sort of free flow first and then

3    you can catch up to me as I got?  How would you prefer?

4              THE COURT:  It may be easier for me to start with

5    a question I have -- well, maybe a couple questions I have

6    and then I'll let you get to the flow of the argument that

7    you wanted to present it.

8              The first being, I don't have -- I don't seem to

9    have any summary judgment -- admissible summary judgment --

10   evidence from the defendant.

11             MS. HADDEN:  Part of that, Your Honor, was my time

12   frame issues.  I had some issues getting in touch with my

13   client and getting documents into the format that they

14   should have been in for the Court.  Rule 56(e) obviously

15   does provide the Court with a range of possible options in

16   that scenario, obviously including the opportunity to give

17   me an opportunity to make some of those documents -- and by

18   make, I don't mean create -- but, you know, for example, the

19   bank statements that I submitted.  I submitted them as

20   redacted as to the payees and payors because it was a public

21   document.  Obviously, I can submit the full unredacted

22   document to the Court with copy to counsel in a non-public,

23   non-ECF forum.  I believe I have a certification from Chase

24   as to those records because they were obtained as part of

25   discovery in another matter.  I may not so I need an

1    opportunity to get a discovery from Chase as to that.

2              As to the consulting agreement between FUH and

3    CHT, that being another obviously substantial exhibit from

4    the defendant's perspective, that's something where a

5    certification would presumably have to come from Mr. Parmar

6    as the manager of FUH.  And obviously --

7              THE COURT:  Those are the documents more to which

8    the Court's question goes because I don't see in the summary

9    judgment record an affidavit from Mr. Parmar saying that on

10   or about the dates of the transfers at issue I was owed 6

11   million, 5 million, 9 million, $12 million by the transfer

12   or entity and the debts that were owed to me were satisfied

13   in part, in full, through the purchase of the 2 River

14   Terrace condominium unit.

15             MS. HADDEN:  That's correct, Your Honor.

16             THE COURT:  I don't see anything along those

17   lines.

18             MS. HADDEN:  I understand.  Part of that was

19   essentially an excess of caution on my part in that Mr.

20   Parmar obviously was a defendant in a indicted criminal case

21   so my effort is always to avoid any scenario in which I am

22   requesting affidavit from him for anything that could be

23   connected to that criminal matter.  And so I incorrectly

24   relied on the burden being on the movant in a Rule 56 motion

25   in that it is up to the movant to establish that the

```
1    evidence is such that a reasonable jury could not return a

2    verdict for the opponent.  But obviously I (indiscernible)

3    Parmar.

4           THE COURT:  No, I'm not posing it as an error in

5    strategy of substance.  I'm just -- in looking over the

6    summary judgment record that I have -- obviously, the Court

7    should only consider evidence which is in the form which

8    would be admissible at the time of trial and we do have a

9    series of objections from the trustee to the summary

10   judgment evidence that's been submitted whether due to lack

11   of affidavit or attestation from Mr. Parmar or from anyone

12   else who may have knowledge of the relevant fact.

13          And so for 56(e) purposes, if your response as

14   well under Rule 56(e), I need more time to gather the

15   documents -- if that's one -- if it's in the response, and,

16   two, if it's a question of, I need an affidavit -- the

17   defendant would like to submit an affidavit from Mr. Parmar

18   to attest to the facts that are asserted in the response,

19   however, due to other circumstances, he's unavailable to

20   submit an affidavit at this time, for some time, for

21   whatever period of time -- I'm not going to consider as

22   evidence evidence which is not in admissible form as Rule 56

23   requires.

24          MS. HADDEN:  I understand that, Your Honor.  And,

25   yes, it's -- so I sort of have a two-part response.  As to
```

Page 48

1    items such as the bank statements, I would be able to

2    provide certified copies for the Court.  It just may require

3    a, you know, brief amount of time in order to do that.

4    However, as to an affidavit from Mr. Parmar because of the

5    extenuating circumstances os the criminal case, I'm in a

6    situation where he would be willing to provide an affidavit.

7    I would have the ability to obtain an affidavit but it puts

8    him in a very awkward position in terms of his criminal case

9    and his Fifth Amendments rights.  I'm very hesitant to do

10   that.

11             THE COURT:  So then -- and I don't know.  We can

12   talk more specifically about the bank records if that's

13   something that the trustee is maintaining its objection to,

14   but in terms of the allegations that on or about such-and-

15   such a date, I, Mr. Parmar, was owed 4 million, 8 million,

16   12 million, whatever the number is, there's just no evidence

17   in the record to support that.  And the second prong of that

18   going back to something Mr. Nolan -- the trustee -- argued

19   in papers and this morning, even if that is the case or was

20   the case, there's nothing in the record indicating -- in

21   admissible or inadmissible form -- that Mr. Parmar or anyone

22   else took on the tax burden of actually receiving $6 million

23   or so in compensation back in December of 2015 and February

24   of 2016.  So is 2 River asserting that in fact Mr. Parmar or

25   his entities received $5.5 million of compensation in 2015

Page 49

1   and 2016 through the purchase of the condominium?

2          MS. HADDEN:  Yes.  And I cannot answer the

3   question as to whether or not 2 River filed tax returns

4   reflecting that because I don't know the answer honestly.  I

5   should have looked at that --

6          THE COURT:  Well, the argument --

7          MS. HADDEN:  -- but I don't have (indiscernible)

8          THE COURT:  Yes.  The argument in the papers is

9   not that 2 Rivers received five-and-a-half-plus million

10  dollars of compensation.  The argument in the papers is is

11  that Mr. Parmar or First United Health or one of his other

12  entities received $5.5 million of compensation through the

13  purchase of the condominium and if that's the case,

14  presumably there exists tax filing documents -- 1099, W2s,

15  whatever they may be -- which would actually exhibit that

16  the entities who are claiming that that was their

17  compensation actually then took on the tax and associated

18  burdens of claiming that compensation for state and federal

19  tax reporting purposes.

20         MS. HADDEN:  Yes, Your Honor.  That is correct.

21  And that, again, would be --

22         THE COURT:  I don't see, for example --

23         MS. HADDEN:  -- in the category of an item -- I

24  apologize.

25         THE COURT:  No.  But I don't see, even in

1    inadmissible form, you know, here's the 1099 that was issued

2    from the transfer or entity or the other form of tax

3    documents showing that in fact it expensed it out or applied

4    it to the compensation owed.

5              MS. HADDEN:  That's correct.  And that was

6    entirely an oversight on my part.  It honestly didn't even

7    occur to me until Your Honor started speaking a moment ago

8    that that would have been another way of showing the way in

9    which the compensation was received and the fact that it was

10   acknowledged by Mr. Parmar and by his constellation of

11   entities -- using the word constellation advisedly.

12             THE COURT:  No pun intended.  But I --

13             MS. HADDEN:  Yes.  No pun intended.

14             THE COURT:  I may have misunderstood.  I thought

15   the defendant was arguing that, not only was Mr. Parmar or

16   were he and the entities associated at the time, actually

17   owed this money but for antecedent debt purposes, the

18   transfer -- the purchase of the condominium was actually

19   made to satisfy that antecedent debt because, like a

20   Broadway musical with no music, I guess it's academically,

21   theoretically interesting to argue the existence of

22   antecedent debt, but if the antecedent debt is not actually

23   satisfied by the transfer, what's the purpose of arguing

24   antecedent debt.

25             MS. HADDEN:  No.  Your Honor, did understand my

1    papers correctly.  And frankly, I should have attached tax

2    returns as documents to them.  It simply didn't occur to me

3    as being another document which I could have obtained in

4    order to support it.  That should have occurred to me and

5    simply didn't.  But the -- your understanding of my argument

6    was entirely accurate.

7              THE COURT:  That is both existed and satisfied --

8    that that's the argument.

9              MS. HADDEN:  Correct, yes

10             THE COURT:  All right.  And so if I were to

11   conclude from the record before me that I in fact have no

12   admissible evidence of either the existence of an antecedent

13   debt at the time of December 2015 or February of 2016 and I

14   have no evidence -- no admissible evidence -- of the

15   satisfaction of such a debt, how does the defendant fend off

16   summary judgment?

17             MS. HADDEN:  So summary judgment is sought by the

18   trustee under several different arguments.  Obviously,

19   there's the claim -- I believe Mr. Nolan phrased it as a

20   textbook case of fraudulent conveyance -- that there was a

21   fraudulent intent involved in this transfer.  And I do not

22   believe that the evidence before this Court, looking solely

23   at the admissible evidence, is such that a clear case of

24   fraudulent intent is made out.

25             I want to go back for just a moment to the

Page 52

```
 1   question that Your Honor had asked about 273(a) and I

 2   believe, if I caught the question correctly, it was whether,

 3   you know --- the plaintiff's argument was that a CEO could

 4   never pay himself or obtain compensation for himself under

 5   273(a) without it being a per se fraudulent transfer.  And

 6   again, if I understood that correctly, Mr. Nolan was

 7   agreeing that was, you know, the logical extension of the

 8   plaintiff's argument.  Taking that down -- further down the

 9   logical extension path, I don't believe that that complies

10   with the statute.

11            273(a) is very specific in that it applies -- and

12   this may very well be one of the reasons why the statute was

13   repealed by the legislature -- but it applies in a very

14   specific scenario where a conveyance has been made while

15   there is a pending judgment or action and it is fraudulent

16   just as to the plaintiff in that action -- that's the plain

17   language of the statute -- fraudulent as to plaintiff in

18   that action -- without regard to the actual intent of the

19   defendant, if, after final judgment, the defendant fails to

20   satisfy the judgment.  So it's a very specific factual

21   scenario where there's a pending judgment or pending action

22   solely as to that particular plaintiff and in that

23   particular scenario, the regard of the -- there's no regard

24   given to the actual intent of the defendant.

25            However, extending the concept of 273(a) to say
```

Page 53

1    that a CEO or other insider or corporate officer can never

2    by paid for a debt without it being a fraudulent transfer

3    extends that statute to the point where it become

4    unreasonable.  Obviously, CEOs can be paid.  Corporate

5    officers can be paid.  The real question is whether or not

6    the business or the company is made insolvent by that

7    transfer or unable to pay the debt in, you know, looking

8    specifically at 273(a), that's outstanding in the action or

9    the judgment.

10            In this particular case, we're talking about a

11    debt that -- or a judgment that was approximately $200,000,

12    looking at the two -- the combination of the two judgments

13    put together, and a $5 million conveyance.  The $5 million

14    conveyance, if you look at the bank records of the debtor,

15    did not render the debtor insolvent at that time, did not --

16    it's essentially as if -- sort of analogizing it to more

17    normal person scenarios -- if you owe a $20 co-pay to your

18    doctor and you haven't paid for that $20 co-pay -- it's

19    still outstanding -- and then you go out and buy a house.

20    The fact that you've bought a house is not what is rendering

21    you unable to pay your $20 co-pay to your doctor.  You just

22    haven't in your head put those two categories in the same --

23    haven't put those two facts in the same category.  You're

24    still able to pay the doctor, you just haven't gotten around

25    to doing it.  It's the --

1          THE COURT:  Well, but I think that that --

2          MS. HADDEN:  -- defendant's argument that that's -

3 -

4          THE COURT:  Right.  But I think in that good

5 hypothetical, if I go out and buy a house, I'm putting the

6 house in my name so I've traded one asset for another asset.

7 The (indiscernible) here I think from the trustee's

8 standpoint is that CHT took $5.5 million and put an asset in

9 the name of another entity.

10          MS. HADDEN:  It did.

11          THE COURT:  So my doctor or my, you know, medical

12 provider can't look to me for that $20 anymore because if I

13 bought that house it's not in my name.

14          MS. HADDEN:  That's a fair point.  The defendant's

15 argument is that essentially because Parmar was the manager

16 of 2 Rivers Terrace and the sole human representative of 2

17 River Terrace that they're essentially equivalent.  And he

18 was in a similar scenario with First United Health which was

19 the entity that had the consulting agreement with CHT.

20 Unfortunately --

21          THE COURT:  Be careful how far that argument --

22 that argument may go further than you want to --

23          MS. HADDEN:  Exactly.

24          THE COURT:  -- but, okay.  Yeah.

25          MS. HADDEN:  It may very well take me for me

Page 55

 1   further than I need to go.

 2            THE COURT:  Yeah.

 3            MS. HADDEN:  I did also want to touch briefly on -

 4   - and I'm, you know, sort of derailing myself for a moment

 5   here -- but on the question of the tax returns as evidence

 6   of solvency or insolvency.  And I believe the trustee has

 7   fairly heavily relied on them as evidence of the debtor's

 8   insolvency in this form that they were filed by FTI once FTI

 9   came in as a consultant in eventually dealing with the

10   debtor's estate.

11            My contention as to tax returns which I may or may

12   not have managed to argue clearly enough in the motion is

13   that a tax return, again, is something that is a somewhat

14   malleable creature while still being fully admissible under

15   the income regulations and under the tax code.  Again,

16   taking sort of a real-world example, if you purchase a

17   laptop for your business, you could deduct that entire

18   expense in one tax year which reduces the income of the

19   business by a larger amount or you could amortize that

20   expense over, I think, either two or three years -- and

21   again, I'm not an accountant so don't do your taxes by what

22   I'm saying -- but if you split that item up over a two- to

23   three-year period, again, complying with the tax laws while

24   doing so, if raises the income for each of those years.

25            So you can have the same exact set of financial

1    facts leading to two very different tax returns depending on

2    how you handle amortizable expenses.  And the fact that the

3    debtors filed amended tax returns showing a loss as opposed

4    to the tax returns that were originally filed that not only

5    did not show a loss but wound up with the debtor owing taxes

6    and paying those taxes, gives two very different pictures of

7    solvency and I think that goes back to the Court's question

8    as to the fact that there was no actual opinion on solvency

9    presented.

10           So I think that the central issue before the Court

11   really is solvency and the question of solvency -- whether

12   or not in a summary judgment scenario specifically we're in

13   a situation where the evidence is such that a reasonable

14   jury could not return a verdict for the defendant.  And I

15   don't think we are in that scenario.  I think we're in a

16   scenario where there are significant questions as to

17   solvency in particular.  There are questions as to whether

18   or not there was or was not fair consideration.  There's

19   questions as to whether there was or was not an antecedent

20   debt.  There are questions as whether there was or was not

21   fraudulent intent.

22           Obviously, my answers to those questions are very

23   different from the plaintiff's answers to those questions.

24   But I think that we are in as scenario where really in order

25   to have an actual factual determination, you would need a

Page 57

```
 1    solvency opinion.  You would need expert opinions.  You
 2    would need full discovery.  You'd need someone with records
 3    access on both sides so that both sides could argue that
 4    issue for the Court.  I don't think we're in that scenario.
 5    And although we are in agreement on some of the most basic
 6    facts, I don't think that the agreement on those most basic
 7    facts is sufficient to bring the Court to the level where
 8    you would be able to make a determination on a summary
 9    judgment motion.
10            THE COURT:  All right.  Thank you, Ms. Hadden.
11    Mr. Nolan, anything you want to add?
12            MR. NOLAN:  Yes, Your Honor, just briefly.
13    Typically, when a fraudulent conveyance case comes before a
14    court, most of the time I'm arguing with my colleague over
15    whether or not what was given as consideration was
16    reasonably equivalent value.  You know, there's opinions
17    going back and forth whether or not what was exchanged for
18    what was in the ballpark of the conveyance.  Those can get
19    really fact intensive but that's not the fact pattern that's
20    in front of this Court.
21            I mean, the undisputed facts are that there's a
22    transfer in front of the Court for no consideration.  None.
23    And we've submitted to the Court the case law in New York
24    that says transactions that are performed without any signs
25    of tangible consideration are presumptively fraudulent.  I
```

1   cited to the Mendelsohn versus Jacobowitz decision, 394 B.R.

2   646.  And it talks about interfamily transfers without any

3   signs of tangible consideration as being presumably

4   fraudulent, and that's what's in front of the Court right

5   now.

6           I didn't force Mr. Parmar or the defendant to make

7   the argument in the opposition that they made, that this was

8   a self-interested transaction that benefited Mr. Parmar.  I

9   just simply, in the reply brief, drew attention to the fact

10  that even if you accept Mr. Parmar or defendant's argument,

11  Your Honor, that somehow there was fair consideration

12  because there was an antecedent debt and what was

13  transferred satisfied that antecedent debt, that that

14  argument doesn't even make sense because what they've

15  submitted to the Court is, a) not admissible evidence, but

16  one of the documents says that FUH which is a separate

17  third-party corporation agreed to take stock, not to take

18  cash.  They would have at best an equity interest and they'd

19  be line behind everybody else.

20          And then the argument that there's an antecedent

21  debt in the opposition, Your Honor -- it's based on a

22  formula, a formula that the defendant doesn't even give all

23  the different variables to the Court to allow the Court to

24  decide if there is -- even is an antecedent debt owed on the

25  issue of fair consideration.

1      I certainly appreciate some the arguments from the

2  bench just now about, well, what happens if Mr. Parmar

3  submitted an affidavit saying, you know, he was owed 6

4  million or 9 million and took the property in consideration

5  for that transfer.  But I would submit to the Court that

6  we've submitted to the Court that the Ackerman versus

7  Ventimigilia case out of the Eastern District of New York.

8  It's at 362 B.R. 71.  And in the Ackerman case, Your Honor,

9  the Court says that there has to be credible admissible

10  evidence to determine that there was, a) an amount owed

11  under a loan, and b) it has to be credible evidence as to

12  the amount of that debt and that submission of an affidavit

13  or oral testimony alone can't replace a finding of a

14  legitimate antecedent debt owed.

15      And I would think that that could give some

16  guidance to the Court or at least some comfort that if the

17  Court is so inclined to find that there hasn't been

18  admissible evidence of an antecedent debt and that there

19  hasn't been admissible evidence that an antecedent debt was

20  satisfied, that it's proper at this stage.  And Your Honor,

21  we are in an -- unfortunately -- a difficult position with

22  this condominium given the confluence of factors here that

23  there is the sheriff's sale coming up and -- the opposition

24  didn't dispute that summary judgment motions, I guess, they

25  should be granted sparingly but they are proper where the

1    facts and circumstances are ripe.

2            It saves everybody time and money.  We've got a

3    property right now where the initial judgment was 200,000.

4    Now it's $450,000 on behalf of the homeowner's association.

5    The trustee submits that there is clear evidence in front of

6    this Court that -- of both the intentional fraudulent

7    conveyance and the constructive fraudulent conveyance.  And

8    there's just not a reason to kick the can down the road any

9    further.  Thank you, Your Honor.

10           THE COURT:  All right.  Thank you.  All right.  I

11   -- Court appreciates the arguments from both sides and the

12   status update from counsel for the condominium association.

13   I am not prepared to rule today.  I want to give further

14   consideration to both the papers and what's been argued this

15   afternoon.  Having also a fairly full docket next week, I

16   cannot get to a ruling before your current sale date.  I

17   would recommend that the parties continue their discussions

18   about either a further adjournment of that sale date or the

19   protocol under where the property can be monetized while the

20   Court is considering the adversary proceeding in general and

21   the summary judgment motion in particular.  I will give you

22   all for your timing purposes -- Ms. Mills, can we use

23   February 9th at three o'clock at least as a tentative

24   ruling?

25           CLERK:  Hold one second, Judge.

```
 1              THE COURT:  Any time.

 2              CLERK:  Hold on one second.  We can use two -- can

 3      we go to 2:30 because you already have pre-trials on that

 4      day.

 5              THE COURT:  All right.  So February 9th at 2:30.

 6      Ms. Mills, if you'll docket notice of an adjournment.  This

 7      is -- the intention of the Court would be to give you all a

 8      ruling on this motion on February 9th at 2:30.  If for some

 9      reason the Court's not in a position to rule at that time,

10      we'll notify you all in advance.  But that would a ruling

11      conference only.  That's not any further argument.  February

12      9th at 2:30.

13              MS. HADDEN:  Thank you.

14              MR. NOLAN:  (indiscernible)

15              THE COURT:  All right.  Very well --

16              MR. PITTINSKY:  Your Honor, speaking for the

17      condominium, I will consult with the board, advise them of

18      that control ruling date and then I will advise Mr. Nolan

19      and Ms. Hadden by email on what the outcome of that is.  It

20      may take me a day or two to -- both of them to get the board

21      together to get an answer on that.  And Ms. Hadden, I look

22      forward to speaking offline on the state court case that you

23      say you've commenced.  All right?

24              MS. HADDEN:  Yeah.  So I'll give you a call as

25      soon we get off here.
```

Page 62

1                  THE COURT:  All right.  And again, this is

2       redundant to what I've already said, but if the parties are

3       amenable to a sale protocol, the Court would certainly be

4       open to establishing the procedure under which the unit is

5       monetized and the parties fight over who gets the money.

6                  All right.  So then we'll be -- Ms. Mills, do we

7       have any other on the docket for this morning on the ten

8       o'clock call?

9                  CLERK:  That's it, Judge.

10                  THE COURT:  All right.  So then until February 9th

11       at 2:30 p.m.  Again, the Court appreciates the papers

12       submitted as well as the arguments of the parties this

13       morning.

14                  MS. HADDEN:  Thank you, Your Honor.

15                  MR. NOLAN:  (indiscernible), Your Honor.

16                  MR. PITTINSKY:  Thank you.

17                  THE COURT:  The Court will therefore be in recess

18       until one o'clock and we'll go off the record.  Good day,

19       all.

20                  AUTOMATED VOICE:  We're sorry.  Your conference is

21       ending now.  Please hang up.

22                  (Whereupon these proceedings were concluded at

23       11:35 AM)

24

25

Page 63

1                    C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  March 1, 2021

[& - actual]                                                                    Page 1

| & | | | |
|---|---|---|---|

**&**

**&**   5:3,18 6:1,8 7:8
  7:21,25 8:5,22
  26:9

**0**

**07748**   5:21

**1**

**1**   63:25
**1,000**   43:18
**10007**   5:14
**10016**   6:4
**10017**   5:6
**10017-2803**   6:11
**1099**   49:14 50:1
**10:01**   3:6
**11501**   63:23
**11722**   3:3
**11:35**   62:23
**12**   26:8 39:3 46:11
  48:16
**120**   21:14
**125**   5:20
**133**   39:5
**15th**   24:6
**16**   18:5,23 19:8
**160,000**   9:4
**16th**   16:20,22,23
  17:3 18:3,8 22:5
**18**   23:11 25:12,21
  26:1
**18-71748**   1:3
**18th**   22:21,21
  23:4 25:6,17
**190**   5:20

**2**

**2**   5:12 7:20 22:21
  22:21 23:11 25:21
  26:1,8 36:14
  46:13 48:24 49:3
  49:9 54:16,16
**20**   39:4 53:17,18
  53:21 54:12

**20-08038**   1:18
**20-08042**   1:9
  18:25
**20-08049**   2:1
**20-08051**   2:9
**20-08052**   2:17
**20-8042**   8:15
**20-8049**   19:21
**20-8051**   26:4
**20-8052**   23:15
**200,000**   39:21
  40:14 44:8 53:11
  60:3
**2015**   39:3,20 44:8
  48:23,25 51:13
**2016**   39:4 48:24
  49:1 51:13
**2017**   39:4
**2020**   33:25
**2021**   3:5 33:25
  63:25
**21**   3:5
**22**   38:25
**232**   6:3
**240**   38:3
**250,000**   24:19
  42:17
**26**   21:12
**273**   10:5 35:17,18
  36:2,6 37:24
  40:21 41:16 52:1
  52:5,11,25 53:8
**276**   10:1 14:10,12
  14:24 15:3,8
  16:11,16
**290**   3:2
**29th**   26:20 27:2
**2:30**   61:3,5,8,12
  62:11
**2d**   38:3

**3**

**30**   22:3
**300**   63:22
**32**   38:11
**330**   63:21
**34th**   5:5
**362**   59:8
**363**   31:20
**394**   58:1

**4**

**4**   48:15
**40**   39:3
**42**   4:1
**450,000**   60:4

**5**

**5**   46:11 53:13,13
**5.5**   48:25 49:12
  54:8
**5.6**   32:14 34:2,11
  43:25 44:9
**544**   42:3
**548**   10:8
**56**   45:14 46:24
  47:13,14,22

**6**

**6**   20:12 36:9,10
  37:3 46:10 48:22
  59:3
**646**   58:2
**67,000**   33:13

**7**

**7**   16:10 17:17
  19:10 24:12
**71**   59:8
**747**   6:10
**780**   5:5
**7th**   18:22

**8**

**8**   48:15
**818**   38:3

**8500**   5:13

**9**

**9**   46:11 59:4
**90**   21:14
**906**   6:3
**917-809-0346**   8:3
**9th**   17:8,11,15
  18:3 60:23 61:5,8
  61:12 62:10

**a**

**a.m.**   17:3 18:3,5,9
**ability**   39:17 48:7
**able**   48:1 53:24
  57:8
**abruzzi**   2:22
**absence**   37:6
**absolutely**   30:2
**academically**
  50:20
**accept**   58:10
**acceptable**   25:1
  25:14 28:2
**access**   29:23
  30:15 57:3
**account**   11:12,14
  18:17 37:10
**accountant**   55:21
**accounts**   32:15
**accurate**   21:2
  29:6 31:2 37:8
  51:6 63:4
**ackerman**   59:6,8
**acknowledged**
  50:10
**action**   15:3 20:12
  24:19 52:15,16,18
  52:21 53:8
**actions**   33:18
**actual**   10:3 14:10
  14:12 15:8,10
  34:23 37:5 52:18
  52:24 56:8,25

**add** 20:19 57:11
**additional** 9:21
  11:5,9 15:14
  18:10
**address** 9:20
  40:16 45:1
**addressing** 38:19
**adjourn** 18:4
  22:20 27:1
**adjourned** 26:23
**adjournment**
  23:10 25:21 60:18
  61:6
**admissible** 33:21
  39:12,15 45:9
  47:8,22 48:21
  51:12,14,23 55:14
  58:15 59:9,18,19
**admit** 38:12
**admits** 39:18
**admitted** 38:10
**admonition** 17:4
**adv** 1:9,18 2:1,9
  2:17
**advance** 17:11
  27:19 61:10
**adversaries** 7:16
  20:25
**adversary** 8:14
  9:4 15:21,24 24:5
  60:20
**advise** 61:17,18
**advisedly** 50:11
**affidavit** 35:2
  46:9,22 47:11,16
  47:17,20 48:4,6,7
  59:3,12
**afternoon** 60:15
**ago** 9:14 50:7
**agree** 17:5 22:15
  24:21 43:14
**agreed** 25:10
  58:17

**agreeing** 52:7
**agreement** 10:10
  12:10 13:22,23
  29:10,15 30:6,6
  46:2 54:19 57:5,6
**ahead** 17:8,9,24
  17:24 20:4 21:11
  30:21 43:9
**akerman** 41:21
**al** 2:6,14,22
**alan** 3:22 7:3
**allegation** 42:6
**allegations** 48:14
**allow** 9:12,19
  10:20,21 38:18
  41:16 58:23
**allowed** 33:4
**amenable** 62:3
**amend** 20:18
**amended** 22:17
  23:5,12 56:3
**amendments** 48:9
**america** 11:4,5,8
  15:6 18:11
**america's** 15:16
**american** 37:11
  37:12 38:1
**amicably** 20:23
**amortizable** 56:2
**amortize** 55:19
**amount** 42:9 43:4
  44:3 48:3 55:19
  59:10,12
**analogizing** 53:16
**analysis** 35:4,12
  35:18
**analyze** 11:23
**answer** 10:17
  15:18 49:2,4
  61:21
**answers** 56:22,23
**antecedent** 13:11
  13:11 34:5,8

37:10 38:6 50:17
  50:19,22,22,24
  51:12 56:19 58:12
  58:13,20,24 59:14
  59:18,19
**anthony** 23:21
**anticipating**
  22:21
**anymore** 54:12
**anyway** 12:13
**apartment** 26:8
  29:22 30:17,20
**apologize** 27:6
  49:24
**appear** 31:25,25
  36:23
**appearance** 7:6
  26:24
**appearances** 8:17
**appearing** 8:19
  19:22,25 23:16
  26:5,7,10
**appears** 12:7
**apple** 10:21
**applied** 50:3
**applies** 52:11,13
**appreciate** 27:20
  28:7,9 59:1
**appreciates** 60:11
  62:11
**appropriate** 22:7
**approval** 22:10
  31:14
**approximately**
  9:14 24:22 53:11
**april** 21:6,21
**area** 12:15
**argue** 44:24 50:21
  55:12 57:3
**argued** 17:2 48:18
  60:14
**arguing** 37:2
  44:13 50:15,23

57:14
**argument** 14:11
  18:3 26:13 39:14
  40:18 45:6 49:6,8
  49:10 51:5,8 52:3
  52:8 54:2,15,21
  54:22 58:7,10,14
  58:20 61:11
**arguments** 51:18
  59:1 60:11 62:12
**arms** 30:23
**arvind** 6:9 8:1,5
**aside** 16:17 31:6
  40:10,14 41:3
  42:15,25 43:20,25
**asked** 12:20,25
  14:21 17:7 27:4,9
  28:13 52:1
**asking** 11:7 14:15
**assent** 18:12
**asserted** 47:18
**asserting** 48:24
**assessment** 31:24
**asset** 29:8 30:1
  31:13 42:19 54:6
  54:6,8
**associated** 33:15
  49:17 50:16
**associates** 6:8 8:1
  8:5 19:25
**association** 31:10
  60:4,12
**assume** 28:21
**assumption** 31:4
**ast** 1:9,18 2:1,9,17
**atlantic** 38:2
**attach** 31:23
**attached** 51:1
**attempt** 27:10
**attempted** 12:8
**attention** 58:9
**attest** 47:18

**attestation** 47:11
**attorney** 7:6
**attorneys** 5:4,12
  5:19 6:2,9
**automated** 62:20
**avenue** 5:5 6:3,10
**avoid** 46:21
**awkward** 48:8

**b**

**b** 3:21 31:10 34:5
  59:11
**b.r.** 58:1 59:8
**back** 12:2,22 13:4
  13:5,20,22 14:6,7
  14:21 20:16 21:19
  21:25 22:5 25:6
  25:12 37:17 44:22
  48:18,23 51:25
  56:7 57:17
**bad** 36:4
**bainbridge** 37:12
**ballpark** 57:18
**bank** 11:4,5,8
  15:5,16 18:11
  32:15 34:16 38:2
  45:19 48:1,12
  53:14
**bankruptcy** 1:1
  3:1,23 9:5 10:8
  13:16 31:14,15,20
  39:6,8 41:10,25
  43:24
**based** 13:2 15:16
  22:6 43:4 58:21
**basic** 57:5,6
**basically** 28:17
  35:13
**basis** 15:21 34:1
**baton** 9:24
**beast** 14:20
**behalf** 7:11,20,22
  8:1,19,23 19:22
  20:1 23:16 26:5,8

60:4
**believe** 8:13 15:12
  16:19 20:17 41:20
  43:2 45:23 51:19
  51:22 52:2,9 55:6
**believes** 17:13
  29:17
**bench** 59:2
**benefit** 33:2,4,5
  38:13
**benefited** 58:8
**best** 58:18
**big** 16:12 24:18
  28:15 34:17
**bigger** 26:16
  28:11 43:5
**bite** 10:21
**board** 6:2 7:22
  26:10,25 30:12
  61:17,20
**book** 34:4,5
**books** 14:3 34:6
  36:13,15,17,18,22
  36:24 38:23
**borne** 43:6
**bought** 53:20
  54:13
**box** 5:20
**brief** 17:12 48:3
  58:9
**briefly** 55:3 57:12
**bring** 21:22 25:5
  25:11 30:24 57:7
**broaden** 14:18
**broadway** 50:20
**bu** 16:17
**burden** 39:10
  46:24 48:22
**burdens** 49:18
**business** 12:23
  13:8 29:11 32:18
  53:6 55:17,19

**buy** 32:17,18
  53:19 54:5
**buying** 37:3

**c**

**c** 5:1 7:1,12 63:1,1
**calendar** 18:6
**call** 11:4 28:3
  61:24 62:8
**campbell** 5:23
  7:10,11,11 8:16
  8:21,22 10:25
  11:1,2,21 15:4,11
  17:22 18:13,14
  19:3,19
**capacity** 1:11 8:20
  23:17 24:8
**capital** 17:19,19
  37:2,2
**cards** 33:10,14
**careful** 54:21
**case** 1:3,9,18 2:1,9
  2:17 8:14 9:5,7
  12:5,12 13:9
  17:19 19:21 20:7
  20:11,23 21:15
  22:6,8 23:3,15
  24:4 25:16 26:4
  31:15 32:12 34:16
  37:15,18,25 38:3
  39:3,14 41:6,21
  43:6,7,21,25
  46:20 48:5,8,19
  48:20 49:13 51:20
  51:23 53:10 57:13
  57:23 59:7,8
  61:22
**cases** 19:14 37:22
  38:24 40:24 41:9
  41:15,20,22 42:24
  43:3,5,6
**cash** 28:23 33:23
  58:18

**catch** 45:3
**categories** 53:22
**category** 49:23
  53:23
**caught** 52:2
**cause** 15:3 24:19
  27:13
**caution** 46:19
**center** 5:13
**central** 3:3 56:10
**ceo** 32:15,21,24
  33:8,20 35:25
  36:5 52:3 53:1
**ceos** 53:4
**certainly** 25:1
  29:6,9,15,21,24
  30:7 44:25 59:1
  62:3
**certification**
  45:23 46:5
**certified** 48:2 63:3
**cetera** 33:6
**cfo** 13:21
**chance** 44:24
**change** 26:15
**chase** 45:23 46:1
**chasing** 40:22
**chemical** 38:2
**chief** 7:3
**chivukula** 13:21
  14:4
**chose** 42:17
**cht** 46:3 54:8,19
**ciesla** 5:18 8:22
**cir.1987** 38:3
**circling** 14:7
**circumstances**
  47:19 48:5 60:1
**cited** 37:11,22
  38:24 58:1
**city** 8:10
**claim** 10:3 14:10
  14:16 15:8,10

30:14,16 40:20
51:19
**claiming** 49:16,18
**claims** 14:19
31:21,22 42:21
**clarification** 15:1
**clear** 31:22 51:23
60:5
**clearly** 7:4 55:12
**clerk** 7:2,10,13,17
7:24 8:2,6,9,11,13
16:19,21,23 19:21
23:15,23 24:1
26:4 60:25 61:2
62:9
**client** 27:4,10
29:23 45:13
**clog** 22:10
**close** 10:19 22:24
24:24 25:6 30:4
**closed** 9:8
**code** 9:5 10:8
13:16 19:15 31:20
39:8 55:15
**coded** 14:3
**colleague** 9:21
57:14
**collection** 30:21
**combination**
19:12 53:12
**come** 14:5 17:1
39:11 44:22 46:5
**comes** 23:1 44:3
57:13
**comfort** 59:16
**coming** 11:19
59:23
**commenced** 61:23
**comments** 43:6
**common** 33:14
**companies** 14:1
**company** 53:6

**compelling** 13:13
**compensation**
36:16,16 37:4
48:23,25 49:10,12
49:17,18 50:4,9
52:4
**competing** 12:2
**complaint** 10:23
20:18 22:17,18
27:13
**completed** 24:5
24:15
**complicated**
24:20
**complies** 52:9
**complying** 55:23
**concealed** 32:24
**concept** 52:25
**conclude** 51:11
**concluded** 62:22
**condo** 6:2 32:19
35:9 36:9 37:3
42:22
**condominium**
7:23 26:11 29:11
29:12,13 30:25
31:10,24 32:25
33:3 46:14 49:1
49:13 50:18 59:22
60:12 61:17
**condominium's**
30:10
**confer** 9:15 17:24
**conference** 9:25
18:5 20:6,9 21:4
21:23 22:20 23:3
23:10 25:23 61:11
62:20
**conferences** 21:24
**conferred** 20:10
**confidence** 33:8
34:20

**confluence** 59:22
**connected** 46:23
**connection** 11:13
**consecutively**
39:1
**consent** 11:7,16
**consider** 16:6
29:25 47:7,21
**consideration**
35:15,19 38:7
44:18 56:18 57:15
57:22,25 58:3,11
58:25 59:4 60:14
**considering** 60:20
**consistent** 23:7
**constellation**
50:10,11
**constitute** 38:6
**constructive**
14:19 34:25 35:1
35:12 37:5 38:17
39:25 40:20 60:7
**constructively**
10:7 38:19 40:5
**consult** 61:17
**consultant** 13:24
55:9
**consulting** 13:22
13:22,25 46:2
54:19
**consuming** 12:5
**contemplated**
25:7
**contemplation**
10:1 21:18
**contemporaneous**
35:5,5
**contention** 34:1
34:19 55:11
**continually** 12:24
**continue** 19:14
60:17

**control** 24:12 33:3
61:18
**controlled** 32:16
33:8
**controls** 32:22
**conversation** 28:4
31:1
**conversations**
29:3 31:18
**convert** 28:23
**conveyance** 9:5
13:14 14:2 20:12
24:19 31:5 32:12
34:13,18 40:14
42:1 51:20 52:14
53:13,14 57:13,18
60:7,7
**cooperation** 32:9
**cooperatively**
16:25 22:18 26:25
**copies** 48:2
**copy** 27:18 45:22
**corp** 38:2
**corporate** 37:20
38:8 53:1,4
**corporation** 37:21
38:9 58:17
**correct** 11:3 15:1
30:2 35:10 44:15
46:15 49:20 50:5
51:9
**correctly** 44:12
51:1 52:2,6
**cost** 22:13 25:5
**costs** 33:14
**counsel** 8:5 9:15
9:22 20:6,9 23:19
32:9 45:22 60:12
**country** 63:21
**couple** 22:4 38:24
45:5
**course** 15:12

[court - designations]                                                    Page 5

**court**  1:1 3:1 8:17
8:24 9:3,12,13,14
9:18,23 10:9,16
10:24 11:18 12:1
12:8 13:15 14:7
14:15 15:2,4,20
15:23 16:17,20,22
16:24 17:23 18:15
18:19,25 19:8,17
20:2,4,8,24 21:1,3
21:9,17 22:5,5,7,9
22:12,16,22 23:19
23:22,25 24:2,10
24:11,13,21 25:4
25:19 26:12,12,24
27:5,7,10,14,24
28:7,9,21 29:3,10
29:16,20 30:8,22
30:22 31:5,15,16
32:20,24 33:7,18
34:3,17,20,22
35:14,14,18,20
36:8 37:1,11,18
38:18 39:16 40:1
40:2,6,8 41:4,6,7
41:10,23 42:3,24
43:7,13,14,23
44:6,10,11,21
45:4,14,15,22
46:7,16 47:4,6
48:2,11 49:6,8,22
49:25 50:12,14
51:7,10,22 54:1,4
54:11,21,24 55:2
56:10 57:4,7,10
57:14,20,22,23
58:4,15,23,23
59:5,6,9,16,17
60:6,10,11,20
61:1,5,7,15,22
62:1,3,10,11,17
62:17

**court's**  17:7 31:11
31:14 34:10 46:8
56:7 61:9
**courtesy**  27:20
**courtroom**  7:3
22:10
**courts**  28:16
**create**  45:18
**created**  13:22
**creature**  55:14
**credible**  39:11
59:9,11
**credit**  33:10,14
**creditor**  9:6 10:5
13:16 15:3 36:2
40:1,21 41:1,8,18
42:1,4 43:1
**creditors**  34:15
36:5 40:15 42:7,9
42:11,12,17,18,21
43:8,10,11,22,23
44:1,2,4,5,14,20
44:20
**criminal**  46:20,23
48:5,8
**critical**  17:13
**current**  19:13
21:17 60:16
**currently**  23:8
**cut**  25:18
**cutting**  21:20

**d**

**d**  7:1
**damages**  43:4
**date**  10:19 12:11
15:23 16:18 18:2
23:6 24:12 25:8
25:10 26:23 27:1
48:15 60:16,18
61:18 63:25
**dates**  10:14 12:3
17:5,25 18:21
21:3,6,6,14 22:23

23:7 25:9 35:9
46:10
**day**  19:20 61:4,20
62:18
**days**  21:14 22:3
32:22
**dcl**  9:25 14:10
**deadlines**  17:5,18
18:21 21:4 23:7,7
25:9
**dealing**  55:9
**debate**  27:21 28:1
**debt**  9:6 13:11,11
13:15,20 15:3
34:2,5,9 37:10,16
38:6 39:21 50:17
50:19,22,22,24
51:13,15 53:2,7
53:11 56:20 58:12
58:13,21,24 59:12
59:14,18,19
**debtor**  1:7 10:5
11:14 13:12,20,25
32:16,18 33:9,17
33:19 34:12,15
35:13 37:13 38:25
39:2,13,16,20,21
39:25 40:4,22
41:17 42:15,16
53:14,15 56:5
**debtor's**  32:15,15
33:10,14 34:6,15
35:16 36:17,18,22
38:23 44:19 55:7
55:10
**debtors**  7:5 13:5
13:21 14:3 37:20
56:3
**debts**  39:17 46:12
**december**  48:23
51:13
**decide**  58:24

**decision**  37:12
38:2 39:9 58:1
**deduct**  55:17
**deed**  30:11
**deeper**  29:19
**defendant**  1:24
2:7,15,23 8:23
9:20,22 12:22
13:5 16:5 17:10
18:1 19:3 20:1,19
26:8 29:3,17
32:10 35:22 38:10
38:12 39:20 40:12
45:10 46:20 47:17
50:15 51:15 52:19
52:19,24 56:14
58:6,22
**defendant's**  23:19
40:18 46:4 54:2
54:14 58:10
**defendants**  1:16
11:20 20:9,14
39:11
**definitely**  19:9
**definition**  34:13
**demands**  13:9
**deminimus**  43:15
43:16
**denied**  17:17
18:23 30:15
**dependent**  26:21
**depending**  25:14
56:1
**depleted**  34:11,14
**deposition**  13:23
**depositions**  9:10
24:6
**deputy**  7:3
**derailing**  55:4
**describe**  30:5
**designation**  10:19
**designations**  9:9
10:10 11:19

detail  20:19
details  19:12
determination
  56:25 57:8
determine  59:10
determined  25:15
determines  31:12
difference  43:20
different  14:20
  21:6 22:4 24:23
  36:21 51:18 56:1
  56:6,23 58:23
differently  42:14
difficult  59:21
difficulties  29:4
directed  9:14
  11:11
direction  29:6
directly  36:10
director  38:8,14
directors  37:21
disclosures  21:12
discovery  9:7,8
  11:8 12:20 15:9
  20:7,24 21:5,10
  21:13,15,20,20
  22:6,9,24 24:4,5,7
  24:12,14,25 25:7
  25:15,18 45:25
  46:1 57:2
discuss  16:14
  18:24
discussed  24:13
  28:14
discussing  23:8
discussion  18:17
  28:25
discussions  28:12
  30:3 32:3 60:17
disproportionate
  44:9
dispute  28:10
  29:19 32:13,13,20

32:23 33:1,23
  59:24
disputed  33:12
  34:4
distinction  43:3
district  1:2 28:15
  39:22 41:10 59:7
diversion  33:22
  34:2
docket  23:10
  25:20 60:15 61:6
  62:7
docketed  40:3,19
  41:1,3,11 43:2,9
doctor  53:18,21
  53:24 54:11
document  45:21
  45:22 51:3
documentation
  13:10
documents  11:6,9
  11:10 12:20 13:3
  15:5,6,13 18:10
  33:25 35:6 45:13
  45:17 46:7 47:15
  49:14 50:3 51:2
  58:16
doing  19:6 39:2
  53:25 55:24
dollar  20:20 28:15
dollars  32:1 40:15
  49:10
don  8:21
donald  5:23 7:10
  7:11 11:2
door  24:24
drew  58:9
due  47:10,19
duking  28:19

**e**

e  3:21,21 5:1,1 7:1
  7:1 45:14 47:13
  47:14 63:1

earlier  24:13
  25:10
early  15:24 21:5
earnings  39:5
easier  45:4
eastern  1:2 41:10
  59:7
ecf  45:23
ecro  3:25
effective  22:13
efficiency  25:5
efficient  22:13
effort  46:21
ehrenberg  1:11
  1:20 2:3,11,19 4:2
  5:4 7:9,15 8:15,19
  19:23 23:17 26:6
either  16:7 20:18
  22:4,4 40:2 43:2
  51:12 55:20 60:18
email  9:19 14:4
  27:17 61:19
emergency  19:15
encourage  31:16
  32:3
encouraged  41:19
encumbrances
  31:23
enforce  41:13
engage  30:3
enter  22:6
entered  22:22
entire  55:17
entirely  50:6 51:6
entities  11:14
  24:23 48:25 49:12
  49:16 50:11,16
entitled  36:1
  40:20
entity  12:11 30:11
  32:16 33:9 46:12
  50:2 54:9,19

entries  34:4,6
equation  35:22
equity  43:17
  58:18
equivalent  14:18
  14:19 54:17 57:16
error  47:4
essentially  35:24
  46:19 53:16 54:15
  54:17
establish  46:25
establishing  62:4
estate  29:8 31:13
  31:21,21 34:10,13
  36:5 41:17 43:24
  55:10
et  2:6,14,22 33:6
evaluate  11:23
event  17:19 18:22
  25:22 30:12
eventful  24:9
eventually  55:9
everybody  58:19
  60:2
evicore  1:23
evidence  13:18
  14:1 16:7 33:19
  33:22 34:7,20
  37:16 39:6,7,12
  39:15 42:12 45:10
  47:1,7,10,22,22
  48:16 51:12,14,14
  51:22,23 55:5,7
  56:13 58:15 59:10
  59:11,18,19 60:5
evidences  35:13
  35:14
exact  55:25
exactly  54:23
example  45:18
  49:22 55:16
exception  38:5

excess  46:19
exchanged  10:21
  24:7 57:17
exchanging  34:11
  34:14
executed  20:8
executive  33:17
  36:17 38:14
exhibit  46:3 49:15
existed  40:15 42:7
  42:21 43:1 51:7
existence  50:21
  51:12
existing  42:10
  44:13,20
exists  41:12,18
  49:14
expense  36:19
  55:18,20
expensed  50:3
expenses  56:2
expensive  12:4,6
expert  9:9 10:13
  10:19,20 11:20,22
  11:23 12:3 16:12
  17:18 18:18 24:14
  25:7 35:3 57:1
experts  10:10
  11:19 16:16 21:5
  21:14,21
expressed  35:7
extending  52:25
extends  53:3
extension  11:8,17
  18:12 52:7,9
extensive  35:2
extent  18:15
  42:11
extenuating  48:5

**f**

f  3:21 17:19 31:20
  37:2 63:1

f.2d  38:3
face  36:10 37:4,24
fact  9:8 13:2,3
  21:13,20 24:5,25
  25:15,18 32:9
  33:12,22 34:21
  37:15 38:21 39:18
  39:19 41:15,24
  43:23 44:7 47:12
  48:24 50:3,9
  51:11 53:20 56:2
  56:8 57:19,19
  58:9
factors  59:22
facts  9:16,17 12:7
  12:16 16:2 32:9
  32:13 34:3 47:18
  53:23 56:1 57:6,7
  57:21 60:1
factual  24:23
  52:20 56:25
factually  30:15
fails  36:6 52:19
fair  15:20 17:20
  25:19 31:4 35:19
  38:6 44:18 54:14
  56:18 58:11,25
fairly  35:2 55:7
  60:15
faith  35:19 36:4,4
  37:6,9,19
fake  13:22
false  30:16
family  33:5
far  18:10 30:23
  54:21
fashion  20:25
favoring  36:5
february  48:23
  51:13 60:23 61:5
  61:8,11 62:10
federal  3:2 49:18

feel  19:1
fees  14:4
felt  22:7
fend  51:15
fhi  39:8
fifth  48:9
fight  31:24 62:5
figure  28:23
file  9:12 14:22
  17:11 18:1 27:10
filed  4:1 17:14
  27:14 39:6 41:25
  49:3 55:8 56:3,4
files  18:6
filing  10:18 27:23
  49:14
fill  24:18
final  52:19
financial  55:25
find  23:6 38:18
  40:1 59:17
finding  39:24
  59:13
finds  40:2
fine  18:13 23:4
  28:5
firm  8:22 21:16
first  8:9 14:21
  26:19 36:12 44:4
  45:2,2,8 49:11
  54:18
five  12:24 49:9
floor  5:5
flow  45:2,6
follow  19:13
  21:21
force  58:6
forced  41:25
forcing  44:6
foregoing  63:3
forensic  35:4
form  37:4 47:7,22
  48:21 50:1,2 55:8

format  45:13
formula  58:22,22
forth  21:13 33:21
  35:17 38:3,17,25
  39:11,12,14 40:23
  41:6,9,11 57:17
forum  45:23
forward  9:10 10:2
  14:9 33:16 61:22
frame  45:12
frankly  51:1
fraud  14:19 35:12
  38:17 39:25 40:20
fraudulent  9:5
  10:3,6,6,7 12:15
  13:14,14 14:2
  20:12 24:19 25:16
  32:12 34:13,18,25
  35:1 36:11 37:4
  38:19 40:5 42:1,7
  42:10 44:13,19
  51:20,21,24 52:5
  52:15,17 53:2
  56:21 57:13,25
  58:4 60:6,7
free  19:1 31:22
  45:2
friend  12:25
friendship  13:1
front  14:12 15:2
  15:25 22:5 27:12
  41:23 57:20,22
  58:4 60:5
fti  55:8,8
fuh  46:2,6 58:16
fulfilled  37:19
full  14:23 45:21
  46:13 57:2 60:15
fully  55:14
funds  11:11 13:5
  33:22 37:20
further  19:3 52:8
  54:22 55:1 60:9

60:13,18 61:11
**future** 30:7 42:10
42:12 44:14,20

**g**

**g** 7:1 8:7,12
**gather** 47:14
**geez** 43:18
**general** 38:5,5
43:21 60:20
**generously** 31:17
**gentleman** 37:13
**getting** 30:20
45:12,13
**giordano** 5:18
8:22
**girlfriend** 33:6
**giuliani** 23:21
25:22
**give** 7:6 17:9 18:8
28:3 33:7,18
34:20 39:16 44:23
45:16 58:22 59:15
60:13,21 61:7,24
**given** 13:3,19,25
16:1 34:12 52:24
57:15 59:22
**gives** 24:15 56:6
**go** 12:2,5 17:9,24
17:24 20:4 21:11
26:19 29:6 41:17
51:25 53:19 54:5
54:22 55:1 61:3
62:18
**goes** 44:4 46:8
56:7
**going** 8:25 12:2
13:7 15:22 16:6
16:16 17:12 18:4
20:18 21:24 26:13
27:21 28:23 34:24
44:1 47:21 48:18
57:17

**good** 7:2,7,25 8:4
8:18,21 11:1 16:1
19:24 35:18 36:4
37:6,9,19 41:14
54:4 62:18
**gotten** 53:24
**grab** 33:23 38:1
**grant** 40:2
**granted** 59:25
**great** 19:19
**ground** 26:15
**group** 5:11 7:20
**guess** 19:11 43:13
50:20 59:24
**guidance** 59:16
**guide** 41:6
**gyparakis** 6:14
8:4,4,7,7,10,12

**h**

**h** 7:12
**hadden** 5:16 7:18
7:19,19 26:7,7
27:3,6,9,9,25 28:6
28:8 29:20,21
30:14 31:2 44:22
44:23,25 45:1,11
46:15,18 47:24
49:2,7,20,23 50:5
50:13,25 51:9,17
54:2,10,14,23,25
55:3 57:10 61:13
61:19,21,24 62:14
**half** 5:20 49:9
**halleran** 5:18 8:22
**handle** 17:18 56:2
**hands** 19:2
**hang** 34:22 62:21
**happens** 43:19
59:2
**happy** 17:4
**head** 53:22
**health** 49:11
54:18

**healthcare** 32:16
**healthcorp** 1:6,12
**hear** 23:20
**hearing** 4:1 9:1
18:8,23 25:23
**hearings** 7:4
**heavily** 55:7
**held** 40:24
**hesitant** 48:9
**hesitation** 39:16
**hey** 14:5 33:25
**hold** 29:9 60:25
61:2
**homeowner's**
60:4
**hon** 3:22
**honestly** 49:4 50:6
**honor** 8:18,21 9:3
10:4,17 11:1,17
11:21 12:14,25
13:13 14:25 15:11
15:19 17:21,22
18:14 19:4,6,16
19:24 20:3,5,18
21:2,8 22:2,15
23:13,14 24:3,3
24:17 25:13 26:3
26:18,21,23 27:3
27:6,12 29:2,7
30:9 31:2,3 32:7,8
33:21 34:3,19
35:10,24 37:7
38:1,3,11,16,21
38:24 39:11,15,19
40:17,23 41:9,14
43:3,5,21 44:15
44:25 45:1,11
46:15 47:24 49:20
50:7,25 52:1
57:12 58:11,21
59:8,20 60:9
61:16 62:14,15

**hope** 11:12 15:18
**hoping** 10:16
29:13
**house** 7:22 53:19
53:20 54:5,6,13
**howard** 1:11,15
4:2 5:4,19 7:9,12
7:15 8:15,19,23
19:23 23:17 26:6
**human** 54:16
**hyde** 4:25 63:3,8
**hypothetical** 42:4
54:5

**i**

**i.e.** 38:8
**identify** 42:23,23
**identity** 32:24
**ilan** 5:9 7:8
**imbued** 42:4
**immediate** 10:17
**immediately** 31:6
**inadmissible**
48:21 50:1
**inclined** 59:17
**include** 14:18
18:21 22:23
**includes** 25:8
**including** 12:22
33:5 45:16
**income** 36:20,23
39:1,4 55:15,18
55:24
**inconsistent** 41:22
**incorporate** 10:22
**incorporated**
32:22
**incorporates** 25:9
**incorrectly** 46:23
**incurred** 33:13
**index** 27:15,18,25
**indicate** 33:19
36:13

**indicated** 20:14
**indicating** 48:20
**indicted** 46:20
**indicter** 44:18
**indiscernible**
　44:17 47:2 49:7
　54:7 61:14 62:15
**individual** 29:25
**information** 11:13
　20:21
**initial** 14:8 30:3
　60:3
**inquiry** 12:16
**insider** 37:8 38:8
　53:1
**insiders** 43:9
**insolvency** 10:13
　11:24 12:11 35:8
　35:15 39:7,8
　42:15 55:6,8
**insolvent** 35:16
　44:19 53:6,15
**instances** 41:21
**instruct** 37:10
**instructed** 32:24
**intended** 40:7
　50:12,13
**intending** 14:9
**intensive** 57:19
**intent** 10:3 13:16
　14:10,12 15:8,10
　34:23 51:21,24
　52:18,24 56:21
**intention** 10:12
　11:20 61:7
**intentional** 13:14
　25:16 60:6
**intentionally** 10:6
　12:15
**interest** 31:20,22
　58:18
**interested** 35:21
　36:3 38:13 58:8

**interesting** 50:21
**interfamily** 58:2
**interim** 20:8
**interpretation**
　41:5 43:14
**investments** 2:22
**involved** 9:1
　29:22 51:21
**irregardless** 36:7
**islip** 3:3
**issue** 9:4 13:17
　14:24 15:2 16:11
　18:20 19:9 20:13
　20:17 22:3 23:6
　24:23,24 25:8
　27:4 28:10,11
　36:6 38:20 40:11
　40:25 43:17 44:1
　46:10 56:10 57:4
　58:25
**issued** 11:3 24:9
　24:22 39:20 50:1
**issues** 12:9 17:13
　20:10 22:25 24:22
　26:17 42:15 45:12
　45:12
**it'll** 25:6
**item** 29:25 49:23
　55:22
**items** 48:1

| j |
|---|

**j** 26:8
**jacobowitz** 58:1
**january** 3:5 27:2
**jeff** 7:7 8:18 19:22
　23:16 26:5 28:20
　31:3
**jeffrey** 5:8
**joint** 9:15,17 32:8
**jones** 5:3 35:2
**joseph** 7:13,14
**judge** 3:23 7:3
　8:14 23:24 27:21

60:25 62:9
**judgment** 4:1
　9:13 10:2,14,18
　10:22 12:6 14:9
　14:16,22,23 15:7
　15:8 16:4 17:2,10
　17:16,20 18:7,18
　18:23 25:24 26:14
　27:13 29:14 30:18
　30:21 32:6,11
　39:19,22 40:2,4
　40:19 41:2,3,8,12
　41:17,18 43:1,2,4
　43:9,17,18 44:8
　45:9,9 46:9 47:6
　47:10 51:16,17
　52:15,19,20,21
　53:9,11 56:12
　57:9 59:24 60:3
　60:21
**judgments** 42:21
　53:12
**jumping** 40:6
**june** 15:24 16:10
　17:17 18:22 19:10
　24:12 25:10
**jurisdiction** 31:11
**jury** 47:1 56:14
**justify** 33:17,24
　35:24

| k |
|---|

**k** 8:7,12
**keeping** 23:3
**kick** 60:8
**kind** 28:17 34:17
**know** 9:19 10:9
　10:21 15:15,18
　16:5 17:12 18:2
　19:10 20:20 21:4
　21:11,14,24 22:10
　23:2 24:1,9 25:11
　25:14,22 26:19
　28:12 29:10,16,19

29:24 30:3 31:9,9
　31:11,19 32:10
　37:15 43:17,19
　44:7,17 45:18
　48:3,11 49:4 50:1
　52:3,7 53:7 54:11
　55:4 57:16 59:3
**knowing** 27:11
**knowledge** 47:12
**knows** 13:15
　43:23

| l |
|---|

**lack** 14:18 47:10
**lag** 21:11
**language** 52:17
**laptop** 55:17
**larger** 43:16,19
　55:19
**larry** 26:9
**late** 21:20
**launch** 26:14
**lauren** 7:17
**law** 5:11 7:19 8:22
　9:6 10:5 13:9,16
　15:3 36:2 37:8
　40:1 41:6,19 42:1
　43:7 44:15 57:23
**lawrence** 6:6 7:21
**laws** 55:23
**lead** 15:13
**leading** 56:1
**leave** 9:21 22:19
**leaves** 44:16
**ledanski** 4:25 63:3
　63:8
**left** 15:17 31:18
　32:4 34:10
**legal** 63:20
**legislature** 52:13
**legitimate** 43:8
　59:14
**length** 30:23

**letter** 9:13,24 11:6
  17:25 18:19
**level** 57:7
**liability** 10:23
  36:18 41:13
**lien** 29:4 30:25
  31:22
**liens** 28:18 31:23
  31:24
**limit** 12:9 15:2
**limited** 42:8
**limiting** 43:3
**line** 8:25 9:1 13:7
  19:11 58:19
**lines** 46:17
**liquidate** 31:7
**liquidating** 1:11
  8:20 23:17
**listen** 7:14
**litigation** 28:22
  29:1
**little** 24:20 25:2
**live** 19:11,12
**llc** 26:8 30:20
  32:21
**llp** 5:3,11 6:1 7:20
**loan** 12:19,21,23
  12:25 13:3,19
  14:6 59:11
**loaned** 11:11
**loans** 37:14
**local** 27:24
**logical** 52:7,9
**long** 28:22 43:10
**look** 11:22 17:7
  23:11 34:18 53:14
  54:12 61:21
**looked** 12:7 20:16
  49:5
**looking** 11:12
  18:2 47:5 51:22
  53:7,12

**looks** 34:17
**loss** 56:3,5
**losses** 39:2,7,13
**lynch** 11:4,12,14
  15:12

### m

**m** 1:11,15 4:2 5:4
**madison** 6:3
**maintaining**
  48:13
**major** 38:8
**majority** 38:14
**making** 14:11
**malleable** 55:14
**managed** 55:12
**management** 9:7
  20:7,24 21:15
  22:6,8 24:4
**manager** 29:22
  46:6 54:15
**managers** 6:2
  7:22 26:10
**manages** 32:23
**manhattan** 32:19
**manipulated** 33:8
  33:19
**march** 16:18,19
  16:20,22,23 17:3
  17:7,11,14 18:3,3
  18:5,8,23 19:8
  22:5 24:6 63:25
**maryann** 5:16
  7:17,19 26:7 27:9
  44:25
**matter** 1:5 25:3
  45:25 46:23
**matters** 24:21
**maximize** 31:7
**mean** 21:12 25:14
  25:17 31:8,13
  35:23 36:14,17,21
  40:18 42:2 43:15
  43:21 45:18 57:21

**media** 37:11,12
**medical** 54:11
**meet** 9:15
**mellon** 34:16
**members** 33:5
**memorex** 19:11
**memorialize** 34:5
**memorializes**
  36:15
**mendelsohn** 58:1
**merrill** 11:4,12,14
  15:5,12 18:11
**message** 15:16
**met** 20:10
**middletown** 5:21
**mile** 5:20
**million** 20:12,20
  32:1,14 34:2,11
  36:9,10 37:3 39:3
  39:3,4,5 43:25
  44:9 46:11,11,11
  46:11 48:15,15,16
  48:22,25 49:9,12
  53:13,13 54:8
  59:4,4
**mills** 7:2 8:24
  16:17 23:22 60:22
  61:6 62:6
**mineola** 63:23
**missed** 25:22
**misunderstood**
  50:14
**modify** 18:16
**moment** 50:7
  51:25 55:4
**monetizable** 30:1
**monetize** 28:14
**monetized** 29:8
  60:19 62:5
**monetizing** 28:16
**money** 13:4 16:12
  16:15 28:24 29:18
  31:9 32:17 34:7

  36:23 37:17 41:16
  43:8,10,22,24
  44:3 50:17 60:2
  62:5
**monies** 13:21
**month** 9:9,14
  26:20
**morning** 7:2,7,25
  8:4,18,21 9:20
  11:1,7 15:23
  18:17,25 19:24
  26:13 48:19 62:7
  62:13
**motion** 4:1 9:13
  9:25 10:15,18
  14:11,23 15:8
  16:4,8 25:23
  26:22 27:13 29:14
  32:6,11 33:21
  35:12 38:16,22,25
  46:24 55:12 57:9
  60:21 61:8
**motions** 18:7
  59:24
**movant** 46:24,25
**move** 10:1 14:9,15
  31:6
**moved** 33:1,10
**moving** 24:7
**multi** 20:20
**music** 50:20
**musical** 50:20
**mute** 8:25 9:1

### n

**n** 5:1 7:1 63:1
**name** 8:6,9,11
  27:5,7 37:13 54:6
  54:9,13
**narrow** 14:11,17
  28:10
**narrowly** 41:7
**nature** 14:20

**necessarily** 31:8
**necessary** 16:3
  42:9
**need** 12:9 16:5
  17:12 18:24 23:1
  25:23,25 26:2
  40:24 41:1 45:25
  47:14,16 55:1
  56:25 57:1,2,2
**negative** 39:1,2,3
  39:3,4,5,7
**neighbor** 12:18
**net** 39:4,7
**never** 13:24,25
  30:16 36:3 39:21
  43:11 52:4 53:1
**new** 1:2 3:3 5:6,14
  5:14 6:4,4,11 9:6
  9:25 10:5 13:9,15
  15:3 19:6 27:1
  28:16 36:2 37:22
  38:4,4 39:25
  41:10,19 42:24
  57:23 59:7
**nj** 5:21
**nolan** 5:8 7:7,7
  8:18,19 9:2,3,23
  10:4,16 11:3,7,16
  12:1,14 14:7,14
  14:25 17:21 18:11
  19:5,16,22,22
  20:3,4,5 21:8,10
  22:1,2 23:9,13,16
  23:16,20 24:2,3
  24:17 25:13,20
  26:3,5,5 28:20,20
  28:21 29:2 31:3,3
  32:5,7 34:22
  35:10 36:12 37:7
  40:6,17 42:23
  44:15,23 48:18
  51:19 52:6 57:11
  57:12 61:14,18

62:15
**nolan's** 30:2
**non** 45:22,23
**normal** 53:17
**note** 12:17
**notice** 18:8 23:10
  25:21 61:6
**notified** 26:12
**notify** 61:10
**number** 8:3 19:21
  23:15 24:8 26:4
  27:15,18 28:1
  30:13,14 35:13
  36:21 37:22 40:23
  41:5,8 48:16
**ny** 5:6 6:11 63:23

**o**

**o** 3:21 7:1,12,12
  63:1
**o'clock** 22:21,21
  23:11 25:21 26:1
  60:23 62:8,18
**objection** 48:13
**objections** 47:9
**obtain** 48:7 52:4
**obtained** 45:24
  51:3
**obviously** 11:22
  12:8 16:4,25 19:1
  23:1 27:11 28:1
  28:11 45:14,16,21
  46:3,6,20 47:2,6
  51:18 53:4 56:22
**occupied** 33:12
**occupying** 32:25
**occur** 30:13 50:7
  51:2
**occurred** 33:24
  34:21 41:2 51:4
**offered** 28:13
**officer** 38:8,14
  53:1

**officers** 37:21
  53:5
**offline** 17:24
  61:22
**oh** 27:6
**okay** 8:13 10:17
  15:20 19:16 21:9
  23:25 27:8 28:6
  54:24
**old** 19:11 63:21
**once** 18:1 20:22
  23:4 28:3 55:8
**open** 30:23 62:4
**operated** 32:16
**operating** 19:15
  29:11 39:7
**opinion** 10:13
  32:12 35:8 38:22
  56:8 57:1
**opinions** 12:3
  57:1,16
**opponent** 47:2
**opportunity**
  11:16 45:16,17
  46:1
**opposed** 29:19
  30:1 42:9 56:3
**opposing** 9:22
**opposition** 33:16
  33:23 34:19 35:23
  38:11 39:18 41:6
  58:7,21 59:23
**options** 45:15
**oral** 13:6 59:13
**orbach** 7:13,14,14
**order** 18:1,16,20
  19:9 22:23 23:5,6
  23:12 25:8 27:13
  48:3 51:4 56:24
**ordered** 18:19
**originally** 56:4
**orion** 1:6,12 16:18
  21:24

**os** 48:5
**outcome** 61:19
**outlining** 17:25
**outside** 18:2
**outstanding** 15:10
  39:23 53:8,19
**oversight** 31:14
  50:6
**owe** 53:17
**owed** 15:9 36:9
  37:3,16 42:16
  43:8,23 46:10,12
  48:15 50:4,17
  58:24 59:3,10,14
**owing** 56:5
**owned** 30:20
**owns** 32:22

**p**

**p** 5:1,1 7:1 8:7,10
  8:12
**p.c.** 6:8
**p.m.** 62:11
**pachulski** 5:3 7:8
**page** 38:25
**paid** 13:4,4,20
  14:6 36:9,16 37:9
  37:14 39:21 43:11
  44:3 53:2,4,5,18
**papers** 27:23
  34:16 37:11 40:10
  44:12 48:19 49:8
  49:10 51:1 60:14
  62:11
**paperwork** 27:19
**paragraph** 38:11
  38:11
**paris** 6:14 8:4,7
  8:10
**parked** 32:21
**parlatore** 5:11
  7:19
**parmar** 12:18,25
  13:17,19,21 14:5

35:25 36:8,22
37:3 38:12 46:5,9
46:20 47:3,11,17
48:4,15,21,24
49:11 50:10,15
54:15 58:6,8,10
59:2
**parmar's** 14:1
**part** 10:14 45:11
45:24 46:13,18,19
47:25 50:6
**particular** 41:20
43:25 52:22,23
53:10 56:17 60:21
**parties** 8:14 9:16
12:8 20:22 22:7
22:24 26:13 27:1
28:14 31:17 32:3
60:17 62:2,5,12
**party** 40:19 58:17
**path** 29:14 39:24
40:1 52:9
**paths** 38:17
**pattern** 44:7
57:19
**pay** 30:24 31:23
33:11,14 37:17
39:17 52:4 53:7
53:17,18,21,21,24
**payees** 45:20
**paying** 28:17 36:1
56:6
**payment** 37:9
38:7
**payments** 35:9
42:16,16,18
**payors** 45:20
**pc** 8:1 19:25
**pending** 52:15,21
52:21
**performed** 57:24
**period** 12:24
21:13 47:21 55:23

**permitted** 30:15
**person** 8:2 38:13
53:17
**personal** 12:19,23
13:19 29:22 30:17
33:2,4,5
**perspective** 29:7
38:17 46:4
**petition** 39:6
41:24
**phone** 8:2 11:4
**phrased** 51:19
**pick** 31:17,17
32:3
**picture** 24:18
26:16 28:11 34:17
43:5
**pictures** 56:6
**piece** 33:18
**pittinsky** 6:1,6
7:17,21,21,22
26:9,9,10,18,18
27:16,17,20 28:5
30:9 61:16 62:16
**place** 9:8 24:4
32:14
**places** 36:22
**plain** 52:16
**plaintiff** 1:13,21
2:4,12,20 4:1 8:19
9:10,11,12 10:12
12:21 13:18 17:9
17:25 18:6 19:5
19:23 23:17 25:1
25:2,24 26:6
29:15 31:4,5
34:21 35:14,20
40:13 52:16,17,22
**plaintiff's** 26:22
34:19 40:18 44:12
52:3,8 56:23
**plaintiffs** 10:1
11:22 16:3

**plan** 9:7 20:7,24
21:10 22:6,9 24:4
24:12 28:22
**plans** 21:15
**plaza** 3:2
**pleadings** 22:3
**pleasant** 30:25
**please** 7:4 8:17
9:1 20:4 27:5,5
62:21
**plus** 49:9
**po** 5:20
**point** 10:19 16:5
21:7 28:2 30:4,4
30:10 31:25 43:14
53:3 54:14
**pose** 42:14
**posed** 42:5
**posing** 47:4
**position** 29:5 48:8
59:21 61:9
**possible** 15:13
30:7 45:15
**possibly** 35:6
**potentially** 12:4,6
15:25 16:10
**pre** 9:25 25:23,23
61:3
**predicant** 42:2
**prefer** 45:3
**preferential** 37:20
**prejudice** 34:15
**prepared** 60:13
**present** 29:14
45:7
**presented** 35:3
56:9
**president** 37:12
**presiding** 7:3
**presumably** 46:5
49:14 58:3
**presumed** 35:16

**presumptively**
57:25
**pretrial** 18:5 20:6
21:23,23 22:20
23:3,10
**pretty** 25:6
**prevail** 31:5
**prevails** 28:22
**previously** 18:16
**prior** 20:6 21:4
27:23 35:5
**probably** 16:2
21:11,12
**problem** 7:17
**procedure** 62:2
**procedures** 19:15
31:19
**proceed** 15:21
26:22 32:6
**proceeding** 7:16
15:22 27:10 60:20
**proceedings**
15:24 62:22 63:4
**proceeds** 31:23
32:1
**process** 12:6
**productive** 21:19
21:25
**professional** 14:4
**promissory** 12:17
**prong** 48:17
**proper** 59:20,25
**property** 29:17,22
29:25 30:17 31:8
31:21 32:21 33:10
34:8,14 59:4 60:3
60:19
**proposed** 23:5,12
24:11
**proposition** 37:23
**protocol** 19:10
28:14 60:19 62:3

prove 43:11
provide 11:6,8,9
  20:20 45:15 48:2
  48:6
provider 54:12
providing 35:4
province 28:13
public 45:20,22
pun 50:12,13
purchase 36:9
  40:16 42:22 46:13
  49:1,13 50:18
  55:16
purchasing 32:25
purpose 41:16
  50:23
purposes 12:23
  18:4 23:9 25:20
  47:13 49:19 50:17
  60:22
pushed 39:10
put 33:16 39:14
  53:13,22,23 54:8
puts 48:7
putting 28:18
  54:5

**q**

quantifying 43:4
quarter 33:11
question 14:8,21
  19:5 40:8,9 42:3,5
  42:6,14 45:5 46:8
  47:16 49:3 52:1,2
  53:5 55:5 56:7,11
questions 44:22
  45:1,5 56:16,17
  56:19,20,22,23

**r**

r 3:21 5:1 7:1,12
  8:7,10,12 63:1
racking 39:13
raise 24:23

raised 40:11
raises 55:24
range 45:15
rationale 43:12
read 41:7
ready 16:12 17:10
real 29:17,25
  32:21 34:7,8 53:5
  55:16
realized 31:9
really 16:14 40:8
  42:5 56:11,24
  57:19
reason 14:5 25:11
  25:25 27:15 41:4
  41:14 42:5 60:8
  61:9
reasonable 41:5
  47:1 56:13
reasonably 14:18
  14:19 57:16
reasons 52:12
rebuttal 44:23
recalibrate 17:18
recall 9:4,11
received 11:4
  12:22 20:14,15
  27:25 48:25 49:9
  49:12 50:9
receiving 44:2
  48:22
recess 62:17
recipient 38:7
recognizing 17:16
recommend 16:14
  60:17
record 17:10 28:3
  42:12 46:9 47:6
  48:17,20 51:11
  62:18 63:4
recorded 7:4 44:8
records 14:3 34:6
  36:13,15,18,19,22

36:24 38:23,24
  45:24 48:12 53:14
  57:2
recoveries 40:13
recovery 40:10
  42:8,19,20
redacted 45:20
reduces 55:18
redundant 62:2
references 9:25
reflect 18:18
reflecting 49:4
regard 52:18,23
  52:23
regardless 36:6
  37:9
regards 11:13
  27:12
regular 31:7
regulations 55:15
relate 15:10
related 32:18
relevant 10:13
  12:3 15:21 47:12
relied 46:24 55:7
rely 13:6 38:23
remedies 40:9
  42:6
remembers 26:23
render 53:15
rendering 53:20
repay 37:14
repayment 38:6
repealed 52:13
replace 59:13
reply 16:6,6 17:12
  37:11 40:23 41:9
  58:9
report 10:20
  11:22,24 24:9
  35:11
reporting 49:19

represent 7:6,15
  29:24
representation
  26:24
representative
  54:16
representing 7:9
request 11:10,15
requested 9:11,25
requesting 11:5
  46:22
requests 15:14
require 48:2
required 27:22
requirement
  37:19
requires 47:23
residential 29:12
  32:19
resolution 16:11
resolve 27:11
resolved 17:20
respect 26:16
  32:25
respectively 17:6
respond 11:6 15:7
  18:1
response 15:7
  16:4 17:11 47:13
  47:15,18,25
rest 28:19
restraint 30:19
restricted 41:8
result 18:23
retain 11:20,23
retained 35:7 39:5
return 47:1 55:13
  56:14
returns 49:3 51:2
  55:5,11 56:1,3,4
review 11:23 22:9
revisit 16:13
  30:17

rifle  16:16

right  8:24 9:2
10:9,24,24 11:18
12:1 15:4 16:24
18:15,24 19:8,17
19:19 20:2 21:1,3
21:17 22:12,16
23:25 24:11 25:4
25:19,19 26:12
30:8 31:1,16
40:12,13 43:22
44:11,14,21 51:10
54:4 57:10 58:4
60:3,10,10 61:5
61:15,23 62:1,6
62:10

rights  30:12 48:9

ripe  60:1

river  5:12 7:20,22
26:8 46:13 48:24
49:3 54:17

riverhouse  6:2
26:10,11

rivers  49:9 54:16

road  5:20 60:8
63:21

rosen  6:8,13 7:24
7:25,25,25 8:5
19:24,25,25 21:1
21:2 22:13,15
23:14

rosenberg  6:1
7:21 26:9

ruderman  37:13

rule  21:12 38:5,5
45:14 46:24 47:14
47:22 60:13 61:9

rules  27:22,24

ruling  60:16,24
61:8,10,18

**s**

s  3:22 5:1 7:1,3,12
8:8,10,12

sale  26:16,19,22
27:1,4,11 28:18
30:18 31:7,20
59:23 60:16,18
62:3

sale's  26:20

sanford  6:13 7:24
7:25 19:24

sartison  2:14

satisfaction  51:15

satisfied  15:23
30:18 34:8 42:18
46:12 50:23 51:7
58:13 59:20

satisfy  31:10
40:14 42:9 43:1
50:19 52:20

saves  60:2

saying  9:20 18:12
18:25 35:25 46:9
55:22 59:3

says  12:18 13:6
14:5 32:23 34:16
57:24 58:16 59:9

scenario  45:16
46:21 52:14,21,23
54:18 56:12,15,16
56:24 57:4

scenarios  22:4
53:17

scharf  5:9 7:8

schedule  16:9
17:2

scheduled  26:20

scheduling  10:10
18:16,20 20:9
22:23 23:5,12
25:8

schoor  1:15 5:19
7:12 8:15,16,23

11:11 12:18,24
13:6,20,23 25:3
25:16

se  14:1 40:5 52:5

second  22:12
48:17 60:25 61:2

section  31:19

sector  32:17

secured  43:23
44:2,4

see  22:11 23:23
24:12 28:25 30:12
46:8,16 49:22,25

seek  30:19

seeking  27:22

seeks  42:20

seen  11:21 15:12
21:16

segue  40:7

self  35:21 36:2
38:12 58:8

sell  28:23

selling  28:17

sense  10:20 21:22
22:1 25:4 29:23
58:14

sent  11:6

separate  33:13
39:18 58:16

series  47:9

serve  27:23

served  27:16

services  13:25

set  16:9,17 21:13
22:17 31:6 35:17
36:19 40:10,14,23
41:3,6,9,11 42:15
43:12,20,24 44:16
55:25

sets  33:21 38:3,17
38:25

setting  16:10 19:9
21:23 39:12 42:25

settle  19:1

settled  38:4

settlement  26:17
28:12

share  29:18

shareholder  38:9
38:14

shareholders
37:21

sheriff's  59:23

shipping  38:2

shoes  41:13,22
42:1

short  11:15,17

shot  16:16

show  12:17 27:13
56:5

showing  13:10
50:3,8 56:3

shown  35:23

shows  35:20

shut  19:7

side  34:23,25 35:1
35:12

sides  35:22 40:9
57:3,3 60:11

sign  13:24 23:20

significant  44:2
56:16

signs  57:24 58:3

similar  20:25
21:15 25:15 34:11
34:14 54:18

simple  44:7

simply  12:5 13:5
21:22 22:8 28:19
33:22,24 35:25
51:2,5 58:9

single  15:2

situation  43:13
48:6 56:13

six  24:22

**sold** 30:10,23
  31:22
**sole** 54:16
**solely** 10:2 11:8
  32:23 33:2,3
  38:13 51:22 52:22
**solutions** 63:20
**solvency** 10:13
  11:20 12:3,10,12
  12:15 35:3,8,11
  36:7 38:20,22
  55:6 56:7,8,11,11
  56:17 57:1
**solvent** 39:17
**somewhat** 55:13
**sonya** 4:25 63:3,8
**soon** 61:25
**sooner** 25:25 26:2
**sorry** 24:18 62:20
**sort** 45:2 47:25
  53:16 55:4,16
**sorts** 29:1
**sought** 51:17
**sounded** 37:1
**sounds** 15:17
  22:12 34:24
**southern** 28:15
  39:22
**sparingly** 59:25
**speak** 7:4 9:24
  26:25 28:2
**speaking** 26:18
  50:7 61:16,22
**specific** 52:11,14
  52:20
**specifically** 31:19
  40:24 48:12 53:8
  56:12
**specificity** 20:21
**speculating** 15:15
**spend** 16:11,15
**split** 55:22

**stage** 59:20
**stand** 37:23
**standing** 40:25
**standpoint** 54:8
**stang** 5:3 7:8
**start** 45:4
**started** 50:7
**starting** 7:5 8:15
**state** 27:5,7,10,14
  29:2 42:1 49:18
  61:22
**statement** 9:15,17
  32:8 33:13 37:8
  39:19
**statements** 45:19
  48:1
**states** 1:1 3:1
**stating** 29:16
**status** 20:4 26:15
  42:4 60:12
**statute** 41:7 52:10
  52:12,17 53:3
**stay** 27:22
**step** 29:4 41:13,25
**stepping** 42:25
**steps** 41:21
**stigmatize** 41:16
**stigmatizes** 43:7
**stipulate** 22:8,25
**stipulated** 12:7,16
  16:2
**stipulation** 16:8
**stock** 58:17
**stop** 27:11
**strategy** 47:5
**strike** 14:11
**subject** 31:14
**submission** 17:1
  23:11 59:12
**submit** 9:15 10:12
  17:25 20:23 21:10
  22:9 35:11 41:4
  45:21 47:17,20

59:5
**submits** 60:5
**submitted** 9:13,17
  9:24 16:7 17:7
  18:2,17 20:5 32:8
  34:21 35:11 37:15
  39:15 45:19,19
  47:10 57:23 58:15
  59:3,6 62:12
**submitting** 38:21
**subpoena** 11:3
**subpoenas** 24:8
  24:22
**subsequent** 35:6
**subsequently**
  20:16
**substance** 47:5
**substantial** 46:3
**sufficient** 15:18
  57:7
**suite** 5:13 6:3
  63:22
**summary** 4:1 9:12
  10:2,14,18,22
  12:6 14:9,16,22
  14:23 15:7,8 16:4
  17:2,10,16,20
  18:7,18,22 25:24
  26:14 27:12 29:14
  32:6,11 40:2 45:9
  45:9 46:8 47:6,9
  51:16,17 56:12
  57:8 59:24 60:21
**supplemental**
  22:18
**support** 34:1
  48:17 51:4
**sure** 14:14 17:6
  17:14 18:7 31:18
**surrounding**
  12:21

**t**

**t** 63:1,1
**take** 8:17 16:16
  18:11 19:1 33:18
  36:23 54:25 58:17
  58:17 61:20
**taken** 32:14
**talk** 15:22 41:15
  48:12
**talked** 21:5 42:25
**talking** 21:6,20
  53:10
**talks** 58:2
**tangible** 57:25
  58:3
**tax** 38:23 48:22
  49:3,14,17,19
  50:2 51:1 55:5,11
  55:13,15,18,23
  56:1,3,4
**taxes** 33:14 55:21
  56:5,6
**technically** 30:11
**telephonically** 5:8
  5:9,16,23 6:6,13
  6:14
**ten** 62:7
**tentative** 60:23
**term** 28:22
**terms** 11:18 21:3
  23:2 25:5 28:11
  30:21 48:8,14
**terrace** 5:12 7:20
  26:8 46:14 54:16
  54:17
**testimony** 12:22
  13:6 59:13
**texas** 39:22
**textbook** 32:12
  34:12 51:20
**thank** 8:13 10:24
  12:1 14:25 18:14
  19:16,17,19 23:13

23:14 26:3 28:6,8
32:7 57:10 60:9
60:10 61:13 62:14
62:16
**them's** 41:10
**theoretically**
50:21
**theories** 10:23
40:13
**theory** 25:17
35:17 41:13
**thing** 33:7
**things** 27:11
**think** 10:18 12:16
13:2,9 15:1,1,14
20:22 21:18 22:2
22:8 23:4 24:15
25:13 29:15 31:2
31:4 33:7 34:23
40:9 43:5,6 44:6
54:1,4,7 55:20
56:7,10,15,15,24
57:4,6 59:15
**third** 5:5 6:10
39:24 40:1 58:17
**thought** 38:21
50:14
**three** 41:9 55:20
55:23 60:23
**throwing** 39:1
**tilt** 25:24
**tilting** 17:17
**time** 9:21 11:5,9
11:24 12:5,9
15:11 17:8,9
18:10 19:13 21:19
24:16 28:18 36:9
39:5 40:3,15
41:12 42:8,16,22
45:11 47:8,14,20
47:20,21 48:3
50:16 51:13 53:15
57:14 60:2 61:1,9

**timeline** 16:13,15
**timing** 60:22
**title** 29:9 32:20
**today** 7:16 15:25
27:12 32:2 39:23
60:13
**today's** 18:4 22:20
23:9 25:20
**told** 13:7 30:22
**toss** 9:23
**touch** 40:9 45:12
55:3
**track** 18:22 20:24
**tracking** 23:3
**tracks** 16:9
**trade** 5:13
**traded** 54:6
**trajectory** 25:2
**transaction** 30:24
33:24 35:15,21,21
35:24 36:3,4,6
37:24 38:13 58:8
**transactions**
57:24
**transcribed** 4:25
**transcript** 63:4
**transfer** 10:3,6,7
12:15 32:14 34:7
34:8,25 35:1
36:11 37:5 38:19
40:3,5 41:2,12
42:7,8,10 43:1,7
43:12,15,16,19,24
44:9,13,17 46:11
50:2,18,23 51:21
52:5 53:2,7 57:22
59:5
**transferee** 36:1
38:15 41:14
**transferor** 12:11
13:17 35:25 38:9
38:15

**transferred** 42:19
43:9 58:13
**transfers** 10:14
11:10,25 12:4,12
20:13,15,17,20
35:9 37:20 41:16
46:10 58:2
**treat** 15:6
**trial** 12:10 15:23
16:10 17:17 18:20
18:22 22:22 23:4
23:6 24:14 25:8
25:10 47:8
**trials** 19:6 61:3
**tried** 12:9
**tries** 35:24
**trigger** 28:18
**true** 34:21 63:4
**trust** 3:22 7:3
29:10
**trustee** 1:11 5:4
7:9 8:20 14:22
20:15 23:18 29:9
29:10 31:6 39:12
40:19 41:11,12,21
42:4,20,25 43:11
44:4 47:9 48:13
48:18 51:18 55:6
60:5
**trustee's** 11:24
14:8 28:22 29:7
32:10,11 42:8
54:7
**trustees** 41:24
**try** 12:5 19:14
29:4 33:24 42:14
**trying** 12:12
21:18 24:24 42:23
**turn** 32:5
**turner** 27:21
**twisted** 44:7
**two** 11:7 21:11
30:14 38:17 41:8

42:21,24 47:16,25
53:12,12,22,23
55:20,22 56:1,6
61:2,20
**tying** 13:3
**type** 37:23 39:16
**typically** 57:13

**u**

**u.s.** 3:23
**ultimate** 16:8
**ultimately** 31:12
**unable** 29:13 53:7
53:21
**unavailable** 47:19
**uncontroverted**
9:16,17 32:9
**underlying** 20:17
32:13
**understand** 14:10
14:16 37:1 46:18
47:24 50:25
**understanding**
44:12 51:5
**understood** 17:21
52:6
**undisputed** 13:4
13:18 35:23 57:21
**unearth** 29:13
**unfortunately**
54:20 59:21
**unique** 29:18
**unit** 26:16 28:16
28:17,23 29:5,13
30:10,23 33:1,2,3
33:12 46:14 62:4
**united** 1:1 3:1
49:11 54:18
**units** 29:11,12
**unknown** 3:25
**unpaid** 40:22
**unreasonable**
53:4

**unredacted**  45:21
**unsatisfied**  40:4
**unsecured**  34:15
 43:22 44:4
**update**  60:12
**upkeep**  33:11
**uploaded**  20:7
**use**  13:8 26:1,13
 28:15 33:4,9 42:1
 60:22 61:2
**utilized**  31:10

| v |
| --- |

**v**  1:14,22 2:5,13
 2:21 8:15 37:11
 38:2
**vacuum**  30:13
**valid**  13:11 37:15
 39:24 41:17
**value**  14:19 31:7
 34:12,14 57:16
**variables**  58:23
**ventimigilia**  59:7
**verdict**  47:2 56:14
**veritext**  63:20
**versus**  58:1 59:6
**view**  22:14 30:10
 40:8
**violates**  37:24
 44:17
**virtue**  30:18 41:24
**vis**  26:21,21
**visit**  25:17
**voice**  62:20
**voicemail**  15:16
**voluminous**  15:17

| w |
| --- |

**w**  36:14
**w2s**  49:14
**waiting**  15:5
 30:12
**walia**  2:6 6:9 8:1,5
**want**  7:5 14:22
 15:7 16:13,15

17:6,18 18:7
 26:19 28:12 32:5
 44:21,23 45:1,2
 51:25 54:22 55:3
 57:11 60:13
**wanted**  9:20 33:9
 45:7
**way**  29:18 36:12
 44:15 50:8,8
**we've**  21:12,12
 57:23 59:6 60:2
**webex**  19:9,10,12
 19:14
**week**  10:11,11,12
 11:7 16:10 17:8
 21:11 60:15
**went**  13:21 20:10
 43:9
**willing**  48:6
**win**  14:17
**witness**  16:12
**witnesses**  18:18
**wondering**  28:24
**word**  12:25 28:15
 50:11
**work**  16:1 17:5
 22:19 23:4 24:13
 26:25
**worked**  22:24
**working**  16:25
 20:23 22:18
**world**  5:13 55:16
**wound**  56:5
**written**  24:7

| x |
| --- |

**x**  1:4,8,10,17,19
 1:25 2:2,8,10,16
 2:18,24

| y |
| --- |

**y**  8:7,12
**yeah**  16:23 20:5
 24:17 54:24 55:2
 61:24

**year**  33:11,25
 39:1,13 55:18,23
**years**  12:24 55:20
 55:24
**yesterday**  9:8
 11:5 21:5 27:14
**york**  1:2 3:3 5:6
 5:14,14 6:4,4,11
 9:6,25 10:5 13:9
 13:15 15:3 19:6
 28:16 36:2 37:22
 38:4,4 39:25
 41:10,19 42:24
 57:23 59:7
**yvette**  7:2

| z |
| --- |

**ziehl**  5:3 7:8
**zoom**  19:6

| à |
| --- |

**à**  26:21