Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 18-71748

4    Adv. Case No. 20-08051-ast

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    ORION HEALTHCORP, INC.,

9

10            Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE

13   OF ORION HEALTHCORP, INC.,

14                 Plaintiff,

15            v.

16   SARTISON, et al.,

17                 Defendant.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

1              United States Bankruptcy Court

2              290 Federal Plaza

3              Central Islip, New York 11722

4

5              June 16, 2021

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re 8-18-71748-ast Orion Healthcorp, Inc. [949]

2    Motion to Sell Property of the Estate Free and Clear of

3    Liens under 11 U.S.C 363(f) / Notice and Motion for Entry of

4    an Order Authorizing the Sale of Apartment 12J Located at 2

5    River Park Avenue, New York, N.Y. Free and Clear of Liens,

6    Claims, and Encumbrances and (II) Application for Entry of

7    an Order Authorizing and Approving Payment to the

8    Residential Board and of Sales Commission Upon Closing.

9    Filed by Jeffrey P Nolan on behalf of Howard M. Ehrenberg.

10

11   8-20-08051-ast Ehrenberg v. Elena Sartison et al

12   Status Conference

13

14   [1] Complaint by Howard M. Ehrenberg in his capacity as

15   Liquidating Trustee of Orion Healthcorp, Inc., et al against

16   Elena Sartison, 2 River Terrace Apartment 12J, LLC, Clodagh

17   Bowyer Greene a/k/a Clodagh Bowyer, Elliott Greene.

18   Nature(s) of Suit: (13 (Recovery of money/property - 548

19   fraudulent transfer)).

20

21   [83] Order to Schedule Trial and Establishing Deadlines of

22   the Liquidating Trustees Motion to Sell Property of the

23   Estate [main case dkt 949].

24

25

Page 4

1    [86] (Motion for Determination of Final Order Awarding

2    Summary Judgment). Filed by Jeffrey P Nolan on behalf of

3    Howard M. Ehrenberg (related document(s)42).

4

5    [84] Motion To Stay Order Pending Appeal. Filed by Maryam N

6    Hadden on behalf of 2 River Terrace Apartment 12J, LLC

7    (related document(s)64, 83).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 5

1   A P P E A R A N C E S :

2

3   PACHULSKI STANG ZIEHL & JONES LLP

4        Attorneys for the Trustee

5        780 Third Avenue, 34th Floor

6        New York, NY 10017

7

8   BY:  JEFF NOLAN

9        ILAN SCHARF

10

11   PARLATORE LAW GROUP

12        Attorneys for 2 River Terrace

13        One World Trade Center, Suite 8500

14        New York, NY 10007

15

16   BY:  MARYAM N. HADDEN

17

18   ROSENBERG & PITTINSKY, LLP

19        Attorneys for Residential Board of Managers of

20        Riverhouse

21        One Rockefeller Park Condominium

22        232 Madison Avenue, Suite 906

23        New York, NY 10016

24

25   BY:  LAURENCE D. PITTINSKY

Page 6

1   ALSO PRESENT:

2

3   WESLEY STANTON

4   HOWARD M. EHRENBERG

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 P R O C E E D I N G S

 2            CLERK:  Okay, good afternoon.  I'm Yvette Mills,

 3   courtroom deputy for Chief Judge Alan S. Trust presiding.

 4   These hearings are being recorded.  Please speak clearly.

 5   All parties not speaking, please put your phone on mute.

 6            We'll start with Case Number 18-71748, Orion

 7   Healthcorp, Inc.  We also have -- well, do you want me to

 8   just leave that at that for now, Judge?

 9            THE COURT:  We'll take them together.

10            CLERK:  Case Number 20-08051.  Ehrenberg v. Elena

11   Sartison, et al.

12            THE COURT:  This is Judge Trust.  We'll take

13   appearance, please, first for the liquidating Trustee.

14            MR. SCHARF:  Good morning, Your Honor -- or good

15   afternoon, Your Honor.  It's Ilan Scharf from Pachulski

16   Stang Ziehl & Jones on behalf of the Trustee.  We also have

17   Jeffrey Nolan from my firm as counsel to the Trustee.  The

18   Trustee is on the line, as is another witness for the sale

19   motion, Mr. Wesley Stanton.

20            THE COURT:  All right.  And who do we have for 2

21   River Terrace?

22            MS. HADDEN:  Maryam Hadden, Parlatore Law Group.

23   Good afternoon, Your Honor.

24            THE COURT:  Any witnesses for 2 River Terrace?

25            MS. HADDEN:  No, Your Honor.  You'll just hear my
```

1   sterling arguments.

2          THE COURT:  All right.  Thank you both.  All

3   right, so the Court's intention is, even though these are

4   not all necessarily evidentiary hearings, because of the

5   overlap, I'm going to take the sale motion of the main case

6   and the finality motion and the stay pending appeal motion

7   in the adversary proceeding altogether.

8          I want to start on the evidence, so we'll take the

9   witnesses for the Trustee first.  Can we get -- did you want

10  to go with Mr. Stanton first or Mr. Ehrenberg?

11         MR. NOLAN:  Your Honor, Jeff Nolan, appearing on

12  behalf of the Plaintiff.  I think we would start with Mr.

13  Stanton first.

14         THE COURT:  All right.  Mr. Stanton, I can see

15  you, but please identify yourself so that you can become

16  center screen.

17         MR. STANTON:  Sure.  My name is Wesley Stanton.

18  I'm with the Stanton Hoch team at Compass Real Estate.

19         THE COURT:  All right.  All right, Mr. Nolan?

20         MR. NOLAN:  Yes, Your Honor.  So, we submitted in

21  support of the sale motion, the affidavit of Mr. Stanton

22  with certain exhibits.  I do not believe there are any

23  objections to the exhibits to Mr. Stanton's affidavit.  And

24  so if there is, I'd be more than happy to address those

25  issues, but I'd like to move his affidavit and the exhibits

1    into evidence.

2              THE COURT:  Just for the record, give us that

3    docket number again of his affidavit.

4              MR. NOLAN:  His affidavit is attached to Docket

5    Number 949, in the main case, 18-71748

6              THE COURT:  All right.  Ms. Hadden, is there any

7    objection to Mr. Stanton's declaration or supporting

8    documents?

9              MS. HADDEN:  No objection to his declaration and

10   no objection to the brochure for the Compass Stanton Hoch

11   Group, which is attached.  I believe there was also an

12   exhibit attached that was printouts of various real estate

13   advertisements.  Although I apologize if I'm getting this

14   wrong, Mr. Nolan.  That may not have been attached to Mr.

15   Stanton's affidavit.  Is that one of the exhibits that

16   you're currently offering as well?

17             MR. NOLAN:  So, that's a good question.  So, no,

18   not with respect to the affidavit that's attached to the

19   sale motion.  I was going to present the advertisement, Your

20   Honor, which are Exhibit 2 to the evidentiary hearing.

21   That's a separate exhibit.

22             MS. HADDEN:  Okay, so just so that -- I just

23   wanted to be clear on that.  I have no objection to either

24   the declaration of Mr. Stanton or to the brochure for his

25   group, which was attached.

 1          THE COURT:  All right.  So, for benefit of the

 2    record, Mr. Stanton's declaration and the exhibits of that

 3    declaration, which are all part of Docket Item 949 in the

 4    main case are admitted.  We'll make those Exhibit 1 to this

 5    hearing.  So that's all admitted as Exhibit 1.

 6          (Plaintiff's Exhibit 1 Entered into Evidence)

 7          THE COURT:  Mr. Nolan, do you want to address now

 8    your Exhibit 2 and where it appears on the docket?

 9          MR. NOLAN:  Yes, Your Honor.  So, for the ease of

10    the witnesses, I've put together the exhibit list, which is

11    Docket Number 90 in the adversary case, 20-08051.

12          THE COURT:  Is the -- is the Exhibit 2, though, of

13    Mr. Stanton -- has that been filed on the docket or is that

14    a separate document?

15          MR. NOLAN:  That should be attached to the exhibit

16    list, which is Docket 90, Your Honor.

17          THE COURT:  In the adversary?

18          MR. NOLAN:  Correct.

19          THE COURT:  All right, give me one minute.  All

20    right, so on Exhibit 90 in the adversary docket, 20-08051,

21    which of those exhibits are you offering through Mr.

22    Stanton?

23          MR. NOLAN:  I will be offering, Your Honor,

24    Exhibits 1 and 2.

25          THE COURT:  For identification purposes and to

1    keep the record clean, Docket Item 90 in the adversary

2    proceeding, what is marked as Exhibit 1 on that document

3    will actually be Exhibit 2 on this trial record.  And those

4    are -- that's the brochure.  Exhibit -- what is marked as

5    Exhibit 2, various advertisements, that would be Exhibit 3

6    for the trial record.  Ms. Hadden, is there any objection to

7    the admission of Exhibits 2 or 3?

8             MS. HADDEN:  No objection as to the admission of

9    Exhibit 2, which is substantially the same as part of

10   Exhibit 1.  As to Exhibit 3, which is the advertisements, I

11   do have an objection in that although they do appear to be

12   essentially screenshots of webpages, some of those webpages

13   have tabs which are not expanded, so they're not complete

14   screenshots and they're also not screenshots that were taken

15   at the time that the listing was active.  They were all

16   taken after the listing had been at least somewhat

17   deactivated due to the property being under contract.  So, I

18   would object to those going into evidence.

19            (Plaintiff's Exhibit 2 Admitted into Evidence)

20            THE COURT:  All right.  I'll let Mr. Nolan -- I'll

21   let you make any foundation of Exhibit 3 through Mr. Stanton

22   before he would go to cross.

23            MR. NOLAN:  Okay, Your Honor, thank you.  And then

24   just for one more piece of housekeeping, Exhibit 3 to Docket

25   90, which is the contract of sale for the condominium unit,

Page 12

```
1    that can either come in through -- that was attached to Mr.

2    Stanton's affidavit as a true and correct copy of the

3    contract for sale, and I would submit that that -- I'm going

4    to ask, you know, both witnesses, but I would submit that it

5    can be -- you know, is a true and correct copy and should be

6    moved into evidence.

7              THE COURT:  All right, so then Exhibit -- contract

8    of sale for the condominium unit will be marked as Exhibit 4

9    to this trial record.  Ms. Hadden, any objection to Exhibit

10   4, the contact of sale?

11             MS. HADDEN:  So long as Mr. Stanton testifies

12   consistently with Mr. Nolan's representation that it's a

13   true and accurate copy, which I assume he will, I have no

14   objection.

15             THE COURT:  All right.  All right, so then subject

16   to that foundation, Exhibit 4 is admitted.

17        (Plaintiff's Exhibit 4 Admitted into Evidence)

18             THE COURT:  Any other exhibits offered to Mr.

19   Stanton?

20             MR. NOLAN:  No, Your Honor.

21             THE COURT:  All right.  Mr. Stanton?

22             MR. STANTON:  Yes, Your Honor.

23             THE COURT:  Are you familiar with the affidavit

24   that bears your name which has been filed --

25             MR. STANTON:  Yes.
```

1          THE COURT:  -- in this -- in the main bankruptcy

2     case?

3          MR. STANTON:  Yes, I am.

4          THE COURT:  All right.  And is the information

5     contained within your affidavit true and correct, to the

6     best of your knowledge?

7          MR. STANTON:  To the best of my knowledge, yes.

8          THE COURT:  All right.  I'm actually going to have

9     you raise your right hand do to be sworn in.  I'm two

10    questions beyond the swearing you in part.  So, do you swear

11    or affirm that the testimony you're about to give will be

12    true and correct, to the best of your knowledge and belief?

13         MR. STANTON:  Yes.

14         THE COURT:  And so let me just have you repeat --

15    the affidavit -- you can lower your...  The affidavit that

16    you've executed, the information contained in that affidavit

17    is true ad correct, to the best of your knowledge and

18    belief?

19         MR. STANTON:  Yes, to the best of my knowledge,

20    yes.

21         THE COURT:  All right.  So, then Mr. Stanton's

22    declaration will stand as his direct testimony.  Mr. Nolan,

23    if you just want to briefly cover foundation on the

24    advertisements?

25         MR. NOLAN:  Yes, Your Honor.  Your Honor, is there

Page 14

1   any objection to the expertise of Mr. Stanton?  If there is,

2   I can go ahead and lay a foundation.

3          THE COURT:  I think his affidavit sets out his

4   expertise, knowledge in the sale of units of this type.

5   I'll let Ms. Hadden challenge that if she wishes to on

6   cross, in terms of weight.

7          MR. NOLAN:  Okay, thank you, Your Honor.  Let me

8   take a step back.

9              DIRECT EXAMINATION OF WESLEY STANTON

10  BY MR. NOLAN:

11  Q   Mr. Stanton, good afternoon.  Can you tell me what your

12  occupation is?

13  A   I'm a real estate agent in Manhattan and Brooklyn.

14  Q   And how long have --

15         THE COURT:  Mr. Nolan, you don't need to go back

16  through everything that's already in his declaration.  All

17  of that constitutes not his direct testimony.

18         MR. NOLAN:  Okay, thank you, Your Honor.

19         THE COURT:  Unless it's directly pertinent to the

20  foundation to the advertisements, it's already in the

21  record.

22         MR. NOLAN:  Okay, thank you, Your Honor.  And for

23  the ease of the record, when I -- I'm going to reference the

24  property, and when I'm doing that, I'm referencing the

25  condominium at 2 River Terrace, Apartment 12J.

1   BY MR. NOLAN:

2   Q    Mr. Stanton, did you, as part of your duties as the

3   sales agent to market and sell the property, did you

4   advertise the property?

5   A    Yes.

6   Q    And across what mediums did you advertise the property?

7   A    The property was put into the brokers database, which

8   syndicates to all the real estate Board of New York brokers.

9   It was on, as I understand, over 90 domestic websites and 70

10  international websites.  We used our contacts within the

11  industry.  Brokers that we knew were active in the area in

12  the building.  It was on Compass.com through what's called

13  the Virtual Office Network.  It was also listed on various

14  other brokerage companies' websites throughout the

15  (indiscernible) network.

16  Q    Thank you.  And besides the old school way of

17  advertising across with other brokers, do you also advertise

18  across the, you know, internet and electronic or other type

19  of advertising for the property?

20  A    Yes, many of the -- all of those websites are very

21  client-focused like Zillow and StreetEasy and Trulia, Wall

22  Street Journal, so on and so forth.  Those are directed

23  marketed to buyers, whereas the brokerage database is really

24  more towards the brokers.

25  Q    Thank you.  And if you would look at Exhibit 3, which

1    is Exhibit 2 in the binder in front of you, which are

2    various internet or intellectual -- you know, various types

3    of mediums to advertise the property.  Can you just briefly

4    describe what those are to the Court?

5    A    So, these are the listings that were put up advertising

6    the property.  They -- the first one is Realtor.com, but

7    there are several others that we -- we put online for the

8    benefit of any buyer that would be interested in buying the

9    property.

10           When the property -- when it's a contract, we

11   uploaded it into contract, but it was, I think, listed on

12   April 3rd and it didn't go to contract until April 23rd.

13   so, it was openly marketed during that time.  And then,

14   obviously, I was using some of my personal connections prior

15   to that time.

16   Q    And do you have any ability to tell the Court whether

17   or not advertising across these different entities, such as

18   Realtor.com or Zillow, resulted in any type of interest in

19   the property?

20   A    We got -- we got several inquiries on the property.

21   Q    In your projection -- in custom and practice as a real

22   estate agent, is it normal to advertise across these type of

23   mediums like Compass.com, Zillow and Realtor.com?

24   A    Yes.

25   Q    Can you please tell me whether or not, looking at

Case 2:21-cv-01239-JMA Document 11 Filed 06/23/21 Page 17 of 120 PageID #: 1994

Page 17

1     Exhibit 3, which are the advertisements -- those are true

2     and correct copies of advertisements for the property in

3     question?

4     A    Yes.

5     Q    And how do you know that?

6     A    Because I'm the one that put them up.  And I provided

7     them to you.

8          MR. NOLAN:  Your Honor, I'd like to move the

9     Exhibit 3, which are the advertisements, into evidence.

10         THE COURT:  Ms. Hadden, any objections?

11         MS. HADDEN:  May I have a brief voir dire, Your

12    Honor?

13         THE COURT:  All right.

14         MS. HADDEN:  Thank you.

15              VOIR DIRE OF WESLEY STANTON

16    BY MS. HADDEN:

17    Q    Good afternoon, Mr. Stanton.

18    A    Hi, how are you?

19    Q    Good.  How are you?  If there's anything that I ask you

20    that you don't understand, please just let me know and I'll

21    rephrase it, all right?

22    A    Of course.  Thank you.

23    Q    Thank you.  Now, you said that you recognized these

24    advertisements which are contained in Exhibit 2 in front of

25    you and Exhibit 3 as renumbered by the Court.  You said you

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Page 18

1    recognized them because you had put them up.  Now, as a real

2    estate broker, do you have access to put information onto

3    the third party sites such as Zillow or Redfin or any of the

4    other sites?  Or is it something where you send out a

5    uniform listing and then that listing is uploaded and

6    adapted?

7    A    It -- well, at Compass it works at both.  There are

8    certain things that are just syndicated.  For example, the -

9    - in the instance of StreetEasy or Zillow, we need to put it

10   in directly.

11   Q    And are there other third party agencies where they

12   take that information and then they themselves add it to

13   their site?

14   A    I don't know for sure.  I would think so, yes, as we

15   syndicate to 90 domestic sites and over 70 international

16   sites.  I'm not sure how it gets to those sites but it gets

17   there.

18   Q    And the sites that are contained in that exhibit in

19   front of you or that you've had a chance to review, are

20   those all sites where you yourself were involved in

21   uploading that information, or some of the sites where you

22   uploaded it and other sites where -- through whatever

23   process that is, they obtained the information and then

24   published them?

25   A    Well, my -- my assistant is the one that specifically

1    uploaded it to the sites.  I'm not sure how specifically she

2    does that because that's her job, but some would have gone

3    through just uploading it into the Compass system and then

4    it automatically syndicates, and some are directly inputted

5    by my assistants.

6    Q    And looking at those pages that are in front of you,

7    those specific pages that are being offered into evidence,

8    are you able to tell how each of those pages was put onto

9    that site?

10   A    I could find out that information but I don't have that

11   information right now.

12   Q    And just for clarity, some of the pages that are

13   contained in that exhibit list the property as being under

14   contract, which, of course, it is.  Is there any difference

15   in the, so to speak -- for a listing, for a property that is

16   under contract as opposed to a listing for a property that

17   is simply on the open market and nothing is pending at that

18   point?

19   A    The difference would be the status, obviously.  It's

20   still actively marketed.  It's still online as an in-

21   contract-listed, until it -- closes.

22   Q    Okay.  I apologize, I didn't mean to cut you off.

23   A    Okay.

24   Q    All right.

25             MS. HADDEN:  Those are my only questions as to

1    that exhibit.  Thank you, Your Honor.  I do still have an

2    objection as to the... Oh, actually, one other question.  I

3    apologize.

4    BY MS. HADDEN:

5    Q    Is it correct that some of these sites have dropdown

6    menus, so to speak.  Where if you're looking at a listing

7    initially, it will give you -- here's information about the

8    property, and then you have a link where you can click to

9    see more, for example, or click to see comparative home

10   values, things along those lines?

11   A    Every -- every property -- every site is different.

12   For example, if you're on Zillow, depending on where you are

13   on Zillow, there are dropdown menus that would allow you to

14   expand upon the description.  But it's not a -- but

15   everything is readily available for someone to see.  That's

16   just the way of -- the way things are advertised.

17   Q    And looking again at those specific pages in front of

18   you -- because, obviously, there's a difference between the

19   printed copy and the online access, to so speak, are the

20   pages in front of you pages where each of those dropdown

21   menus where they exist have been expanded, or are some of

22   those still just tabs that have not been opened?

23   A    Well, so if we went to the Realtor.com advertisement --

24   I think this is what you're asking me -- if you went to the

25   Realtor.com advertisement and looked at it online, you could

1    expand all of these areas.  These property details, so on

2    and so forth, to rad more about the -- about the property.

3    Q    All right.  So, the items that are in front of you,

4    Exhibit Number 3, that's not the expanded version for each

5    of these websites -- it's a minimized, for lack of a better

6    term, version, is that correct?

7    A    It's the printed version but you could expand it

8    online.  I'm sure there's a way to print it and expand it on

9    paper but, again, I'm not sure because I don't regularly

10   print these.  You know, we generally get the inquiries after

11   people have already perused them.

12   Q    All right, thank you.

13              MS. HADDEN:  Your Honor, I do still have the same

14   objection.

15              THE COURT:  All right, the objection is overruled.

16   Exhibit 3 on this trial record is admitted. For optional

17   completeness purposes, which seems to be what the objection

18   is going to -- or functional completeness, as some call it -

19   - if the objecting party wanted to offer the portions of the

20   information in the dropdown portions of the webpages that

21   are not part of this record, then they could do so for

22   optional completeness purposes.  But the document itself is

23   admitted.  The pages are essentially repeats of the same

24   information website to website.  So Exhibit 3 is admitted.

25              (Plaintiff's Exhibit 3 Admitted into Evidence)

Page 22

 1              Mr. Nolan, anything further for Mr. Stanton in

 2      your direct case?

 3              MR. NOLAN:  No, Your Honor.

 4              THE COURT:  So then, continuing where you were,

 5      Ms. Hadden, on cross if you want to go into the main cross-

 6      examination?

 7              MS. HADDEN:  Thank you, Your Honor.

 8                CROSS-EXAMINATION OF WESLEY STANTON

 9      BY MS. HADDEN:

10      Q    Mr. Stanton, previously to working at Compass, you

11      worked at Douglas Elliman, correct?

12      A    Correct.

13      Q    And as a member of Douglas Elliman as well as a real

14      estate agent who specializes in the higher level properties

15      in Manhattan, I assume you were familiar with 2 River

16      Terrace before becoming involved in this case.  Is that

17      accurate?

18      A    Yes.

19      Q    Had you marketed properties at 2 River Terrace before

20      this?

21      A    No.

22      Q    So, you were not involved in the purchase of the

23      apartment in question back in 2016, is that correct?

24      A    (indiscernible)

25      Q    But you were working at Douglas Elliman at that time?

Page 23

1   A    In 2016, yes, I was at Douglas Elliman.

2   Q    All right.  Now, correct me if I'm wrong, but you were

3   the one in consultation with the Trustee who determined at

4   what price point the apartment should be marketed, is that

5   correct?

6   A    Yes.

7   Q    Could you tell us more about how you arrived at that

8   determination of what the price for the apartment should be?

9           MR. NOLAN:  Objection to the form of the question.

10  It's over-broad and ambiguous and calls for a narrative.

11  But if the Court wants to give the witness that latitude,

12  I'll withdraw the objection.

13          THE COURT:  The Court will allow him to testify as

14  to how he and the Trustee determined the price at which to

15  offer the condo (indiscernible) property -- but try to keep

16  it succinct.

17  BY MS. HADDEN:

18  A    We looked at comps, you know, in the area for Battery

19  Park City and within the building.  And from there, we

20  derived a range at what we thought it would sell for.

21  Q    And you marketed it at 5.25, is that right?

22  A    Correct.

23  Q    Now, 5.25 is lower than the price it had sold at in

24  2016, correct?

25  A    Yes.

1    Q    What was the reason for marketing at a lower price

2    point?

3    A    The market had fallen.

4    Q    And has the market fallen, in your experience,

5    throughout New York City or more in the Battery Park area?

6    A    Generally, throughout New York City but, specifically,

7    in the Battery Park area.

8    Q    So, for example, you have a property listed on the

9    Upper West Side at a higher price point, correct?

10   A    Correct.

11   Q    375 West End Avenue listed at 6.250?

12   A    Correct.

13   Q    And that apartment does not have a river view, correct?

14   A    Correct.

15   Q    Whereas Apartment 12JK has a river view from both the

16   bedroom and the living room/kitchen area, is that right?

17   A    Correct.

18   Q    What would be the differences in the price points

19   between those two apartments, again, in your expertise as a

20   real estate agent?

21   A    It would be the same thing as saying -- comparing an

22   apartment in New York City to New Jersey.  Two totally

23   different locations.  They're not comparable whatsoever.

24   Q    So, the West End is completely different from Battery

25   Park even though they're in the same city, is that correct?

1    A    Yes.  Also less than -- happens to be a completely gut-

2    renovated $2 million renovation in a penthouse apartment

3    that's on the Upper West Side, which is a completely

4    different location.  It has every bell and whistle from a

5    renovated perspective that one could want.  It's also five

6    bedrooms, not three.  I mean, I could go on, if you want,

7    but it's apples and oranges from a real estate perspective.

8    Q    I would actually like to focus in on something you just

9    said.  All the bells and whistles you mentioned.  What are

10   the bells and whistles that were missing, so to speak, from

11   Apartment 12JK?

12   A    Well, it's got a lot of wear and tear on it.  You know,

13   most buyers would consider the apartment needing work.

14   Q    What type of work did it need?

15   A    There were some issues in the kitchen with the kitchen

16   cabinetry, there was wear and tear on the floors, there were

17   issues with the walls, the bathrooms were not brand new.

18   Most buyers would want to renovate this to bring it up to --

19   up to the times.

20   Q    When you say issues in the kitchen, there are a couple

21   of handles that had been removed?

22   A    Hardware missing, there's scratches in the -- in the

23   cabinetry.  It's just not a brand new apartment.

24   Q    Right.  So, in your viewpoint, the fact that the --

25   A    (indiscernible) -- it just is what -- it's a fact.

Page 26

```
 1   Q    In your viewpoint, the fact that the apartment is not -
 2   - you know, has not come straight off the line, so to speak,
 3   in other words, it does have some evidence that some
 4   individual has lived in it over the past few years, is what
 5   brings it from, say, the $6 million range down to the low $5
 6   million range, is that accurate?
 7           MR. SCHARF?:  Your Honor, objection as to Mr.
 8   Stanton -- to Mr. Stanton opining on whether anybody has
 9   lived there in the past few years.
10           THE COURT:  So, invoking the one riot, one ranger
11   rule, this is Mr. Nolan's witness so any objections would
12   have to be from Mr. Nolan.  I heard her question so I'm not
13   taking it as him saying somebody was there 13 out of the
14   last 21 days -- more to the age of the unit.  But Ms. Hadden
15   specifically asked the witness if he -- if he's aware of --
16   if, as, and when someone resided in the apartment over the
17   last -- unit over the last 12, 18, 24 months, you're
18   certainly free to ask him that.
19           MS. HADDEN:  No, Your Honor is quite correct.  The
20   focus of my question was not whether or not someone has been
21   there in February of 2021, for example.  It's more a
22   question of is it the age/wear and tear of some of the items
23   within the apartment that's driving your focus in terms of
24   the price point of the apartment?  Is that an accurate
25   representation of your testimony?
```

 1              MR. NOLAN?:  I'll object to the form of the

 2   question.  It's an incomplete hypothetical and it

 3   mischaracterizes the witness's testimony.

 4              THE COURT:  Do you want to rephrase it, Mr.

 5   Hadden?

 6              MS. HADDEN:  Sure.

 7   BY MS. HADDEN:

 8   Q    Is it accurate to say, Mr. Stanton, that your testimony

 9   is that the apartment has sufficient wear and tear to bring

10   it below the price point that you would have suggested

11   marketing that were it in pristine, untouched condition?

12   A    Yes.

13   Q    Assume for a moment the apartment was in pristine,

14   untouched condition.  What then would you recommend -- or

15   what would your professional opinion be as to the

16   appropriate price point for the apartment?

17   A    I couldn't answer that question.  I would have to see

18   the renovation when it was done.

19   Q    So, is it -- if I'm understanding correctly, you're

20   saying that the materials in the apartment -- for example,

21   the décor in the kitchen -- you mentioned the kitchen as

22   being an area of concern.  Are you saying that it's outdated

23   and that's why you're unable to make an estimation?  Or --

24   A    The apartment was built in 2007, which is 14 years ago.

25   14 years is a long time for a renovation to hold,

```
 1    particularly when there's -- it appears to me that whoever

 2    was living there did not take complete care of it.

 3    Q     Okay.

 4    A     But to say that it's the only reason that affected a

 5    price versus the Upper West Side apartment that you're

 6    referencing is not accurate.

 7    Q     Okay.  What are other things that affected the price,

 8    other than the wear and tear that you've mentioned?

 9    A     The building is a land-lease building, which is a

10    stigma in the industry, which knocks out a significant

11    portion of buyers.  The building is in Battery Park, which

12    is a niche location, which knocks out another significant

13    amount of buyers.  And we're also still dealing with the

14    effects of a pandemic.

15    Q     And you listed the property I believe on -- I believe

16    it was April 2nd, although you may have testified April 3rd.

17    But either April 2nd or April 3rd.  And you were in contract

18    as of April 23rd, is that right?

19    A     Yes.

20    Q     Again, in your experience as a real estate agent

21    specializing in this area, is that a lengthy amount of time

22    for a property to be on the market, a reasonable amount of

23    time, or a short amount of time?

24    A     I wouldn't characterize it as anything.  It depends on

25    -- I wouldn't characterize it as any of them.
```

1   Q    How would you characterize it?

2   A    I would say that we got the best value for it,

3   regardless of time.  Typically, apartments that sell quickly

4   get the highest value because they're priced well.

5   Q    And my question for you is, is this an apartment that

6   sold quickly in your experience or not quickly in your

7   experience?

8           MR. NOLAN:  I'll object to the question.  It's

9   been asked and answered.

10          THE COURT:  I'll allow it.  Sustained.

11  BY MS. HADDEN:

12  A    I -- what are we comparing this to?  Every marketing --

13  every marketing is its own.  Every apartment is its own...

14  I don't know how to answer that question.

15  Q    So --

16  A    There are apartments --

17  Q    How many offers -- how many offers did you receive --

18  A    There are apartments that sell in one day.  There are

19  apartments that sell in six months.  There's apartments that

20  sell in a couple weeks.  I don't -- it really just -- it

21  depends on too many factors to give you a definitive answer.

22  Q    All right.  So, am I correct then that there's no

23  industry standard by which you can say any kind of a

24  benchmark as to whether or not this apartment sold quickly?

25  A    I'm sorry, I didn't hear the question.  You...

1   Q    I apologize.  I'll repeat it.  Am I understanding then

2   correctly that there is no standard by which you could say

3   an apartment has been on the market for a long period of

4   time or a brief period of time because each situation, as

5   you say, is completely --

6   A    I -- I'm sorry, it keeps freezing up.

7   Q    All right.

8   A    Can you repeat it?  I apologize.  It might be on my

9   end, although it was fine before, so I was a little confused

10  on...

11  Q    Yeah, I haven't gone anywhere either so -- it's the joy

12  of technology.  I'll try again.  Am I understanding

13  correctly from your testimony that there is no standard

14  within your experience, or industry standard within your

15  experience, by which you could benchmark whether an

16  apartment is moving quickly or slowly in terms of a sale?

17  A    I think that if an apartment sells within 30 days, the

18  marketing did its job.  That's how I can -- I can clarify

19  that.  Although I would say every seller has their

20  difference of opinion, is something selling quickly or not.

21  Q    I'm sure that's the case.  As to this particular

22  apartment, I believe you said that you had received more

23  than one offer, is that correct?

24  A    That is correct.

25  Q    How many offers in total did the Trustee receive?

1    A     Two.

2    Q     So, it's the $4.8 million offer that was accepted, and

3    I believe the other offer was $4.7 million, is that correct?

4    A     Correct.

5    Q     And you said that there was a financing contingency on

6    the other offer.  What was the financing contingency?

7    A     It was a 45-day financing contingency.  I believe they

8    were financing 80 percent, which was the maximum amount of

9    reasonable financing that most -- that is standard in New

10   York.

11   Q     And the $4.8 million offer is an all-cash offer?

12   A     Correct.

13   Q     And that's from an agent who specializes in the

14   building?

15   A     Correct.

16   Q     Or represented by an agent who specializes in the

17   building?  Have you worked with him before?

18   A     I have not.  I know him but I have not -- I don't

19   believe that we've done a deal together, no.

20   Q     And you don't know anything about the buyer themselves,

21   correct?

22   A     No.

23          MS. HADDEN:  I have no other questions for Mr.

24   Stanton, thank you.

25          THE COURT:  Any redirect?

```
 1              MR. NOLAN:  Yes, just briefly, Your Honor.

 2              REDIRECT EXAMINATION OF WESLEY STANTON

 3   BY MR. NOLAN:

 4   Q    Is it a fair statement, Mr. Stanton, that your goal was

 5   to get the highest and best price for the property?

 6   A    Yes.

 7   Q    Did you inspect the property at the time you took the

 8   listing?

 9   A    Yes.

10   Q    Did you have a chance to walk through and inspect each

11   of the rooms?

12   A    Yes.

13   Q    And you had a chance to do research on the comps for

14   the building and the surrounding area?

15   A    Yes.

16   Q    And your determination to market the property was based

17   upon your perception and your expertise in the industry?

18   A    Yes.

19   Q    And do you believe that the $4.8 million all-cash offer

20   is the fair market value price for this property as of April

21   2021?

22   A    Yes.

23   Q    And one last question.  Have you seen sales with

24   respect to auctions?

25   A    I have, yes.
```

 1   Q    And --

 2            MS. HADDEN:  I'm just going to object as being

 3   beyond the scope at this point, Your Honor.

 4            THE COURT:  That would be beyond the scope.

 5            MR. NOLAN:  I'll withdraw the question.  No

 6   further questions, Your Honor.

 7            THE COURT:  All right, very well.  Thank you.  Mr.

 8   Stanton, you're free to leave the hearing if you wish.

 9   You're certainly welcome to stay.

10            THE WITNESS:  Thank you, all.  I appreciate it.

11   Have a good day.  Bye.  Thank you.

12            THE COURT:  I take that was option one.  All

13   right.  So then we'll hear form Mr. Ehrenberg?  Sir, would

14   you identify yourself, please, so you'll become center

15   screen?

16            MR. EHRENBERG:  Good afternoon, Your Honor.  I'm

17   Howard Ehrenberg, the Liquidating Trustee for Orion

18   Healthcorp.

19            THE COURT:  All right.  Mr. Ehrenberg, I will --

20   are you also an attorney, is that correct?

21            MR. EHRENBERG:  I am.

22            THE COURT:  A practicing attorney?

23            MR. EHRENBERG:  Yes, in California.

24            THE COURT:  All right, so I'll waive the oath for

25   you as an officer of the Court.  All right, then, Mr. Nolan,

 1    do you have Mr. Ehrenberg's declaration?  It's at Docket

 2    Item 966.  The Court would make that declaration Exhibit 5

 3    for this record.

 4            MR. EHRENBERG:  It was an objection to an invoice

 5    from Douglas Elliman.  It's referenced in the declaration.

 6    It's Exhibit 1 to the declaration.  I think it's also

 7    contained in Mr. Stanton's affidavit.  But, that aside,

 8    because of the objection -- Mr. Nolan, Mr. Scharf, whoever

 9    is taking the witness, if you want to establish any more

10    foundation for that document I'll let you do so before

11    ruling on that objection.

12            MR. NOLAN:  Thank you, Your Honor.

13            DIRECT EXAMINATION OF HOWARD M. EHRENBERG

14    BY MR. NOLAN:

15    Q   Mr. Ehrenberg, I'm going to refer you to Docket Number

16    90, which is the Plaintiff's -- the Trustee's exhibits for

17    the sale motion.  It's Exhibit 5.

18            And I would ask the -- and it's identified for the

19    record, Your Honor, as Douglas Elliman Property Management

20    Invoices.

21            MS. HADDEN:  And just for clarity sake, I think

22    there was a single page of what is Exhibit 5 in Docket

23    Number 90 in the adversary proceeding that was submitted as

24    an exhibit to Mr. Ehrenberg's declaration, I believe, in the

25    main proceeding.  I think it may have been Docket Number

1    967.

2           THE COURT:  Well, we have two different things, I

3    think.  There was a single page exhibit to Mr. Ehrenberg's

4    original declaration, which is a one-page invoice on a

5    Douglas Elliman form, and that is at Docket 967.  And now on

6    Docket 90 in the adversary proceeding, as Exhibit 5, there

7    are multiple invoices?

8           MR. NOLAN:  Correct.

9           THE COURT:  Does the one-page -- is the one page

10   that Ms. Hadden objected to part of the multiple pages in

11   Exhibit -- what was marked -- what was called Exhibit 5 in

12   the adversary listed exhibits?

13          MR. NOLAN:  Yes, Your Honor. And I propose that I

14   just keep them -- since it's repetitive, it's duplicative of

15   what's in Exhibit 5 to Docket 90, I'll just lay a foundation

16   and keep them altogether and make it easy for housekeeping

17   matters.

18          THE COURT:  All right, that'll be great.  Thanks,

19   Mr. Nolan.  So, for record identification purposes, several

20   pages of invoices, interactions, sub-marked Docket Item 90-5

21   in Adversary Proceeding 20-8051 are all Exhibit 6 to this

22   trial record.  If you want to now -- if you're offering

23   those exhibits, is there an objection to those, Ms. Hadden?

24          MS. HADDEN:  I'd have the same objection to those,

25   Your Honor, just as a group -- that I add to the single

```
 1    page.
 2              THE COURT:  So if you want to lay a foundation for
 3    those, what is now Exhibit 6 to this trial record is not yet
 4    admitted.  So, Mr. Nolan?
 5              MR. NOLAN:  Thank you, Your Honor.
 6    BY MR. NOLAN:
 7    Q    Mr. Ehrenberg, looking at the Douglas Elliman Property
 8    Management invoices -- and for the record, I'm going to
 9    identify them as they're dated, March, April, May and June -
10    - do you recognize those documents?
11    A    Yes.
12    Q    And what do they represent to you?
13    A    Those are the invoices from the Homeowners Association
14    for the monthly charges and related expenses.
15    Q    And did you receive those -- those documents as the
16    Trustee in this case?
17    A    I did.
18    Q    And what did you do with them?
19    A    I reviewed them and then paid them for the current
20    charges, not the charges prior to my taking possession.
21    Q    Okay.  And these invoices, are these invoices with
22    respect to the property that is the subject of the hearing
23    today?
24    A    Yes.
25    Q    And do you have an understanding of what these charges
```

1  are for for each respective month?

2  A    Yes.

3  Q    And what is that?

4  A    One charge is the HOA fee itself for the expenses of

5  the association.  Another that's called Pilot is actually

6  the share of property taxes owed for this unit.  And then in

7  later months, there is also some assessments that were

8  issued by the homeowners that were paid currently.  And then

9  there is some shared utility expenses.

10 Q    Thank you.

11       MR. NOLAN:  Your Honor, I'd like to move Exhibit 6

12 into evidence.

13       THE COURT:  All right.  I'll take it that the same

14 objection still stands as to foundation.  But the objection

15 would be overruled.  These are invoices that would have

16 arisen after the Court's judgment -- (indiscernible) title

17 to the property and the Trustee.  At that vantage point the

18 Trustee is nominally the owner of the property and is

19 receiving bills and paying bills as owner.  So that

20 objection would be overruled.

21       In addition, the Court does not find that there's

22 any significant issue about the trustworthiness or

23 credibility of these exhibits.  So, the group of invoices in

24 Exhibit 6 are admitted.

25       (Plaintiff's Exhibit 6 Admitted into Evidence)

1      THE COURT:  Any other exhibits through Mr.

2   Ehrenberg?

3      MR. NOLAN:  Yes, Your Honor.  On Docket 90,

4   Exhibit 4, which is the New York County -- New York State

5   County Clerk judgment.  I don't know if there's an objection

6   to this document or not.  It's been the subject of other

7   litigation.  It was utilized without objection on Docket 55

8   in the adversary as part of the summary judgment motion.  It

9   was Separate Statement of Fact 19, which was not disputed.

10  But I'm more than happy to utilize this witness to identify

11  and to lay a foundation for the judgment.

12      MS. HADDEN:  That's a Court record, Your Honor.  I

13  have no objection to that exhibit.

14      THE COURT:  All right, so for identification

15  purposes, this is now Exhibit 7.  For this trial record,

16  it's the document sub-marked as Docket 90-4 in Adversary 20-

17  8051.  It is admitted as Exhibit 7.

18      (Plaintiff's Exhibit 7 Admitted into Evidence)

19      MR. NOLAN:  Thank you, Your Honor.

20  BY MR. NOLAN:

21  Q    Mr. Ehrenberg, are you aware if there is a -- as the

22  owner, if there is a lien on the property?

23  A    Yes.

24  Q    And the lien -- what lien -- what do you understand the

25  lien to be for?

1    A    It's for the judgment and the subsequently unpaid HOA

2    fees.

3    Q    And do you -- do you actually know or can give us an

4    approximation as to what the dollar amount that's alleged to

5    be a lien against the property?

6    A    If I recall, I think it's about $460,000, maybe more.

7    $470,000?

8    Q    Yeah, and that lien exists and is...  Strike that.

9    With respect to that lien that's against the property, are

10   you aware of whether or not anyone has attempted to

11   foreclose or -- or sell the property?

12   A    Yes.

13   Q    And what's your -- what's your understanding has

14   been... Or strike that.  That lien would seek to undermine

15   any attempt of the Trustee to sell the property.  Is that a

16   fair statement?

17   A    Yes.

18   Q    And are you aware of whether or not the property was

19   subject to a sheriff's sale?

20   A    I believe that it was.

21   Q    And did the issue of a pending sheriff's sale have any

22   impact on you with respect to your decision of whether or

23   not to try and sell or liquidate the property?

24   A    Yes, it did.

25   Q    All right.  Thank you.

```
 1              MR. NOLAN:  I have no further questions, Your

 2    Honor.

 3              THE COURT:  All right, very well.  Ms. Hadden?

 4              MS. HADDEN:  Thank you, Your Honor.

 5              CROSS-EXAMINATION OF HOWARD M. EHRENBERG

 6    BY MS. HADDEN:

 7    Q    Good afternoon, Mr. Ehrenberg.

 8    A    It's still good morning for me, but --

 9    Q    Oh, that's right.  Good morning.

10    A    Same to you.

11    Q    Thank you.  So, I have a couple of quick questions for

12    you -- or hopefully quick questions for you.  You took

13    possession of the property as of March 1st, pursuant to the

14    Court's order, is that correct?

15    A    That's correct.

16    Q    But you retained Compass on February 10th, is that

17    right?

18    A    About that date, yes.

19    Q    And around that same date, you had the locks changed on

20    the apartment, is that correct?  Not you personally but --

21    A    Yes, I had them changed, yes.

22    Q    Okay.  And --

23    A    To protect the assets inside.

24    Q    Okay.  I didn't mean to cut you off.  I'm sorry if I

25    did.
```

```
                                                              Page 41

 1    A     No, no.

 2    Q     What were you protecting the assets inside from?

 3    A     I wanted to make sure that nothing happened to the

 4    apartment when it was in my possession.

 5    Q     But it was not yet in your possession at that point, is

 6    that right?

 7             MR. NOLAN:  I'll object to the question to the

 8    extent it calls for a legal conclusion.

 9             THE COURT:  All right.  Even though you are a

10    lawyer, you're not testifying as a legal expert.  Just a

11    business reason for securing your (indiscernible) as of on

12    or about February 10, 2020?

13             THE WITNESS:  That's right.  Subsequent to the

14    Court's order awarding the property to the bankruptcy

15    estate, I changed the locks, as I typically do.

16    BY MS. HADDEN:

17    Q     And at that time, the lien from the board pursuant to

18    that State Court judgment was still in effect, correct?

19    A     Yes.

20    Q     (indiscernible) And as well, the order of the

21    Bankruptcy Court, Judge Trust, that had secured a number of

22    assets associated with different Parmar entities, including

23    this apartment, was still acting as a lien against that

24    apartment?  Had it been -- was it still in place at that

25    time?
```

```
 1            MR. NOLAN:  I'll object to the question as it

 2    lacks foundation, Your Honor.

 3            THE COURT:  Would you rephrase the question, Ms.

 4    Hadden?

 5            MS. HADDEN:  Certainly.

 6    BY MS. HADDEN:

 7    Q    Mr. Ehrenberg, you've been appointed the Liquidating

 8    Trustee in the overall bankruptcy in this case for quite

 9    some time now, correct?

10    A    Yes, a little over two years.

11    Q    All right.  And in that capacity, were you aware that,

12    among the other multiple proceedings that have gone on,

13    there was an order from Judge Trust that secured or sought

14    to secure a number of assets, in particular, real estate

15    assets that were associated either with Mr. Parmar or with

16    entities associated with Mr. Parmar?

17    A    Yes.  Some of them are also subject to his criminal

18    case.

19    Q    Yes.

20    A    And are under the control of the U.S. Attorney's

21    Office.

22    Q    And that was the case with this apartment as well up

23    until May 12th, is that correct?

24    A    That's correct.

25    Q    That's May 12th -- for clarity, May 12, 2021, this
```

Page 43

1  year?

2  A    Yes.  We knew of it, I believe, earlier than that but,

3  yes, we knew that they were not going to claim it in their

4  action.

5  Q    Okay.  So, you had -- for lack of a better term,

6  advanced notice that they were going to be abandoning it

7  from the criminal case?

8  A    Yes.

9  Q    Okay.  Do you recall when you learned that?

10  A    Not precisely.  It was not long before.

11  Q    Do you recall if it was before or after February 10,

12  2021?

13  A    My best recollection is it would've been before but I'd

14  have to review my notes.

15  Q    I understand.  And I believe in your declaration you

16  testified -- and I'm using testified in that your

17  declaration qualifies as part of your direct examination --

18  that you'd received multiple offers for the apartment.  By

19  multiple offers, that was the two offers that Mr. Stanton

20  discussed or were there other offers in addition to that?

21  A    There were no others that I'm aware of.

22  Q    All right, so it was the offer that was eventually

23  accepted and gone into contract, and the $4.6 million with

24  the financing contingency, is that right?

25  A    Yes.

1  Q    Do you recall how close to the time that the apartment

2  was listed those offers were first received?  In other

3  words, was there a period of negotiation back and forth or

4  were the offers received and then you went into contract

5  almost immediately thereafter?

6  A    My recollection is that Mr. Stanton told me that he was

7  aware that there were potential buyers who were already

8  familiar with this building, and upon being told of its

9  availability might be willing to make an offer.  So, I

10  believe that there was not a great deal of time between when

11  the listing went live and when we were made aware of the

12  potential buyer.

13  Q    Okay.  So, this was not necessarily just someone paging

14  through the internet, but perhaps at least someone who had

15  come through that awareness in the building itself?

16  A    I believe so.  I think Mr. Stanton testified that he

17  knew the broker who represented the buyer.  So, I'm not sure

18  exactly what the mode of contact was but yes.

19  Q    I understand, okay.  Thank you.  Now...  I apologize.

20  You initially listed the property for 5.25 million, is that

21  right?

22  A    Yes.

23  Q    And we've already heard Mr. Stanton's perspective on

24  why that was the appropriate price point.  What was your

25  perspective as the seller as to why that was the appropriate

1   price point?

2   A    I think strategically we were trying to place it a

3   little bit higher than what he thought it was likely to go

4   for on the somewhat hope that there would be a buyer willing

5   to pay a little more than what he believed the likely sale

6   price to be.  So, I agreed to price it at that figure.  But

7   with an internal understanding that it was more likely to go

8   for a somewhat lower price -- which turns out to be exactly

9   what happened.

10  Q    So, rather than going with the price low and hope for a

11  bidding war strategy, you were aiming at the other side of

12  that strategy where you're pricing higher than what you're

13  anticipating.  Is that your testimony?

14  A    I don't know that we were talking about a bidding war.

15  We were considering how fast we could find a buyer.  My job

16  as a Trustee is not to leave assets listed indefinitely.

17  So, the idea was to price it so that we would get a buyer

18  within 90 days.  That's sort of my general benchmark for how

19  long I like to have a property listed before I need to

20  adjust the price.  So, that was my thinking.

21  Q    All right.  So, you were looking for a swift sale as

22  opposed to necessarily maximizing numbers.  Is that

23  accurate?

24  A    I don't know that I'd say swift --

25          MR. NOLAN:  Objection. (indiscernible) Sorry, I'll

1    just object to the form of the question.

2    BY MS. HADDEN:

3    A    I wasn't looking for what you might refer to as a quick

4    sale.  I was looking for an efficient expeditious sale.

5    Q    Okay.  And you were aware at the time that you listed

6    the apartment that the order of the Court, transferring

7    ownership from 2 River Terrace, Apartment 12J, LLC had been

8    appealed to the District Court, is that right?

9    A    Yes.

10   Q    And, in fact, your counsel has appeared in the District

11   Court in that proceeding?

12   A    Yes.

13   Q    And I apologize, I had one other question that just

14   passed right through my head.  I want to see if I can get it

15   back.

16           THE COURT:  Sure, you can take a moment.

17           MS. HADDEN:  Thank you, Your Honor, I appreciate

18   it.

19           THE WITNESS:  Your Honor, I'll tell you it's not

20   easy to be a witness when you're also a practicing lawyer

21   and following your lawyer's instructions to be succinct.

22           THE COURT:  I have been told that lawyers are

23   terrible clients, as a general rule.  Nothing specific to

24   this case.

25   BY MS. HADDEN:

1   Q    All right, I think the only other thing that I had

2   wanted to touch on briefly, Mr. Ehrenberg, was going back to

3   the line of questioning -- line of questioning, I apologize

4   -- about the Court's order.  You had mentioned the

5   Department of Justice having been involved in the apartment

6   on and off throughout this case, is that right?

7   A    I don't know what on and off means but, yes, they were

8   involved in seizing certain assets of Mr. Parmar's.

9   Q    On and off -- and I apologize, that was unfair on my

10  behalf -- on and off as to this particular asset, Apartment

11  12J.

12  A    It was initially on their list of assets that they were

13  seizing or in the process of trying to monetize, and then

14  they made a determination to stop doing that as to this

15  assets.

16  Q    All right.  And there were two different fronts that

17  they were following originally, is that correct?  There was

18  an in-rem proceeding and the criminal proceeding?

19  A    That's my understanding, yes.

20  Q    And is it correct that the in-rem proceeding was

21  abandoned earlier in time than the criminal proceeding --

22  again, speaking particularly about this apartment?

23  A    Regarding this apartment, yes, since the criminal

24  proceeding is still pending.

25  Q    The criminal proceeding is still pending, yes.  My

1    reference was more to the Department of Justice pursuing

2    this particular apartment in each of those proceedings.  In

3    each of those proceedings it was abandoned -- well, in the

4    in-rem proceeding, that proceeding has now come to a close.

5    But in the criminal proceeding, it was abandoned in spite of

6    the fact that the criminal proceeding is still ongoing.  Is

7    that accurate?

8    A    I believe so.

9    Q    All right.  And these are all things that you're aware

10   of in your role as the Liquidating Trustee?

11   A    Very much so.

12   Q    Now, there were other assets that had been transferred

13   during and around the time of the go-private transaction

14   from the Debtors that have not necessarily been pursued by

15   you, is that correct?

16         MR. NOLAN:  Your Honor, I'm going to object to the

17   form of the question as well as it's outside the -- the

18         MS. HADDEN:  It is, I apologize.  I wandered

19   outside the scope of the proceeding for a moment.  I

20   apologize.

21         THE COURT:  All right (indiscernible) withdrawn

22   then.

23         MS. HADDEN:  It is withdrawn.

24   BY MS. HADDEN:

25   Q    Mr. Ehrenberg, have you -- I realize you're in

1    California -- have you yourself seen the apartment,

2    Apartment 12JK?

3    A    Only through photographs taken by my counsel.

4    Q    And are there any significant characteristics or

5    unusual characteristics that you would say were unique to

6    this apartment, just based on those photographs?  I

7    understand you haven't been there personally.

8    A    No.  My -- my impression was that it was a lived-in,

9    somewhat warn apartment.  It -- as Mr. Stanton said, it

10   wasn't shiny and new.

11   Q    Did it have any waterfront views or city views or

12   anything along those lines that you were able to observe?

13   A    I think it did have a view of water.  I'm not sure what

14   body of water.

15   Q    I understand again that you're in a different place and

16   haven't been in the apartment, so...

17             MS. HADDEN:  I have no further questions for this

18   witness.  Thank you.

19             THE COURT:  Thank you.  Any redirect, Mr. Nolan?

20             MR. NOLAN:  Yes, a couple questions, Your Honor.

21          REDIRECT EXAMINATION OF HOWARD M. EHRENBERG

22   BY MR. NOLAN:

23   Q    Mr. Ehrenberg, as the Trustee of the Debtor, Orion

24   Healthcorp, did you -- was it your perspective to sell the

25   property at its highest and best use?

Page 50

1    A     As a condominium?  Yes.

2    Q     Yeah.  And -- and why is that?

3    A     I don't think I ever considered selling it as anything

4    other than a condominium?

5    Q     Did you want, though, to maximize the price -- the

6    price that you could get for the apartment?

7    A     Yes, in consideration of all of the factors surrounding

8    it, yes.

9    Q     Right.  And, ultimately, if this asset is liquidated,

10   is it a fair statement it would be subject to being

11   distributed to unsecured creditors, the proceeds?

12   A     Under the confirmed plan -- I'm still in the process of

13   paying off the secured debt owed to the bank group.  So,

14   depending on the timing of when this money would arrive, it

15   will either go first to the bank group or then -- it'll then

16   flow into the unsecured pool.

17   Q     Okay.  And as far as trying to -- or strike that.  And

18   you sold resident -- residential or commercial property

19   previously -- this is not your first rodeo, correct?

20   A     No, it's not.  I have.

21   Q     Okay.  And in this particular case, you determined,

22   being out in California, that you wanted someone who had

23   expertise in the Manhattan market, is that a fair statement?

24   A     Yes.

25   Q     And, based on your prior experience, did you believe

```
 1    Mr. Stanton fit the bill on somebody who had intimate

 2    knowledge as to the residential market in Manhattan?

 3    A    Yes.  Mr. Stanton had represented me previously in an

 4    unrelated case.

 5    Q    And did you find his services were adequate in the

 6    other case?

 7    A    Yes.

 8    Q    And did you rely on Mr. Stanton and the Stanton Hoch

 9    group's expertise in selling this property?

10    A    Yes.

11    Q    And do you have any -- any reason to believe that the -

12    - the offer that is before this Court of 4.8 million in cash

13    is not the best possible or fair market value offer for this

14    property as of April 2021?

15              MS. HADDEN:  Objection to the form of the

16    question.  It calls for speculation.

17              THE COURT:  Would you rephrase the question,

18    please?

19              MR. NOLAN:  Yes, Your Honor.

20    BY MR. NOLAN:

21    Q    Based on your involvement with the property and your

22    utilization of Mr. Stanton and his real estate team to

23    market the property, do you believe that the offer that you

24    received for 4.8 million in cash was the best offer you

25    could receive in selling the property?
```

1    A    Yes.

2              MR. NOLAN:  No further questions, Your Honor.

3              THE COURT:  I have one, Mr. Ehrenberg.  Has -- has

4    anyone offered more than $4.8 million cash, either before

5    the contract was entered into, or since the contract was

6    entered into?

7              THE WITNESS:  No.  No one has.  And that's why I

8    wanted it to remain listed throughout the process until we

9    got to this court hearing.

10             THE COURT:  All right.  So, the property is still

11   listed, even though it's listed as under contract?

12             THE WITNESS:  That's correct.

13             THE COURT:  Does either side have any further

14   questions to Mr. Ehrenberg, based on the Court's questions?

15             MS. HADDEN:  I -- just one question based on the

16   Court's question.  And, Mr. Ehrenberg, you may or may not be

17   able to answer this.  When a property is listed for sale and

18   is then under contract, doesn't that listing remain active

19   until the sale goes through because contracts do sometimes

20   fall apart?

21             THE WITNESS:  Yes.

22             MS. HADDEN:  Thank you.

23             MR. NOLAN:  No questions, Your Honor.

24             THE COURT:  Thank you.  Mr. Ehrenberg, you are

25   excused as a witness.  You're obviously welcome to stay for

Page 53

1    the hearings if you wish to do so.

2            THE WITNESS:  I think I'll take option two and put

3    myself on mute.

4            THE COURT:  All right.  Is there any further

5    evidence being offered by either side (indiscernible) with

6    the sale motion or (indiscernible) appeal?

7            MR. NOLAN:  No, Your Honor.

8            MS. HADDEN:  No, Your Honor.

9            THE COURT:  All right.  All right, what I'm going

10   to do is this:  I'm going to take brief arguments on the

11   same motion and the stay pending appeal motion.  I'm going

12   to first address, though, the motions that relate to the

13   court's partial judgment granting the relief that was

14   docketed on March 1, 2021 in the adversary proceeding 28-

15   0851.

16           It does appear to the Court, in the best interest

17   of justice and in the speedy and efficient administration of

18   the adversary proceeding, as well now as it relates to

19   issues arising in the main case, for the Court to make the

20   judgment docketed at Docket 64 a final judgment for appeal

21   and all other purposes, and then to sever out into a

22   separate adversary proceeding the remaining claims in that

23   adversary proceeding for future and further determination.

24           The Court does that for a couple of reasons.  One,

25   it simplifies the appeal that the Defendant, 2 River

1    Terrace, Apartment 12J, is wishing to prosecute, which it is

2    certainly entitled to do so.  And it also severs out parties

3    who remain in the adversary proceeding as to the claims that

4    have yet to be adjudicated and would not be and need not be

5    involved in the appeal.  So, the process is the judgment

6    entered March 1st will become the final judgment in 20-8051.

7    The remaining claims will be severed out and assigned a

8    separate adversary proceeding number or we'll issue an order

9    to that effect so that the other claims and issues may move

10   forward in due course.

11          With that -- with that said, then I'll take

12   argument first from the Trustee on the sale motion; then

13   from 2 River Terrace in opposing the sale motion and in

14   asking for a stay pending appeal.  And then back to the

15   Trustee on the sale motion and in opposition to the stay

16   pending.  So, Mr. Nolan?

17          MR. NOLAN:  Yes, Your Honor.  Mr. Scharf, I

18   believe, is going to argue the sale motion.  We've kind of

19   split duties here, Your Honor.  And then when you address

20   the issue of the stay pending appeal, I'll handle that

21   piece.

22          THE COURT:  All right, fair enough.

23          MR. SCHARF:  Thank you, Your Honor.  Ilan Scharf,

24   Pachulski Stang Ziehl & Jones, on behalf of the Trustee with

25   the sale motion.  Your Honor, we are here today on the

1    motion to sell the apartment located at 2 River Terrace,

2    Apartment 12J, which we're referring to as the Property.

3            There is one objection from 2 River Terrace,

4    Apartment 12 J, LLC, who we'll refer to as the Trustee, the

5    Transferee or the Defendant, then we'll get to the objection

6    in a moment.  And, Your Honor, I think there are a number of

7    matters based on the testimony you've heard that are really

8    not in dispute with respect to this property.  There are

9    some matters that clearly are going to be in dispute and

10   we'll address those.

11           The Trustee obtained possession of the apartment

12   after the Court's ruling was read into the record on

13   February 9, 2021 in Adversary Proceeding 20-08051.  As of

14   that date, February 9th, the property was encumbered by a

15   lien that was asserted by the condominium board for unpaid

16   taxes, common charges and fees in the amount of

17   approximately $463,000.  And that amount may increase and,

18   frankly, the Trustee is incurring ongoing charges and is

19   paying current charges that are -- that arise since the

20   Trustee took possession of the apartment.

21           The board also obtained the judgment against the

22   Defendant in the approximate amount of $200,000, which was

23   part subsumed by the lien.  In addition, the board had

24   scheduled a sheriff's sale for the apartment prior to the

25   Trustee obtaining possession.  That sheriff's sale has been

Page 56

1    adjourned from time to time but is still out there.  And

2    given the nature of sheriff sales, there's a substantial

3    risk that if this property is sold through that process,

4    we'll be arguing over how to split crumbs as opposed to how

5    to split $4.8 million.

6             The Trustee's possessory right was then

7    memorialized in a judgment that was entered by the Court on

8    March 1, 2021.  That's Docket Number 64, I believe, in the

9    adversary proceeding -- or 69 in the adversary proceeding.

10   Defendant did not turn over any keys or access cards to the

11   property, notwithstanding Your Honor's instructions to do so

12   in the order. Therefore, the Trustee replaced the locks and

13   took possession of the apartment.

14            The Defendant appealed.  The Defendant -- and

15   we'll address the issues regarding the statement and appeal

16   when that motion is heard.

17            The Trustee's charge in this case is to liquidate

18   assets and distribute net recoveries to creditors.  In light

19   of that duty, the Trustee expeditiously undertook a sale of

20   the property.  He retained Compass and Stanton & Hoch came

21   as real estate agent, based on their extensive expertise

22   selling real estate in Manhattan.  I believe that expertise

23   was in full display as Mr. Stanton was questioned on various

24   comps as well as the record of their -- the brochure

25   explaining who they are.  But Your Honor clearly saw today

1    that Mr. Stanton has a deep understanding of Manhattan

2    property and how to market the property and maximize value.

3            The Compass team marketed the property, as it was

4    described in the sale motion.  They advertised the property,

5    they showed the property, and they obtained two offers for

6    the property and ultimately selected the buyer with an offer

7    of $4.8 million, and the Trustee accepted that based on a

8    number of factors, including it was the highest offer from a

9    monetary perspective.  It's also an all-cash offer that is -

10   - that, in comparison to the $4.6 million 80 percent

11   financing contingency offer that is being held as a backup

12   offer.  No other higher or better offers came in, so this is

13   the maximum we could obtain for the property.

14           In addition, Mr. Stanton's testimony made it very

15   clear that the marketing process was appropriate.  The

16   marketing process obtained the best property -- the best

17   sales price.  And the fact that the Defendant purchased the

18   property for a higher value well before the COVID-19

19   pandemic is clearly -- is of no consequence.  This is a sale

20   that was appropriate under the circumstances.

21           In addition, while we are often -- we often push

22   for auctions and undertake an auction process in bankruptcy

23   cases, in this case, given this market, given the advice

24   received by the Trustee, as well as the Trustee's own

25   expertise in selling properties over -- as described in his

1    declaration, which constitutes -- sorry?

2              THE COURT:  I have a question.  And it may cross -

3    - cross the streams, so to speak, as between what you and

4    Mr. Nolan are going to present, but why not -- I'm not

5    saying I'm going to do this.  This is a capital I, capital F

6    type question.  But why not at this juncture essentially

7    treat the sale as if it were a sale free and clear of liens,

8    treat the appeal, if you were 2 River Terrace, as if it were

9    a lien.  Give that appeal some time to percolate.  If they

10   win on appeal, they get the money from the property; if they

11   lose on appeal, the estate keeps it.  As a way of letting

12   the process go forward, monetize the asset but let 2 River

13   Terrace prosecute the appeal.

14              And if I'm reversed -- in the District Circuit

15   Court, the money will be sitting there, at least for some

16   reasonable period of time, for them to prosecute that

17   appeal.

18              MR. SCHARF:  Sure, I think the estate -- and this

19   probably does cross across both -- both motions -- but, Your

20   Honor, I think that the estate would be highly prejudiced by

21   doing that.  First, there are -- there is a substantial

22   amount that's owed to the condo board.  That lien isn't

23   going anywhere and --

24              THE COURT:  Oh, yeah -- no, that's -- I'm sorry.

25   In the Court's question -- and I did not articulate that --

1   that judgment's going to be paid.  No matter who owns the

2   property, that judgment lien has to be paid.  That would be

3   off the table in the Court's hypothetical.

4          MR. SCHARF:  Sure.  And then on top of that, Your

5   Honor, the Trustee would incur fees -- has been incurring

6   fees, professional fees associated with the apartment,

7   recovery fees.  Those will continue to be incurred -- and

8   has also incurred broker fees that he'd have to pay.  He'd

9   have to pay the broker fees, I think, once the apartment is

10  sold.  And, to the extent Your Honor goes that way, that

11  really should come out of the apartment as well.

12         And Your Honor -- Your Honor certainly has the

13  right to do that, but the Trustee should be able to use this

14  cash unless there's the ability to get a stay pending

15  appeal.  Really, Mr. Parmar has tied up this apartment for a

16  number of years, and the Trustee needs to -- has tied up

17  this apartment for a number of years.  There's going to be -

18  and if anybody's taking the risk or the burden of putting up

19  money in order to avoid a sale or hold this money hostage,

20  to the extent he's going to get a stay pending appeal, which

21  is the effect -- one of the effects of doing this where you

22  attach the proceeds, Mr. Parmar should put up a bond and not

23  tie up the estate's assets any further.

24         I believe Mr. Ehrenberg also has his hand up.

25         THE COURT:  Well, he doesn't get to talk.  He's

Page 60

1   got fancy lawyers to do that.

2           MR. SCHARF:  But he can't whisper in my ear today,

3   Your Honor.

4           MR. EHRENBERG:  My counsel may not be thinking

5   also that under the plan, the secured bank tranche continues

6   to accrue interest.  So, I've been trying to distribute

7   money to them as quickly as possible.  So, if I had $4-1/2

8   million to distribute and I couldn't, then interest will

9   continue to accrue until the bank group is paid in full.

10          THE COURT:  So, as a recovery action, would these

11  proceeds potentially -- because I'm not going to tie you

12  down because this wasn't part of the homework assignment --

13  but are these proceeds potentially subject to the -- to the

14  bank's rights under the plan to --

15          MR. EHRENBERG:  Yeah, all of the monies that I've

16  been recovering are being distributed according to the plan.

17  And so I've distributed, I think, over $30 million thus far.

18  As the Court will recall, the Destra funds are still being

19  held in trust.  But if I had the funds from this

20  liquidation, I would immediately distribute the majority of

21  it, leaving a small amount behind for expenses.  But most

22  would get distributed to the banks and reduce their debt.

23          THE COURT:  What's the accrual rate to the bank

24  group under the plan, if you recall?

25          MR. EHRENBERG:  It changes, and it has gone down

1   over the last two years, with interest rates.  My best

2   recollection is that it's currently 5 percent.

3              THE COURT:  All right. Thank you, Mr. Ehrenberg.

4              MR. EHRENBERG:  Sure.

5              THE COURT:  All right.  I want to flip the script

6   and talk to Ms. Hadden about this question because I've

7   found in my 35 years -- it makes me feel old saying that --

8   in doing this, and especially the last 13 wonderful years as

9   a judge, it's sometimes helpful for the lawyer to know what

10  the judge is thinking as opposed to what they want to argue.

11  So, why don't we talk about what the judge is thinking, and

12  I'll let you go back to what you want to argue.

13             But, Ms. Hadden, let me flip it to you and ask you

14  essentially the same question because this does cross the

15  stream between the sale itself and your client's request for

16  a stay pending appeal.  2 River Terrace doesn't walk, and

17  talk, and breathe.  And I know the Supreme Court has said

18  that corporations are people too and have certain rights

19  incident.  But it's not -- it is not living in the

20  apartment.  There's no flesh human (indiscernible) the

21  claims as to be their homestead or some other inherent right

22  of occupancy.

23             There is an enormous judgment lien that's not

24  getting any smaller. No offense, Mr. (indiscernible), to

25  your client.  So, why not monetize the asset, hold the net

1    proceeds, and you can talk about what net means for some

2    reasonable period of time, and maybe put some other

3    conditions on this while you all prosecute the appeal -- at

4    least to the District Court on whether or not the Court was

5    wrong in granting summary judgment invested title with the

6    Trustee.

7          MS. HADDEN:  So, although you're correct, Your

8    Honor, that my client is a corporation and -- to the extent

9    that the corporation is a person too, the person who

10    represents that corporation or that LLC is very attached to

11    this apartment.  He loves the view, he likes the building.

12    Although Mr. (indiscernible) may not believe that, it's

13    actually true.

14          He's commented on some of the neighbors who have

15    apartments either above or below.  So, he's very attached to

16    the location itself.  And the location itself, while both

17    Mr. Ehrenberg and Mr. Stanton pointed out that there is some

18    wear and tear on the apartment just by virtue of its having

19    been built -- I believe Mr. Stanton said in 2007, and I have

20    no reason to question that -- so, say, 13-14 years ago --

21    despite that, he's very attached to the apartment itself.

22    And it is a unique asset.

23          I mean, obviously, real property does have unique

24    characteristics and unique fixtures, particularly where it's

25    something that's not, you know, a row house or one of those

1    properties where you can have it prefabricated and put

2    together next to 20 other buildings that look exactly the

3    same.  This is a unique asset with a unique view, unique

4    characteristics.  So, for that reason, he's very opposed to

5    the idea of monetizing the asset and just having it be a

6    fight over money.  He's very invested in the fight over the

7    location itself.

8            It's certainly true that he hasn't been inside of

9    the apartment -- and, again, Mr. (indiscernible) and I would

10   be on opposite sides of the fence about the reasoning behind

11   that -- and I'm not trying to get into that at this point at

12   all.  But he is very interested in the location itself.

13           THE COURT:  In the -- in the purposeful choice of

14   the word invested in this property, in order to either get a

15   stay pending appeal or prevent the sale of the property --

16   because the evidence before the Court is this:  This is the

17   (indiscernible) -- this offer is the only game in town.

18   There's no higher offer, there's no better offer.  The

19   Debtor's not come forward, the Defendant's not come forward,

20   nobody's come forward with a better offer.

21           And so as you know -- as you all know, the two

22   bankruptcy are how much and when?  And the how much question

23   is answered with $4.8 million.  The when is pretty soon, in

24   terms of what's before the Court.

25           So, is whoever is behind the 2 River Terrace

Page 64

1    entity prepared to pay off the $470,000 judgment and post a

2    bond in the neighborhood of $5 million to preclude the sale

3    form going forward?  Because that's basically what it's

4    going to take.

5              MS. HADDEN:  I had discussed with him posting a

6    bond, at least in the judgment amount, and he certainly was

7    prepared to do that.  I had not discussed with him posting a

8    bond in the full $5 million amount.  I don't know that he

9    has the capacity to do that simply because, as everyone is

10   aware, so many of his assets have been frozen based on the

11   criminal case.

12             I think if he does have the capacity, it is

13   something that he would be willing to do because I know that

14   he does want to try to preserve this asset.  It's simply a

15   question of whether or not it's logistically possible

16   without running afoul -- afoul of Department of Justice

17   guidelines.  So, I would have to investigate that to see if

18   it was possible to post a bond for the entire amount of the

19   apartment as well as paying off the full judgment.

20             MR. NOLAN:  But, Your Honor --

21             THE COURT:  Isn't that really all that's behind

22   Door Number Two?  I mean, Door Number One is I approve the

23   sale, the sale closes, no strings attached, Mr.

24   (indiscernible) client is paid in full in accordance with

25   its rights under the State Court judgment.  Closing costs

1    are paid, the funds are readily available to the estate.

2    The appeal goes forward.  As it goes forward, obviously, on

3    the timing as would be appropriate for the District Court.

4    That's their jurisdiction, not mine.  That's Door Number

5    One.

6           Door Number Two is a substantial bond in the

7    amount of the sale price plus interest that's being accrued

8    on the obligations of the estate under the confirmed plan,

9    and payment of the judgment in full with Mr. (indiscernible)

10   client.  That's Door Number Two.  There is no Door Number

11   Three.

12          MR. SCHARF:  Before Ms. Hadden speaks, Your Honor,

13   I know I'm not on the motion itself, but I want to just

14   point out to the Court that the amounts we're talking about,

15   even the 470,000, are less than what is actually owed to the

16   condominium.  The actual payoff amount will be determined at

17   the time the payment's ready to be made.  But their share of

18   poundage fees that need to be paid, their attorneys' fees

19   that are accruing under the bylaws, and the lien is both not

20   only under the judgment but under a recorded common charge

21   lien with the New York City Register's Office, which accrues

22   all amounts unpaid through the date the lien is paid in

23   full.

24          I just want the record to be clear on that.  We're

25   using a $470,000 number that is not an accurate payoff

 1    amount at this time.

 2              THE COURT:  What is the hand grenade distance from

 3    that number to a more approximately correct number?  Is it

 4    bigger than a breadbox?

 5              MR. SCHARF:  I have to say that I haven't computed

 6    it because it just keeps on rolling, so to speak.  I did

 7    that computation for Mr. Nolan.  Mr. Nolan, was that about

 8    three, four months ago, maybe, I had sent you an e-mail?  I

 9    could dig it up while Your Honor continues.

10              THE COURT:  All right.  And the intention of the

11    discussion of a 470 number was for ballpark purposes, not

12    for, you know, precisely binding your client down.  That's

13    generally the number that's been percolating.

14              MR. SCHARF:  I understand.  I just wanted it to be

15    a little clearer on the record so that we're not just

16    accepting that, but with Your Honor's caveat, I understand.

17    In the meantime, I'll -- I will go on mute and see if I can

18    try to get a better sense of where it stands today.

19              THE COURT:  All right.  Very well.  Thank you.

20              MR. SCHARF:  Thank you.

21              MS. HADDEN:  In the meantime, I've reached out to

22    my client as well to see if I can confirm his ability to

23    meet those parameters.  I realize his concern, of course,

24    is, say, with door number one as Your Honor described it,

25    the Court approves the sale, the sale goes through, the

Page 67

 1    apartment doesn't leave obviously because it's a fixed set

 2    of real estate but it goes to another owner and is no longer

 3    in the picture and no longer recoverable by any means to the

 4    LLC, and then the district court sees our viewpoint, the

 5    angels sing and comes down with a judgment saying, no, this

 6    never -- this property never should have gone over to the

 7    Trustee, it still belongs to the LLC, that leaves us in a

 8    situation where it's really, from my client's perspective,

 9    impossible for the LLC to be made whole.

10        The only thing that the LLC would be looking at at

11    that point would be recovering a sum of money lower than

12    what it paid for the apartment and not having the apartment,

13    and that's the reason, of course, for us seeking the stay.

14        THE COURT:  I'm not going to be determining that

15    this particular property is so unique that it should for

16    that reason alone be subject to a stay pending appeal.  As

17    much as an individual who may or may not be an owner or

18    controlled purchaser of 2 River Terrance might feel strongly

19    about this apartment, it is not so unique, so unusual, so

20    vested with having lived in, raised family, and things of

21    that nature, that I'm going to find it to be so unique that

22    for that reason alone either the sale motion should be

23    denied or a stay pending appeal should be granted.

24        So, again, that was door number three.  There is

25    no door number three.  It's either sold and (indiscernible)

1    fighting over the proceedings during -- unless the District

2    Court stays it first, which is always an option, or the

3    judgment Debtor pays the -- pay the judgment lien that's

4    current and threatening the property with the sheriff's

5    sale, posts a substantial bond in the $5 million range, to

6    secure a stay pending appeal, and then we'd have to address

7    what happens with the ongoing accruing monthly charges that

8    right now the liquidated trust is paying.

9            MS. HADDEN:  All right.  I guess my response to

10   the ongoing charges would simply be that the liquidating

11   Trustee chose to take on a property that has ongoing

12   charges, that it was well aware were in existence and were

13   in fact part of an accruing judgment, so it's not like it's

14   been a mystery to any of the parties involved that those

15   continuing charges were something that would be a factor,

16   and if, for example, the Trustee had listed the property and

17   was still awaiting a buyer, he would still be paying those

18   charges because he chose to take on this particular asset as

19   opposed to an asset that doesn't have those particular forms

20   of liabilities, and I think that's one of the reasons why

21   the Trustee is trying to move as swiftly as possible, you

22   know, not giving the apartment away but also not necessarily

23   taking a route that would look for the highest price but a

24   route that would look for the best price he can get quickly.

25           THE COURT:  All right.  Thank you.

1          MAN 1:  The Trustee didn't choose to take on a

2     property with (indiscernible).  The Trustee chose to recover

3     an asset that had been fraudulently transferred to 12JK

4     using estate money that was taken out of the estate.  So,

5     we're not here because the Trustee chose to go over a

6     property with (indiscernible).  The (indiscernible) was

7     created by Ms. Hadden's client.

8          THE COURT:  Because I've crossed streams into the

9     stay pending appeal now, Mr. Nolan, do you want to address

10    that aspect?  And again (indiscernible) many of you -- many

11    attorneys have argued (indiscernible) many times in 13 years

12    now.  In my ongoing interest, and not being cryptic, Mr.

13    Nolan, since the stay pending issue was delegated to you

14    (indiscernible) work, do you want to address the issues that

15    the Court has raised on them?

16         MR. PITTINSKY:  Your Honor, if I could just

17    quickly chime in, I would say that the amount owed to the

18    condominium is closer north of 500,000 at this point.  I

19    found in an e-mail 470 back about a year ago, and under New

20    York law, that judgment is running 9 percent per year,

21    probably the best rate of return that exists right now as

22    things go, and of course we have the actual lien itself.

23    So, I would say, as you say grenade guess, at least 500,000.

24         THE COURT:  All right.  Thank you.  All right.

25    Mr. Nolan?

1          MR. NOLAN:  Yes, Your Honor.  I set forth in our

2     papers, Your Honor, that to stay a judgment pending appeal

3     is only granted in limited circumstances.  It's the

4     exception.  It's not the rule.  In Re: Paolo Gucci set forth

5     that ruling.

6          And it's based on four elements that the Court

7     should consider.  And the law in New York and the federal

8     rule -- and the federal rule is very clear that the moving

9     party, since it's an exception, has to satisfactorily

10    evidence all four factors to the Court.  That's In Re: Taub

11    (2010), Bankruptcy Lexis 3458 (E.D.N.Y. 2010).

12          And my papers, opposition papers, acknowledged

13    that Mr. Parmar's argument with respect to staying the

14    appeal is probably all in the one single bucket that he will

15    be harmed.

16          But before I address that element, I think we have

17    shown to the Court that three of the elements are

18    unequivocally, or at least the evidence shows, that they're

19    clearly on the Trustee's side of the ledger.

20          Whether a party will suffer substantial injury if

21    the stay is issued, Mr. Parmar's opinion was it's just the

22    Trustee.  He's caused this problem.  That's not an accurate

23    statement.

24          There is the Trustee, the creditors of the estate,

25    the homeowner's association who has been a bank for three

1    years carrying this debt.  There's more parties involved

2    than just the Trustee.

3              The third element, whether the movant has

4    demonstrated a substantial possibility of success on appeal.

5    I've submitted case law to the Court that that is the most

6    significant factor of the four factors.  It's not whether

7    the movant will suffer irreparable -- or suffer injury, and

8    I don't see any issue that has been raised in appeal that is

9    different than the issue that was presented before this

10   Court.

11             These are not complicated issues.  It goes to the

12   Court's function as the gatekeeper.  The circuit authorities

13   are very clear.  It's not lower court authority but the

14   circuit authorities in the U.S. Supreme Court are very clear

15   on what a judge should consider, that it must be admissible

16   evidence.  So, I believe, Your Honor, that the -- Mr. Parmar

17   has not carried his burden as to the third element either.

18             And then the fourth element, Your Honor, is a

19   public interest served in granting a stay of the adversary

20   proceeding before Your Honor?  Unequivocally, I don't think

21   it has been.  I think the Court is laboring with the

22   challenge to keep the homeowner's association and Mr.

23   Pittinsky -- their interests addressed.  They're also a

24   party in interest even though they're not a party to this

25   lawsuit.  They have initiated state court legal proceedings.

1    I set forth authority to the Court that it is in the public

2    interest of the Court to expedite and to efficiently resolve

3    litigation.  The Trustee's estate is also a factor that

4    falls into the public interest, Your Honor.

5            The expeditious and efficient handling of

6    bankruptcy matters and distribution to the trust, those are

7    also matters that are worthy of being satisfied under the

8    public interest element.

9            We set forth three specifically public interests

10   that are served in denying this appeal.  I think the second,

11   third, and fourth elements outlined in In Re: Taub warrant

12   against granting the motion.

13           And then we come to the issue which Ms. Hadden has

14   raised, whether the movant will suffer injury, yeah, that's

15   a -- I won't sugarcoat it.  That is an issue.  In my

16   experience, when a judgment goes against me, most clients

17   will have to have a tough determination, decision if they're

18   going to appeal it, and if they're going to appeal it, you

19   better stay the underlying proceedings because the law is

20   that until that decision is overruled, the decision of the

21   underlying court is the decision.

22           And in this case, they waited until after the

23   liquidating Trustee marketed, sold the property.  It's a

24   number of months later.  We're at the end of the road here.

25   We have a willing buyer, $4.8 million all cash.  It's a

Page 73

1   dream come true to get an all cash offer.  It's not the

2   commonplace, and so yes, we're in a precarious position

3   right now, Your Honor, but the Trustee would submit it's not

4   because of the Trustee moving this case along and selling

5   the property.  It's because the concept to fight this sale

6   came into place, and that raised the issue of the bond and

7   the appeal and probably is making Mr. Parmar make a decision

8   now in June of 2021 that he probably didn't want to decide

9   back in February of 2021.

10          And just like I tell my kids, you know, when you

11   have a cavity and you don't deal with it, it doesn't get

12   better with time.  You know, you need to deal with the issue

13   then and there, and I would submit to the Court on this

14   element of whether the movant will suffer injury, that

15   injury has been hanging over the defendant and Mr. Parmar

16   for quite a long time.  The sheriff's sale was lurking in

17   the background at the time I got involved, and I had the

18   pleasure of talking to Mr. Pittinsky at the time who told me

19   that, you know, we're owed a lot of money and this place is

20   going to be sold.

21          And then for the Trustee, we were playing defense

22   trying to, you know, move this case along and stop the

23   sheriff's sale so we could get the highest and best price or

24   at least get an adjudication of the merits.

25          So, in sum, Your Honor, I would submit that the

Page 74

1    harm that the movant will suffer is created based on what

2    Mr. Parmar and the defendant has done by not paying for

3    three years' worth of upkeep.  He essentially took the

4    position of self-help that he wasn't going to pay.  It put

5    this asset, $5.6 million asset of the estate, in jeopardy

6    because that's what the estate paid for it, and justice is

7    not served by allowing the stay of this appeal.

8           THE COURT:  Thank you, Mr. Nolan.  Anything

9    further, Ms. Hadden?

10          MS. HADDEN:  Just very briefly, Your Honor.  I

11   think I did address all of the four factors in my papers, so

12   I won't go over them in exhaustive detail, but since they

13   were just raised by Mr. Nolan, just very briefly, of course

14   there's the question of irreparable harm to the movant,

15   which as Mr. Nolan and I disagree on that particular aspect,

16   I (indiscernible) disagree on all four factors.  That's why

17   we're on opposing sides, sort of our jobs.

18          THE COURT:  Well, it could be the other way

19   around.

20          MS. HADDEN:  It could be.

21          THE COURT:  (indiscernible) opposing sides because

22   you disagree.  You disagree because you're on opposing

23   sides.

24          MS. HADDEN:  Yes.  We disagree because we're on

25   opposing sides.  In my particular case, I of course believe

1    that my side is correct and that my client will in fact

2    suffer an irreparable harm if this asset is sold to anyone,

3    because under Section 363M, once it's sold, there's no way

4    of in any way, shape, or form appealing that process or

5    retrieving the property.

6              As to -- and actually, I just want to very briefly

7    address the sheriff's sale.  I realize that both --

8              THE COURT:  Yeah, if you (indiscernible) on that,

9    because what makes -- what also makes that argument

10   difficult is this property has been facing a foreclosure

11   sheriff's sale for let's call it quite some time, but the

12   judgment that's before the Court in favor of the condominium

13   board is from September 2019, so 2 River Terrace has been in

14   the process of losing this property for a year and a half

15   and has essentially done nothing to protect it.

16             MS. HADDEN:  So -- and that's where I want to

17   somewhat disagree.  We haven't done -- for lack of a better

18   way of phrasing it, we haven't done as much in the

19   bankruptcy in order to protect it because it was only in

20   2020 that the apartment became from the LLC's issue -- from

21   the LLC's perspective at issue in the bankruptcy.  That was

22   when the adversary proceeding was commenced and that was

23   when we began defending that proceeding.

24             As to the state court judgment and the sheriff's

25   sale, each time that a sheriff's sale has been scheduled,

Page 76

1    we've reached out to try to oppose that, attempt to deal

2    with that, have it stayed, have it put off, have it

3    canceled, and there are a number of different routes that

4    that took place.  I wasn't involved in it as much as my

5    partner was, Mr. Parlatore, primarily because one of the

6    issues was the fact that at that point the Department of

7    Justice still had the apartment as a defendant in the

8    (indiscernible) proceeding and also listed as a potential

9    asset in the forfeiture allegation in the criminal case.

10            So, we had multiple different sharks circling, so

11   to speak, and basically we're heading off each one as it

12   came.  We had also filed a state court proceeding.

13   Essentially Mr. -- and I don't want to get, you know, too

14   far into that whole argument with Mr. -- with Mr.

15   Pittinsky's client and that sort of side issue, but

16   essentially my client's claim has been that once Your Honor

17   issued the order back in I believe it was June of 2018 -- I

18   may very well have that date wrong, but once Your Honor

19   issued the order that was essentially attempting to freeze

20   in place a number of assets owned by Parmar Entities

21   including this particular apartment, the building barred Mr.

22   Parmar from access to the apartment.

23            And that -- I realize -- to be clear, I can see

24   Mr. Pittinsky breathing deeply and sitting back in his

25   chair, and Mr. Pittinsky, I understand that your client says

1    that that's not the case.  I'm not in any way, shape, or

2    form arguing the facts of that particular side issue at the

3    moment.  I'm simply trying to, you know, bring it to Your

4    Honor's attention that when the Court says that we've done

5    nothing, one of the reasons that that judgment has built up

6    to where it has is because it was Mr. Parmar's position that

7    he was being deprived of the use and enjoyment of his

8    property.

9          And for that reason, he filed a judge -- a

10   proceeding in state court after I had become involved.  I

11   had at the time spoken with Mr. Pittinsky and we agreed to

12   essentially hold it in abeyance, put off him needing to do

13   an answer or needing to do any legal work on it,

14   essentially, because right around that same time the

15   adversary proceeding was taking place and Your Honor had

16   become involved, Mr. Nolan was involved, and there were

17   essentially two separate proceedings going on at the same

18   time.

19          So, Mr. Pittinsky and I had agreed to hold that in

20   abeyance while we dealt with this, because if, for example,

21   what happened happened and Your Honor transferred the

22   apartment to Mr. Ehrenberg, it would have been a tremendous

23   waste of time and money for both myself and Mr. Pittinsky

24   (indiscernible).

25          THE COURT:  (indiscernible) is a facially judgment

1    of a New York state court determining as of September 6,

2    2019 (indiscernible) some $200,000 owed to the condominium

3    (indiscernible).

4              MS. HADDEN:  Yes.

5              THE COURT:  So, whatever was in the who shot John

6    arena in 2018 and most of 2019 is kind of irrelevant from

7    this Court's vantagepoint because there's a facially valid

8    judgment.  No -- there's -- no court has set it aside.

9    There had been voluntary suspension of collection efforts.

10   So, while y'all may disagree about who shot John, nothing

11   was done in terms of paying the common charges that arose

12   prior to entry of that judgment, because they weren't paid.

13   They haven't been paid since.  The judgment hasn't been paid

14   since.  And it sounds that the essence of your argument is

15   that once -- I'll use Mr. Parmar only because you're using

16   Mr. Parmar -- once Mr. Parmar realized that his property

17   might not be swept up in ancillary litigation involving the

18   U.S. Department of Justice, then he got real interested in

19   it and got very engaged in the fight here in the adversary

20   proceeding on the fraudulent transfer.

21              That's not a very compelling argument for

22   irreparable injury.

23              MS. HADDEN:  The only -- where I would take issue

24   with Your Honor's description of that is that he only became

25   interested in it --

1          THE COURT:  He only became real interested.

2          MS. HADDEN:  All right.  So -- and that's where I

3    disagree.  It's not that he wasn't real interested in it

4    before.  It was that he was protesting on multiple fronts,

5    and as he was dealing with each front, we were all under the

6    impression, accurate or inaccurate, that the apartment was

7    essentially frozen in place by the fact that the Department

8    of Justice was attacking it from two sides.  There was a

9    bankruptcy court ruling that also attached it.  Essentially

10   it was -- it had the state court judgment.  It had things

11   going at it from all different directions and it seemed to

12   be frozen in place.

13          So, it wasn't that he wasn't real interested in it

14   or that the LLC wasn't real interested in it or that the LLC

15   had abandoned it.  It was simply that it appeared -- and I'm

16   trying to think of the best way to describe this, but as if

17   everyone -- if I have multiple different people standing

18   around this pen and they're all pulling on it from opposite

19   directions, the pen isn't really going to go every --

20   anywhere, because everybody's exerting equal force on it.

21          That's essentially the way that the LLC was

22   viewing this particular apartment, was that it was frozen in

23   place by the number of different parties attempting to get

24   it, and each of those different parties we were interacting

25   with and opposing, but it did appear that it was almost

1    stayed for lack of a better term by virtue of the number of

2    different parties trying to get a piece.

3              So, I would take issue with the Court's

4    perspective that he only became interested later on.  It's -

5    - it may very well appear that way from your vantagepoint,

6    and I fully understand that.  I'm just trying to give some

7    backstory.  Whether it's a backstory that you find

8    satisfying or not, it is a backstory that's there, so.

9              THE COURT:  Fair enough.  And (indiscernible) on

10   the stay?  Anything further on the stay motion?

11             MR. PITTINSKY:  Would you permit myself, quickly,

12   as an interested party just to opine on the stay motion?

13   The condominium had an interest with respect to who owns the

14   unit and settling that issue, and I can be very brief.

15             From the board's perspective, they want a unit

16   owner that is known, clear, and is going to comply with the

17   obligations a unit owner has under the bylaws.  The status

18   of this unit now, although in Mr. Ehrenberg's ownership as a

19   liquidating Trustee, is still to a certain extent inchoate

20   and that is detrimental and prejudicial --

21             THE COURT:  I'm sorry.  Did you say inchoate?

22             MR. PITTINSKY:  Yes, incomplete, uncertain, and as

23   a result, that gives concern to the board.  Who's permitted

24   to enter?  Who's not permitted to enter?  Who's responsible

25   for obligations?

1          And I understand Mr. Ehrenberg is under an

2    ownership by virtue of the order, but you've got claims by

3    Ms. Hadden's client as well.  We want just settlement and

4    resolution of ownership once and for all, and for that

5    reason we are against a stay, prefer that the unit get sold

6    into an owner that's going to treat it as their home, not

7    Airbnb it as Ms. Hadden's clients were doing when they owned

8    it, actually will live in the unit and take care of it in a

9    proper course.

10          As far as Ms. Hadden's statement that somehow they

11   did anything with respect to this unit and during the

12   supreme court, that is just not true.  Her partner in charge

13   was notified of the state court action.  They did not

14   appear.  They did not oppose it.  And in fact, only after

15   this bankruptcy did they bring this action claiming they

16   were denied access by Mr. Parmar.  They sought a stay of the

17   sheriff's sale, which the Court rejected for improper

18   filing, and the stay has never been sought.

19          There's been no action by her client with respect

20   to preserving this asset.  And I don't want to get into the

21   facts, but just for the record, Ms. Hadden's statement that

22   anyone was ever denied access is just factually false.  And

23   on that note, I think I have said more than enough, Judge.

24          THE COURT:  All right.  Thank you.  All right.

25   And here's what I'm going to do.  I'm going to have you all

stay in the hearing. I've got this -- I've got the issues. I'm going to try to give you all the ruling here in about the next 15 or 20 minutes. So, please stay in the Zoom hearing. I'm going to exit temporarily, but I'll be back in about 15 minutes, and if I have a ruling for you I will tell you that I do and what it is. If I can't rule on it today, then I'll let you know that as well.

All right? So, please stay in the Zoom hearing. Please feel free to turn your microphones and cameras off, and then we'll notify you when I'm back. Thank you.

MR. NOLAN: Thank you, Your Honor.

MS. HADDEN: Thank you, Your Honor.

MR. PITTINSKY: Thank you, Judge.

(Recess)

THE COURT: All right. This is Judge Trust. I'm going to ask that the parties will now return into the hearing or at least turn your cameras back on. Please leave your microphones muted. Can you all hear me okay? Thumbs up?

All right. I am prepared -- the Court is prepared to rule on the two pending motions. One is the main case motion to sell the 2 River Terrace, Apartment 12J. The other is the motion for a stay pending appeal.

I'll first take the sale motion filed in the main case. The Court credits the testimony of Mr. Stanton and

Page 83

1    Mr. Ehrenberg in support of the sale of that apartment, that

2    12J unit, for $4.8 million all cash with 10 percent of that

3    amount being $480,000 being deposited to secure the sale.

4           The Court notes based upon the testimony that this

5    is the highest and best offer for the property during the

6    marketing period by the liquidating Trustee.  There has been

7    no higher or better offer either during the marketing period

8    or since the Trustee accepted his contract and continued to

9    market the property.  No one has come forward with a higher

10   or better offer.  There's no evidence in the record from the

11   objecting party to River Terrace that there is a higher or

12   better offer available.  There was no evidence in the record

13   that the process by which the unit was offered for sale or

14   generated this contract was anything other than an open,

15   fair, and arm's-length process which resulted in this

16   contract of sale being proposed and being accepted.

17          The condo unit has been properly marketed.  It was

18   an adequate and fair process and it's a proper exercise by

19   the liquidating trust (indiscernible) to accept this

20   contract and consistent with his obligations under the

21   confirmed plan of reorganization to ask that the Court

22   approve it, and the Court does approve it.  The motion is

23   therefore granted.

24          With respect to the request for stay pending

25   appeal, that motion is denied for the following reasons.  As

1    the parties are aware and have briefed, there are four

2    primary criteria that the Court is to consider in granting

3    or denying the motion for a stay pending appeal.  And as the

4    parties are aware by virtue of my ruling made earlier today,

5    the judgment vesting title to 2 River Terrace, the

6    liquidating Trustee, is now a final judgment, so the Court

7    is treating this as a request for a stay pending appeal of a

8    final judgment in accordance with the bankruptcy rules.

9            The criteria, and I'll go through them one at a

10   time rather than state all four at the top, the first being

11   that the movant, here 2 River Terrace, now the former owner

12   of the unit, have demonstrated it will suffer irreparable

13   injury absent a stay.  The Court notes that this element was

14   not satisfied.

15           First, there's no evidence in the record from the

16   movant, 2 River Terrance.  There's just no evidence in the

17   record at all as to how, why it might suffer any injury,

18   much less irreparable injury.  There's no supporting

19   affidavit from Mr. Parmar or anyone else on behalf of 2

20   River Terrace.  So, while the Court has before it arguments

21   of counsel, while eloquent, they're not supported by any

22   evidence from the movant on the motion for a stay.

23           With respect, though, further to the irreparable

24   injury element, the record before the Court is that no one

25   has been living in this unit for what I'll define as quite

1   some time, whether it's two years or three years.  It is

2   quite some time in the life of this unit.

3          While the movant defendant has argued that, well,

4   there was some period of time during which we were not

5   allowed into the unit, and that is controverted by the condo

6   board, there was no evidence before the Court that in fact

7   access to the unit was denied.

8          What's clear on the record is that for a

9   substantial period of time, three years or longer, the prior

10  owner of the unit failed to pay what are in relative terms

11  modest carrying costs for the unit, maintenance, taxes, and

12  electricity charges that resulted in a substantial judgment

13  being entered in favor of the condo board in September of

14  2019.

15         Those monthly charges were not paid before

16  September of 2019 and were not paid after 2019.  And so, to

17  argue that the movant has a -- will suffer substantial

18  injury if the property is allowed to be sold by the bankrupt

19  -- by the liquidating Trustee somewhat misses the mark,

20  because this property has been in jeopardy of being sold by

21  the condominium board under a valid on-its-face state court

22  judgment for well over a year and a half, and the reason

23  that the prior owner was in that jeopardy was because it

24  failed to pay what were relatively modest -- in relation to

25  the value of the unit relatively modest monthly carrying

1    charges.

2           The argument essentially that, well, Judge, we

3    didn't pay those because we weren't sure who we might lose

4    the unit to, we might have lost it to a sheriff's sale for

5    the condo board, we might have lost it to the Department of

6    Justice incident, or ancillary to a criminal prosecution or

7    investigation, and we might have lost it to the bankruptcy

8    estate because there's been a -- in effect a seizure

9    (indiscernible) the property in effect now for over two

10   years, that really is contrary to demonstrating irreparable

11   injury through the loss of the property were a stay not --

12   were not granted, now the property is allowed to be sold.

13          With respect to the second element, whether or not

14   the liquidating Trustee, the plaintiff in the adversary

15   proceeding, would suffer substantial injury if a stay were

16   to be issued, the liquidating Trustee is also facing the

17   potential sheriff's sale of this unit by the condominium

18   board.  That judgment remains outstanding and unpaid and

19   there's no stay in effect of that judgment being executed

20   other than voluntary agreements not to proceed that it

21   agreed to from time to time between the condo board and the

22   liquidating Trustee.

23          The liquidating Trustee has been incurring and

24   paying now on a current basis since March of this year

25   approximately $7,500 per month of carrying charges on the

1    condominium board.  Every month that those payments are

2    made, it prejudices the creditors of the bankruptcy estate

3    because that is money that the creditors can then not

4    recover and enjoy in accordance with the confirmed plan of

5    reorganization.

6         Were the property not allowed to be sold now by a

7    stay being granted, the liquidating Trustee would continue

8    to incur and need to pay those monthly charges, again as

9    well as facing the potential loss to a sheriff's sale under

10   the state court judgment.

11        With respect to the demonstration of a substantial

12   possibility of success on appeal, the Court agrees with the

13   liquidating Trustee that that is the most significant

14   factor.  I will not go back into the extensive ruling that

15   the Court made in granting the summary judgment.  That

16   stands on the record of this adversary proceeding.

17        There's been no demonstration, though, to this

18   Court's satisfaction that clear error was made or

19   substantial error was made by this Court in either its

20   factual determinations as far as those facts as to which no

21   material issue of fact existed or as to its application of

22   the prevailing law to the undisputed material facts.

23        Finally, with respect to the public interest, that

24   does not favor granting a stay pending appeal.  As the

25   parties are aware and as the Court's bench ruling on

1   granting the -- what was previously the partial summary

2   judgment would evidence, the very existence of 2 River

3   Terrance and its obtaining title to this property was the

4   result of a substantial fraudulent transfer made by one or

5   more of the Debtors.

6            That 2 River Terrance didn't pay for this

7   property, never did, hasn't been by it, didn't put the money

8   down for it, and now for some three years or so hasn't even

9   been paying the monthly carrying charges, those type of

10  facts do not weigh in favor of granting a stay because of

11  the nature of the public interests involved.  That's without

12  considering the impact that the stay on that element might

13  have on the creditors of the estate, again who will not be

14  paid from the proceeds of this sale if the sale were not

15  allowed to go forward.

16           While the motion for stay is being denied, the

17  Court thought it would be helpful to also address were a

18  stay to have been granted what bond conditions would be

19  imposed by the Court in the event that this matter is taken

20  the district court and should the district court have a

21  different view on the Court's ruling, which is certainly

22  fine and appropriate.  The Court believes it would be

23  helpful to inform the parties as to what the Court would

24  consider to be an appropriate bond for a stay pending

25  appeal.  I discussed these in part during the colloquy with

1    the parties, but I'll memorialize it as part of the Court's

2    ruling.

3            The first condition in a stay pending appeal would

4    be the payment -- immediate payment of the state court

5    judgment which threatens the ownership of the property now

6    in the liquidating Trustee's estate.  That judgment, whether

7    it's 470,000 or $500,000, the precise amount can be readily

8    calculated by the condominium board and notice of that

9    amount provided to the parties at interest.  But the first

10   (indiscernible) stay pending appeal was that judgment has to

11   be paid in full, period, full stop within 14 days.

12           Part two of the stay pending appeal conditions

13   would be that a $5 million bond would need to be posted.

14   The sale price is $4.8 million.  We all know that.  That's

15   clear from the record.

16           Were a stay to be granted, it would be for a

17   period of one year to allow the appeal to move forward

18   before the district court.  The $5 million figure is then

19   the $4.8 million sale price plus a five percent interest

20   factor for the period of one year that the stay would remain

21   in effect.

22           The Court recognizes that that may approximate the

23   amount that creditors are being delayed from receiving under

24   the confirmed plan.  It's also a factor of the amount of

25   continuing charges that the liquidating Trustee would have

1    to be paid of the approximate $7,500 a month while the

2    property was not being sold.  So, then condition two would

3    be a $5 million bond posted that would have to be posted

4    within 14 days fully in cash or fully (indiscernible).

5           The third aspect of any stay pending appeal is

6    that that stay would remain in effect for a period of one

7    year and at the end of the one year period.  The Court would

8    revisit the bond amount were the appeal not determined that

9    one year period to determine whether or not those two bond

10   conditions remained adequate to protect the estate's

11   interest.

12          Theoretically, condition one wouldn't moot it out,

13   because the state court judgment would have been fully paid

14   and the Court would then need to determine whether or not

15   the $5 million bond remains adequate.

16          But again, those are the conditions under which

17   the Court would have imposed a bond were it to have granted

18   the motion for a stay pending appeal, but again, the motion

19   for the reasons set out on the record have been denied.

20          I'm going to direct that the liquidating Trustee

21   submit both an order approving the sale motion in the main

22   case as well as a final judgment in the adversary proceeding

23   consistent with my ruling earlier today and a proposed form

24   of order denying the stay pending appeal.

25          All right.  Any other issues for housekeeping

1    purposes that the parties wish to address?  And let me

2    advise Ms. Hadden, it may be a couple -- few days before an

3    order is entered on the denial of the stay pending appeal

4    and the procedural order severing out the other claims in

5    the adversary proceeding.

6            I am noting on the record that the Court has now

7    fully ruled on both the finality of the judgment vesting

8    title in the bankruptcy Trustee, the plan Trustee, and the

9    denial of the stay pending appeal.  To the extent that your

10   client wishes to seek district court review, you can

11   certainly report to the district court, but the Court made

12   the ruling on the record.  The calendar is so ordered with

13   the Court's ruling today so that your client is not

14   inhibited by the delay of a couple or few days in seeking

15   district court review of this Court's order should 2 River

16   Terrance wish to (indiscernible).  I did want that to be

17   part of the record as well.

18           MS. HADDEN:  Thank you, Your Honor.  That was

19   actually the one housekeeping question that I was going to

20   raise, was whether or not the Court would require us to wait

21   until the written decision was issued.  So, thank you, I

22   appreciate that.

23           THE COURT:  I do not (indiscernible) a report to

24   the district court that the ruling was rendered fully on the

25   record this afternoon.

1          MS. HADDEN:   Thank you.

2          MR. SCHARF:   Your Honor, Ilan Scharf for the

3    liquidating Trustee.   Just in terms of housekeeping and

4    understanding the kind of order we're going to submit, we

5    respect the decision that renders this part of the complaint

6    a final judgment.   I believe Your Honor had said we're going

7    to get a separate adversary proceeding number for the -- is

8    that going to be for the new claims?   Or sorry, for the

9    claims that are severed out or the claim that's being

10   finalized?

11         THE COURT:   The judgment that has now been

12   rendered final will remain under the original adversary

13   number.   That's just easier for a number of administrative

14   and (indiscernible) issues.   The unresolved claim would be

15   severed into a new adversary proceeding.   So, the judgment

16   that you all need to submit is simply a final judgment on

17   the relief that was already granted in favor of the

18   liquidating Trustee.

19         The Court will enter its own procedural order

20   severing the remaining (indiscernible).

21         MR. SCHARF:   Okay.   Will the Court's procedural

22   order dictate, you know, that the pleadings don't need to be

23   refiled or just to the extent, you know, answers don't need

24   to be refiled, things like that?

25         THE COURT:   It's fine.   I mean, if you all want to

1   submit a proposed form of severance order, that's certainly

2   fine, but the contemplation of the Court is that everything

3   as it existed at 2:00 this afternoon in that adversary

4   proceeding that had not yet been resolved is moving over

5   into a new adversary proceeding by number only but nothing

6   else is changed.

7           MR. SCHARF:  Thank you, Your Honor.

8           THE COURT:  And then on the order denying the

9   motion for stay pending appeal, that can be a plain, vanilla

10  order for the reasons stated on the record.  The motion is

11  denied.  You may include, if you wish, that had a stay been

12  granted, what the bond terms would have been, mainly for

13  ease of the district court should that become an issue if

14  the district court would want to be informed of the order as

15  opposed to the ruling itself.

16          All right?  Anything further?

17          MR. NOLAN:  Thank you, Your Honor.  I'm just slow

18  on the draw with the mute button.

19          MR. PITTINSKY:  Thank you, Judge.

20          MR. SCHARF:  Thank you, Your Honor.

21          THE COURT:  All right.  Thank you all.  That will

22  then conclude --

23          MS. HADDEN:  Thank you.

24          THE COURT:  -- this afternoon's proceedings in 20-

25  8051 and 18-71748.  The Court will be in recess.  We're off

Page 94

1      the record.

2              MR. PITTINSKY:  Your Honor, before you go off the

3      record, I just want to note that I didn't note my appearance

4      at the beginning of the calendar call, but I assume at this

5      point my appearance is noted for whatever necessary on

6      behalf of the condo.

7              THE COURT:  (indiscernible) just state fully the

8      name of your client.  That's the only thing that we don't

9      have on the record.

10             MR. PITTINSKY:  So, it's the Board of Managers of

11     the Riverhouse One Condominium by Rosenberg & Pittinsky, its

12     counsel.

13             THE COURT:  Very well.  All right.  Thank you all.

14     The Court will be in recess.

15             (Whereupon these proceedings were concluded)

16

17

18

19

20

21

22

23

24

25

Page 95

1                          **I N D E X**

2

3                          RULINGS

4                                                    Page      Line

5

6    Motion to Sell Property Granted          83        23

7

8    Motion for Stay Denied                   83        25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 96

1                C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya

6    Ledanski Hyde

7

8    Sonya Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2021.06.23 17:13:38 -04'00'

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 23, 2021

| & |
|---|
| **&** 5:3,18 7:16 54:24 56:20 94:11 |

| 0 |
|---|
| **0851** 53:15 |

| 1 |
|---|
| **1** 3:14 10:4,5,6,24 11:2,10 34:6 53:14 56:8 69:1 |
| **10** 41:12 43:11 83:2 |
| **10007** 5:14 |
| **10016** 5:23 |
| **10017** 5:6 |
| **10th** 40:16 |
| **11** 3:3 |
| **11501** 96:23 |
| **11722** 2:3 |
| **12** 26:17 42:25 55:4 |
| **12j** 3:4,16 4:6 14:25 46:7 47:11 54:1 55:2 82:22 83:2 |
| **12jk** 24:15 25:11 49:2 69:3 |
| **12th** 42:23,25 |
| **13** 3:18 26:13 61:8 69:11 |
| **13-14** 62:20 |
| **14** 27:24,25 89:11 90:4 |
| **15** 82:3,5 |
| **16** 2:5 |
| **18** 26:17 |
| **18-71748** 1:3 7:6 9:5 93:25 |
| **19** 38:9 57:18 |
| **1st** 40:13 54:6 |

| 2 |
|---|
| **2** 3:4,16 4:6 5:12 7:20,24 9:20 10:8 10:12,24 11:3,5,7 11:9,19 14:25 16:1 17:24 22:15 22:19 25:2 46:7 53:25 54:13 55:1 55:3 58:8,12 61:16 63:25 67:18 75:13 82:22 84:5 84:11,16,19 88:2 88:6 91:15 |
| **20** 38:16 63:2 82:3 93:24 |
| **20-08051** 1:4 7:10 10:11,20 55:13 |
| **20-8051** 35:21 54:6 |
| **200,000** 55:22 78:2 |
| **2007** 27:24 62:19 |
| **2010** 70:11,11 |
| **2016** 22:23 23:1 23:24 |
| **2018** 76:17 78:6 |
| **2019** 75:13 78:2,6 85:14,16,16 |
| **2020** 41:12 75:20 |
| **2021** 2:5 26:21 32:21 42:25 43:12 51:14 53:14 55:13 56:8 73:8,9 96:25 |
| **21** 26:14 |
| **23** 95:6 96:25 |
| **232** 5:22 |
| **23rd** 16:12 28:18 |
| **24** 26:17 |
| **25** 95:8 |
| **28** 53:14 |
| **290** 2:2 |
| **2:00** 93:3 |

| 2nd | 28:16,17 |
|---|---|

| 3 |
|---|
| **3** 11:5,7,10,21,24 15:25 17:1,9,25 21:4,16,24,25 |
| **30** 30:17 60:17 |
| **300** 96:22 |
| **330** 96:21 |
| **3458** 70:11 |
| **34th** 5:5 |
| **35** 61:7 |
| **363** 3:3 |
| **363m** 75:3 |
| **375** 24:11 |
| **3rd** 16:12 28:16 28:17 |

| 4 |
|---|
| **4** 12:8,10,16,17 38:4 |
| **4-1/2** 60:7 |
| **4.6** 43:23 57:10 |
| **4.7** 31:3 |
| **4.8** 31:2,11 32:19 51:12,24 52:4 56:5 57:7 63:23 72:25 83:2 89:14 89:19 |
| **42** 4:3 |
| **45** 31:7 |
| **460,000** 39:6 |
| **463,000** 55:17 |
| **470** 66:11 69:19 |
| **470,000** 39:7 64:1 65:15,25 89:7 |
| **480,000** 83:3 |

| 5 |
|---|
| **5** 26:5 34:2,17,22 35:6,11,15 61:2 64:2,8 68:5 89:13 89:18 90:3,15 |
| **5.25** 23:21,23 44:20 |

| 5.6 | 74:5 |
|---|---|
| **500,000** | 69:18,23 89:7 |
| **548** | 3:18 |
| **55** | 38:7 |

| 6 |
|---|
| **6** 26:5 35:21 36:3 37:11,24,25 78:1 |
| **6.250** 24:11 |
| **64** 4:7 53:20 56:8 |
| **69** 56:9 |

| 7 |
|---|
| **7** 38:15,17,18 |
| **7,500** 86:25 90:1 |
| **70** 15:9 18:15 |
| **780** 5:5 |

| 8 |
|---|
| **8-18-71748** 3:1 |
| **8-20-08051** 3:11 |
| **80** 31:8 57:10 |
| **8051** 38:17 93:25 |
| **83** 3:21 4:7 95:6,8 |
| **84** 4:5 |
| **8500** 5:13 |
| **86** 4:1 |

| 9 |
|---|
| **9** 55:13 69:20 |
| **90** 10:11,16,20 11:1,25 15:9 18:15 34:16,23 35:6,15 38:3 45:18 |
| **90-4** 38:16 |
| **90-5** 35:20 |
| **906** 5:22 |
| **949** 3:1,23 9:5 10:3 |
| **966** 34:2 |
| **967** 35:1,5 |
| **9th** 55:14 |

**a**

**abandoned** 47:21
48:3,5 79:15
**abandoning** 43:6
**abeyance** 77:12
77:20
**ability** 16:16
59:14 66:22
**able** 19:8 49:12
52:17 59:13
**absent** 84:13
**accept** 83:19
**accepted** 31:2
43:23 57:7 83:8
83:16
**accepting** 66:16
**access** 18:2 20:19
56:10 76:22 81:16
81:22 85:7
**accrual** 60:23
**accrue** 60:6,9
**accrued** 65:7
**accrues** 65:21
**accruing** 65:19
68:7,13
**accurate** 12:13
22:17 26:6,24
27:8 28:6 45:23
48:7 65:25 70:22
79:6 96:4
**acknowledged**
70:12
**acting** 41:23
**action** 43:4 60:10
81:13,15,19
**active** 11:15 15:11
52:18
**actively** 19:20
**actual** 65:16
69:22
**ad** 13:17
**adapted** 18:6

**add** 18:12 35:25
**addition** 37:21
43:20 55:23 57:14
57:21
**address** 8:24 10:7
53:12 54:19 55:10
56:15 68:6 69:9
69:14 70:16 74:11
75:7 88:17 91:1
**addressed** 71:23
**adequate** 51:5
83:18 90:10,15
**adjourned** 56:1
**adjudicated** 54:4
**adjudication**
73:24
**adjust** 45:20
**administration**
53:17
**administrative**
92:13
**admissible** 71:15
**admission** 11:7,8
**admitted** 10:4,5
11:19 12:16,17
21:16,23,24,25
36:4 37:24,25
38:17,18
**adv** 1:4
**advanced** 43:6
**adversary** 8:7
10:11,17,20 11:1
34:23 35:6,12,21
38:8,16 53:14,18
53:22,23 54:3,8
55:13 56:9,9
71:19 75:22 77:15
78:19 86:14 87:16
90:22 91:5 92:7
92:12,15 93:3,5
**advertise** 15:4,6
15:17 16:3,22

**advertised** 20:16
57:4
**advertisement**
9:19 20:23,25
**advertisements**
9:13 11:5,10
13:24 14:20 17:1
17:2,9,24
**advertising** 15:17
15:19 16:5,17
**advice** 57:23
**advise** 91:2
**affidavit** 8:21,23
8:25 9:3,4,15,18
12:2,23 13:5,15
13:15,16 14:3
34:7 84:19
**affirm** 13:11
**afoul** 64:16,16
**afternoon** 7:2,15
7:23 14:11 17:17
33:16 40:7 91:25
93:3
**afternoon's** 93:24
**age** 26:14,22
**agencies** 18:11
**agent** 14:13 15:3
16:22 22:14 24:20
28:20 31:13,16
56:21
**ago** 27:24 62:20
66:8 69:19
**agreed** 45:6 77:11
77:19 86:21
**agreements** 86:20
**agrees** 87:12
**ahead** 14:2
**aiming** 45:11
**airbnb** 81:7
**al** 1:16 3:11,15
7:11
**alan** 2:22 7:3

**advertised** — **allegation** 76:9
**alleged** 39:4
**allow** 20:13 23:13
29:10 89:17
**allowed** 85:5,18
86:12 87:6 88:15
**allowing** 74:7
**altogether** 8:7
35:16
**ambiguous** 23:10
**amount** 28:13,21
28:22,23 31:8
39:4 55:16,17,22
58:22 60:21 64:6
64:8,18 65:7,16
66:1 69:17 83:3
89:7,9,23,24 90:8
**amounts** 65:14,22
**ancillary** 78:17
86:6
**angels** 67:5
**answer** 27:17
29:14,21 52:17
77:13
**answered** 29:9
63:23
**answers** 92:23
**anticipating**
45:13
**anybody** 26:8
**anybody's** 59:18
**apart** 52:20
**apartment** 3:4,16
4:6 14:25 22:23
23:4,8 24:13,15
24:22 25:2,11,13
25:23 26:1,16,23
26:24 27:9,13,16
27:20,24 28:5
29:5,13,24 30:3
30:16,17,22 40:20
41:4,23,24 42:22
43:18 44:1 46:6,7

47:5,10,22,23
48:2 49:1,2,6,9,16
50:6 54:1 55:1,2,4
55:11,20,24 56:13
59:6,9,11,15,17
61:20 62:11,18,21
63:9 64:19 67:1
67:12,12,19 68:22
75:20 76:7,21,22
77:22 79:6,22
82:22 83:1
**apartments** 24:19
29:3,16,18,19,19
62:15
**apologize** 9:13
19:22 20:3 30:1,8
44:19 46:13 47:3
47:9 48:18,20
**appeal** 4:5 8:6
53:6,11,20,25
54:5,14,20 56:15
58:8,9,10,11,13
58:17 59:15,20
61:16 62:3 63:15
65:2 67:16,23
68:6 69:9 70:2,14
71:4,8 72:10,18
72:18 73:7 74:7
82:23 83:25 84:3
84:7 87:12,24
88:25 89:3,10,12
89:17 90:5,8,18
90:24 91:3,9 93:9
**appealed** 46:8
56:14
**appealing** 75:4
**appear** 11:11
53:16 79:25 80:5
81:14
**appearance** 7:13
94:3,5
**appeared** 46:10
79:15

**appearing** 8:11
**appears** 10:8 28:1
**apples** 25:7
**application** 3:6
87:21
**appointed** 42:7
**appreciate** 33:10
46:17 91:22
**appropriate**
27:16 44:24,25
57:15,20 65:3
88:22,24
**approve** 64:22
83:22,22
**approves** 66:25
**approving** 3:7
90:21
**approximate**
55:22 89:22 90:1
**approximately**
55:17 66:3 86:25
**approximation**
39:4
**april** 16:12,12
28:16,16,17,17,18
32:20 36:9 51:14
**area** 15:11 23:18
24:5,7,16 27:22
28:21 32:14
**areas** 21:1
**arena** 78:6
**argue** 54:18 61:10
61:12 85:17
**argued** 69:11 85:3
**arguing** 56:4 77:2
**argument** 54:12
70:13 75:9 76:14
78:14,21 86:2
**arguments** 8:1
53:10 84:20
**arisen** 37:16
**arising** 53:19

**arm's** 83:15
**arose** 78:11
**arrive** 50:14
**arrived** 23:7
**articulate** 58:25
**aside** 34:7 78:8
**asked** 26:15 29:9
**asking** 20:24
54:14
**aspect** 69:10
74:15 90:5
**asserted** 55:15
**assessments** 37:7
**asset** 47:10 50:9
58:12 61:25 62:22
63:3,5 64:14
68:18,19 69:3
74:5,5 75:2 76:9
81:20
**assets** 40:23 41:2
41:22 42:14,15
45:16 47:8,12,15
48:12 56:18 59:23
64:10 76:20
**assigned** 54:7
**assignment** 60:12
**assistant** 18:25
**assistants** 19:5
**associated** 41:22
42:15,16 59:6
**association** 36:13
37:5 70:25 71:22
**assume** 12:13
22:15 27:13 94:4
**ast** 1:4 3:1,11
**attach** 59:22
**attached** 9:4,11
9:12,14,18,25
10:15 12:1 62:10
62:15,21 64:23
79:9
**attacking** 79:8

**attempt** 39:15
76:1
**attempted** 39:10
**attempting** 76:19
79:23
**attention** 77:4
**attorney** 33:20,22
**attorneys** 5:4,12
5:19 69:11
**attorneys'** 65:18
**attorney's** 42:20
**auction** 57:22
**auctions** 32:24
57:22
**authorities** 71:12
71:14
**authority** 71:13
72:1
**authorizing** 3:4,7
**automatically**
19:4
**availability** 44:9
**available** 20:15
65:1 83:12
**avenue** 3:5 5:5,22
24:11
**avoid** 59:19
**awaiting** 68:17
**awarding** 4:1
41:14
**aware** 26:15
38:21 39:10,18
42:11 43:21 44:7
44:11 46:5 48:9
64:10 68:12 84:1
84:4 87:25
**awareness** 44:15

**b**

**b** 2:21
**back** 14:8,15
22:23 44:3 46:15
47:2 54:14 61:12
69:19 73:9 76:17

76:24 82:4,10,17
87:14
**background**
73:17
**backstory** 80:7,7
80:8
**backup** 57:11
**ballpark** 66:11
**bank** 50:13,15
60:5,9,23 70:25
**bankrupt** 85:18
**bankruptcy** 1:1
2:1,23 13:1 41:14
41:21 42:8 57:22
63:22 70:11 72:6
75:19,21 79:9
81:15 84:8 86:7
87:2 91:8
**banks** 60:22
**bank's** 60:14
**barred** 76:21
**based** 32:16 49:6
50:25 51:21 52:14
52:15 55:7 56:21
57:7 64:10 70:6
74:1 83:4
**basically** 64:3
76:11
**basis** 86:24
**bathrooms** 25:17
**battery** 23:18
24:5,7,24 28:11
**bears** 12:24
**becoming** 22:16
**bedroom** 24:16
**bedrooms** 25:6
**began** 75:23
**beginning** 94:4
**behalf** 3:9 4:2,6
7:16 8:12 47:10
54:24 84:19 94:6
**belief** 13:12,18

**believe** 8:22 9:11
28:15,15 30:22
31:3,7,19 32:19
34:24 39:20 43:2
43:15 44:10,16
48:8 50:25 51:11
51:23 54:18 56:8
56:22 59:24 62:12
62:19 71:16 74:25
76:17 92:6
**believed** 45:5
**believes** 88:22
**bell** 25:4
**bells** 25:9,10
**belongs** 67:7
**bench** 87:25
**benchmark** 29:24
30:15 45:18
**benefit** 10:1 16:8
**best** 13:6,7,12,17
13:19 29:2 32:5
43:13 49:25 51:13
51:24 53:16 57:16
57:16 61:1 68:24
69:21 73:23 79:16
83:5
**better** 21:5 43:5
57:12 63:18,20
66:18 72:19 73:12
75:17 80:1 83:7
83:10,12
**beyond** 13:10
33:3,4
**bidding** 45:11,14
**bigger** 66:4
**bill** 51:1
**bills** 37:19,19
**binder** 16:1
**binding** 66:12
**bit** 45:3
**board** 3:8 5:19
15:8 41:17 55:15
55:21,23 58:22

75:13 80:23 85:6
85:13,21 86:5,18
86:21 87:1 89:8
94:10
**board's** 80:15
**body** 49:14
**bond** 59:22 64:2,6
64:8,18 65:6 68:5
73:6 88:18,24
89:13 90:3,8,9,15
90:17 93:12
**bowyer** 3:17,17
**brand** 25:17,23
**breadbox** 66:4
**breathe** 61:17
**breathing** 76:24
**brief** 17:11 30:4
53:10 80:14
**briefed** 84:1
**briefly** 13:23 16:3
32:1 47:2 74:10
74:13 75:6
**bring** 25:18 27:9
77:3 81:15
**brings** 26:5
**broad** 23:10
**brochure** 9:10,24
11:4 56:24
**broker** 18:2 44:17
59:8,9
**brokerage** 15:14
15:23
**brokers** 15:7,8,11
15:17,24
**brooklyn** 14:13
**bucket** 70:14
**building** 15:12
23:19 28:9,9,11
31:14,17 32:14
44:8,15 62:11
76:21
**buildings** 63:2

**built** 27:24 62:19
77:5
**burden** 59:18
71:17
**business** 41:11
**button** 93:18
**buyer** 16:8 31:20
44:12,17 45:4,15
45:17 57:6 68:17
72:25
**buyers** 15:23
25:13,18 28:11,13
44:7
**buying** 16:8
**bye** 33:11
**bylaws** 65:19
80:17

---

**c**

**c** 5:1 7:1 96:1,1
**cabinetry** 25:16
25:23
**calculated** 89:8
**calendar** 91:12
94:4
**california** 33:23
49:1 50:22
**call** 21:18 75:11
94:4
**called** 15:12 35:11
37:5
**calls** 23:10 41:8
51:16
**cameras** 82:9,17
**canceled** 76:3
**can't** 60:2 82:6
**capacity** 1:12 3:14
42:11 64:9,12
**capital** 58:5,5
**cards** 56:10
**care** 28:2 81:8
**carried** 71:17
**carrying** 71:1
85:11,25 86:25

88:9
**case** 1:3,4 3:23 7:6
  7:10 8:5 9:5 10:4
  10:11 13:2 22:2
  22:16 30:21 36:16
  42:8,18,22 43:7
  46:24 47:6 50:21
  51:4,6 53:19
  56:17 57:23 64:11
  71:5 72:22 73:4
  73:22 74:25 76:9
  77:1 82:21,25
  90:22
**cases** 57:23
**cash** 31:11 32:19
  51:12,24 52:4
  57:9 59:14 72:25
  73:1 83:2 90:4
**caused** 70:22
**caveat** 66:16
**cavity** 73:11
**center** 5:13 8:16
  33:14
**central** 2:3
**certain** 8:22 18:8
  47:8 61:18 80:19
**certainly** 26:18
  33:9 42:5 54:2
  59:12 63:8 64:6
  88:21 91:11 93:1
**certified** 96:3
**chair** 76:25
**challenge** 14:5
  71:22
**chance** 18:19
  32:10,13
**changed** 40:19,21
  41:15 93:6
**changes** 60:25
**characteristics**
  49:4,5 62:24 63:4
**characterize**
  28:24,25 29:1

**charge** 37:4 56:17
  65:20 81:12
**charges** 36:14,20
  36:20,25 55:16,18
  55:19 68:7,10,12
  68:15,18 78:11
  85:12,15 86:1,25
  87:8 88:9 89:25
**chief** 7:3
**chime** 69:17
**choice** 63:13
**choose** 69:1
**chose** 68:11,18
  69:2,5
**circling** 76:10
**circuit** 58:14
  71:12,14
**circumstances**
  57:20 70:3
**city** 23:19 24:5,6
  24:22,25 49:11
  65:21
**claim** 43:3 76:16
  92:9,14
**claiming** 81:15
**claims** 3:6 53:22
  54:3,7,9 61:21
  81:2 91:4 92:8,9
**clarify** 30:18
**clarity** 19:12
  34:21 42:25
**clean** 11:1
**clear** 3:2,5 9:23
  57:15 58:7 65:24
  70:8 71:13,14
  76:23 80:16 85:8
  87:18 89:15
**clearer** 66:15
**clearly** 7:4 55:9
  56:25 57:19 70:19
**clerk** 7:2,10 38:5
**click** 20:8,9

**client** 15:21 61:25
  62:8 64:24 65:10
  66:12,22 69:7
  75:1 76:15,25
  81:3,19 91:10,13
  94:8
**clients** 46:23
  72:16 81:7
**client's** 61:15 67:8
  76:16
**clodagh** 3:16,17
**close** 44:1 48:4
**closer** 69:18
**closes** 19:21 64:23
**closing** 3:8 64:25
**collection** 78:9
**colloquy** 88:25
**come** 12:1 26:2
  44:15 48:4 59:11
  63:19,19,20 72:13
  73:1 83:9
**comes** 67:5
**commenced** 75:22
**commented** 62:14
**commercial** 50:18
**commission** 3:8
**common** 55:16
  65:20 78:11
**commonplace**
  73:2
**companies'** 15:14
**comparable** 24:23
**comparative** 20:9
**comparing** 24:21
  29:12
**comparison** 57:10
**compass** 8:18
  9:10 18:7 19:3
  22:10 40:16 56:20
  57:3
**compass.com**
  15:12 16:23

**compelling** 78:21
**complaint** 3:14
  92:5
**complete** 11:13
  28:2
**completely** 24:24
  25:1,3 30:5
**completeness**
  21:17,18,22
**complicated**
  71:11
**comply** 80:16
**comps** 23:18
  32:13 56:24
**computation** 66:7
**computed** 66:5
**concept** 73:5
**concern** 27:22
  66:23 80:23
**conclude** 93:22
**concluded** 94:15
**conclusion** 41:8
**condition** 27:11
  27:14 89:3 90:2
  90:12
**conditions** 62:3
  88:18 89:12 90:10
  90:16
**condo** 23:15 58:22
  83:17 85:5,13
  86:5,21 94:6
**condominium**
  5:21 11:25 12:8
  14:25 50:1,4
  55:15 65:16 69:18
  75:12 78:2 80:13
  85:21 86:17 87:1
  89:8 94:11
**conference** 3:12
**confirm** 66:22
**confirmed** 50:12
  65:8 83:21 87:4
  89:24

confused  30:9
connections  16:14
consequence
   57:19
consider  25:13
   70:7 71:15 84:2
   88:24
consideration
   50:7
considered  50:3
considering  45:15
   88:12
consistent  83:20
   90:23
consistently  12:12
constitutes  14:17
   58:1
consultation  23:3
contact  12:10
   44:18
contacts  15:10
contained  13:5,16
   17:24 18:18 19:13
   34:7
contemplation
   93:2
contingency  31:5
   31:6,7 43:24
   57:11
continue  59:7
   60:9 87:7
continued  83:8
continues  60:5
   66:9
continuing  22:4
   68:15 89:25
contract  11:17,25
   12:3,7 16:10,11
   16:12 19:14,16,21
   28:17 43:23 44:4
   52:5,5,11,18 83:8
   83:14,16,20

contracts  52:19
contrary  86:10
control  42:20
controlled  67:18
controverted  85:5
copies  17:2
copy  12:2,5,13
   20:19
corporation  62:8
   62:9,10
corporations
   61:18
correct  10:18 12:2
   12:5 13:5,12,17
   17:2 20:5 21:6
   22:11,12,23 23:2
   23:5,22,24 24:9
   24:10,12,13,14,17
   24:25 26:19 29:22
   30:23,24 31:3,4
   31:12,15,21 33:20
   35:8 40:14,15,20
   41:18 42:9,23,24
   47:17,20 48:15
   50:19 52:12 62:7
   66:3 75:1
correctly  27:19
   30:2,13
costs  64:25 85:11
couldn't  27:17
   60:8
counsel  7:17
   46:10 49:3 60:4
   84:21 94:12
country  96:21
county  38:4,5
couple  25:20
   29:20 40:11 49:20
   53:24 91:2,14
course  17:22
   19:14 54:10 66:23
   67:13 69:22 74:13
   74:25 81:9

court  1:1 2:1 7:9
   7:12,20,24 8:2,14
   8:19 9:2,6 10:1,7
   10:12,17,19,25
   11:20 12:7,15,18
   12:21,23 13:1,4,8
   13:14,21 14:3,15
   14:19 16:4,16
   17:10,13,25 21:15
   22:4 23:11,13,13
   26:10 27:4 29:10
   31:25 33:4,7,12
   33:19,22,24,25
   34:2 35:2,9,18
   36:2 37:13,21
   38:1,12,14 40:3
   41:9,18,21 42:3
   46:6,8,11,16,22
   48:21 49:19 51:12
   51:17 52:3,9,10
   52:13,24 53:4,9
   53:16,19,24 54:22
   56:7 58:2,15,24
   59:25 60:10,18,23
   61:3,5,17 62:4,4
   63:13,16,24 64:21
   64:25 65:3,14
   66:2,10,19,25
   67:4,14 68:2,25
   69:8,15,24 70:6
   70:10,17 71:5,10
   71:13,14,21,25
   72:1,2,21 73:13
   74:8,18,21 75:8
   75:12,24 76:12
   77:4,10,25 78:1,5
   78:8 79:1,9,10
   80:9,21 81:12,13
   81:17,24 82:15,20
   82:25 83:4,21,22
   84:2,6,13,20,24
   85:6,21 87:10,12
   87:15,19 88:17,19

88:20,20,22,23
   89:4,18,22 90:7
   90:13,14,17 91:6
   91:10,11,11,15,20
   91:23,24 92:11,19
   92:25 93:2,8,13
   93:14,21,24,25
   94:7,13,14
courtroom  7:3
court's  8:3 37:16
   40:14 41:14 47:4
   52:14,16 53:13
   55:12 58:25 59:3
   71:12 78:7 80:3
   87:18,25 88:21
   89:1 91:13,15
   92:21
cover  13:23
covid  57:18
created  69:7 74:1
credibility  37:23
creditors  50:11
   56:18 70:24 87:2
   87:3 88:13 89:23
credits  82:25
criminal  42:17
   43:7 47:18,21,23
   47:25 48:5,6
   64:11 76:9 86:6
criteria  84:2,9
cross  11:22 14:6
   22:5,5,8 40:5 58:2
   58:3,19 61:14
crossed  69:8
crumbs  56:4
cryptic  69:12
current  36:19
   55:19 68:4 86:24
currently  9:16
   37:8 61:2
custom  16:21
cut  19:22 40:24

| **d** | | | |

**d** 5:25 7:1 95:1
**database** 15:7,23
**date** 40:18,19
  55:14 65:22 76:18
  96:25
**dated** 36:9
**day** 29:18 31:7
  33:11
**days** 26:14 30:17
  45:18 89:11 90:4
  91:2,14
**deactivated** 11:17
**deadlines** 3:21
**deal** 31:19 44:10
  73:11,12 76:1
**dealing** 28:13
  79:5
**dealt** 77:20
**debt** 50:13 60:22
  71:1
**debtor** 1:10 49:23
  68:3
**debtors** 48:14
  88:5
**debtor's** 63:19
**decide** 73:8
**decision** 39:22
  72:17,20,20,21
  73:7 91:21 92:5
**declaration** 9:7,9
  9:24 10:2,3 13:22
  14:16 34:1,2,5,6
  34:24 35:4 43:15
  43:17 58:1
**deep** 57:1
**deeply** 76:24
**defendant** 1:17
  53:25 55:5,22
  56:10,14,14 57:17
  73:15 74:2 76:7
  85:3

**defendant's** 63:19
**defending** 75:23
**defense** 73:21
**define** 84:25
**definitive** 29:21
**delay** 91:14
**delayed** 89:23
**delegated** 69:13
**demonstrated**
  71:4 84:12
**demonstrating**
  86:10
**demonstration**
  87:11,17
**denial** 91:3,9
**denied** 67:23
  81:16,22 83:25
  85:7 88:16 90:19
  93:11 95:8
**denying** 72:10
  84:3 90:24 93:8
**department** 47:5
  48:1 64:16 76:6
  78:18 79:7 86:5
**depending** 20:12
  50:14
**depends** 28:24
  29:21
**deposited** 83:3
**deprived** 77:7
**deputy** 7:3
**derived** 23:20
**describe** 16:4
  79:16
**described** 57:4,25
  66:24
**description** 20:14
  78:24
**despite** 62:21
**destra** 60:18
**detail** 74:12
**details** 21:1

**determination** 4:1
  23:8 32:16 47:14
  53:23 72:17
**determinations**
  87:20
**determine** 90:9,14
**determined** 23:3
  23:14 50:21 65:16
  90:8
**determining**
  67:14 78:1
**detrimental** 80:20
**dictate** 92:22
**didn't** 16:12
  19:22 29:25 40:24
  69:1 73:8 86:3
  88:6,7 94:3
**difference** 19:14
  19:19 20:18 30:20
**differences** 24:18
**different** 16:17
  20:11 24:23,24
  25:4 35:2 41:22
  47:16 49:15 71:9
  76:3,10 79:11,17
  79:23,24 80:2
  88:21
**difficult** 75:10
**dig** 66:9
**dire** 17:11,15
**direct** 13:22 14:9
  14:17 22:2 34:13
  43:17 90:20
**directed** 15:22
**directions** 79:11
  79:19
**directly** 14:19
  18:10 19:4
**disagree** 74:15,16
  74:22,22,24 75:17
  78:10 79:3
**discussed** 43:20
  64:5,7 88:25

**discussion** 66:11
**display** 56:23
**dispute** 55:8,9
**disputed** 38:9
**distance** 66:2
**distribute** 56:18
  60:6,8,20
**distributed** 50:11
  60:16,17,22
**distribution** 72:6
**district** 1:2 46:8
  46:10 58:14 62:4
  65:3 67:4 68:1
  88:20,20 89:18
  91:10,11,15,24
  93:13,14
**dkt** 3:23
**docket** 9:3,4 10:3
  10:8,11,13,16,20
  11:1,24 34:1,15
  34:22,25 35:5,6
  35:15,20 38:3,7
  38:16 53:20 56:8
**docketed** 53:14,20
**document** 4:3,7
  10:14 11:2 21:22
  34:10 38:6,16
**documents** 9:8
  36:10,15
**doesn't** 52:18
  59:25 61:16 67:1
  68:19 73:11
**doing** 14:24 47:14
  58:21 59:21 61:8
  81:7
**dollar** 39:4
**domestic** 15:9
  18:15
**don't** 14:15 17:20
  18:14 19:10 21:9
  29:14,20 31:18,20
  38:5 45:14,24
  47:7 50:3 61:11

64:8 71:8,20
73:11 76:13 81:20
92:22,23 94:8
**door** 64:22,22
65:4,6,10,10
66:24 67:24,25
**douglas** 22:11,13
22:25 23:1 34:5
34:19 35:5 36:7
**draw** 93:18
**dream** 73:1
**driving** 26:23
**dropdown** 20:5
20:13,20 21:20
**due** 11:17 54:10
**duplicative** 35:14
**duties** 15:2 54:19
**duty** 56:19
**décor** 27:21

**e**

**e** 2:21,21 5:1,1 7:1
7:1 66:8 69:19
95:1 96:1
**e.d.n.y.** 70:11
**ear** 60:2
**earlier** 43:2 47:21
84:4 90:23
**ease** 10:9 14:23
93:13
**easier** 92:13
**eastern** 1:2
**easy** 35:16 46:20
**ecro** 2:25
**effect** 41:18 54:9
59:21 86:8,9,19
89:21 90:6
**effects** 28:14
59:21
**efficient** 46:4
53:17 72:5
**efficiently** 72:2
**efforts** 78:9

**ehrenberg** 1:12
3:9,11,14 4:3 6:4
7:10 8:10 33:13
33:16,17,19,21,23
34:4,13,15 36:7
38:2,21 40:5,7
42:7 47:2 48:25
49:21,23 52:3,14
52:16,24 59:24
60:4,15,25 61:3,4
62:17 77:22 81:1
83:1
**ehrenberg's** 34:1
34:24 35:3 80:18
**either** 9:23 12:1
28:17 30:11 42:15
50:15 52:4,13
53:5 62:15 63:14
67:22,25 71:17
83:7 87:19
**electricity** 85:12
**electronic** 15:18
**element** 70:16
71:3,17,18 72:8
73:14 84:13,24
86:13 88:12
**elements** 70:6,17
72:11
**elena** 3:11,16 7:10
**elliman** 22:11,13
22:25 23:1 34:5
34:19 35:5 36:7
**elliott** 3:17
**eloquent** 84:21
**encumbered**
55:14
**encumbrances**
3:6
**engaged** 78:19
**enjoy** 87:4
**enjoyment** 77:7
**enormous** 61:23

**enter** 80:24,24
92:19
**entered** 10:6 52:5
52:6 54:6 56:7
85:13 91:3
**entire** 64:18
**entities** 16:17
41:22 42:16 76:20
**entitled** 54:2
**entity** 64:1
**entry** 3:3,6 78:12
**equal** 79:20
**error** 87:18,19
**especially** 61:8
**essence** 78:14
**essentially** 11:12
21:23 58:6 61:14
74:3 75:15 76:13
76:16,19 77:12,14
77:17 79:7,9,21
86:2
**establish** 34:9
**establishing** 3:21
**estate** 3:2,23 8:18
9:12 14:13 15:8
16:22 18:2 22:14
24:20 25:7 28:20
41:15 42:14 51:22
56:21,22 58:11,18
58:20 65:1,8 67:2
69:4,4 70:24 72:3
74:5,6 86:8 87:2
88:13 89:6
**estate's** 59:23
90:10
**estimation** 27:23
**et** 1:16 3:11,15
7:11
**event** 88:19
**eventually** 43:22
**everybody's**
79:20

**evidence** 8:8 9:1
10:6 11:18,19
12:6,17 17:9 19:7
21:25 26:3 37:12
37:25 38:18 53:5
63:16 70:10,18
71:16 83:10,12
84:15,16,22 85:6
88:2
**evidentiary** 8:4
9:20
**exactly** 44:18 45:8
63:2
**examination** 14:9
22:6,8 32:2 34:13
40:5 43:17 49:21
**example** 18:8 20:9
20:12 24:8 26:21
27:20 68:16 77:20
**exception** 70:4,9
**excused** 52:25
**executed** 13:16
86:19
**exercise** 83:18
**exerting** 79:20
**exhaustive** 74:12
**exhibit** 9:12,20,21
10:4,5,6,8,10,12
10:15,20 11:2,3,4
11:5,5,9,10,10,19
11:21,24 12:7,8,9
12:16,17 15:25
16:1 17:1,9,24,25
18:18 19:13 20:1
21:4,16,24,25
34:2,6,17,22,24
35:3,6,11,11,15
35:21 36:3 37:11
37:24,25 38:4,13
38:15,17,18
**exhibits** 8:22,23
8:25 9:15 10:2,21
10:24 11:7 12:18

34:16 35:12,23
37:23 38:1
**exist**  20:21
**existed**  87:21 93:3
**existence**  68:12
88:2
**exists**  39:8 69:21
**exit**  82:4
**expand**  20:14
21:1,7,8
**expanded**  11:13
20:21 21:4
**expedite**  72:2
**expeditious**  46:4
72:5
**expeditiously**
56:19
**expenses**  36:14
37:4,9 60:21
**experience**  24:4
28:20 29:6,7
30:14,15 50:25
72:16
**expert**  41:10
**expertise**  14:1,4
24:19 32:17 50:23
51:9 56:21,22
57:25
**explaining**  56:25
**extensive**  56:21
87:14
**extent**  41:8 59:10
59:20 62:8 80:19
91:9 92:23

**f**

**f**  2:21 3:3 58:5
96:1
**face**  85:21
**facially**  77:25
78:7
**facing**  75:10
86:16 87:9

**fact**  25:24,25 26:1
38:9 46:10 48:6
57:17 68:13 75:1
76:6 79:7 81:14
85:6 87:21
**factor**  68:15 71:6
72:3 87:14 89:20
89:24
**factors**  29:21 50:7
57:8 70:10 71:6
74:11,16
**facts**  77:2 81:21
87:20,22 88:10
**factual**  87:20
**factually**  81:22
**failed**  85:10,24
**fair**  32:4,20 39:16
50:10,23 51:13
54:22 80:9 83:15
83:18
**fall**  52:20
**fallen**  24:3,4
**falls**  72:4
**false**  81:22
**familiar**  12:23
22:15 44:8
**family**  67:20
**fancy**  60:1
**far**  50:17 60:17
76:14 81:10 87:20
**fast**  45:15
**favor**  75:12 85:13
87:24 88:10 92:17
**february**  26:21
40:16 41:12 43:11
55:13,14 73:9
**federal**  2:2 70:7,8
**fee**  37:4
**feel**  61:7 67:18
82:9
**fees**  39:2 55:16
59:5,6,6,7,8,9
65:18,18

**fence**  63:10
**fight**  63:6,6 73:5
78:19
**fighting**  68:1
**figure**  45:6 89:18
**filed**  3:9 4:2,5
10:13 12:24 76:12
77:9 82:24
**filing**  81:18
**final**  4:1 53:20
54:6 84:6,8 90:22
92:6,12,16
**finality**  8:6 91:7
**finalized**  92:10
**finally**  87:23
**financing**  31:5,6,7
31:8,9 43:24
57:11
**find**  19:10 37:21
45:15 51:5 67:21
80:7
**fine**  30:9 88:22
92:25 93:2
**firm**  7:17
**first**  7:13 8:9,10
8:13 16:6 44:2
50:15,19 53:12
54:12 58:21 68:2
82:24 84:10,15
89:3,9
**fit**  51:1
**five**  25:5 89:19
**fixed**  67:1
**fixtures**  62:24
**flesh**  61:20
**flip**  61:5,13
**floor**  5:5
**floors**  25:16
**flow**  50:16
**focus**  25:8 26:20
26:23
**focused**  15:21

**following**  46:21
47:17 83:25
**force**  79:20
**foreclose**  39:11
**foreclosure**  75:10
**foregoing**  96:3
**forfeiture**  76:9
**form**  23:9 27:1
33:13 35:5 46:1
48:17 51:15 64:3
75:4 77:2 90:23
93:1
**former**  84:11
**forms**  68:19
**forth**  15:22 21:2
44:3 70:1,4 72:1,9
**forward**  54:10
58:12 63:19,19,20
64:3 65:2,2 83:9
88:15 89:17
**found**  61:7 69:19
**foundation**  11:21
12:16 13:23 14:2
14:20 34:10 35:15
36:2 37:14 38:11
42:2
**four**  66:8 70:6,10
71:6 74:11,16
84:1,10
**fourth**  71:18
72:11
**frankly**  55:18
**fraudulent**  3:19
78:20 88:4
**fraudulently**  69:3
**free**  3:2,5 26:18
33:8 58:7 82:9
**freeze**  76:19
**freezing**  30:6
**front**  16:1 17:24
18:19 19:6 20:17
20:20 21:3 79:5

**fronts**  47:16 79:4
**frozen**  64:10 79:7
  79:12,22
**full**  56:23 60:9
  64:8,19,24 65:9
  65:23 89:11,11
**fully**  80:6 90:4,4
  90:13 91:7,24
  94:7
**function**  71:12
**functional**  21:18
**funds**  60:18,19
  65:1
**further**  22:1 33:6
  40:1 49:17 52:2
  52:13 53:4,23
  59:23 74:9 80:10
  84:23 93:16
**future**  53:23

### g

**g**  7:1
**game**  63:17
**gatekeeper**  71:12
**general**  45:18
  46:23
**generally**  21:10
  24:6 66:13
**generated**  83:14
**getting**  9:13 61:24
**give**  9:2 10:19
  13:11 20:7 23:11
  29:21 39:3 58:9
  80:6 82:2
**given**  56:2 57:23
  57:23
**gives**  80:23
**giving**  68:22
**go**  8:10 11:22 14:2
  14:15 16:12 22:5
  25:6 45:3,7 48:13
  50:15 58:12 61:12
  66:17 69:5,22
  74:12 79:19 84:9

87:14 88:15 94:2
**goal**  32:4
**goes**  52:19 59:10
  65:2,2 66:25 67:2
  71:11 72:16
**going**  8:5 9:19
  11:18 12:3 13:8
  14:23 21:18 33:2
  34:15 36:8 43:3,6
  45:10 47:2 48:16
  53:9,10,11 54:18
  55:9 58:4,5,23
  59:1,17,20 60:11
  64:3,4 67:14,21
  72:18,18 73:20
  74:4 77:17 79:11
  79:19 80:16 81:6
  81:25,25 82:2,4
  82:16 90:20 91:19
  92:4,6,8
**good**  7:2,14,14,23
  9:17 14:11 17:17
  17:19 33:11,16
  40:7,8,9
**granted**  67:23
  70:3 83:23 86:12
  87:7 88:18 89:16
  90:17 92:17 93:12
  95:6
**granting**  53:13
  62:5 71:19 72:12
  84:2 87:15,24
  88:1,10
**great**  35:18 44:10
**greene**  3:17,17
**grenade**  66:2
  69:23
**group**  5:11 7:22
  9:11,25 35:25
  37:23 50:13,15
  60:9,24
**group's**  51:9

**gucci**  70:4
**guess**  68:9 69:23
**guidelines**  64:17
**gut**  25:1

### h

**hadden**  4:6 5:16
  7:22,22,25 9:6,9
  9:22 11:6,8 12:9
  12:11 14:5 17:10
  17:11,14,16 19:25
  20:4 21:13 22:5,7
  22:9 23:17 26:14
  26:19 27:5,6,7
  29:11 31:23 33:2
  34:21 35:10,23,24
  38:12 40:3,4,6
  41:16 42:4,5,6
  46:2,17,25 48:18
  48:23,24 49:17
  51:15 52:15,22
  53:8 61:6,13 62:7
  64:5 65:12 66:21
  68:9 72:13 74:9
  74:10,20,24 75:16
  78:4,23 79:2
  82:12 91:2,18
  92:1 93:23
**hadden's**  69:7
  81:3,7,10,21
**half**  75:14 85:22
**hand**  13:9 59:24
  66:2
**handle**  54:20
**handles**  25:21
**handling**  72:5
**hanging**  73:15
**happened**  41:3
  45:9 77:21,21
**happens**  25:1 68:7
**happy**  8:24 38:10
**hardware**  25:22
**harm**  74:1,14 75:2

**harmed**  70:15
**hasn't**  63:8 78:13
  88:7,8
**haven't**  30:11
  49:7,16 66:5
  75:17,18 78:13
**head**  46:14
**heading**  76:11
**healthcorp**  1:8,13
  3:1,15 7:7 33:18
  49:24
**hear**  7:25 29:25
  33:13 82:18
**heard**  26:12 44:23
  55:7 56:16
**hearing**  3:1 9:20
  10:5 33:8 36:22
  52:9 82:1,4,8,17
**hearings**  7:4 8:4
  53:1
**held**  57:11 60:19
**help**  74:4
**helpful**  61:9 88:17
  88:23
**here's**  20:7 81:25
**he'd**  59:8,8
**he's**  26:15 59:20
  59:25 62:14,15,21
  63:4,6 70:22
**hi**  17:18
**higher**  22:14 24:9
  45:3,12 57:12,18
  63:18 83:7,9,11
**highest**  29:4 32:5
  49:25 57:8 68:23
  73:23 83:5
**highly**  58:20
**hoa**  37:4 39:1
**hoch**  8:18 9:10
  51:8 56:20
**hold**  27:25 59:19
  61:25 77:12,19

**home** 20:9 81:6
**homeowners**
    36:13 37:8
**homeowner's**
    70:25 71:22
**homestead** 61:21
**homework** 60:12
**hon** 2:22
**honor** 7:14,15,23
    7:25 8:11,20 9:20
    10:9,16,23 11:23
    12:20,22 13:25,25
    14:7,18,22 17:8
    17:12 20:1 21:13
    22:3,7 26:7,19
    32:1 33:3,6,16
    34:12,19 35:13,25
    36:5 37:11 38:3
    38:12,19 40:2,4
    42:2 46:17,19
    48:16 49:20 51:19
    52:2,23 53:7,8
    54:17,19,23,25
    55:6 56:25 58:20
    59:5,10,12,12
    60:3 62:8 64:20
    65:12 66:9,24
    69:16 70:1,2
    71:16,18,20 72:4
    73:3,25 74:10
    76:16,18 77:15,21
    82:11,12 91:18
    92:2,6 93:7,17,20
    94:2
**honor's** 56:11
    66:16 77:4 78:24
**hope** 45:4,10
**hopefully** 40:12
**hostage** 59:19
**house** 62:25
**housekeeping**
    11:24 35:16 90:25
    91:19 92:3

**howard** 1:12 3:9
    3:14 4:3 6:4 33:17
    34:13 40:5 49:21
**human** 61:20
**hyde** 4:25 96:3,8
**hypothetical** 27:2
    59:3

**i**

**idea** 45:17 63:5
**identification**
    10:25 35:19 38:14
**identified** 34:18
**identify** 8:15
    33:14 36:9 38:10
**ii** 3:6
**ilan** 5:9 7:15
    54:23 92:2
**immediate** 89:4
**immediately** 44:5
    60:20
**impact** 39:22
    88:12
**imposed** 88:19
    90:17
**impossible** 67:9
**impression** 49:8
    79:6
**improper** 81:17
**inaccurate** 79:6
**inchoate** 80:19,21
**incident** 61:19
    86:6
**include** 93:11
**including** 41:22
    57:8 76:21
**incomplete** 27:2
    80:22
**increase** 55:17
**incur** 59:5 87:8
**incurred** 59:7,8
**incurring** 55:18
    59:5 86:23

**indefinitely** 45:16
**indiscernible**
    15:15 22:24 23:15
    25:25 37:16 41:11
    41:20 45:25 48:21
    53:5,6 61:20,24
    62:12 63:9,17
    64:24 65:9 67:25
    69:2,6,6,10,11,14
    74:16,21 75:8
    76:8 77:24,25
    78:2,3 80:9 83:19
    86:9 89:10 90:4
    91:16,23 92:14,20
    94:7
**individual** 26:4
    67:17
**industry** 15:11
    28:10 29:23 30:14
    32:17
**inform** 88:23
**information** 13:4
    13:16 18:2,12,21
    18:23 19:10,11
    20:7 21:20,24
**informed** 93:14
**inherent** 61:21
**inhibited** 91:14
**initially** 20:7
    44:20 47:12
**initiated** 71:25
**injury** 70:20 71:7
    72:14 73:14,15
    78:22 84:13,17,18
    84:24 85:18 86:11
    86:15
**inputted** 19:4
**inquiries** 16:20
    21:10
**inside** 40:23 41:2
    63:8
**inspect** 32:7,10

**instance** 18:9
**instructions** 46:21
    56:11
**intellectual** 16:2
**intention** 8:3
    66:10
**interacting** 79:24
**interactions** 35:20
**interest** 16:18
    53:16 60:6,8 61:1
    65:7 69:12 71:19
    71:24 72:2,4,8
    80:13 87:23 89:9
    89:19 90:11
**interested** 16:8
    63:12 78:18,25
    79:1,3,13,14 80:4
    80:12
**interests** 71:23
    72:9 88:11
**internal** 45:7
**international**
    15:10 18:15
**internet** 15:18
    16:2 44:14
**intimate** 51:1
**invested** 62:5 63:6
    63:14
**investigate** 64:17
**investigation** 86:7
**invoice** 34:4 35:4
**invoices** 34:20
    35:7,20 36:8,13
    36:21,21 37:15,23
**invoking** 26:10
**involved** 18:20
    22:16,22 47:5,8
    54:5 68:14 71:1
    73:17 76:4 77:10
    77:16,16 88:11
**involvement**
    51:21

**involving** 78:17
**irrelevant** 78:6
**irreparable** 71:7
  74:14 75:2 78:22
  84:12,18,23 86:10
**islip** 2:3
**isn't** 58:22 64:21
  79:19
**issue** 37:22 39:21
  54:8,20 69:13
  71:8,9 72:13,15
  73:6,12 75:20,21
  76:15 77:2 78:23
  80:3,14 87:21
  93:13
**issued** 37:8 70:21
  76:17,19 86:16
  91:21
**issues** 8:25 25:15
  25:17,20 53:19
  54:9 56:15 69:14
  71:11 76:6 82:1
  90:25 92:14
**item** 10:3 11:1
  34:2 35:20
**items** 21:3 26:22
**it'll** 50:15
**it's** 7:15 12:12
  14:19,20 16:10
  19:19,20 20:14
  21:5,7 23:10 25:5
  25:7,12,23,25
  26:21 27:2,22
  28:4 29:8 30:11
  31:2 34:1,5,6,6,17
  34:18 35:14,14
  38:6,16 39:1,6
  40:8 46:19 48:17
  50:20 52:11 57:9
  61:2,9,19 62:12
  62:24 63:8 64:3
  64:14,15 67:1,8
  67:25 68:13,13

70:3,4,6,9,21 71:6
  71:13 72:23,25
  73:1,3,5 75:3 79:3
  80:4,7 83:18 85:1
  89:7,24 92:25
  94:10
**i'd** 8:24,25 17:8
  35:24 37:11 43:13
  45:24
**i'll** 11:20,20 14:5
  17:20 23:12 27:1
  29:8,10 30:1,12
  33:5,24 34:10
  35:15 37:13 41:7
  42:1 45:25 46:19
  53:2 54:11,20
  61:12 66:17 78:15
  82:4,7,24 84:9,25
  89:1
**i'm** 7:2 8:5,18
  9:13 12:3 13:8,9
  14:13,23,24,24
  17:6 18:16 19:1
  21:8,9 23:2 26:12
  27:19 30:6,21
  33:2,16 34:15
  36:8 38:10 40:24
  43:16,21 44:17
  48:16 49:13 50:12
  53:9,10,11 58:4,5
  58:14,24 60:11
  63:11 65:13 67:14
  67:21 77:1,3
  79:15 80:6,21
  81:25,25 82:2,4
  82:10,15 90:20
  93:17
**i've** 10:10 60:6,15
  60:17 61:6 66:21
  69:8 71:5 82:1,1

## j

**j** 55:4
**jeff** 5:8 8:11
**jeffrey** 3:9 4:2
  7:17
**jeopardy** 74:5
  85:20,23
**jersey** 24:22
**job** 19:2 30:18
  45:15
**jobs** 74:17
**john** 78:5,10
**jones** 5:3 7:16
  54:24
**journal** 15:22
**joy** 30:11
**judge** 2:23 7:3,8
  7:12 41:21 42:13
  61:9,10,11 71:15
  77:9 81:23 82:13
  82:15 86:2 93:19
**judgment** 4:2
  37:16 38:5,8,11
  39:1 41:18 53:13
  53:20,20 54:5,6
  55:21 56:7 59:2
  61:23 62:5 64:1,6
  64:19,25 65:9,20
  67:5 68:3,3,13
  69:20 70:2 72:16
  75:12,24 77:5,25
  78:8,12,13 79:10
  84:5,6,8 85:12,22
  86:18,19 87:10,15
  88:2 89:5,6,10
  90:13,22 91:7
  92:6,11,15,16
**judgment's** 59:1
**juncture** 58:6
**june** 2:5 36:9 73:8
  76:17 96:25
**jurisdiction** 65:4

**justice** 47:5 48:1
  53:17 64:16 74:6
  76:7 78:18 79:8
  86:6

## k

**k** 3:17
**keep** 11:1 23:15
  35:14,16 71:22
**keeps** 30:6 58:11
  66:6
**keys** 56:10
**kids** 73:10
**kind** 29:23 54:18
  78:6 92:4
**kitchen** 24:16
  25:15,15,20 27:21
  27:21
**knew** 15:11 43:2,3
  44:17
**knocks** 28:10,12
**know** 12:4,5
  15:18 16:2 17:5
  17:20 18:14 21:10
  23:18 25:12 26:2
  29:14 31:18,20
  38:5 39:3 45:14
  45:24 47:7 61:9
  61:17 62:25 63:21
  63:21 64:8,13
  65:13 66:12 68:22
  73:10,12,19,22
  76:13 77:3 82:7
  89:14 92:22,23
**knowledge** 13:6,7
  13:12,17,19 14:4
  51:2
**known** 80:16

## l

**laboring** 71:21
**lack** 21:5 43:5
  75:17 80:1
**lacks** 42:2

**land** 28:9
**latitude** 23:11
**laurence** 5:25
**law** 5:11 7:22
  69:20 70:7 71:5
  72:19 87:22
**lawsuit** 71:25
**lawyer** 41:10
  46:20 61:9
**lawyers** 46:22
  60:1
**lawyer's** 46:21
**lay** 14:2 35:15
  36:2 38:11
**learned** 43:9
**lease** 28:9
**leave** 7:8 33:8
  45:16 67:1 82:17
**leaves** 67:7
**leaving** 60:21
**ledanski** 4:25 96:3
  96:8
**ledger** 70:19
**legal** 41:8,10
  71:25 77:13 96:20
**length** 83:15
**lengthy** 28:21
**letting** 58:11
**let's** 75:11
**level** 22:14
**lexis** 70:11
**liabilities** 68:20
**lien** 38:22,24,24
  38:25 39:5,8,9,14
  41:17,23 55:15,23
  58:9,22 59:2
  61:23 65:19,21,22
  68:3 69:22
**liens** 3:3,5 58:7
**life** 85:2
**light** 56:18
**likes** 62:11

**limited** 70:3
**line** 7:18 26:2
  47:3,3 95:4
**lines** 20:10 49:12
**link** 20:8
**liquidate** 39:23
  56:17
**liquidated** 50:9
  68:8
**liquidating** 1:12
  3:15,22 7:13
  33:17 42:7 48:10
  68:10 72:23 80:19
  83:6,19 84:6
  85:19 86:14,16,22
  86:23 87:7,13
  89:6,25 90:20
  92:3,18
**liquidation** 60:20
**list** 10:10,16 19:13
  47:12
**listed** 15:13 16:11
  19:21 24:8,11
  28:15 35:12 44:2
  44:20 45:16,19
  46:5 52:8,11,11
  52:17 68:16 76:8
**listing** 11:15,16
  18:5,5 19:15,16
  20:6 32:8 44:11
  52:18
**listings** 16:5
**litigation** 38:7
  72:3 78:17
**little** 30:9 42:10
  45:3,5 66:15
**live** 44:11 81:8
**lived** 26:4,9 49:8
  67:20
**living** 24:16 28:2
  61:19 84:25
**llc** 3:16 4:6 46:7
  55:4 62:10 67:4,7

67:9,10 79:14,14
  79:21
**llc's** 75:20,21
**llp** 5:3,18
**located** 3:4 55:1
**location** 25:4
  28:12 62:16,16
  63:7,12
**locations** 24:23
**locks** 40:19 41:15
  56:12
**logistically** 64:15
**long** 12:11 14:14
  27:25 30:3 43:10
  45:19 73:16
**longer** 67:2,3 85:9
**look** 15:25 63:2
  68:23,24
**looked** 20:25
  23:18
**looking** 16:25
  19:6 20:6,17 36:7
  45:21 46:3,4
  67:10
**lose** 58:11 86:3
**losing** 75:14
**loss** 86:11 87:9
**lost** 86:4,5,7
**lot** 25:12 73:19
**loves** 62:11
**low** 26:5 45:10
**lower** 13:15 23:23
  24:1 45:8 67:11
  71:13
**lurking** 73:16

### m

**m** 1:12 3:9,14 4:3
  6:4 29:25 34:13
  40:5 49:21
**madison** 5:22
**mail** 66:8 69:19
**main** 3:23 8:5 9:5
  10:4 13:1 22:5

34:25 53:19 82:21
  82:24 90:21
**maintenance**
  85:11
**majority** 60:20
**making** 73:7
**man** 69:1
**management**
  34:19 36:8
**managers** 5:19
  94:10
**manhattan** 14:13
  22:15 50:23 51:2
  56:22 57:1
**march** 36:9 40:13
  53:14 54:6 56:8
  86:24
**mark** 85:19
**marked** 11:2,4
  12:8 35:11,20
  38:16
**market** 15:3
  19:17 24:3,4
  28:22 30:3 32:16
  32:20 50:23 51:2
  51:13,23 57:2,23
  83:9
**marketed** 15:23
  16:13 19:20 22:19
  23:4,21 57:3
  72:23 83:17
**marketing** 24:1
  27:11 29:12,13
  30:18 57:15,16
  83:6,7
**maryam** 4:5 5:16
  7:22
**material** 87:21,22
**materials** 27:20
**matter** 1:6 59:1
  88:19
**matters** 35:17
  55:7,9 72:6,7

maximize 50:5 57:2

maximizing 45:22

maximum 31:8 57:13

mean 19:22 25:6 40:24 62:23 64:22 92:25

means 47:7 62:1 67:3

mediums 15:6 16:3,23

meet 66:23

member 22:13

memorialize 89:1

memorialized 56:7

mentioned 25:9 27:21 28:8 47:4

menus 20:6,13,21

merits 73:24

microphones 82:9 82:18

million 25:2 26:5 26:6 31:2,3,11 32:19 43:23 44:20 51:12,24 52:4 56:5 57:7,10 60:8 60:17 63:23 64:2 64:8 68:5 72:25 74:5 83:2 89:13 89:14,18,19 90:3 90:15

mills 7:2

mine 65:4

mineola 96:23

minimized 21:5

minute 10:19

minutes 82:3,5

mischaracterizes 27:3

misses 85:19

missing 25:10,22

mode 44:18

modest 85:11,24 85:25

moment 27:13 46:16 48:19 55:6 77:3

monetary 57:9

monetize 47:13 58:12 61:25

monetizing 63:5

money 3:18 50:14 58:10,15 59:19,19 60:7 63:6 67:11 69:4 73:19 77:23 87:3 88:7

monies 60:15

month 37:1 86:25 87:1 90:1

monthly 36:14 68:7 85:15,25 87:8 88:9

months 26:17 29:19 37:7 66:8 72:24

moot 90:12

morning 7:14 40:8,9

motion 3:2,3,22 4:1,5 7:19 8:5,6,6 8:21 9:19 34:17 38:8 53:6,11,11 54:12,13,15,18,25 55:1 56:16 57:4 65:13 67:22 72:12 80:10,12 82:22,23 82:24 83:22,25 84:3,22 88:16 90:18,18,21 93:9 93:10 95:6,8

motions 53:12 58:19 82:21

movant 71:3,7 72:14 73:14 74:1 74:14 84:11,16,22 85:3,17

move 8:25 17:8 37:11 54:9 68:21 73:22 89:17

moved 12:6

moving 30:16 70:8 73:4 93:4

multiple 35:7,10 42:12 43:18,19 76:10 79:4,17

mute 7:5 53:3 66:17 93:18

muted 82:18

mystery 68:14

**n**

n 4:5 5:1,16 7:1 95:1 96:1

n.y. 3:5

name 8:17 12:24 94:8

narrative 23:10

nature 3:18 56:2 67:21 88:11

necessarily 8:4 44:13 45:22 48:14 68:22

necessary 94:5

need 14:15 18:9 25:14 45:19 54:4 65:18 73:12 87:8 89:13 90:14 92:16 92:22,23

needing 25:13 77:12,13

needs 59:16

negotiation 44:3

neighborhood 64:2

neighbors 62:14

net 56:18 61:25 62:1

network 15:13,15

never 67:6,6 81:18 88:7

new 1:2 2:3 3:5 5:6,14,23 15:8 24:5,6,22,22 25:17,23 31:9 38:4,4 49:10 65:21 69:19 70:7 78:1 92:8,15 93:5

niche 28:12

nobody's 63:20

nolan 3:9 4:2 5:8 7:17 8:11,11,19 8:20 9:4,14,17 10:7,9,15,18,23 11:20,23 12:20 13:22,25 14:7,10 14:15,18,22 15:1 17:8 22:1,3 23:9 26:12 27:1 29:8 32:1,3 33:5,25 34:8,12,14 35:8 35:13,19 36:4,5,6 37:11 38:3,19,20 40:1 41:7 42:1 45:25 48:16 49:19 49:20,22 51:19,20 52:2,23 53:7 54:16,17 58:4 64:20 66:7,7 69:9 69:13,25 70:1 74:8,13,15 77:16 82:11 93:17

nolan's 12:12 26:11

nominally 37:18

normal 16:22

north 69:18

note 81:23 94:3,3

noted   94:5
notes   43:14 83:4
   84:13
notice   3:3 43:6
   89:8
notified   81:13
notify   82:10
noting   91:6
notwithstanding
   56:11
number   7:6,10
   9:3,5 10:11 21:4
   34:15,23,25 41:21
   42:14 54:8 55:6
   56:8 57:8 59:16
   59:17 64:22,22
   65:4,6,10,10,25
   66:3,3,11,13,24
   67:24,25 72:24
   76:3,20 79:23
   80:1 92:7,13,13
   93:5
numbers   45:22
ny   5:6,14,23 96:23

**o**

o   2:21 7:1 96:1
oath   33:24
object   11:18 27:1
   29:8 33:2 41:7
   42:1 46:1 48:16
objected   35:10
objecting   21:19
   83:11
objection   9:7,9,10
   9:23 11:6,8,11
   12:9,14 14:1 20:2
   21:14,15,17 23:9
   23:12 26:7 34:4,8
   34:11 35:23,24
   37:14,14,20 38:5
   38:7,13 45:25
   51:15 55:3,5

objections   8:23
   17:10 26:11
obligations   65:8
   80:17,25 83:20
observe   49:12
obtain   57:13
obtained   18:23
   55:11,21 57:5,16
obtaining   55:25
   88:3
obviously   16:14
   19:19 20:18 52:25
   62:23 65:2 67:1
occupancy   61:22
occupation   14:12
offense   61:24
offer   21:19 23:15
   30:23 31:2,3,6,11
   31:11 32:19 43:22
   44:9 51:12,13,23
   51:24 57:6,8,9,11
   57:12 63:17,18,18
   63:20 73:1 83:5,7
   83:10,12
offered   12:18 19:7
   52:4 53:5 83:13
offering   9:16
   10:21,23 35:22
offers   29:17,17
   30:25 43:18,19,19
   43:20 44:2,4 57:5
   57:12
office   15:13 42:21
   65:21
officer   33:25
oh   20:2 40:9
   58:24
okay   7:2 9:22
   11:23 14:7,18,22
   19:22,23 28:3,7
   36:21 40:22,24
   43:5,9 44:13,19
   46:5 50:17,21

82:18 92:21
old   15:16 61:7
   96:21
once   59:9 75:3
   76:16,18 78:15,16
   81:4
ongoing   48:6
   55:18 68:7,10,11
   69:12
online   16:7 19:20
   20:19,25 21:8
open   19:17 83:14
opened   20:22
openly   16:13
opine   80:12
opining   26:8
opinion   27:15
   30:20 70:21
oppose   76:1 81:14
opposed   19:16
   45:22 56:4 61:10
   63:4 68:19 93:15
opposing   54:13
   74:17,21,22,25
   79:25
opposite   63:10
   79:18
opposition   54:15
   70:12
option   33:12 53:2
   68:2
optional   21:16,22
oranges   25:7
order   3:4,7,21 4:1
   4:5 40:14 41:14
   41:20 42:13 46:6
   47:4 54:8 56:12
   59:19 63:14 75:19
   76:17,19 81:2
   90:21,24 91:3,4
   91:15 92:4,19,22
   93:1,8,10,14

ordered   91:12
original   35:4
   92:12
originally   47:17
orion   1:8,13 3:1
   3:15 7:6 33:17
   49:23
outdated   27:22
outlined   72:11
outside   48:17,19
outstanding   86:18
overall   42:8
overlap   8:5
overruled   21:15
   37:15,20 72:20
owed   37:6 50:13
   58:22 65:15 69:17
   73:19 78:2
owned   76:20 81:7
owner   37:18,19
   38:22 67:2,17
   80:16,17 81:6
   84:11 85:10,23
ownership   46:7
   80:18 81:2,4 89:5
owns   59:1 80:13

**p**

p   3:9 4:2 5:1,1 7:1
pachulski   5:3
   7:15 54:24
page   34:22 35:3,4
   35:9,9 36:1 95:4
pages   19:6,7,8,12
   20:17,20,20 21:23
   35:10,20
paging   44:13
paid   36:19 37:8
   59:1,2 60:9 64:24
   65:1,18,22 67:12
   74:6 78:12,13,13
   85:15,16 88:14
   89:11 90:1,13

pandemic 28:14 57:19
paolo 70:4
paper 21:9
papers 70:2,12,12 74:11
parameters 66:23
park 3:5 5:21 23:19 24:5,7,25 28:11
parlatore 5:11 7:22 76:5
parmar 41:22 42:15,16 59:15,22 71:16 73:7,15 74:2 76:20,22 78:15,16,16 81:16 84:19
parmar's 47:8 70:13,21 77:6
part 10:3 11:9 13:10 15:2 21:21 35:10 38:8 43:17 55:23 60:12 68:13 88:25 89:1,12 91:17 92:5
partial 53:13 88:1
particular 30:21 42:14 47:10 48:2 50:21 67:15 68:18 68:19 74:15,25 76:21 77:2 79:22
particularly 28:1 47:22 62:24
parties 7:5 54:2 68:14 71:1 79:23 79:24 80:2 82:16 84:1,4 87:25 88:23 89:1,9 91:1
partner 76:5 81:12
party 18:3,11 21:19 70:9,20

71:24,24 80:12 83:11
passed 46:14
pay 45:5 59:8,9 64:1 68:3 74:4 85:10,24 86:3 87:8 88:6
paying 37:19 50:13 55:19 64:19 68:8,17 74:2 78:11 86:24 88:9
payment 3:7 65:9 89:4,4
payments 87:1
payment's 65:17
payoff 65:16,25
pays 68:3
pen 79:18,19
pending 4:5 8:6 19:17 39:21 47:24 47:25 53:11 54:14 54:16,20 59:14,20 61:16 63:15 67:16 67:23 68:6 69:9 69:13 70:2 82:21 82:23 83:24 84:3 84:7 87:24 88:24 89:3,10,12 90:5 90:18,24 91:3,9 93:9
penthouse 25:2
people 21:11 61:18 79:17
percent 31:8 57:10 61:2 69:20 83:2 89:19
perception 32:17
percolate 58:9
percolating 66:13
period 30:3,4 44:3 58:16 62:2 83:6,7 85:4,9 89:11,17 89:20 90:6,7,9

permit 80:11
permitted 80:23 80:24
person 62:9,9
personal 16:14
personally 40:20 49:7
perspective 25:5,7 44:23,25 49:24 57:9 67:8 75:21 80:4,15
pertinent 14:19
perused 21:11
phone 7:5
photographs 49:3 49:6
phrasing 75:18
picture 67:3
piece 11:24 54:21 80:2
pilot 37:5
pittinsky 5:18,25 69:16 71:23 73:18 76:24,25 77:11,19 77:23 80:11,22 82:13 93:19 94:2 94:10,11
pittinsky's 76:15
place 41:24 45:2 49:15 73:6,19 76:4,20 77:15 79:7,12,23
plain 93:9
plaintiff 1:14 8:12 86:14
plaintiff's 10:6 11:19 12:17 21:25 34:16 37:25 38:18
plan 50:12 60:5 60:14,16,24 65:8 83:21 87:4 89:24 91:8

playing 73:21
plaza 2:2
pleadings 92:22
please 7:4,5,13 8:15 16:25 17:20 33:14 51:18 82:3 82:8,9,17
pleasure 73:18
plus 65:7 89:19
point 19:18 23:4 24:2,9 26:24 27:10,16 33:3 37:17 41:5 44:24 45:1 63:11 65:14 67:11 69:18 76:6 94:5
pointed 62:17
points 24:18
pool 50:16
portion 28:11
portions 21:19,20
position 73:2 74:4 77:6
possession 36:20 40:13 41:4,5 55:11,20,25 56:13
possessory 56:6
possibility 71:4 87:12
possible 51:13 60:7 64:15,18 68:21
post 64:1,18
posted 89:13 90:3 90:3
posting 64:5,7
posts 68:5
potential 44:7,12 76:8 86:17 87:9
potentially 60:11 60:13
poundage 65:18

practice 16:21
practicing 33:22
  46:20
precarious 73:2
precise 89:7
precisely 43:10
  66:12
preclude 64:2
prefabricated
  63:1
prefer 81:5
prejudiced 58:20
prejudices 87:2
prejudicial 80:20
prepared 64:1,7
  82:20,20
present 6:1 9:19
  58:4
presented 71:9
preserve 64:14
preserving 81:20
presiding 7:3
pretty 63:23
prevailing 87:22
prevent 63:15
previously 22:10
  50:19 51:3 88:1
price 23:4,8,14,23
  24:1,9,18 26:24
  27:10,16 28:5,7
  32:5,20 44:24
  45:1,6,6,8,10,17
  45:20 50:5,6
  57:17 65:7 68:23
  68:24 73:23 89:14
  89:19
priced 29:4
pricing 45:12
primarily 76:5
primary 84:2
print 21:8,10
printed 20:19
  21:7

printouts 9:12
prior 16:14 36:20
  50:25 55:24 78:12
  85:9,23
pristine 27:11,13
private 48:13
probably 58:19
  69:21 70:14 73:7
  73:8
problem 70:22
procedural 91:4
  92:19,21
proceed 86:20
proceeding 8:7
  11:2 34:23,25
  35:6,21 46:11
  47:18,18,20,21,24
  47:25 48:4,4,5,6
  48:19 53:14,18,22
  53:23 54:3,8
  55:13 56:9,9
  71:20 75:22,23
  76:8,12 77:10,15
  78:20 86:15 87:16
  90:22 91:5 92:7
  92:15 93:4,5
proceedings
  42:12 48:2,3 68:1
  71:25 72:19 77:17
  93:24 94:15 96:4
proceeds 50:11
  59:22 60:11,13
  62:1 88:14
process 18:23
  47:13 50:12 52:8
  54:5 56:3 57:15
  57:16,22 58:12
  75:4,14 83:13,15
  83:18
professional
  27:15 59:6
projection 16:21

proper 81:9 83:18
properly 83:17
properties 22:14
  22:19 57:25 63:1
property 3:2,18
  3:22 11:17 14:24
  15:3,4,6,7,19 16:3
  16:6,9,10,19,20
  17:2 19:13,15,16
  20:8,11 21:1,2
  23:15 24:8 28:15
  28:22 32:5,7,16
  32:20 34:19 36:7
  36:22 37:6,17,18
  38:22 39:5,9,11
  39:15,18,23 40:13
  41:14 44:20 45:19
  49:25 50:18 51:9
  51:14,21,23,25
  52:10,17 55:2,8
  55:14 56:3,11,20
  57:2,2,3,4,5,6,13
  57:16,18 58:10
  59:2 62:23 63:14
  63:15 67:6,15
  68:4,11,16 69:2,6
  72:23 73:5 75:5
  75:10,14 77:8
  78:16 83:5,9
  85:18,20 86:9,11
  86:12 87:6 88:3,7
  89:5 90:2 95:6
propose 35:13
proposed 83:16
  90:23 93:1
prosecute 54:1
  58:13,16 62:3
prosecution 86:6
protect 40:23
  75:15,19 90:10
protecting 41:2
protesting 79:4

provided 17:6
  89:9
public 71:19 72:1
  72:4,8,9 87:23
  88:11
published 18:24
pulling 79:18
purchase 22:22
purchased 57:17
purchaser 67:18
purposeful 63:13
purposes 10:25
  21:17,22 35:19
  38:15 53:21 66:11
  91:1
pursuant 40:13
  41:17
pursued 48:14
pursuing 48:1
push 57:21
put 7:5 10:10 15:7
  16:5,7 17:6 18:1,2
  18:9 19:8 53:2
  59:22 62:2 63:1
  74:4 76:2 77:12
  88:7
putting 59:18

**q**

qualifies 43:17
question 9:17
  17:3 20:2 22:23
  23:9 26:12,20,22
  27:2,17 29:5,8,14
  29:25 32:23 33:5
  41:7 42:1,3 46:1
  46:13 48:17 51:16
  51:17 52:15,16
  58:2,6,25 61:6,14
  62:20 63:22 64:15
  74:14 91:19
questioned 56:23
questioning 47:3
  47:3

**questions** 13:10
19:25 31:23 33:6
40:1,11,12 49:17
49:20 52:2,14,14
52:23
**quick** 40:11,12
46:3
**quickly** 29:3,6,6
29:24 30:16,20
60:7 68:24 69:17
80:11
**quite** 26:19 42:8
73:16 75:11 84:25
85:2

**r**

**r** 2:21 5:1 7:1 96:1
**rad** 21:2
**raise** 13:9 91:20
**raised** 67:20
69:15 71:8 72:14
73:6 74:13
**range** 23:20 26:5
26:6 68:5
**ranger** 26:10
**rate** 60:23 69:21
**rates** 61:1
**reached** 66:21
76:1
**read** 55:12
**readily** 20:15 65:1
89:7
**ready** 65:17
**real** 8:18 9:12
14:13 15:8 16:21
18:1 22:13 24:20
25:7 28:20 42:14
51:22 56:21,22
62:23 67:2 78:18
79:1,3,13,14
**realize** 48:25
66:23 75:7 76:23
**realized** 78:16

**really** 15:23 29:20
55:7 59:11,15
64:21 67:8 79:19
86:10
**realtor.com** 16:6
16:18,23 20:23,25
**reason** 24:1 28:4
41:11 51:11 62:20
63:4 67:13,16,22
77:9 81:5 85:22
**reasonable** 28:22
31:9 58:16 62:2
**reasoning** 63:10
**reasons** 53:24
68:20 77:5 83:25
90:19 93:10
**recall** 39:6 43:9
43:11 44:1 60:18
60:24
**receive** 29:17
30:25 36:15 51:25
**received** 30:22
43:18 44:2,4
51:24 57:24
**receiving** 37:19
89:23
**recess** 82:14 93:25
94:14
**recognize** 36:10
**recognized** 17:23
18:1
**recognizes** 89:22
**recollection** 43:13
44:6 61:2
**recommend** 27:14
**record** 9:2 10:2
11:1,3,6 12:9
14:21,23 21:16,21
34:3,19 35:19,22
36:3,8 38:12,15
55:12 56:24 65:24
66:15 81:21 83:10
83:12 84:15,17,24

85:8 87:16 89:15
90:19 91:6,12,17
91:25 93:10 94:1
94:3,9 96:4
**recorded** 7:4
65:20
**recover** 69:2 87:4
**recoverable** 67:3
**recoveries** 56:18
**recovering** 60:16
67:11
**recovery** 3:18
59:7 60:10
**redfin** 18:3
**redirect** 31:25
32:2 49:19,21
**reduce** 60:22
**refer** 34:15 46:3
55:4
**reference** 14:23
48:1
**referenced** 34:5
**referencing** 14:24
28:6
**referring** 55:2
**refiled** 92:23,24
**regarding** 47:23
56:15
**regardless** 29:3
**register's** 65:21
**regularly** 21:9
**rejected** 81:17
**relate** 53:12
**related** 4:3,7
36:14
**relates** 53:18
**relation** 85:24
**relative** 85:10
**relatively** 85:24
85:25
**relief** 53:13 92:17
**rely** 51:8

**rem** 47:18,20 48:4
**remain** 52:8,18
54:3 89:20 90:6
92:12
**remained** 90:10
**remaining** 53:22
54:7 92:20
**remains** 86:18
90:15
**removed** 25:21
**rendered** 91:24
92:12
**renders** 92:5
**renovate** 25:18
**renovated** 25:2,5
**renovation** 25:2
27:18,25
**renumbered**
17:25
**reorganization**
83:21 87:5
**repeat** 13:14 30:1
30:8
**repeats** 21:23
**repetitive** 35:14
**rephrase** 17:21
27:4 42:3 51:17
**replaced** 56:12
**report** 91:11,23
**represent** 36:12
**representation**
12:12 26:25
**represented** 31:16
44:17 51:3
**represents** 62:10
**request** 61:15
83:24 84:7
**require** 91:20
**research** 32:13
**resided** 26:16
**resident** 50:18
**residential** 3:8
5:19 50:18 51:2

[resolution - sell]                                                                       Page 19

**resolution**  81:4
**resolve**  72:2
**resolved**  93:4
**respect**  9:18 32:24
  36:22 39:9,22
  55:8 70:13 80:13
  81:11,19 83:24
  84:23 86:13 87:11
  87:23 92:5
**respective**  37:1
**response**  68:9
**responsible**  80:24
**result**  80:23 88:4
**resulted**  16:18
  83:15 85:12
**retained**  40:16
  56:20
**retrieving**  75:5
**return**  69:21
  82:16
**reversed**  58:14
**review**  18:19
  43:14 91:10,15
**reviewed**  36:19
**revisit**  90:8
**right**  7:20 8:2,3
  8:14,19,19 9:6
  10:1,19,20 11:20
  12:7,15,15,21
  13:4,8,9,21 17:13
  17:21 19:11,24
  21:3,12,15 23:2
  23:21 24:16 25:24
  28:18 29:22 30:7
  33:7,13,19,24,25
  35:18 37:13 38:14
  39:25 40:3,9,17
  41:6,9,13 42:11
  43:22,24 44:21
  45:21 46:8,14
  47:1,6,16 48:9,21
  50:9 52:10 53:4,9
  53:9 54:22 56:6

59:13 61:3,5,21
  66:10,19 68:8,9
  68:25 69:21,24,24
  73:3 77:14 79:2
  81:24,24 82:8,15
  82:20 90:25 93:16
  93:21 94:13
**rights**  60:14 61:18
  64:25
**riot**  26:10
**risk**  56:3 59:18
**river**  3:5,16 4:6
  5:12 7:21,24
  14:25 22:15,19
  24:13,15 46:7
  53:25 54:13 55:1
  55:3 58:8,12
  61:16 63:25 67:18
  75:13 82:22 83:11
  84:5,11,16,20
  88:2,6 91:15
**riverhouse**  5:20
  94:11
**road**  72:24 96:21
**rockefeller**  5:21
**rodeo**  50:19
**role**  48:10
**rolling**  66:6
**room**  24:16
**rooms**  32:11
**rosenberg**  5:18
  94:11
**route**  68:23,24
**routes**  76:3
**row**  62:25
**rule**  26:11 46:23
  70:4,8,8 82:6,21
**ruled**  91:7
**rules**  84:8
**ruling**  34:11
  55:12 70:5 79:9
  82:2,5 84:4 87:14
  87:25 88:21 89:2

90:23 91:12,13,24
  93:15
**rulings**  95:3
**running**  64:16
  69:20

**s**

**s**  2:22 3:18 4:3,7
  5:1 7:1,3
**sake**  34:21
**sale**  3:4 7:18 8:5
  8:21 9:19 11:25
  12:3,8,10 14:4
  30:16 34:17 39:19
  39:21 45:5,21
  46:4,4 52:17,19
  53:6 54:12,13,15
  54:18,25 55:24,25
  56:19 57:4,19
  58:7,7 59:19
  61:15 63:15 64:2
  64:23,23 65:7
  66:25,25 67:22
  68:5 73:5,16,23
  75:7,11,25,25
  81:17 82:24 83:1
  83:3,13,16 86:4
  86:17 87:9 88:14
  88:14 89:14,19
  90:21
**sales**  3:8 15:3
  32:23 56:2 57:17
**sartison**  1:16 3:11
  3:16 7:11
**satisfaction**  87:18
**satisfactorily**  70:9
**satisfied**  72:7
  84:14
**satisfying**  80:8
**saw**  56:25
**saying**  24:21
  26:13 27:20,22
  58:5 61:7 67:5

**says**  76:25 77:4
**scharf**  5:9 7:14,15
  26:7 34:8 54:17
  54:23,23 58:18
  59:4 60:2 65:12
  66:5,14,20 92:2,2
  92:21 93:7,20
**schedule**  3:21
**scheduled**  55:24
  75:25
**school**  15:16
**scope**  33:3,4
  48:19
**scratches**  25:22
**screen**  8:16 33:15
**screenshots**  11:12
  11:14,14
**script**  61:5
**second**  72:10
  86:13
**section**  75:3
**secure**  42:14 68:6
  83:3
**secured**  41:21
  42:13 50:13 60:5
**securing**  41:11
**see**  8:14 20:9,9,15
  27:17 46:14 64:17
  66:17,22 71:8
  76:23
**seek**  39:14 91:10
**seeking**  67:13
  91:14
**seen**  32:23 49:1
**sees**  67:4
**seizing**  47:8,13
**seizure**  86:8
**selected**  57:6
**self**  74:4
**sell**  3:2,22 15:3
  23:20 29:3,18,19
  29:20 39:11,15,23
  49:24 55:1 82:22

95:6
**seller** 30:19 44:25
**selling** 30:20 50:3
  51:9,25 56:22
  57:25 73:4
**sells** 30:17
**send** 18:4
**sense** 66:18
**sent** 66:8
**separate** 9:21
  10:14 38:9 53:22
  54:8 77:17 92:7
**september** 75:13
  78:1 85:13,16
**served** 71:19
  72:10 74:7
**services** 51:5
**set** 67:1 70:1,4
  72:1,9 78:8 90:19
**sets** 14:3
**settlement** 81:3
**settling** 80:14
**sever** 53:21
**severance** 93:1
**severed** 54:7 92:9
  92:15
**severing** 91:4
  92:20
**severs** 54:2
**shape** 75:4 77:1
**share** 37:6 65:17
**shared** 37:9
**sharks** 76:10
**sheriff** 56:2
**sheriff's** 39:19,21
  55:24,25 68:4
  73:16,23 75:7,11
  75:24,25 81:17
  86:4,17 87:9
**shiny** 49:10
**short** 28:23
**shot** 78:5,10

**showed** 57:5
**shown** 70:17
**shows** 70:18
**side** 24:9 25:3
  28:5 45:11 52:13
  53:5 70:19 75:1
  76:15 77:2
**sides** 63:10 74:17
  74:21,23,25 79:8
**significant** 28:10
  28:12 37:22 49:4
  71:6 87:13
**simplifies** 53:25
**simply** 19:17 64:9
  64:14 68:10 77:3
  79:15 92:16
**sing** 67:5
**single** 34:22 35:3
  35:25 70:14
**sir** 33:13
**site** 18:13 19:9
  20:11
**sites** 18:3,4,15,16
  18:16,18,20,21,22
  19:1 20:5
**sitting** 58:15
  76:24
**situation** 30:4
  67:8
**six** 29:19
**slow** 93:17
**slowly** 30:16
**small** 60:21
**smaller** 61:24
**sold** 23:23 29:6,24
  50:18 56:3 59:10
  67:25 72:23 73:20
  75:2,3 81:5 85:18
  85:20 86:12 87:6
  90:2
**solutions** 96:20
**somebody** 26:13
  51:1

**somewhat** 11:16
  45:4,8 49:9 75:17
  85:19
**sonya** 4:25 96:3,8
**soon** 63:23
**sorry** 29:25 30:6
  40:24 45:25 58:1
  58:24 80:21 92:8
**sort** 45:18 74:17
  76:15
**sought** 42:13
  81:16,18
**sounds** 78:14
**speak** 7:4 19:15
  20:6,19 25:10
  26:2 58:3 66:6
  76:11
**speaking** 7:5
  47:22
**speaks** 65:12
**specializes** 22:14
  31:13,16
**specializing** 28:21
**specific** 19:7
  20:17 46:23
**specifically** 18:25
  19:1 24:6 26:15
  72:9
**speculation** 51:16
**speedy** 53:17
**spite** 48:5
**split** 54:19 56:4,5
**spoken** 77:11
**stand** 13:22
**standard** 29:23
  30:2,13,14 31:9
**standing** 79:17
**stands** 37:14
  66:18 87:16
**stang** 5:3 7:16
  54:24
**stanton** 6:3 7:19
  8:10,13,14,17,17

8:18,21 9:10,24
  10:13,22 11:21
  12:11,19,21,22,25
  13:3,7,13,19 14:1
  14:9,11 15:2
  17:15,17 22:1,8
  22:10 26:8,8 27:8
  31:24 32:2,4 33:8
  43:19 44:6,16
  49:9 51:1,3,8,8,22
  56:20,23 57:1
  62:17,19 82:25
**stanton's** 8:23 9:7
  9:15 10:2 12:2
  13:21 34:7 44:23
  57:14
**start** 7:6 8:8,12
**state** 38:4 41:18
  64:25 71:25 75:24
  76:12 77:10 78:1
  79:10 81:13 84:10
  85:21 87:10 89:4
  90:13 94:7
**stated** 93:10
**statement** 32:4
  38:9 39:16 50:10
  50:23 56:15 70:23
  81:10,21
**states** 1:1 2:1
**status** 3:12 19:19
  80:17
**stay** 4:5 8:6 33:9
  52:25 53:11 54:14
  54:15,20 59:14,20
  61:16 63:15 67:13
  67:16,23 68:6
  69:9,13 70:2,21
  71:19 72:19 74:7
  80:10,10,12 81:5
  81:16,18 82:1,3,8
  82:23 83:24 84:3
  84:7,13,22 86:11
  86:15,19 87:7,24

88:10,12,16,18,24
89:3,10,12,16,20
90:5,6,18,24 91:3
91:9 93:9,11 95:8
**stayed** 76:2 80:1
**staying** 70:13
**stays** 68:2
**step** 14:8
**sterling** 8:1
**stigma** 28:10
**stop** 47:14 73:22
89:11
**straight** 26:2
**strategically** 45:2
**strategy** 45:11,12
**stream** 61:15
**streams** 58:3 69:8
**street** 15:22
**streeteasy** 15:21
18:9
**strike** 39:8,14
50:17
**strings** 64:23
**strongly** 67:18
**sub** 35:20 38:16
**subject** 12:15
36:22 38:6 39:19
42:17 50:10 60:13
67:16
**submit** 12:3,4
73:3,13,25 90:21
92:4,16 93:1
**submitted** 8:20
34:23 71:5
**subsequent** 41:13
**subsequently** 39:1
**substantial** 56:2
58:21 65:6 68:5
70:20 71:4 85:9
85:12,17 86:15
87:11,19 88:4
**substantially** 11:9

**subsumed** 55:23
**success** 71:4 87:12
**succinct** 23:16
46:21
**suffer** 70:20 71:7
71:7 72:14 73:14
74:1 75:2 84:12
84:17 85:17 86:15
**sufficient** 27:9
**sugarcoat** 72:15
**suggested** 27:10
**suit** 3:18
**suite** 5:13,22
96:22
**sum** 67:11 73:25
**summary** 4:2 38:8
62:5 87:15 88:1
**support** 8:21 83:1
**supported** 84:21
**supporting** 9:7
84:18
**supreme** 61:17
71:14 81:12
**sure** 8:17 18:14
18:16 19:1 21:8,9
27:6 30:21 41:3
44:17 46:16 49:13
58:18 59:4 61:4
86:3
**surrounding**
32:14 50:7
**suspension** 78:9
**sustained** 29:10
**swear** 13:10
**swearing** 13:10
**swept** 78:17
**swift** 45:21,24
**swiftly** 68:21
**sworn** 13:9
**syndicate** 18:15
**syndicated** 18:8
**syndicates** 15:8
19:4

**system** 19:3

**t**

**t** 96:1,1
**table** 59:3
**tabs** 11:13 20:22
**take** 7:9,12 8:5,8
14:8 18:12 28:2
33:12 37:13 46:16
53:2,10 54:11
64:4 68:11,18
69:1 78:23 80:3
81:8 82:24
**taken** 11:14,16
49:3 69:4 88:19
**talk** 59:25 61:6,11
61:17 62:1
**talking** 45:14
65:14 73:18
**taub** 70:10 72:11
**taxes** 37:6 55:16
85:11
**team** 8:18 51:22
57:3
**tear** 25:12,16
26:22 27:9 28:8
62:18
**technology** 30:12
**tell** 14:11 16:16
16:25 19:8 23:7
46:19 73:10 82:5
**temporarily** 82:4
**term** 21:6 43:5
80:1
**terms** 14:6 26:23
30:16 63:24 78:11
85:10 92:3 93:12
**terrace** 3:16 4:6
5:12 7:21,24
14:25 22:16,19
46:7 54:1,13 55:1
55:3 58:8,13
61:16 63:25 75:13
82:22 83:11 84:5

84:11,20
**terrance** 67:18
84:16 88:3,6
91:16
**terrible** 46:23
**testified** 28:16
43:16,16 44:16
**testifies** 12:11
**testify** 23:13
**testifying** 41:10
**testimony** 13:11
13:22 14:17 26:25
27:3,8 30:13
45:13 55:7 57:14
82:25 83:4
**thank** 8:2 11:23
14:7,18,22 15:16
15:25 17:14,22,23
20:1 21:12 22:7
31:24 33:7,10,11
34:12 36:5 37:10
38:19 39:25 40:4
40:11 44:19 46:17
49:18,19 52:22,24
54:23 61:3 66:19
66:20 68:25 69:24
74:8 81:24 82:10
82:11,12,13 91:18
91:21 92:1 93:7
93:17,19,20,21,23
94:13
**thanks** 35:18
**that'll** 35:18
**that's** 9:17,18,21
10:5 11:4 14:16
19:2 20:15 21:4
25:3 26:23 27:23
30:18,21 31:13
37:5 38:12 39:4,9
40:9,15 41:13
42:24,25 45:18
47:19 52:7,12
56:8 58:22,24

61:23 62:25 64:3
64:21 65:4,4,7,10
66:12,13 67:13
68:3,20 70:10,22
72:14 74:6,16
75:12,16 77:1
78:21 79:2,21
80:8 81:6 88:11
89:14 92:9,13
93:1 94:8
**theoretically**
90:12
**there's** 17:19
20:18 21:8 25:22
28:1 29:19,22
37:21 38:5 56:2
59:14,17 61:20
63:18,18 71:1
74:14 75:3 78:7,8
81:19 83:10 84:15
84:16,18 86:8,19
87:17
**they're** 11:13,14
24:23,25 29:4
36:9 70:18 71:23
71:24 72:17,18
79:18 84:21
**thing** 24:21 47:1
67:10 94:8
**things** 18:8 20:10
20:16 28:7 35:2
48:9 67:20 69:22
79:10 92:24
**think** 8:12 14:3
16:11 18:14 20:24
30:17 34:6,21,25
35:3 39:6 44:16
45:2 47:1 49:13
50:3 53:2 55:6
58:18,20 59:9
60:17 64:12 68:20
70:16 71:20,21
72:10 74:11 79:16

81:23
**thinking** 45:20
60:4 61:10,11
**third** 5:5 18:3,11
71:3,17 72:11
90:5
**thought** 23:20
45:3 88:17
**threatening** 68:4
**threatens** 89:5
**three** 25:6 65:11
66:8 67:24,25
70:17,25 72:9
74:3 85:1,9 88:8
**thumbs** 82:18
**tie** 59:23 60:11
**tied** 59:15,16
**time** 11:15 16:13
16:15 22:25 27:25
28:21,23,23 29:3
30:4,4 32:7 41:17
41:25 42:9 44:1
44:10 46:5 47:21
48:13 56:1,1 58:9
58:16 62:2 65:17
66:1 73:12,16,17
73:18 75:11,25
77:11,14,18,23
84:10 85:1,2,4,9
86:21,21
**times** 25:19 69:11
**timing** 50:14 65:3
**title** 37:16 62:5
84:5 88:3 91:8
**today** 36:23 54:25
56:25 60:2 66:18
82:6 84:4 90:23
91:13
**told** 44:6,8 46:22
73:18
**top** 59:4 84:10
**total** 30:25

**totally** 24:22
**touch** 47:2
**tough** 72:17
**town** 63:17
**trade** 5:13
**tranche** 60:5
**transaction** 48:13
**transcribed** 4:25
**transcript** 96:4
**transfer** 3:19
78:20 88:4
**transferee** 55:5
**transferred** 48:12
69:3 77:21
**transferring** 46:6
**treat** 58:7,8 81:6
**treating** 84:7
**tremendous** 77:22
**trial** 3:21 11:3,6
12:9 21:16 35:22
36:3 38:15
**true** 12:2,5,13
13:5,12,17 17:1
62:13 63:8 73:1
81:12 96:4
**trulia** 15:21
**trust** 2:22 7:3,12
41:21 42:13 60:19
68:8 72:6 82:15
83:19
**trustee** 1:12 3:15
5:4 7:13,16,17,18
8:9 23:3,14 30:25
33:17 36:16 37:17
37:18 39:15 42:8
45:16 48:10 49:23
54:12,15,24 55:4
55:11,18,20,25
56:12,19 57:7,24
59:5,13,16 62:6
67:7 68:11,16,21
69:1,2,5 70:22,24
71:2 72:23 73:3,4

73:21 80:19 83:6
83:8 84:6 85:19
86:14,16,22,23
87:7,13 89:25
90:20 91:8,8 92:3
92:18
**trustees** 3:22
**trustee's** 34:16
56:6,17 57:24
70:19 72:3 89:6
**trustworthiness**
37:22
**try** 23:15 30:12
39:23 64:14 66:18
76:1 82:2
**trying** 45:2 47:13
50:17 60:6 63:11
68:21 73:22 77:3
79:16 80:2,6
**turn** 56:10 82:9
82:17
**turns** 45:8
**two** 13:9 24:19,22
31:1 35:2 42:10
43:19 47:16 53:2
57:5 61:1 63:21
64:22 65:6,10
77:17 79:8 82:21
85:1 86:9 89:12
90:2,9
**type** 14:4 15:18
16:18,22 25:14
58:6 88:9
**types** 16:2
**typically** 29:3
41:15

| u |
| --- |

**u.s.** 2:23 42:20
71:14 78:18
**u.s.c** 3:3
**ultimately** 50:9
57:6

**unable** 27:23
**uncertain** 80:22
**underlying** 72:19
  72:21
**undermine** 39:14
**understand** 15:9
  17:20 38:24 43:15
  44:19 49:7,15
  66:14,16 76:25
  80:6 81:1
**understanding**
  27:19 30:1,12
  36:25 39:13 45:7
  47:19 57:1 92:4
**undertake** 57:22
**undertook** 56:19
**undisputed** 87:22
**unequivocally**
  70:18 71:20
**unfair** 47:9
**uniform** 18:5
**unique** 49:5 62:22
  62:23,24 63:3,3,3
  67:15,19,21
**unit** 11:25 12:8
  26:14,17 37:6
  80:14,15,17,18
  81:5,8,11 83:2,13
  83:17 84:12,25
  85:2,5,7,10,11,25
  86:4,17
**united** 1:1 2:1
**units** 14:4
**unknown** 2:25
**unpaid** 39:1 55:15
  65:22 86:18
**unrelated** 51:4
**unresolved** 92:14
**unsecured** 50:11
  50:16
**untouched** 27:11
  27:14

**unusual** 49:5
  67:19
**upkeep** 74:3
**uploaded** 16:11
  18:5,22 19:1
**uploading** 18:21
  19:3
**upper** 24:9 25:3
  28:5
**use** 49:25 59:13
  77:7 78:15
**utility** 37:9
**utilization** 51:22
**utilize** 38:10
**utilized** 38:7

**v**

**v** 1:15 3:11 7:10
**valid** 78:7 85:21
**value** 29:2,4 32:20
  51:13 57:2,18
  85:25
**values** 20:10
**vanilla** 93:9
**vantage** 37:17
**vantagepoint** 78:7
  80:5
**various** 9:12 11:5
  15:13 16:2,2
  56:23
**veritext** 96:20
**version** 21:4,6,7
**versus** 28:5
**vested** 67:20
**vesting** 84:5 91:7
**view** 24:13,15
  49:13 62:11 63:3
  88:21
**viewing** 79:22
**viewpoint** 25:24
  26:1 67:4
**views** 49:11,11
**virtual** 15:13

**virtue** 62:18 80:1
  81:2 84:4
**voir** 17:11,15
**voluntary** 78:9
  86:20

**w**

**wait** 91:20
**waited** 72:22
**waive** 33:24
**walk** 32:10 61:16
**wall** 15:21
**walls** 25:17
**wandered** 48:18
**want** 7:7 8:8,9
  10:7 13:23 22:5
  25:5,6,18 27:4
  34:9 35:22 36:2
  46:14 50:5 61:5
  61:10,12 64:14
  65:13,24 69:9,14
  73:8 75:6,16
  76:13 80:15 81:3
  81:20 91:16 92:25
  93:14 94:3
**wanted** 9:23
  21:19 41:3 47:2
  50:22 52:8 66:14
**wants** 23:11
**war** 45:11,14
**warn** 49:9
**warrant** 72:11
**wasn't** 46:3 49:10
  60:12 74:4 76:4
  79:3,13,13,14
**waste** 77:23
**water** 49:13,14
**waterfront** 49:11
**way** 15:16 20:16
  20:16 21:8 58:11
  59:10 74:18 75:3
  75:4,18 77:1
  79:16,21 80:5

**wear** 25:12,16
  26:22 27:9 28:8
  62:18
**webpages** 11:12
  11:12 21:20
**website** 21:24,24
**websites** 15:9,10
  15:14,20 21:5
**weeks** 29:20
**weigh** 88:10
**weight** 14:6
**welcome** 33:9
  52:25
**went** 20:23,24
  44:4,11
**weren't** 78:12
  86:3
**wesley** 6:3 7:19
  8:17 14:9 17:15
  22:8 32:2
**west** 24:9,11,24
  25:3 28:5
**we'd** 68:6
**we'll** 7:6,9,12 8:8
  10:4 33:13 54:8
  55:4,5,10 56:4,15
  82:10
**we're** 28:13 55:2
  65:14,24 66:15
  69:5 72:24 73:2
  73:19 74:17,24
  76:11 92:4,6
  93:25
**we've** 31:19 44:23
  54:18 76:1 77:4
**whatsoever** 24:23
**what's** 15:12
  35:15 39:13,13
  60:23 63:24 85:8
**whisper** 60:2
**whistle** 25:4
**whistles** 25:9,10

| | | |
|---|---|---|
| **who's** 80:23,24,24 | **x** | 20:12,13 |
| **willing** 44:9 45:4 | **x** 1:5,11,18 95:1 | **zoom** 82:3,8 |
| 64:13 72:25 | **y** | |
| **win** 58:10 | | |
| **wish** 33:8 53:1 | **yeah** 30:11 39:8 | |
| 91:1,16 93:11 | 50:2 58:24 60:15 | |
| **wishes** 14:5 91:10 | 72:14 75:8 | |
| **wishing** 54:1 | **year** 43:1 69:19 | |
| **withdraw** 23:12 | 69:20 75:14 85:22 | |
| 33:5 | 86:24 89:17,20 | |
| **withdrawn** 48:21 | 90:7,7,9 | |
| 48:23 | **years** 26:4,9 27:24 | |
| **witness** 7:18 | 27:25 42:10 59:16 | |
| 23:11 26:11,15 | 59:17 61:1,7,8 | |
| 33:10 34:9 38:10 | 62:20 69:11 71:1 | |
| 41:13 46:19,20 | 85:1,1,9 86:10 | |
| 49:18 52:7,12,21 | 88:8 | |
| 52:25 53:2 | **years'** 74:3 | |
| **witnesses** 7:24 8:9 | **york** 1:2 2:3 3:5 | |
| 10:10 12:4 | 5:6,14,23 15:8 | |
| **witness's** 27:3 | 24:5,6,22 31:10 | |
| **wonderful** 61:8 | 38:4,4 65:21 | |
| **won't** 72:15 74:12 | 69:20 70:7 78:1 | |
| **word** 63:14 | **you'd** 43:18 | |
| **words** 26:3 44:3 | **you'll** 7:25 33:14 | |
| **work** 25:13,14 | **you're** 9:16 13:11 | |
| 69:14 77:13 | 20:6,12,24 26:17 | |
| **worked** 22:11 | 27:19,23 28:5 | |
| 31:17 | 33:8,9 35:22 | |
| **working** 22:10,25 | 41:10 45:12,12 | |
| **works** 18:7 | 46:20 48:9,25 | |
| **world** 5:13 | 49:15 52:25 62:7 | |
| **worth** 74:3 | 74:22 78:15 | |
| **worthy** 72:7 | **you've** 13:16 | |
| **wouldn't** 28:24,25 | 18:19 28:8 42:7 | |
| 90:12 | 55:7 81:2 | |
| **would've** 43:13 | **yvette** 7:2 | |
| **written** 91:21 | **y'all** 78:10 | |
| **wrong** 9:14 23:2 | **z** | |
| 62:5 76:18 | **ziehl** 5:3 7:16 | |
| | 54:24 | |
| | **zillow** 15:21 16:18 | |
| | 16:23 18:3,9 | |