## Case No. 21-cv-01239-JMA

In the
United States District Court
for the Eastern District of New York

2 RIVER TERRACE APARTMENT 12J LLC

v.

HOWARD M. EHRENBERG IN HIS CAPACITY AS
LIQUIDATING TRUSTEE OF ORION HEALTHCORP., INC. et. al.

On Appeal from the United States Bankruptcy Court
for the Eastern District of New York, Adv. No. 20-08051 (AST)

### Reply Brief of Appellant

Maryam N. Hadden, Esq.
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, New York   10007
Maryam.hadden@parlatorelawgroup.com
(646)846-6382


*Attorney for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................2

    INTRODUCTION ...............................................................................................3

ARGUMENT .............................................................................................................3

CONCLUSION ........................................................................................................15

**Certificate of Compliance with Federal Rule of Bankruptcy Procedure 8015(a)**................**17**

**Certificate of Service**..........................................................................................**18**

## INTRODUCTION

The Bankruptcy Court abused its discretion in elevating form over function in its assessment of Appellant's evidentiary record and compounded its error in then relying upon a presumption of insolvency when, in the ruling Court's own words, there was "no independent evidence of insolvency as to CHT in and of itself at the time of each of the transfers."[1]   The combined effect of these errors was to improperly deprive Appellant 2 River Terrace Apartment 12J, LLC ("2 River") of the ownership of its sole asset.

## ARGUMENT

The Bankruptcy Court's judgment below was based on two reversible errors. As an initial matter, both the Bankruptcy Court and the Appellee in its Brief ignored the burden of proof that should have applied in the summary judgment context.[2]

---

[1] *Ruling* at 22.  Transcript citations herein shall refer to the Bankruptcy Court's February 9, 2021 oral ruling as "*Ruling*" and to the January 21, 2021 oral argument as "*Hearing*."

[2] The manner in which the Adversary Proceeding below, initially brought by Appellee against multiple parties, reached the Summary Judgment stage is instructive of the Bankruptcy Court's desire to place a priority upon expedited decision making.  On November 10, 2020, the Court denied Appellee's Motion for Default Judgment but informed the parties that it intended to set a briefing schedule for a Summary Judgment motion which it instructed Appellee to file because it believed that there were minimal, if any, factual disputes between the parties.  The

Summary judgment is proper only when, after drawing all reasonable inferences in favor of a non-movant, *no reasonable trier of fact could find in favor* of that party. *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986) (emphasis supplied).  The proper observance of the summary judgment standard is particularly essential in a case such as this, where the non-moving party was affected by other legal considerations outside of the control of either the deciding court or the parties.

In particular, the Bankruptcy Court placed substantial weight upon Appellant's reliance by necessity upon the arguments of counsel and exhibits rather than on a sworn affirmation from its sole corporate officer, who under the circumstances could be expected to have personal knowledge of some or all of the referenced claims.  In so doing, however, the lower Court ignored the very real "catch-22" situation in which Appellant's manager was placed by the existence of a pending indictment in the District of New Jersey.[3]  Indeed, when reminded of this circumstance by Appellant's counsel (*Hearing* at 46-48), the Court indicated that it would not be willing to delay its ruling pending the resolution of the criminal matter

---

Court made clear at that time its desire for a swift resolution of the matter in which Appellant had just appeared.

[3] This Indictment, which at one point listed Apartment 12J as an asset facing potential forfeiture and which appears to be the source of at least some of Appellee's allegations, remains pending in the District of New Jersey and is currently in the motion practice stage.

and subsequent ability of Appellant to provide an affidavit in support.  *See Hearing* at 47.[4]   Moreover, the Court left unanswered Appellant's offer to cure the admissibility defect in the proffered financial records (*Hearing* at 48).  While the Court did state that "[w]e can talk more specifically about the bank records if that's something that the trustee is maintaining its objection to" (*Hearing* at 48), the Court then dropped the question.  Further, when adjourning at the conclusion of the Hearing, the Court indicated that it wanted to give further consideration to all of the arguments raised and that it would notify counsel if it required further input to reach a ruling but did not set any schedule for – or suggest a willingness to accept – further

---

[4] The very real and significant Fifth Amendment implications impacted by the Court's desire to press forward without delaying for an affidavit that could be obtained after the conclusion of the pending criminal case were highlighted by the Court's own reference to "fictitious" entities (*Ruling* at 11).  These allegations concerned events in 2015 before the transfers in question that were utterly unsupported by the joint stipulated facts and that were unconnected to the transfers at issue, yet highly relevant to the criminal charges faced by Appellant's manager, Paul Parmar ("Parmar").  Similarly, Appellee's argument that "Parmar and his executive team falsified records" and that, therefore, anything submitted by Appellant was suspect both highlights the Fifth Amendment implications and provides an example of both the Appellee and, to a lesser extent, the lower Court, tending to view Parmar's guilt as an established fact in spite of the presumption of innocence and in spite of the fact that Parmar continues to vigorously contest the as yet untried criminal charges pending in New Jersey. *See e.g., Answering Brief* at 21. Indeed, Appellee's apparently selective view of the Debtor's insolvency is the only possible explanation for the choice to pursue clawback actions against Appellant or other Parmar-related entities but not to pursue them against equally sizable disbursements closer in time to the Chapter 11 filing, such as the five million paid at closing on CC Capital's behalf or the payments to John Altorelli, who never represented the Debtor.

submissions from either party.  *See Hearing* at 60-61.  Having thus refused to delay

its decision in a manner that could have protected the Constitutional rights of

Appellant's manager by allowing time for the criminal action to conclude, or even

by taking Appellant's counsel up on the offer to cure the defect as to the submitted

financial records, the Bankruptcy Court's subsequent decision to strike the exhibits

submitted by Appellant for lack of such an affidavit constituted an abuse of

discretion.

The impact of this abuse of discretion at the summary judgment stage cannot

be overstated.  Here, as Appellant noted during the January 21, 2021 hearing, the

question of solvency of the Debtor at the time of the transfer was just one of the

disputed issues which, rather than being resolved by summary judgment, was more

properly suited to the discovery process and to obtaining expert evaluation and

opinions.  As Appellant argued below in pointing out the range of disputed topics

between the parties and the inapplicability of summary judgment at this stage of the

proceedings:

> [W]e're in a scenario where there are significant questions as to
> solvency in particular. There are questions as to whether or not there
> was or was not fair consideration. There's questions as to whether
> there was or was not an antecedent debt. There are questions as
> whether there was or was not fraudulent intent.  Obviously, my
> answers to those questions are very different from the plaintiff's
> answers to those questions. But I think that we are in as [sic]
> scenario where really in order to have an actual factual
> determination, you would need a solvency opinion. You would need
> expert opinions. You would need full discovery.

*Hearing* at 56-57.

The Bankruptcy Court, however, had made clear its interest in a speedy resolution and, thus, ignored the requirement to view the proceedings in the light most favorable to the non-movant, choosing instead to strike all of the exhibits and move forward with a decision.

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48 (1957).  Yet the Bankruptcy Court's actions below took precisely the "form over substance" approach that has been expressly disapproved by the Supreme Court of the United States.  Here, Appellant – a single member LLC – was limited in its response by pending criminal proceedings in another district.  Counsel's offer to cure the evidentiary defects in other exhibits, such as bank statements which could have been submitted with certifications from bank personnel rather than from Parmar, was acknowledged but not accepted by the Bankruptcy Court below.  The Bankruptcy Court's decision to instead strike all of the exhibits proffered by Appellant was issued concurrently with its grant of summary judgment in the March 1, 2021 Order appealed herein.  This was not, then, a scenario in which Appellant was given an opportunity to respond to the striking of exhibits with additional exhibits, with certifications, or with any of

the other possible solutions contemplated by the Federal Rules. Rather, Appellant was presented with a *fait accompli* and the concurrent decision of the Bankruptcy Court to rely upon a permissive presumption of insolvency in spite of its own express recognition that there was "no independent evidence of insolvency." *Ruling* at 11.

Had the Bankruptcy Court either provided for the amendment of Appellant's submissions below or, more appropriately, taken Appellant's argument that this was not a matter ripe for summary judgment but was far more suited to the discovery process and the obtaining of expert opinions, no inequitable result would have taken place. Discovery would have solidified many of the issues involved without the need to impact Parmar's Constitutional rights and without permanently depriving Appellant of its sole asset.[5] Discovery, for example, would have fleshed out issues regarding the compensation owed to the Debtor's CEO in 2016 versus compensation (if any) that the Debtor claimed to have paid before the transfers took place;[6] the details of the consulting agreement in effect between the Debtor and First United Health; the balance owed to First United Health by the Debtor both before and after the transfers in question, as reflected in the financial records of the Debtor; the

---

[5] As the sale of the Apartment in question by the Appellee has now been approved by the Bankruptcy Court, Appellant's deprivation as to that particular apartment is permanent.

[6] As the compensation had gone unpaid for several years and was listed on the books of the Debtor as being owed to First United Health, which the discovery process would have revealed, this factor alone should have changed the Bankruptcy Court's finding had it been given the opportunity to be properly developed.

financial state of the Debtor at the time of the transfer and immediately thereafter, as well as in the following years prior to the ousting of Parmar and the filing of the Chapter 11 Petition in 2018[7], among other factual questions.  An expert opinion (or opinions) as to solvency would have been highly relevant to the questions determined out of hand by the Bankruptcy Court in what amounted to an improper fact-finding process.  Instead, however, the Bankruptcy Court abused its discretion by rushing the issue to judgment despite the unquestionable existence of factual disputes.[8]  This action was in direct opposition to the Second Circuit's standard that

---

[7] As noted extensively in Appellant's Opening Brief, the Debtor had paid off millions of dollars in loans, paid five million towards its own closing on CC Capital's behalf, made acquisitions, bought back options, and in total paid out more than fifty million dollar all in the period between the February 2016 transfer at issue and the March 2018 Chapter 11 filing.  In short, the evidence of solvency rather than insolvency was overwhelming – or would have been, had the summary judgment grant not cut it off at the knees.  Indeed, on its own the Debtor's choice to prepay its loans regardless of the prepayment penalties and choice to further purchase its options shows that it had surplus cash and flies in the face of any argument that the Debtor was rendered insolvent by this transfer.

[8] A close reading of the underlying proceedings reveals that Appellee, and apparently the Bankruptcy Court, was significantly concerned with the state court judgment that had been obtained by the Residential Board in 2019, prior to the filing of the Adversary Proceeding, which continued to balloon in size as the Board continued to assess fees, thus potentially impacting the value of the apartment as an asset to the estate.  Both Appellee and the lower Court reacted to this judgment by seeking to race through the summary judgment process in regards to the Apartment in order to obtain a comparatively speedy result.  While this could be an understandable response on Appellee's part, it was improper for the Bankruptcy Court to join the rush to resolution.  This, too, constituted an abuse of discretion that may well have underlain many of the Bankruptcy Court's rulings, including the determination to strike Appellant's exhibits without providing the opportunity to cure their defects.  Unfortunately, this state court judgment was never properly before the Bankruptcy

summary judgment should not be granted where the non-moving party seeks discovery of potentially favorable information. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 10 (2d Cir. 1983).[9] It is essential to restate here that in the papers filed below, Appellant provided multiple exhibits that were struck by the Bankruptcy Court. This was not a case in which Appellant was making wild and unsupported claims but, rather, one in which Appellant had proffered exhibits and had offered to cure the defects in many of those exhibits despite its inability due to the pending criminal case to present an affidavit from Parmar himself. The former situation, if

---

Court, nor was it ever litigated before that Court despite being frequently discussed. Its status as the elephant in the room, however, certainly served to propel the proceedings forward in a manner that inevitably and improperly harmed the rights of Appellant.

[9] The manner in which this proceeding reached the summary judgment stage is instructive on this point as well and explains why discovery had not commenced. Appellant was not initially served with the Adversary Proceeding complaint, despite the appearance of counsel on its behalf in other proceedings, but instead first learned of the Adversary Proceeding when Appellee filed for Default Judgment. Appellant thus entered an appearance before the Bankruptcy Court for the first time on October 26, 2020 when it opposed that motion, which was decided on November 20, 2020. The Bankruptcy Court set its schedule for Summary Judgment proceedings on November 16, 2020, seeking the filing of such a motion on or before December 1, 2020 and contemplating oral argument on the briefed motion on January 21, 2021. Thus, while the underlying Chapter 11 petition may have been pending before that Court since March of 2018, Appellant's presence in these proceedings had moved swiftly and without the opportunity for discovery taking place, as the joint discovery plan was not even scheduled for discussion until December 7, 2020, after the filing of the Summary Judgment Motion had already taken place. The effect of this schedule was to place Appellant in the precarious position of attempting to argue its points without discovery in a case where discovery was clearly paramount to a fair and just evaluation of the disputed issues.

it had taken place, would have presented an appropriate scenario for the exercise of the court's summary judgment power; the latter situation did not.

Moreover, as argued below, the evidence supplied by Appellee was open to interpretation. Appellee relied, for example, in part upon revised tax returns prepared for the Chapter 11 filing. As Appellant noted in opposing the relevance of these particular stipulated "facts", and argued more completely at the January 21, 2021 proceeding, the tax returns were ambiguous in light of the fact that tax returns could be prepared entirely properly but with different goals in mind (such as claiming exemptions, amortizing expenses, etc.) and thus presenting different financial pictures without impropriety taking place. *Hearing* at 55-56. Thus, even the records considered by the Bankruptcy Court were not unilaterally favorable. It is well established that where the documents on which a motion for summary judgment are predicated are ambiguous, a factual issue is presented which may not be summarily resolved, even if *both parties* rather than the single party involved here move for summary judgment. *Bank of America National Trust & Savings Association v. Gillaizeau,* 766 F.2d 709 (2d Cir. 1985). *See also In re Denby Stores, Inc.*, 86 B.R. 768, 776 (Bankr. S.D.N.Y. 1988) (inappropriate for court to draw inferences from documents which are adverse to party against whom summary judgment is sought and which would constitute impermissible fact finding).

Having abused its discretion by striking the supporting exhibits and then having weighed the remaining ambiguous evidence against Appellant rather than in its favor as it should have done in the summary judgment context, the Bankruptcy Court then found that the transfer in question had been made without fair – or indeed any – consideration. The Court then went on to rely on the resulting presumption of insolvency in applying New York State Debtor and Creditor Law to void the transaction.  Reliance upon the presumption of insolvency was error where the question of solvency was disputed by the parties and there was evidence to support the solvency of the Debtor at the time of the transaction.  Indeed, even the Bankruptcy Court recognized that in the absence of a presumption, there was insufficient evidence to establish insolvency. *Ruling* at 11.  The Bankruptcy Court's rulings thus depended on a pyramid structure of errors:  in order to find that there was no antecedent debt and thus no fair consideration, the Court had perforce to strike the exhibits.  Having struck the exhibits, the Court could conceivably find the absence of fair consideration (as, in its view, the contract and required consideration between the Debtor and First United Health for Parmar's services was thus assumed not to exist) but still could only void the transfer under New York State law by relying on a presumption of insolvency.  That presumption could only be relied upon by, again, denying the existence of the stricken exhibits which would have

contradicted it and by failing to view the evidence and presumptions in the light most favorable to the non-movant.

The lack of fair consideration could only be found by analyzing each transfer as a direct transfer from the Debtor to 2 River and ignoring any other possible interpretation or blending of funds arising from the undisputed fact that the transfer was made to the IOLA account of a law firm that represented several of the parties involved, including Appellant, Parmar, and First United Health as well as the Debtor. Next, the Bankruptcy Court had to find that there was no antecedent debt – again, a finding that would have been impossible without the striking of the exhibits including the consulting contract between First United Health and the Debtor and the Debtor's London AIM paperwork.  However, as the Second Circuit has noted, the concept of "fair consideration" is not a rigid one and requires a highly fact specific determination in each case – precisely the type of determination that did not take place here due to the truncated nature of the proceedings moving straight to the summary judgment context.  *See United States v. McCombs*, 30 F.3d 310, 326 (2d Cir. 1994) (*quoting Orbach v. Pappa*, 482 F. Supp. 117, 119 [S.D.N.Y. 1979]) (internal citations omitted).

Finally, having characterized the transfer as lacking fair consideration, the Bankruptcy Court's avoidance of that transfer depended on applying the presumption of insolvency rather than upon any actual evidence of insolvency

(which, as noted repeatedly, even the court agreed was lacking).  On the contrary, as set forth at length in Appellant's Opening Brief, there were multiple indicators of solvency – including the acquisition of two of the Debtor parties pending before the Bankruptcy Court and thus unquestionably legitimate entities – that arose after the transaction had taken place.  Moreover, the presumption relied upon by the Bankruptcy Court did not apply to three of the statutes relied upon by Appellee below – N.Y. Debt. & Cred. Law §§ 274, 275, and 276 all required factors that were absent here even following the striking of Appellant's exhibits.[10]

Because none of the recorded activity of the Debtor following the subject transaction was consistent with the Debtor being insolvent at the time of the transfer or having been rendered insolvent as a result of the transfer, the Bankruptcy Court's ruling depended entirely on a blind application of the presumption.  As Appellant noted in motion papers and at the January Hearing, the only way to truly and accurately determine the solvency or insolvency of the Debtor would have been to engage in discovery and to do a thorough accounting of the business *at the time of the transfer*.  As this would likely involve a battle of the experts in a case involving

---

[10] This left the Bankruptcy Court with Section 273 and 273-a to rely upon; Section 273 was listed in the section title of Appellee's Memorandum of Law below but the substance of the argument was made under Section 276.  Section 273-a was potentially applicable only through relying upon a minor judgment docketed against the Debtor that had not been paid at the time of the transaction.

complex economic allegations on both sides, it was a scenario particularly unsuited to a summary judgment finding.

It is well established that the party defending a transfer "need only come forward with *some* evidence of solvency to rebut the presumption, as the burden of persuasion and the risk of non-persuasion remain with the party challenging the conveyance." *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest.)*, 337 B.R. 495, 506 (Bankr. S.D.N.Y. 2006) (emphasis supplied). *See also In re Manshul*, 2000 U.S. Dist. LEXIS 12576 (Bankr. S.D.N.Y. 2000); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 938 (S.D.N.Y. 1995). Appellant clearly met this minimal burden in the proceedings below, particularly in light of the fact that this issue was before the Court on a motion for summary judgment, and but for the lower Court's abuse of discretion Appellant should have prevailed and should even now be engaging in the discovery process.

## CONCLUSION

1.   Appellant believes it has demonstrated the presumption of insolvency used by the lower Court in determining the summary judgement can be and has been rebutted by the fact of actual solvency and that fair consideration can be established.

2.   Appellant further believes it has demonstrated that the lower Court abused its discretion in striking all supporting materials, inclusion of which would

have demonstrated the genuine issues of materials facts necessary to defeat the

summary judgment motion.

    3.    WHEREFORE, Appellant, 2 River Terrance Apartment 12J, LLC,

prays this Court reverse and remand the summary judgment finding for further

proceedings in the underlying Adversary Proceeding, together with such other and

further relief as this Court deems appropriate.

Dated: July 13, 2021           By:    *s/Maryam N. Hadden*
                                  Maryam N. Hadden, Esq.
                                  Parlatore Law Group, LLP
                                  One World Trade Center, Suite 8500
                                  New York, New York   10007
                                  Maryam.hadden@parlatorelawgroup.com
                                  (646)846-6382

                                  *Attorney for Appellant*

## Certificate of Compliance with Federal Rule of Bankruptcy Procedure 8015(a)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a) because:

This brief contains 4,873 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(a)(7).

2.      This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Executed on July 13, 2021.

*/s/Maryam N. Hadden*
Maryam N. Hadden, Esq.

**Certificate of Service**

T

The undersigned certifies she electronically filed the foregoing Opening Brief of Appellant via the CM/ECF system for the Eastern District of New York, thus sending the document to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: July 13, 2021

*/s/Maryam N. Hadden*
Maryam N. Hadden, Esq.